**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

RMS TITANIC, INC., *et al.*,[1]

Debtors.

Case No. 3:16-bk-02230-PMG
Chapter 11

(Joint Administration Requested)

**DEBTORS' MOTION FOR ORDER**
**PURSUANT TO BANKRUPTCY CODE SECTIONS**
**105(a), AND 363, FED. R. BANKR. P. 6003 AUTHORIZING**
**(I) MAINTENANCE OF EXISTING BANK ACCOUNTS, (II) USE OF**
**EXISTING BUSINESS FORMS, AND (III) USE OF EXISTING CASH**
**MANAGEMENT SYSTEM AND REQUEST FOR EMERGENCY HEARING**

RMS Titanic, Inc. and certain of its affiliates, as Debtors and Debtors in possession in the above-captioned case (collectively, the "Debtors"), hereby move this Court (the "Motion") for entry of an order, pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. *et seq.* (the "Bankruptcy Code"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (as amended the "Bankruptcy Rules") (i) authorizing, but not directing, the Debtors to continue to (a) maintain existing bank accounts, (b) use existing business forms, (c) use their existing cash management system and (ii) granting a waiver of certain operating guidelines relating to bank accounts. In addition, the Debtors request an emergency hearing on the Motion. In

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

support of the Motion, the Debtors rely upon and incorporate by reference the Chapter 11 Case Summary (the "Case Summary").[2] In further support of the Motion, the Debtors respectfully represent:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), and 363, Bankruptcy Rule 6003 and subsection C.5 of the Administrative Order Establishing Initial Procedures in Chapter 11 Cases for the United States Bankruptcy Court for the Middle District of Florida (the "Administrative Order").

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of this bankruptcy case, is set forth in detail in the Case Summary.

---

[2] Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Case Summary.

4.	The Debtors continue to manage and operate their business as debtors in possession under Bankruptcy Code sections 1107 and 1108.

5.	No trustee or examiner has been appointed in this chapter 11 case, and no committee has yet been appointed.

## RELIEF REQUESTED

6.	By this Motion, the Debtors seek entry of an order, pursuant to Bankruptcy Code sections 105(a) and 363 (i) authorizing, but not directing, the Debtors to continue to (a) maintain existing bank accounts, (b) use existing business forms, and (c) use their existing cash management system and (ii) granting a waiver of certain operating guidelines relating to bank accounts set forth in the U.S. Department of Justice, Office of the United States Trustee: Guidelines for Debtors-in-Possession (the "U.S. Trustee Guidelines") as adopted by the Office of the United States Trustee for the Middle District of Florida (the "U.S. Trustee").

## BASIS FOR RELIEF

**A.	The Debtors Should Be Granted Authority To Maintain Their Existing Bank Accounts.**

7.	The U.S. Trustee has established the U.S. Trustee Guidelines for debtors in possession in order to supervise the administration of chapter 11 cases. The U.S. Trustee Guidelines require chapter 11 debtors to, among other obligations, (a) close all existing bank accounts and open new debtors in possession bank accounts for which the signature cards shall indicate that the debtors are "Chapter 11 Debtors in possession"; (b) establish a new payroll account; and (c) maintain any funds in excess of the amount

3

required for current operations in an interest-bearing account. These requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition payment of prepetition claims. Pursuant to Bankruptcy Code sections 105(a) and 363 and the Administrative Order, the Debtors seek a waiver of these requirements and authorization to continue using their existing bank accounts.

8. The Debtors seek a waiver of the U.S. Trustee's requirement that the prepetition Bank Accounts be closed and that new postpetition bank accounts be opened. If enforced in this case, such a requirement would cause enormous disruption in the Debtors' business and would impair the Debtors' efforts to reorganize and pursue other alternatives to maximize the value of their estate. Indeed, as explained in more detail below, the Bank Accounts comprise an established cash management system that the Debtors need to maintain in order to ensure smooth collections and disbursements in the ordinary course.

9. Accordingly, in order to avoid delays in payments to administrative creditors, to ensure as smooth a transition into chapter 11 as possible with minimal disruption, and to aid in the Debtors' efforts to complete this case successfully and rapidly, the Debtors must be permitted to continue to maintain their existing Bank Accounts and, if necessary, open new and close existing accounts, wherever needed, whether or not such banks are designated depositories in the Middle District of Florida.

10. Courts have regularly entered orders authorizing debtors to maintain their prepetition bank accounts. See, e.g., In re Life Care St. Johns, Inc., Case No.

16-01347 (JAF) (Bankr. M.D. Fla. April 27, 2016); In re RQB Resort, LP, Case No. 10-01596 (PMG) (Bankr. M.D. Fla. Mar. 4, 2010); In re a21, Inc., Case No. 08-07610 (PMG) (M.D. Fla. Dec. 12, 2008); In re Emivest Aerospace Corporation, Case No. 10-13391 (MFW) (Bankr. D. Del. Oct. 25, 2010).

11. In sum, subject to a prohibition against honoring prepetition checks without specific authorization from this Court, the Debtors request that the Bank Accounts be deemed to be debtors in possession accounts and that their maintenance and continued use, in the same manner and with the same account numbers, styles, and document forms as those employed during the prepetition period, be authorized.

12. The Debtors represent that if the relief requested in this Motion is granted, they will not pay, and each of the banks at which the Bank Accounts are maintained will be directed not to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

**B.  The Debtors Should Be Granted Authority To Continue To Use Existing Business Forms And Checks.**

13. In order to minimize expenses to their estate, the Debtors also seek authorization to continue using all correspondence, business forms (including, without limitation, letterhead, purchase orders, and invoices), and checks existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession.

14. Most parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as a debtors in possession as a result the press releases issued by

the Debtors and additional other press coverage. Moreover, each of the Debtors' vendors will receive direct notice of the commencement of this case.

15. Changing correspondence and business forms would be expensive, unnecessary, and burdensome to the Debtors' estate and disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors. For these reasons, the Debtors request that they be authorized to use existing checks and business forms without being required to place the label "Debtors in possession" on each.

16. Courts in this district have consistently allowed debtors to use their prepetition business forms without the "debtor in possession" label. See, e.g., In re Life Care St. Johns, Inc., Case No. 16-01347 (JAF) (Bankr. M.D. Fla. April 27, 2016); In re RQB Resort, LP, Case No. 10-01596 (PMG) (Bankr. M.D. Fla. Mar. 4, 2010); In re a21, Inc., Case No. 08-07610 (PMG) (M.D. Fla. Dec. 12, 2008); In re Emivest Aerospace Corporation, Case No. 10-13391 (MFW) (Bankr. D. Del. Oct. 25, 2010). The Debtors respectfully submit that such relief should be granted here.

**C. The Debtors Should Be Authorized To Continue To Use The Existing Cash Management System.**

17. The cash management procedures utilized by the Debtors constitute ordinary, usual, and essential business practices and are similar to those used by other companies in the industry. The cash management system facilitates cash forecasting and reporting, monitors collection and disbursement of funds, reduces administrative expenses by facilitating the movement of funds and the development of more timely and

6

accurate balance and presentment information, and administers the various bank accounts required to effect the collection, disbursement, and movement of cash.

**(1)  The Cash Management System - Sales and Receipts**

18.  <u>Sales and Receipts</u>.  The Debtors' cash management system is funded primarily by receipts received from their customers for ticketed sales, merchandise sales and other contractual payments received.  Upon receipt of these proceeds, they are deposited directly into a number of depository accounts that relate to the specific venue at which the transaction occurred (the "<u>Venue Accounts</u>").  The Venue Accounts are then swept by Bank of America into a Master Account.

19.  <u>Operating Accounts</u>.  The Debtors maintain operating accounts at Bank of America, TD Bank and HSBC Bank Canada that are utilized to fund disbursements, whether directly or indirectly through different subaccounts.  These operating accounts are all funded by transfers from the Master Account.

20.  <u>Payroll Accounts</u>.  Payroll is paid through the Master Account for U.S. employees and through the TD Bank operating account for Canadian employees.  The TD Bank operating account is funded by transfers from the Master Account.

**(2)  The Debtors' cash management system is maintained in the ordinary course of business and is beneficial to the Debtors and their estate.**

21.  The Debtors' cash management system is highly automated and computerized. This allows the Debtors to centrally manage all of their cash flow needs and includes the necessary accounting controls to enable the Debtors, as well as creditors and the Court, to trace funds through the system and ensure that all

transactions are adequately documented and readily ascertainable. The Debtors will continue to maintain detailed records reflecting all transfers of funds.

22.	The cash management procedures that the Debtors use constitute ordinary, usual, and essential business practices and are similar to those used by other major corporate enterprises. The cash management system benefits the Debtors in significant ways, including the ability to (i) control corporate funds centrally, (ii) ensure availability of funds when and where necessary, and (iii) reduce administrative expenses by facilitating the movement of funds and the development of more timely and accurate balance and presentment information.

23.	In furtherance of this goal, the Debtors request that all banks at which the Bank Accounts are maintained (the "Banks") be authorized and directed to continue to administer the Bank Accounts as such accounts were maintained prepetition, without interruption and in the usual and ordinary course, and to pay any and all checks, drafts, wires, or electronic funds transfers presented, issued, or drawn on the Bank Accounts on account of a claim arising on or after the Petition Date so long as sufficient funds are in said Bank Accounts.

24.	The Debtors further request that the Banks be restrained from honoring any check, draft, wire, or electronic funds transfer presented, issued, or drawn on the Bank Accounts on account of a prepetition claim unless (i) authorized in an order of this Court, (ii) not otherwise prohibited by a "stop payment" request received by the Banks from the Debtors, and (iii) supported by sufficient funds in the Bank Account in question.

26. To effectuate the foregoing, the Debtors request that the Banks be authorized and directed to honor all representations from the Debtors as to which checks should be honored or dishonored. To the extent that the Debtors have directed that any prepetition checks be dishonored, they reserve the right to issue replacement checks to pay the amounts related to such dishonored checks consistent with the orders of this Court.

27. The operation of the Debtors' business requires that the cash management system continue during the pendency of this chapter 11 case. Requiring the Debtors to adopt a new, segmented cash management system at this early and critical stage of this case would be expensive, would create unnecessary administrative problems, and would likely be much more disruptive than productive. Any such disruption could have an adverse impact upon the Debtors' ability to reorganize.

28. Allowing the Debtors to utilize their prepetition cash management system is entirely consistent with applicable provisions of the Bankruptcy Code.

29. In particular, this Court has the authority to grant the requested relief pursuant to its equitable powers under section 105(a) of the Bankruptcy Code. Section 105(a) provides, in relevant part, that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

30. Indeed, bankruptcy courts routinely permit chapter 11 debtors to continue using their existing cash management systems, generally treating requests for such relief as a relatively "simple matter." In re Baldwin-United Corp., 79 B.R. 321,

327 (Bankr. S.D. Ohio 1987); see also In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992) (recognizing that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash"), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993), cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp., 510 U.S. 1110 (1994).

31.    Courts have granted substantially similar relief in other chapter 11 cases. See, e.g., In re Life Care St. Johns, Inc., Case No. 16-01347 (JAF) (Bankr. M.D. Fla. April 27, 2016); In re Emivest Aerospace Corporation, Case No. 10-13391 (MFW) (Bankr. D. Del. Oct. 25, 2010); In re RQB Resort, LP, Case No. 10-01596 (PMG) (Bankr. M.D. Fla. Mar. 4, 2010); In re a21, Inc., Case No. 08-07610 (PMG) (M.D. Fla. Dec. 12, 2008). The Debtors respectfully submits that such relief should be granted here.

**D.    The Debtors Will Incur Immediate and Irreparable Harm If They Are Not Permitted To Continue To Use Their Cash Management System.**

32.    The relief requested is also warranted under Bankruptcy Rule 6003, which provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

Fed. R. Bankr. P. 6003; see In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on interim basis to avoid irreparable harm). The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm such as exposure to litigation and the risk of expensive audits.

33. To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

34. Accordingly, the Court should allow for the continued use of the Debtors' cash management system.

## WAIVER OF BANKRUPTCY RULE 6004(h)

35. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h).

## NOTICE

36. Notice of this Motion will be given to (i) the 20 largest creditors; (ii) the Office of the United States Trustee for the Middle District of Florida; (iii) the Internal

Revenue Service; (iv) the Securities and Exchange Commission; (v) Jihe Zhang; (vi) Lange Feng; and (vii) High Nature Holdings Limited.  The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

37.No previous request for the relief sought in this Motion has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully requests that the Court enter an order granting the relief requested in the Motion and such further relief as may be just and proper.

        NELSON MULLINS RILEY
        & SCARBOROUGH LLP

By*/s/ Daniel F. Blanks*
    Daniel F. Blanks (FL Bar No. 88957)
    Lee D. Wedekind, III (FL Bar No. 670588)
    50 N. Laura Street, Suite 4100
    Jacksonville, Florida 32202
    (904) 665-3656 (direct)
    (904) 665-3699 (fax)
    daniel.blanks@nelsonmullins.com
    lee.wedekind@nelsonmullins.com

*Proposed Counsel for the Debtors and Debtors in Possession RMS Titanic, Inc.*

~#4813-1962-7566 v.1~