**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

RMS TITANIC, INC., *et al.*,[1]

        Debtors.

Case No. 3:16-bk-02230-PMG
Chapter 11

(Joint Administration Requested)

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363, 506, 507(a), 553, 1107(a) AND 1108 AND BANKRUPTCY RULE 6003 AUTHORIZING CONTINUATION OF CERTAIN CUSTOMER PRACTICES AND REQUEST FOR EMERGENCY HEARING**

RMS Titanic, Inc. and certain of its affiliates, as Debtors and Debtors in possession in the above-captioned case (collectively, the "Debtors"), hereby move (the "Motion") this Court for entry of an order, pursuant to sections 105(a), 363, 506, 507(a)(7), 553, 1107(a), 1108 and 1129(b)(2) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing, but not directing, the continuation of prepetition customer practices that the Debtors deem necessary and in the best interests of its estate, its creditors and other parties in interest. In support of the Motion, the Debtors rely on and incorporate by reference the Chapter 11 Case Management Summary (the

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

"Case Summary").[2] In further support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363, 506, 507(a)(7), 553, 1107(a) and 1108. Such relief is warranted pursuant to Bankruptcy Rule 6003.

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including its business operations, its capital and debt structure, and the events leading to the filing of this bankruptcy case, is set forth in detail in the Case Summary.

4. The Debtors continue to manage and operate its business as debtors in possession under Bankruptcy Code sections 1107 and 1108.

5. No trustee or examiner has been appointed in this chapter 11 case, and no committee has yet been appointed.

---

[2] Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Case Summary.

**RELIEF REQUESTED**

6.  By this Motion, the Debtors request entry of an order authorizing, but not directing, the Debtors to honor intellectual property license fee arrangements, pre-paid ticket sales and all such other similar policies, programs and practices of the Debtors (collectively, the "Customer Practices") in the ordinary course of business.

7.  The Debtors further request that all banks and other financial institutions on which checks to its customers are drawn be authorized and directed to receive, process, honor and pay any and all such checks, whether presented prior to or after the Petition Date, upon the receipt by each such bank of notice of such authorization.

8.  The Debtors further request an emergency hearing on this matter, as failure to obtain authorization to continue the customer practices discussed in detail below will result in immediate and irreparable harm to the Debtors and its estate due to the likely immediate loss of customers and resulting revenue.

**BASIS FOR RELIEF**

9.  Prior to the Petition Date, in the ordinary course of its business, the Debtors provided exclusive intellectual property licenses to other customers. These license agreements are performed over a designated length of time.

10. Customers owe Debtors unearned intellectual property license fees in the approximate amount of $2,900,000, which is the aggregate amount of the seventeen intellectual property license fee agreements that have remaining unearned license fees.

11. Since the Debtors rely heavily on the intellectual property license fees from its customers, the Debtors must maintain favorable customer treatment in order to

maintain its business. Without the license agreements and resulting income, Debtors would suffer a major, and potentially catastrophic, reduction in its monthly cash flow. As a result, the Debtors' reorganization would be seriously jeopardized if the Debtors are not permitted to continue providing for the Customer Practices.

12. In addition, prior to the Petition Date, the Debtors entered into arrangements whereby Debtors provided its customers with the ability to purchase pre-paid exhibition tickets online to be honored at a future date. The pre-paid ticket sales are minimal. Notwithstanding the minimal amount, it is important for the Debtors to honor these tickets.

13. The success and viability of the Debtors' business, and ultimately the Debtors' ability to successfully reorganize, is entirely dependent upon the loyalty of its customers. In this regard, the Debtors' Customer Practices are critical, and any delay or failure to continue to honor the Debtors' obligations thereunder will severely and irreparably impair customer relations. Any failure to honor prepetition Customer Practices or pay the prepetition Customer Claims, for even a brief time, may well drive away valuable customers, thereby harming the Debtors' efforts to reorganize. The Debtors' management believes they will lose customers if the Customer Practices are not honored.

14. Accordingly, the Debtors seek authority, but not direction, to continue the Customer Practices, including the discretion to honor prepetition claims arising therefrom. A summary of the significant Customer Practices follows.

## APPLICABLE AUTHORITY

**I.   HONORING CUSTOMER CLAIMS AND OBLIGATIONS IS APPROPRIATE UNDER BANKRUPTCY CODE SECTIONS 506 AND 553.**

14.     The Debtors believe that certain of its customers who participate in the Customer Practices have intellectual property license agreements and performance on pre-paid tickets owed to the customers as of the Petition Date.  If the Debtors were to fail to honor the valid Customer Claims, the Debtors believe that these customers would assert their right to offset any amounts owed to them by the Debtors under the Customer Practices against any receivables that the customers owed to the Debtors.

17.     To the extent that both of such obligations arose prior to the Petition Date, Bankruptcy Code section 553 provides that the Bankruptcy Code has no effect on such setoff rights.  See 11 U.S.C. § 553.  Furthermore, Bankruptcy Code section 506 provides that customers with such setoff rights would be considered secured creditors.  See id. 11 U.S.C. § 506.  Thus, pursuant to Bankruptcy Code section 1129(b)(2), payment to such customers would be required under any plan of reorganization prior to any payment to the Debtors' unsecured creditors.  See, e.g., 11 U.S.C. § 1129(b)(2)(A)(i).  Such immediate payment does not, therefore, prejudice the Debtors' unsecured creditors.  Additionally, it will preserve funds for the estate by avoiding interest on such secured claims.

18.     Even if the customers cannot exercise rights of setoff, because for example the Customer Obligation arose only after the customer's payment for the Debtors' goods, the Debtors believe that certain of its customers with valid Customer

Claims might have a remedy for the recovery of their Customer Claims through recoupment. In order for recoupment to apply, the debts owed by the customer and by the Debtors must "arise out of a single integrated transaction so that it would be inequitable for the debtor[s] to enjoy the benefits of that transaction without also meeting its obligations." In re Univ. Med. Ctr., 973 F.2d 1065, 1081 (3d Cir. 1992).

19. Because the customers that might not be able to assert setoff rights may be able to establish a valid remedy through recoupment, such customers would be in the same position as those customers with setoff rights, *i.e.*, entitled to payment in full. Moreover, the automatic stay of Bankruptcy Code section 362 would not prevent such customers from exercising their valid recoupment defenses. See In re Univ. Med. Ctr., 973 F.2d at 1080. Thus, the payment of such Customers' Claims would likewise be required under any plan of reorganization and would not prejudice the Debtors' unsecured creditors.

20. In the event that the Customer Claims are not paid and the customers resort to asserting setoff rights or recoupment defenses, the Debtors would be required to expend time, expenses, and resources either responding to such customers' lift stay requests in order to assert setoff rights or otherwise challenging, to the extent appropriate, any invalid recoupment defense asserted by the customers. The Debtors believe that they would thereby incur added and unnecessary administrative expenses in addition to the ill will of its customers, both to the detriment of the Debtors' creditors and other parties in interest.

21. In contrast, honoring the Customer Practices as set forth herein, will (i) provide the Debtors with a means of efficiently processing the Customer Claims; (ii) reduce the administrative expenses the Debtors would otherwise face if compelled to challenge any customer's exercise of purported setoff rights or recoupment defenses; (iii) save costs by providing for a smooth transition into the bankruptcy process; and (iv) maintain proper customer relations at a critical time for the Debtors in the competitive business environment in which it operates.

## II. HONORING CUSTOMER CLAIMS AND OBLIGATIONS IS APPROPRIATE UNDER BANKRUPTCY CODE SECTION 363.

22. Under Bankruptcy Code section 363, a bankruptcy court is empowered to authorize a chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. See 11 U.S.C. § 363. In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use. See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The preservation and protection of a debtor's business, the retention of a debtor's customer base and the maintenance of customer loyalty provide a sufficient business justification for payment of the Customer Obligations, even if such payment were deemed to be outside the ordinary course of business. See id.

24. Accordingly, this Court should grant the requested relief under Bankruptcy Code section 363.

## III. HONORING CUSTOMER CLAIMS AND MAINTAINING THE CUSTOMER PRACTICES IS APPROPRIATE UNDER SECTIONS 1107(a) AND 1108.

25. The Debtors, operating its business as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are a fiduciary "holding the bankruptcy estate and operating the business for the benefit of [its] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

26. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only. . . by the preplan satisfaction of a prepetition claim." Id. The CoServ court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." Id. at 497. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

27. Honoring the Customer Claims and maintaining the Customer Practices meets each element of the CoServ court's standard. First, as described above, the success and ultimate viability of the Debtors' business is dependent upon customer loyalty. In the Debtors' business judgment, the uninterrupted maintenance of its Customer Practices is essential to maintaining such loyalty. Without honoring the Customer Practices, the Debtors are unlikely to continue to receive business from its customers due to the competitive business environment in which the Debtors operate. The loss of such a significant amount of business would decrease the estate available for all creditors by decreasing the overall enterprise value of the Debtors.

28. Second, the disruption and adverse publicity that would necessarily result from the failure to meet Customer Claims or from discontinuing the Customer Practices would threaten the Debtors' customer base and ultimately, its ability to successfully reorganize, thereby causing harm to the Debtors that is grossly disproportionate to the cost of the Customer Claims and Customer Practices.

29. Third, the Debtors have examined other options short of payment of the Customer Claims and continuation of the Customer Practices and have determined that to avoid significant disruption of the Debtors' business operations there exists no practical or legal alternative to payment of such obligations.

30. Therefore, the Debtors can meet its fiduciary duties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108 best by maintaining the Customer Practices and by honoring legitimate Customer Claims.

## IV. BANKRUPTCY CODE SECTION 105 AND THE DOCTRINE OF NECESSITY SUPPORT PAYMENT OF THE CUSTOMER CLAIMS AND MAINTENANCE OF THE CUSTOMER PRACTICES.

31.     Payment of the valid Customer Claims and the continuation of the Customer Practices in the ordinary course may also be authorized under Bankruptcy Code section 105(a) and the "doctrine of necessity".

32.     Under Bankruptcy Code section 105, this Court "may issue any order . . . that is necessary or appropriate to carry out the provisions of' the Bankruptcy Code. 11 U.S.C. § 105(a).  For the reasons set forth above, and in light of the need for the Debtors to preserve the going concern value of its business through, among other things, the maintenance of the Customer Practices, the relief requested herein is proper and should be granted.

33.     The continuation of the Customer Satisfaction Programs is further supported by the doctrine of necessity.  The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization.  See In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment).[3]  See also In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992)

---

[3] The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The United States Supreme Court first articulated the doctrine of necessity over a century ago, in Miltenberger v. Logansport, C Sw. Ry. Co., 106 U.S. 286 (1882), in affirming the authorization by the lower court of

("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the Chapter 11 process.").

34. The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence. See Just for Feet, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); In re Payless Cashways, Inc., 268 B.R. 543, 546-47 (Bankr. W. D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit). See also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) Ionosphere Clubs, 98 B.R. at 175-76. Customer obligations, such as refund claims and honoring of deposits, were specifically held to be justified examples under the necessity of payment doctrine. See In re CoServ, L.L.C., 273 B.R. at 487.

35. For the reasons discussed herein, it is evident that maintenance of the Customer Practices is necessary to the Debtors' effective reorganization. Absent a

---

the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. See id. at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in Miltenberger. See In re Lehigh & New Eng. Ry., 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy . . .").

continuation of the Customer Practices, the Debtors' business and operations will be detrimentally impacted due to the resulting injury to the Debtors' reputation and relationship with its most significant customer during a critical time for the Debtors and its business. Hence, this Court should exercise its equitable powers to grant the relief requested in this Motion.

## V. PAYMENT OF THE CUSTOMER CLAIMS AND OBLIGATIONS IS WARRANTED UNDER BANKRUPTCY RULE 6003.

36. The relief requested is warranted under Bankruptcy Rule 6003, which provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

Fed. R. Bankr. P. 6003.

37. The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm because the continuation of the Customer Practices and payment of valid Customer Claims, which sustains a positive reputation in the marketplace, ensures customer loyalty and satisfaction and prevents the driving away of valuable customers.

38. To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

39. Accordingly, the Court should allow the continuation of the Customer Practices and payment of valid Customer Claims.

40. Where retaining the loyalty of customers is critical to the successful chapter 11 case, courts in this District and elsewhere have authorized debtors to honor certain prepetition obligations to customers and to continue customer practices. See, e.g., In re RQB Resort LP, 10-01596 (Bankr. M.D. Fla. Mar. 4, 2010); In re Winn-Dixie Stores, Inc., Case No. 05-11063 (S.D.N.Y. Mar. 15, 2006) (case subsequently transferred to Middle District of Florida); In re Diamond Glass, Inc., Case No. 08-10601 (Bankr. D. Del. Apr. 2, 2008).

41. Nothing herein shall be deemed an assumption or adoption of any policy, program, practice, contract or agreement or shall otherwise affect the Debtors' right under Bankruptcy Code section 365 to assume or reject any executory contract or unexpired lease.

42. The Debtors do not at this time request authorization to assume as executory contracts any prepetition obligations to customers. Rather, the Debtors simply request authorization to continue the Customer Practices and satisfy Customer Claims, as the Debtors believe, in the exercise of its business judgment, are necessary and in its best interest and in the best interest of its estate, its creditors and other parties in interest.

## WAIVER OF BANKRUPTCY RULE 6004(h)

43. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14

days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy Rule 6004(h).

## NOTICE

44. Notice of this Motion will be given to (i) the 20 largest creditors; (ii) the Office of the United States Trustee for the Middle District of Florida; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) Jihe Zhang; (vi) Lange Feng; and (vii) High Nature Holdings Limited. The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

45. No previous request for the relief sought in this Motion has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested in the Motion and such other and further relief as may be just and proper.

NELSON MULLINS RILEY
& SCARBOROUGH LLP


By       /s/ Daniel F. Blanks
        Daniel F. Blanks (FL Bar No. 88957)
        Lee D. Wedekind, III (FL Bar No. 670588)
        50 N. Laura Street, Suite 4100
        Jacksonville, Florida 32202
        (904) 665-3656 (direct)
        (904) 665-3699 (fax)
        daniel.blanks@nelsonmullins.com
        lee.wedekind@nelsonmullins.com

*Proposed Counsel for the Debtors and Debtors in Possession RMS Titanic, Inc.*

~ #4832-7620-6894 v.2 ~