**EXHIBIT A**

THE ALASKO COMPANY
Valuation of Fine and Decorative Arts
833 West Washington Blvd. — Suite 102
Chicago, Illinois 60607
————

telephone (312) 491.9760
facsimile (312) 491.9769

A REVIEW

OF

APPRAISALS BY PAUL ZERLER AND STEPHEN H. ROGERS FOR THE

INSURANCE VALUES AND FAIR MARKET VALUES

OF

ARTIFACTS RECOVERED FROM THE WRECK SITE OF THE

ROYAL MAIL STEAMER - TITANIC

PREPARED BY RICHARD-RAYMOND ALASKO, FASA
Accredited Senior Appraiser, American Society of Appraisers
Member, College of Fellows, American Society of Appraisers
Principal, The Alasko Company

For Use As Expert Testimony In

R.M.S. TITANTIC, INC., Successor in interest to Titanic Ventures, Limited Partnership v. The Wrecked and Abandoned Vessel, its engines, tackle, apparel, appurtenances, cargo, etc., located within one (1) nautical mile of a point located at 41° 43' 32" North Latitude and 49° 56' 49" West Longitude believed to be the R.M.S. Titanic, *in rem*, Civil Action No.2:93cv902, U.S. District Court, Norfolk, Virginia

Submitted and Effective 25 October 2009

# TABLE OF CONTENTS

Section                                                                                          Page Number

I        Executive Summary ........................................................................... 1-2

II       Purpose and Use of Report ....................................................................3

III      Definition of Appraisal Review ...............................................................4

IV       Review Method ........................................................................................5

V        Scope .......................................................................................................6

VI       Limiting Conditions ...............................................................................7

VII      Certifications...........................................................................................8

VIII     Observations: Uniform Standard 7 (Development) ..............................9-15

IX       Reviewer's Conclusion – Appraisal Development ..................................15

X        Observations: Uniform Standard 8 (Restricted Use Reports)..............16-18

XI       Reviewer's Conclusion – Restricted Use Reports ...................................18

XII      Observations: Uniform Standard 8 (2009 Summary Report)..............19-20

XIII     Reviewer's Conclusion – 2009 Summary Report....................................20

XIV      Observations: International Valuation Standards Guidance Note 5 .........21

XV       Reviewer's Conclusion: Guidance Note 5...............................................21

XVI      Reviewer's Conclusion in Accordance with USPAP Standard 3 ............22

XVII     Reviewer's Credentials.................................................................23-30

This document was prepared in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP) promulgated by The Appraisal Foundation, and endorsed by the American Society of Appraisers, Washington, D.C.

- 1 -

# THE ALASKO COMPANY
Valuation of Fine and Decorative Arts
833 West Washington Blvd. — Suite 102
Chicago, Illinois 60607

———

telephone (312) 491.9760
facsimile (312) 491.9769

## EXECUTIVE SUMMARY

This study was undertaken to consider the professional character, procedures, techniques, and methods which informed the appraisal of artifacts related to the Titanic recovered from the wreck site of the Royal Mail Steamer Titanic. An appraisal of the artifacts by Paul Zerler and Stephen H. Rogers was submitted 28 November 2007. That valuation revisits earlier appraisals submitted by Messrs. Zerler and Rogers in 2002 and 2004. It has been succeeded by a Summary Report dated 23 October 2009. This review and its conclusions are effective 25 October 2009.

A professional opinion of the completeness, adequacy, and appropriateness of the Zerler-Rogers appraisal has been developed. The opinion is based upon my own background and experience and upon a consideration of the circumstances and purposes of the subject documents.

This study was guided by Standard Rule 3 (*Appraisal Review*) of the Uniform Standards of Professional Appraisal Practice (USPAP) and an application of Standard Rules 7 and 8 (*Personal Property*). The Uniform Standards are promulgated by The Appraisal Foundation, Washington, D.C. The Appraisal Foundation is authorized by the Congress of the United States as the source of appraisal standards and appraiser qualifications.

This study has also benefited from consideration of the International Valuation Standards promulgated by the International Valuation Standards Committee. The International Valuation Standards Committee is a Non-Government-Organization (NGO) of the United Nations. It works cooperatively with member states and energetically with the World Bank, OECD, International Federation of Accountants, International Accounting Standards Board and societies of professional valuers throughout the world to promote agreement and understanding of valuation standards. The International Valuation Standards Committee addresses *Reviewing Valuations* under Guidance Note No.11, *Valuation of Personal Property* under Guidance Note No.5, and *Valuation of Historic Property* under Guidance Note 15 in the current (eighth) edition of the International Standards.

The method used in developing the review opinion required a careful reading of each document and careful application of authoritative professional standards. Verification, analysis, and endorsement of the Zerler-Rogers valuation conclusion was enabled by the extensive curatorial, archival, and valuation records maintained by RMS Titanic, Inc. Limited examination of a sampling of the artifacts that are the subject of the appraisal included visits to the conservation laboratory of RMS Titanic, Inc. and to the New York City venue of *Titanic – The Artifact Exhibition*.

- 2 -

Notes and research materials used in the development of this review are maintained in the work files for this assignment consistent with the *Record Keeping* section of the *Ethics Rule* of the <u>Uniform Standards of Professional Appraisal Practice</u>.

Research was conducted in the library of The Alasko Company, the Ryerson Library of The Art Institute of Chicago, and the on-line libraries of The Smithsonian Institution.

The conclusion of this review affirms the reliability of the Zerler-Rogers valuation while observing its proficiencies and deficiencies. The observations affirm that the Zerler-Rogers valuations are in substantive conformity with professional appraisal practice, have applied the correct definitions, developed value estimates consistent with the purpose and use of their appraisal, and are an adequate product of their practices.

This report consists of *seventeen* sections containing data and conclusions in support of the reviewer's conclusion. It is valid only if all sections specified in the Table of Contents are present. In the preparation of this report the Code of Ethics of The American Society of Appraisers has been observed.

Richard-Raymond Alasko, FASA
Accredited Senior Appraiser, American Society of Appraisers
Member, College of Fellows, American Society of Appraisers
Principal, The Alasko Company

- 3 -

## PURPOSE OF REPORT

The purpose of this review is to arrive at a professional opinion of the completeness, adequacy, and appropriateness of the appraisal of artifacts related to the Royal Mail Steamer Titanic recovered from the wreck site of the Titanic.

This review was requested by RMS Titanic, Inc. a subsidiary of Premier Exhibitions, Inc.

This review is to be used as expert testimony in:

> **R.M.S. TITANTIC, INC., Successor in interest to Titanic Ventures, Limited Partnership v. The Wrecked and Abandoned Vessel, its engines, tackle, apparel, appurtenances, cargo, etc., located within one (1) nautical mile of a point located at 41° 43' 32" North Latitude and 49° 56' 49" West Longitude believed to be the R.M.S. Titanic, _in rem_,** Civil Action No.2:93cv902, U.S. District Court, Norfolk, Virginia

and is to be used for no other purpose.

This review and its conclusions are effective 25 October 2009.

The conclusion of this review is an explicit endorsement of the valuation conclusions expressed in the subject report.

- 4 -

## DEFINITION – APPRAISAL REVIEW

The *Uniform Standards of Professional Appraisal Practice* (USPAP 2008-2009) sets out a definition of *Appraisal Review* along with a comment:

> **APPRAISAL REVIEW:** the act or process of developing and communicating an opinion about the quality of another appraiser's work that was performed as part of an appraisal, appraisal review, or appraisal consulting assignment.

> Comment:  The subject of an appraisal review assignment may be all or part of a report, workfile, of a combination of these.

The 2008-2009 edition of the *Uniform Standards of Professional Appraisal Practice*, provides the guidelines used in the development of this appraisal review under **Standard 3:**

> **APPRAISAL REVIEW, DEVELOPMENT AND REPORTING**

> **In performing an appraisal review assignment, an appraiser acting as a reviewer must develop and report a credible opinion as to the quality of another appraiser's work and must clearly disclose the scope of the work performed.**

The Eighth Edition (2007) of the *International Valuation Standards* sets out a definition of *Valuation Review*:

> **VALUATION REVIEW:**  A valuation assignment that covers a range of types and purposes.  The principal characteristic all valuation reviews have in common is that one Valuer exercises impartial judgment in considering the work of another Valuer. A valuation review may support the same value conclusion in the valuation under review or it may result in disagreement with that value conclusion.  Valuation reviews provide a credibility check on the valuation as well as a check on the strength of the work of the Valuer who developed it, as regards the Valuer's knowledge, experience, and independence.

> ......

> Valuation organizations around the world distinguish between various types of reviews, e.g., administrative (compliance) reviews, technical reviews, desk reviews, field reviews, reviews to ensure that a valuation has been carried out in accordance with professional standards (where the bases of valuation used in the valuation under review are accepted), reviews that muster general market information to support or contest the value conclusion, and reviews that examine the specific data in the valuation under review with comparable data from a sample group.

- 5 -

## REVIEW METHOD

The method used in preparing this review opinion required a reading of the valuation document, consideration of the use and purpose of that document, a reading antecedent documents and inventories, and a comparison of each document against authoritative definitions of terms, techniques, and methods, as well as a consideration of authoritative professional standards, as well as a general consideration of professional practice as the reviewer experienced it in thirty-seven years of practice.

Observations are listed in sequence with the cited Standard Rule or Guidance Note.

- 6 -

## SCOPE OF ASSIGNMENT

The subject appraisal was read.

The conservation laboratory of RMS Titanic, Inc. was visited and its records made available to the reviewer's study.

The New York City venue of *Titanic – The Artifact Exhibition* was visited.

A bibliography related to RMS Titanic was compiled.

Results of sales of 1,503 properties related to RMS Titanic were accessed through the ArtFact database.

Selected properties examined at the conservation laboratory or exhibited in *Titanic – The Artifact Exhibition* were studied.

Standard 3 (Appraisal Review, Development and Reporting) of the Uniform Standards of Professional Appraisal Practice was applied to organize the review and to report its conclusions.

International Valuation Guidance Note 11 (Reviewing Valuations) of the International Valuation Standards was considered in each of its recommendations and applied to the review and this report.

The Zerler-Rogers reports were studied individually using:

Standard 7 (Personal Property Appraisal, Development) of the Uniform Standards of Professional Appraisal Practice which was considered in each of its provisions and requirements,

and

Standard 8 (Personal Property Appraisal, Reporting) of the Uniform Standards of Professional Appraisal Practice which was considered in each of its provisions and requirements.

With those standards these Guidance Notes were used:

International Valuation Guidance Note 5 (Valuation of Personal Property) of the International Valuation Standards was considered in each of its recommendations.

International Valuation Guidance Note 15 (The Valuation of Historic Property) of the International Valuation Standards was considered in each of its recommendations. The scope of this guidance note addresses real property, historic buildings, sites, and monuments; Guidance Note 5 addresses such subjects for personal properties. Both Guidance Notes have shared aspects of valuation thought especially in considerations of restrictions, restorations, alterations and legal or statutory protections.

A list of observations was compiled leading the reviewer toward conclusions regarding the subject report's completeness, adequacy, and appropriateness.

This review report is submitted on 25 October 2009.

- 7 -

## LIMITING CONDITIONS

This review is subject to the following limiting conditions:

The subject report and its antecedent documents are assumed to be the products of Paul Zerler and Stephen H. Rogers.

A sampling of some 123 artifacts valued in the appraisal report were examined by the reviewer.

Data and statistics cited in the subject appraisal report were verified by the reviewer.

The conclusion of this report is an explicit an endorsement of the value conclusions of the subject appraisal.

The subject report was carefully studied. No communication between the reviewer and the appraisers has contributed to this review. It the result of an independent and impartial study.

This report is intended solely for use in the R.M.S. TITANTIC, INC., Successor in interest to Titanic Ventures, Limited Partnership v. The Wrecked and Abandoned Vessel, its engines, tackle, apparel, appurtenances, cargo, etc., located within one (1) nautical mile of a point located at 41° 43' 32" North Latitude and 49° 56' 49" West Longitude believed to be the R.M.S. Titanic, in rem, Civil Action No.2:93cv902, U.S. District Court, Norfolk, Virginia. It may be used for no other purpose.

Information considered for this report is taken from sources assumed reliable; however, no liability for it may be accepted by the reviewer.

The reviewer has prepared testimony in support of this review.

No responsibility is assumed for matters of a legal nature. No investigation was made of the title to nor any liabilities against the properties appraised.

- 8 -

# THE ALASKO COMPANY
Valuation of Fine and Decorative Arts
833 West Washington Blvd. — Suite 102
Chicago, Illinois 60607

————

telephone (312) 491.9760
facsimile (312) 491.9769

## CERTIFICATIONS

The facts and data reported by the reviewer and used in the review process are assumed true and correct.

The reported analyses, opinions, and conclusions in this review are limited only by the assumptions and limiting conditions stated in this review-report and are the reviewer's personal, impartial, and unbiased professional analyses, opinions, and conclusions.

The reviewer has no present or prospective interest in the properties that are the subject of the reviewed report and no personal interest with respect to the parties involved.

The reviewer has no bias with respect to the properties that are the subject of the reviewed report or to the parties involved in this assignment.

The reviewer's engagement for this assignment was not contingent upon developing or reporting pre-determined results.

Compensation for the development of this report is not contingent on an action or event resulting from the analyses, opinions, or conclusions in this report or from its use.

The reviewer has made a personal inspection and study of a sampling of the properties — but not all of the properties - that are the subjects of the documents reviewed.

No one has provided significant assistance to the reviewer in the preparation of this report. The conclusions are entirely his own.

This report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP) and with the International Valuation Standards Guidance Note 11.

———————————————————

Richard-Raymond Alasko, FASA
Accredited Senior Appraiser, American Society of Appraisers
Member, College of Fellows, American Society of Appraisers
Principal, The Alasko Company

submitted and effective: 25 October 2009

- 9 -

## OBSERVATIONS:  ZERLER-ROGERS APPRAISALS

## USPAP – UNIFORM STANDARD 7 (APPRAISAL DEVELOPMENT)

The subject of this review is an appraisal report authored by Paul Zerler in collaboration with Stephen H. Rogers for artifacts recovered from the wreck-site of the RMS Titanic.  The Zerler-Rogers report organizes the artifacts according to the expedition dates of recovery: 1993, 1994, 1996, 1998, 2000, and 2004.  The valuation is updated to 2007 with an affidavit by Paul Zerler, 28 November 2007, asserting appraisal procedures, bases, and a conclusion of a total of fair market values of $110,859,200. That conclusion is confirmed in an updated report date 23 October 2009.

Insofar as the **Uniform Standards of Professional Appraisal Practice** (**USPAP**) is an authoritative compilation of accepted procedures and practices, reflecting profession-wide consensus, **Standard 7** *Personal Property Appraisal Development* was studied and compared with the description of the appraisal process described in the Zerler-Rogers *Appraisal Narrative.* Because the Zerler-Rogers report was submitted in 2007 (though its conclusion is confirmed in the 12 October 2009 document) the reviewer has used the edition of the Uniform Standards which would have been effective in 2007.

Standard 7 states:  **In developing a personal property appraisal, an appraiser must identify the problem to be solved and the scope of work necessary to solve the problem, and correctly complete research and analyses necessary to produce a credible appraisal.**

• The Zerler-Rogers appraisal reflects substantial observance of the rule.  The report is a summary of the appraisal development.  It is organized by expedition date and demonstrates careful examination and identification of each artifact.  The report identifies the client, and identifies the appraisal purpose and use.

Standard Rule 7.1 (a) insists that **the appraiser correctly employ recognized methods and techniques,** and 7.1 (b) and 7.1(c) address the responsibility of the appraiser to avoid errors and to perform in a manner that is neither careless nor negligent.

• The Zerler-Rogers appraisal describes the method and rationale employed to reach estimates of insurance value.  The reviewer understands that a Market Data Approach was used as a basis.  The Market Approach is one of the three classic approaches to value.  The *International Valuation Standards* glossary defines the Market Approach:

> Any approach to value based upon the use of data that reflect market transactions and reasoning that corresponds to the thinking of market participants.
>
> A general way of estimating a value indication for an asset using one or more methods that compare the subject to similar assets that have been sold.

• The Zerler-Rogers appraisal was correct to employ the Market Approach.   Neither the Cost nor Income approaches would have been capable of solving the appraisal assignment.  The Zerler-Rogers appraisal exhibits no evidence of errors or negligence.

Standard Rule 7.2 (a-h) contains binding requirements for the development of an appraisal, they include:

**(a) Identify the client and other intended users.**

- The Zerler-Rogers appraisal identifies the client, RMS Titanic, Inc. but does not identify the intended user.

**(b) Identify the intended use of the appraiser's opinions and conclusions.**

- The Zerler-Rogers appraisal provides insurance values and implies the use for insurance purposes.

**(c) Identify the purpose of the assignment (the type and definition of the value to be developed).**

- The Zerler-Rogers appraisal states a purpose of *Insurance Value*. It does not define insurance value and would have been strengthened had a definition been provided. The accompanying affidavit of Paul Zerler reverts to the term *Fair Market Value* but does not include a definition of fair market fair market value. It also declares the purpose of the updated report for use by Federal Court.

**(d) Identify the effective date.**

- The Zerler-Rogers appraisal has not designated the effective date of value – the reviewer assumes the effective date corresponds with the date of the affidavit, 28 November 2007, affirmed in the summary report of 23 October 2009.

**(e) Identify the characteristics of the property that are relevant to the purpose and intended use the appraisal.**

- The Zerler-Rogers appraisal summarizes the descriptions of subject properties with a spread-sheet schedule. As an inventory the schedule is adequate. It is supported by an archival-curatorial database that complies with archival-curatorial standard practice.

- 11 -

Standard Rule 7-2 (e) with its sections requires the appraiser to identify:

    **(i)    sufficient characteristics to identify the item ...**

- Adequate in the Zerler-Rogers appraisal

    **(ii)   sufficient characteristics to establish the relative quality of the item...**

- Adequate in the Zerler-Rogers appraisal

    **(iii)  other physical and economic attributes with a material effect on value.**

- Adequate in the Zerler-Rogers appraisal and commented upon.

    **(iv)  the ownership interest to be valued.**

- Not required for the Zerler-Rogers appraisal

    **(v)   known restrictions, encumbrances....**

- Not addressed in the Zerler-Rogers appraisal.

    **(vi)  any real property or intangible items that are not personal property....**

- Not necessary to the Zerler-Rogers appraisal

Standard Rule 7-2 (f) states that in developing an appraisal the appraiser should **identify any extraordinary assumptions necessary to the assignment.** This rules carries with it the comment section that *extraordinary assumptions* may be used only if:

> It is required to properly develop credible opinions and conclusions.
> The appraiser has a reasonable basis for the extraordinary assumption.
> The use of the extraordinary assumption results in a credible analysis.
> The appraiser complies with the disclosure requirements (see Departure Rule).

• Adequate in the Zerler-Rogers appraisal. The narrative is careful to describe a lack of directly comparable properties in the trade and the circumstances that prevent trade of such items.

Standard Rule 7-2 (g) states that in developing an appraisal the appraiser should **identify any hypothetical conditions...**

• Adequate in the Zerler-Rogers appraisal. The narrative is careful to describe motivation for the unique character of the Titanic artifacts.

Standard Rule 7-2 (h) states that in developing an appraisal the appraiser should **identify any hypothetical conditions...**

• Adequate in the Zerler-Rogers appraisal.

Standard Rule 7-3 allows some areas of departure and speaks to the appraiser's responsibility to **collect, verify, analyze, and reconcile all information pertinent to the appraisal problem, given the scope identified....**

• Adequate in the Zerler-Rogers appraisal.

- 13 -

Standard Rule 7-3 (a) states that **When necessary,** the appraiser must, **identify the effect of of highest and best use….as relevant to the purpose and intended use of the appraisal.**

• Not addressed in the Zerler-Rogers appraisal.  Implicit in the considerations of individuated
  values while recognizing the aggregate value of the recovered, conserved, and curated artifacts.

Standard Rule 7-3 (b) observes an urgent valuation issue: **define and analyze the appropriate market consistent with the type and definition of value**

To that standard rule is added the comment: *The appraiser must recognize that there are distinct levels of trade and each may generate its own data.  For example, a property may have a different value at a wholesale level of trade, a retail level of trade, or under various auction conditions. Therefore, the appraiser must analyze the subject property within the correct market context.*

• The Zerler-Rogers appraisal considers with sufficient care – and without undue advocacy –
  the trade in survivor produced artifacts traded regularly at auction and distinct as a category from
  archival non-traded properties.

Standard Rule 7-3(c) requires that **relevant economic conditions at the time of the valuation, including market acceptability of the property as well as supply, demand, scarcity, or rarity** be analyzed.

• Addressed in the Zerler-Rogers appraisal.  The described economic conditions of 2007 well support
  the valuation exercise and its conclusions.

- 14 -

Standard Rule 7-4 speaks to the collection, verification, and analysis of information applicable to the appraisal problem. In particular **Standard Rule 7-4 (a) When a sales comparison approach is applicable, an appraiser must analyze such comparable sales data as are available to indicate a value conclusion.**

- Addressed in the Zerler-Rogers appraisal, not discussed. Appendix L *Auction Price Comparables*, is a compilation of auction results for survivor produced or replicated memorabilia in comparison with retrieved artifacts. It is statistically helpful but inadequate in citing sales dates, sites, quality. The 12 October 2009 summary includes a list of comparable references (4.C).

Standard Rule 7-4 (b) and 7-4 (c) address requirements of the cost approach and the income approach.

- Neither would have been directly informative or appropriate to the subject appraisal.

Standard Rules 7-4 (d) through and including 7-4 (g) relate to terms and conditions of leases and leased properties, to the effect on value of assembled properties, modifications to properties, items of real property not included in the appraisal, plans and specifications, time schedules, and evidence of costs and earnings.

- None of these are applicable to the subject appraisal.

Standard Rule 7-5 insists that: **When the value opinion to be developed is market value, an appraiser must, if such information is available...**

> **(a) analyze any current agreement of sale, validated offer or third party offer to sell, option, or listings of the subject property current as of the effective date of the appraisal; and**

> **(b) analyze all prior sales of the subject property that occurred within a reasonable and applicable time period, given the intended use and the type of property involved.**

- While neither of these rules are specifically applicable for the Zerler-Rogers appraisal, various comments embedded in the 2007 update imply careful considerations of the dimensions of the the market in RMS Titanic related materials. The appraisal demonstrates a consideration of all available records of the market experiences of the related properties – even if the marketing or aspects of prior sale do not inform or impinge upon the type of value required by the context of the assignment.

- 15 -

Standard Rule 7-6 insists that: **In developing a personal property appraisal, an appraiser must:**

      **(a) reconcile the quality and quantity of data available and analyzed within the approaches used; and**

      **(b) reconcile the applicability or suitability of the approaches used to arrive at the value conclusion(s).**

• The Zerler-Rogers appraisal implies that the appraisal development exercised a reconciliation of data within the approach to value.


## REVIEWER'S CONCLUSION - ZERLER-ROGERS APPRAISAL DEVELOPMENT

The Zerler Rogers appraisal development was conducted in an informed and professional manner. Aspects of the development are not immediately apparent.  The three areas in which the reviewer notes inadequacies in the development of the valuation  - Standard Rule 7-2 (c) *definition of value type*; 7-2 (d) *effective date*; and 7-4 *analysis of comparable sales* – are not significant enough to compromise the credibility of the appraisal as a whole. **The most important expectation of the rules were met – in the employment of correct method and techniques, and avoidance of substantial errors or negligence.**

- 16 -

## OBSERVATIONS:  ZERLER-ROGERS APPRAISALS

## USPAP – UNIFORM STANDARD 8 (APPRAISAL REPORTING)

Insofar as the **Uniform Standards of Professional Appraisal Practice** are an authoritative
compilation of accepted procedures and practices, reflecting profession-wide expectations, **Standard 8**
*Personal Property Appraisal, Reporting* was studied and compared with the reports presented by
Messrs. Zerler and Rogers in 2004-2007.  Because the Zerler-Rogers report was submitted in 2007 the
reviewer has used the July 1, 2006 edition of the Uniform Standards which would have been effective
in 2007.  A summary report dated 23 October 2009 confirmed the conclusion of the 2007 report.

**Standard 8 states:  In reporting the results of a personal property appraisal, an appraiser must
communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

* The Zerler-Rogers appraisal report reflects substantial observance of the rule.  The report is a
  restricted document  that describes the appraisal development, the properties, and purpose.  It
  records and organizes the properties according to recovery dates and adequately demonstrates
  diligent examination and study.  The client and purpose are identified.   The type of value is
  given.  The 2007 document and the subsequent 2009 summary report change the purpose and use
  The appraisal documents comport with the requirements of Standards Rule 8-1.

Standard Rule 8-2 provides the three options for the format of an appraisal report, **Self-Contained,
Summary, or Restricted Use.**

* The Zerler-Rogers appraisal reports filed in 2004 and 2007 are, in character and substance,
  restricted use reports.  The 2009 report is designated a *Summary Appraisal.* The essential difference
  among the three format options is in the content and level of information provided.  Insofar as the
  valuation conclusions provided in the 2004 report are intended are intended for administrative
  use that document is a restricted-use report.  The opinions expressed and the conclusions in that
  report may not be understood properly without additional information from the valuer's work-files.
  The 2007 report with its affidavit is, similarly, of the character of a restricted use report.  The 2009
  report is described on its title page as a summary report.  It confirms the value conclusion of 2007.

**ZERLER-ROGERS REPORTS 2004-2007 – RESTRICTED USE REPORTS**

The content of a Restricted Use Report is listed under Standard Rule 8-2 (c):

**(i)      state identity of client and …a prominent use restriction that limits use…**

- The Zerler-Rogers report complies but fails to designate the type and restriction.  These aspects are implied but not explicitly stated.

**(ii)      state intended use.**

- The Zerler-Rogers report complies.

**(iii)      summarize information sufficient to identify the property….**

- The Zerler-Rogers report complies.

**(iv)      state the property interest appraised.**

- The Zerler-Rogers appraisal report does not comply fully but implies full title.

**(v)      state the type of value, and its cite the source of its definition**

- The Zerler-Rogers report neither defines nor cites a source

**(vi)      state the effective date of the appraisal and the date of the report.**

- The Zerler-Rogers reports are dated but fail to specific effective dates

**(vii)      state the scope of work used to develop the appraisal.**

- The Zerler-Rogers reports comply

**(viii)      state the appraisal methods and techniques employed, state the value opinion(s) and conclusion(s) reached, and reference the workfile;  exclusion of the sales comparison approach, cost approach, or income approach must be explained.**

- The Zerler-Rogers reports describe the scope but would have benefited from an articulated discussion of the method and approach.

**(ix)      state, as appropriate to the class of personal property involved, the use of the property existing as of the date of value and the use of the property reflected in the appraisal; and, when an opinion of highest and best use was developed by the appraiser, state that opinion.**

The comment to this rule includes the observation: "…*In the context of personal property, highest and best use may equate to the choice of the appropriate market or market level for the type of item and the purpose and intended use of the report*."

- The Zerler-Rogers reports comply

- 18 -

(x)     **clearly and conspicuously: state all extraordinary assumptions and hypothetical conditions, and state that their use might have affected the assignment results**

- The Zerler-Rogers reports comply excepting that such assumptions are embedded and implicit in the narratives, appendices, and comments and not articulated in distinct sections.

(xi)     **include a signed certification in accordance with Standards Rule 8-3.**

- The Zerler-Rogers reports fail to include a specific recitation of the certifications of Standard Rule 8-3;  each of the elements of the certifications are implicit or explicit within the body of the text of the reports.


## REVIEWER'S CONCLUSION

## ZERLER-ROGERS 2004-2007 RESTRICED USE REPORTS

The Zerler-Rogers appraisals were reported in a way substantially in compliance with the requirements of Standards Rule 8.  The appraisal reports should have been clearly identified as a Restricted-Use reports.  Features of the reports or by implicit in the assertions of the reports essential information necessary for credible opinions of value is provided.

The reviewer reached his conclusion after reading and considering each of the sections of the reports.

- 19 -

## ZERLER-ROGERS SUMMARY REPORT 2009

The Zerler-Rogers 2009 report is described on its title page as a summary report. It confirms the value conclusion of 2007. Because the Zerler-Rogers report was submitted in 2009 the reviewer has used the 2008-2009 edition of the Uniform Standards effective in 1 January 2008 through 31 December 2009.

The summary report dated 23 October 2009 confirms the conclusion of the 2007 report.

The content of a summary report is listed under Standard Rule 8-2 (b):

      **(i)**     **state identity of client and intended users.**

• The Zerler-Rogers 2009 report complies

      **(ii)**     **state intended use.**

• The Zerler-Rogers 2009 report complies

      **(iii)**    **describe information sufficient to identify the property involved in the appraisal, including the physical and economic property characteristics relevant to the assignment.**

• The Zerler-Rogers 2009 report complies and references significant schedules of the subject properties along with curatorial files.

      **(iv)**    **state the property interest appraised.**

• The Zerler-Rogers 2009 report implies full title

      **(v)**     **state the type and definition of value and the source of the definition**

• The Zerler-Rogers 2009 report recites a definition of Fair Market Value usual to Federal-Legal requirements but does not give a source for the definition.

      **(vi)**    **state the effective date of the appraisal and the date of the report.**

• The Zerler-Rogers 2009 report is dated 23 October attesting a valuation opinion dated October 2009

      **(vii)**   **summarize the scope of work used to develop the appraisal.**

• The Zerler-Rogers 2009 report fully complies

      **(viii)**   **describe the information analyzed, the appraisal methods and techniques employed, and the reasoning that supports the analyses, opinions, and conclusions; exclusion of the sales comparison approach, cost approach, or income approach must be explained.**

• The Zerler-Rogers 2009 report describes the sources and considerations. Alternate approaches to (cost and income) are addressed on p.18 (under 6.Summary. B/ Opinion of Collection Value)

(ix)     state, as appropriate to the class of personal property involved, the use of the property existing as of the date of value, and the use of the property reflected in the appraisal; and, when an opinion of appropriate market or market level was developed by the appraiser, describe the support and rationale for that opinion

> The comment to this rule includes the observation: "…*In the context of personal property, highest and best use may equate to the choice of the appropriate market or market level for the type of item, the type and definition of value, and intended use of the report.*"

• The Zerler-Rogers 2009 report is in compliance.

(x)     clearly and conspicuously: state all extraordinary assumptions and hypothetical conditions, and state that their use might have affected the assignment results

• The Zerler-Rogers 2009 report complies excepting that such assumptions are included in various of the paragraphs that address the rationale and methodology.

(xi)     include a signed certification in accordance with Standards Rule 8-3.

• The Zerler-Rogers 2009 report includes a specific recitation of the certifications of Standard Rule 8-3; moreover, each of the elements of the certifications are implicit or explicit within the body of the text.


## REVIEWER'S CONCLUSION

### ZERLER-ROGERS 2009 SUMMARY REPORT

The Zerler-Rogers 2009 report was reported in a way substantially in compliance with the requirements of Standards Rule 8. The appraisal report was clearly identified as a summary report and contained in each of its features or by implication essential information for a credible value opinion.

- 21 -

## OBSERVATIONS:  ZERLER-ROGERS APPRAISAL REPORTS

### INTERNATIONAL VALUATION STANDARDS – GUIDANCE NOTE 5

The reviewer has also studied applicable sections of the **International Valuation Standards Guidance Note 5**; for example

**1.4** *Care should be taken by Valuers and users of valuation services to distinguish among the market components and corresponding **Market Values** of personal properties.  One example of such differentiation is the **Market Value** of properties sold at auction versus that of properties sold by or acquired by private dealers where the negotiated price is not publicly disclosed.  Another example would be the Market Value of personal property sold wholesale versus the market value of the same item(s) sold retail.*

**5.8.3** *There must be reasonable basis for comparison with and reliance upon the similar properties in the **sales comparison approach**.  These similar properties should be regularly traded in the same market as the subject or in a market that responds to the same economic variables.  The comparison must be made in a meaningful manner and must not be misleading. Factors to be considered in whether a reasonable basis for comparison exists include:*

**5.8.3.1** *Similarity....*

**5.8.3.2** *Amount and verifiability of data....*

**5.8.3.3** *Whether the price...represents an arm's length transaction*

**5.8.3.4** *An unbiased search for similar properties....*

**5.8.3.5** *A comparative analysis...*

**5.8.3.6** *Adjustments for unusual, non-recurring, and unique items...*

**5.8.3.7** *Adjustments for character and influence of provenance*

**5.8.3.8** *When prior transactions of the subject property are used to provide valuation guidance, adjustments may need to be made for the passage of time, for changes in the subject property, and for changed circumstances in the economy, industry, scholarly appreciation, and the business in which such properties are traded.*

### REVIEWER'S CONCLUSION

### INTERNATIONAL VALUATION STANDARD GUIDANCE NOTE 5

### ZERLER-ROGERS APPRAISAL REPORTS

The reviewer finds the Zerler-Rogers appraisal reports in compliance with these authoritative guides.

- 22 -

## REVIEWER'S CONCLUSION

## USPAP – UNIFORM STANDARD 3 (APPRAISAL REVIEW)

In the development of this review the reviewer has followed the rules provided by Uniform Standard 3. He has identified the client, purpose, and use of this review. The subject of the assignment has been described and the effective date specified. A detailed schedule of the scope of this assignment has been articulated.

Opinions of the completeness of reviewed materials are provided along with opinions of adequacy, relevance, and propriety. Moreover, the reviewer has expressed an opinion of the appropriateness of the appraisal methods and techniques given the reviewer's scope of work.

A sample-study of artifacts appraised by Zerler-Rogers and currently exhibited in _Titanic – The Artifact Exhibition_ was conducted as an independent valuation exercise. The study considered the character and quality of the artifacts, the typical market value and market sites for artifacts of comparable character and quality unrelated to the Titanic, and the insured values of these artifacts during the exhibition.

Review of the Zerler-Rogers documents, the sample-study, and the reviewer's own background and experience, confirms the reliability of the Zerler-Rogers conclusion of the Fair Market Value of the subject properties as **$110,859,200.** on 23 October 2009.

A certification explicitly accepting responsibility for all elements of the certification, the assignment results, and the contents of this report has been signed and dated 25 October 2009.

- 23 -

# THE ALASKO COMPANY

Valuation of Fine and Decorative Arts

833 West Washington Blvd. — Suite 102

Chicago, Illinois 60607

telephone  (312) 491-9760
facsimile  (312) 491-9769

## CREDENTIALS

### RICHARD-RAYMOND ALASKO, F.A.S.A.

Accredited Senior Appraiser, American Society of Appraisers
Member, College of Fellows, American Society of Appraisers
Principal, The Alasko Company

Certified Appraisal Discipline: **Personal Property/Fine Art**
Federal Identification Number, The Alasko Company: 36 3238438

Mr. Alasko began his practice as an appraiser in 1972. Specializing in the valuation of fine and decorative art, he formed The Alasko Company in September 1980. Reports prepared by Mr. Alasko have been requested by the Internal Revenue Service (Chicago and Houston district counsels), the United States Department of Justice (Washington, D.C.), the Federal Bureau of Investigations, and the Federal Trade Commission, as well as by corporate, museum, institutional, and private collections.

Mr. Alasko is an active member of the **American Society of Appraisers**. The A.S.A. is a multi-disciplinary professional appraisal society which tests and certifies its membership. A code of ethics and a continuing program for re-accreditation of its members distinguishes the professional reputation of the A.S.A. Its International headquarters are: P.O. Box 17265, Washington, D.C. 20041; telephone (703) 478-2228. A mandatory re-accreditation program is enforced by the American Society of Appraisers. Mr. Alasko is re-accredited in the American Society of Appraisers through April, 2010.

Within the Chicago chapter of the A.S.A., Mr. Alasko has served on the Education and Ethics-and-Arbitration committees, as well as Treasurer (1980-1981), Secretary (1981- 1982), Vice-President (1982-1984), and President (1984-1985). In 1985 Mr. Alasko was appointed Illinois State Director for the American Society of Appraisers. Mr. Alasko has also served on the A.S.A.'s International Board of Examiners (1979-1995) and chaired the International Personal Property Committee (1990-1993). Mr. Alasko was elected Governor of Region 4 (covering Illinois, Wisconsin, Indiana, and Kentucky) of the American Society of Appraisers in 1986 for a two-year term, and again in 1988 for another two-year term. During 1990-1991 Mr. Alasko was appointed Chair of the A.S.A.'s State Legislative Committee. He was elected International Secretary of the American Society of Appraisers for the terms 1993-1994 and 1994-1995 and was an International Vice-President, June 1995 - June 1998. He was International President of the American Society of Appraisers, 1998-1999, and continued as a Board Member until July, 2000. He was conference chairman for the historic Valuation 2000 conference, which brought together the combined interests of American and international organizations of professional valuers, and was Treasurer of The Appraisal Foundation Trust, Washington, D.C. From 2001-2005 he was Chairman of the Board of Regents of the Centre for Advanced Property Economics. He is currently the Dean of the Board of Programmes for the Centre and was recently appointed Secretary-Treasurer for the College of Fellows of the American Society of Appraisers.

**RICHARD-RAYMOND ALASKO**

born:   28 September 1944
        South Bend, Indiana

**education:**   1966   **Bachelor of Science**
                        Art Education
                        Ball State University
                        Muncie, Indiana

                 1968   **Master of Fine Arts** Painting
                        University of Notre Dame
                        Notre Dame, Indiana

                 1976   **Post Graduate Study**
                        Washington University
                        Saint Louis, Missouri

                 1980   Washington University
                        Saint Louis, Missouri
                        **Candidate, Doctor of Philosophy, Art History**

**professional appointments:**

        1966-1967   **Director**, Federal Office of Education Grant (Title III)
                    "An Exemplary and Innovative Art Center for East Central
                    Indiana," Ball State University - Muncie School Corporation

        1968-1971   **Lecturer**, Saint Mary's College
                    Notre Dame, Indiana

        1968-1972   **Director**, Moreau Art Gallery
                    Saint Mary's College
                    Notre Dame, Indiana

        1969-1971   **Assistant Curator** (Assistant Professional Specialist),
                    Art Gallery
                    University of Notre Dame

             1971   Assigned to Rome Campus, Saint Mary's College

        1972-1976   **Assistant Professor of Art**
                    University Of Wisconsin Centers System
                    Waukesha County Campus

        1974-1980   **Visiting Lecturer**
                    Loyola University of Chicago
                    Department of Fine Arts

**Grants and Fellowship:**

| | | |
|---|---|---|
| 1965 | Scholarships, Muncie Art Students League |
| 1967-1969 | Fellowship, Assistantship, University of Notre Dame, Department of Art |
| 1973 | Grant, National Endowment for the Humanities for participation in "Critics in Residence." New York University |
| 1974 | Grant, University of Wisconsin, for Summer Study Seminar in Contemporary Art, New York University |
| 1976-1978 | Scholarship and Fellowship/Stipend, Washington University, Saint Louis, Department of Art and Archaeology, Graduate Program |

**Publications:**

**Change of Perception/Perception of Change**, University of Notre Dame Art Gallery (cat.), 1968

**Robert Indiana: Graphics**, Moreau Art Gallery, Saint Mary's College, (catalogue), June 1969 (Library of Congress no. 75-922-06)

**19th Century Paintings in the F.C. Ball Collection**, Ball State University Art Gallery, 1969

**Sign/Signal/Symbol** (catalogue), National Endowment symposium, Language-Symbol-Reality, Moreau Art Gallery, Saint Mary's College, November 1969

**Callot Fecit**, Lakeside Studios, Lakeside Michigan, and Moreau Art Gallery, Saint Mary's College, (essay and catalogue) February 1969

**16th Century Medals from the Kress Collection, National Gallery Art**, State University of New York at Binghampton Art Gallery, University of Notre Dame Art Gallery, (essay and catalogue), in **The Age of Vasari**, February 1970

**"A Study of the PORTRAIT OF A HUNTER** by J.B. Oudry" in **Valuation**, (Journal of the American Society of Appraisers), vol. 22, no.1, June 1975.

**The World Lay All Before Them** (catalogue), Commons Art Gallery, University of Wisconsin, Waukesha County Campus, 1977

**Mozart at the Met** (catalogue), Commons Art Gallery, University of Wisconsin, Waukesha County Campus, 1977

**Religious Narrative In Sixteenth Century Rome; Prints and Drawings**, Snite Museum of Art, University of Notre Dame, 11 September - 23 October 1983

**"Comments Upon Report Writing,"** A Handbook on the Appraisal of Personal Property, pp.27-28, American Society of Appraisers, Washington, D.C., 1989

**LECTURES:**

**The 16th Century Medallion**, University of Notre Dame Art Gallery, March 1970; part of the program of the exhibition **The Age of Vasari**

**The Property of Pose: Notre Dame's Portrait of a Hunter by Jean-Baptiste d'Oudry**, University Notre Dame Art Gallery, 30 April 1972; part of the program of the exhibition **18th Century France Study of its Art and Civilization**

**The Valuation History of Alma-Tadema**, American Society of Appraisers, Chicago Chapter, America Bar Association, September 1972.

**Prices and Values**, Museum of Contemporary Art, Chicago, February 1973.

**Domenichino and the Bolognese in Rome**, University of Wisconsin, Waukesha Center Friends Society, Library, 25 September 1974

**Origins of Russian Icon Imagery**, Commons Art Gallery, University of Wisconsin, Waukesha Center, April 1975

**Authentic Fakes**, American Society of Appraisers, Chicago Chapter, Art Institute of Chicago, 26 April 1979

**The Letter of Transmittal**, Seminar: Report Writing, American Society of Appraisers, Chicago Chapter 7 April 1979

**Historic Worth and Fair Market Value**, Midwest Conference, American Society of Appraisers (sponsor: Indiana Chapter, A.S.A.), Indianapolis, Indiana, 5 May 1979

**Problems in Appraisal**, American Society of Appraisers, Chicago Chapter, Panel, 26 September 1979

**Toulouse-Lautrec as a Wit**, Old Masters Society, Art Institute of Chicago, 4 October 1979

**The Quality Factor**, American Society of Appraisers, Indiana Chapter, 21 April 1980

**Fallacies of Art Investments**, Truman College, Adult Education-Investment Alternatives, 13 October 1984

**The Iconography of the Passio Christi in the Art Renaissance Rome**, Oklahoma Museum of Art, Oklahoma City, 4 November 1985

**The "Big-Ticket" Bid - Its Affect On Our Practice**, Milwaukee Chapter, American Society of Appraisers, University Club, 15 November 1986

**Why Values Change**, Smithsonian Institution (Smithsonian Campus on the Mall) as part of the program, "Connoisseurship and Collecting," Hirshhorn Museum Auditorium, 20 July 1991.

**Values in Time**, (Values in Fine Art), Smithsonian Institution (Smithsonian Campus on the Mall) as part of the program - "Connoisseurship and Collecting", S.Dillon Ripley Center, 2 March 1996

**What Price Celebrity**, Wellington Fine Arts Society, Houston & Dallas, 15-16 April 1996.

**International Cultural Property Programs within NAFTA Today**, American Society of Appraisers, International Appraisal Conference, with David Walden (Canadian Cultural Property Export Review Board) and Karen Carolan (Internal Review Service), Toronto, Ontario, 18 June 1996.

**The Numbers Game: New Math of Art and Architectural Appraisal**, (Art Law Symposium), Pepperdine  University School of Law, Malibu, California, 28 September 1996

**Cathedrals and Canyons: A.M.Todd and Civic Collecting**, Kalamazoo Institute of Art, Kalamazoo, Michigan, 15 October 1998

**Appraisal Services - Searching for Reliability**, University of Chicago, Gleacher Center, for U.S. Department of Justice/United States Marshals Service/Asset Forfeiture Office, 'Pre-Seizure' Planning Seminar, 5 August 1999

**Unities in the Appraisal Disciplines**, China Appraisal Society (CAS), Beijing, China, 11 Oct 1999

**Looking at Mr.Todd's Pictures** – Kalamazoo Institute of Art, Kalamazoo, Michigan, for the Albert May Todd Collection – Kalamazoo Historic Conservancy for the Art, 12 April 2000.

**Shared Valuation Techniques – The Fine Arts and Real Property**, Institut Français d'Expertise Imobilière, Paris, France, 15 May 2000

**The Concordia Legacy**  - Concordia University, Chicago, Illinois, 7 February 2001

**Accurate and Reliable Valuations (workshop raporteur to plenary session)** – The European Real Estate Summit: Land for Development, Rome, Italy, 19-20 September 2002, United Nations Economic Commission for Europe and the Real Estate Advisory Group; Tempio di Adriano, Piazza di Pietra, Rome Chamber of Commerce

**Art and Cultural Property: Provenance, Due Diligence, Legal and Ethical Issues** - Standards and Due Diligence from a Valuer's Perspective. Washington, D.C., sponsored by the American Society of Appraisers, 1-2 October 2002.

**Moderator** of the panel **Universal Valuation Standards for Financial Reporting** third session of a program entitled <u>**Appraising, Valuers, and Accountability in an Integrated World Property Economy**</u>, as part of a meeting of the United Nations NGO (Non-Governmental Organization) International Valuation Standards Committee (IVSC) and World Association of Valuation Organizations (WAVO), Vancouver, B.C., 2 April 2004.

**Beyond the Roadshow** – Friends of the Burnham & Ryerson Libraries of The Art Institute of Chicago, 1 November 2007

**Finds and Findings – The Chapman and Cutler Collection**, 6 June 2008, Chapman and Cutler LLP, Chicago, Illinois

Moderator, **Appraisal Issues** 6 August 2008, Personal Property program, American Society of Appraisers International Appraisal Conference, Minneapolis, Minnesota, August 3-6 2008

**Working Habits: Collaborative Valuation – A Professional Future**, 6 Feb 2009, *Seeking Value in a Changing Economy*,  St. Louis Chapter, American Society of Appraisers

- 28 -

**Richard-Raymond Alasko** has provided testimony as an expert witness at depositions or trial or by affidavit, or has provided litigation support for these cases:

1982   **Fireman's Fund Insurance Companies & Raphaely Sevy (Zvi) vs. Barnes Electric, Inc., & United Airlines, Inc.**, Case No. 581-0102  U.S. District Court, Northern District of Indiana, South Bend Division

1983   **Suerth vs. Commissioner**, Docket No. 14376-81 and **Derby vs. Commissioner**, Docket No. 15322-81, (Chicago) (settled)

1990   **Ronald S. Lehman vs. Commissioner** Tax Court Docket No.18314-89, and **Ronald S. Lehman and Elizabeth A Lehman vs. Commissioner** Tax Court Docket No.18315-89. Services were provided, at the court's request, to both petitioner and respondent. (settled)

1990   **Marriage of Foxley vs. Foxley**, Case no.88 DR 4139 (City and County of Denver, Colorado) This dissolution action continued through a series of appeals, ultimately to the Colorado Supreme Court for a Writ of Certiorari.  See in particular the decision of J. Stephen Phillips, District judge, William C. Foxley vs. Sandra M. Foxley, et. al., Civil Action No.94 CV 2557; Denver, Col., 28 July 1998. The appeal from that decision was submitted to the Colorado Supreme Court, and denied 17 July 2000.

1991   **John Henry vs. Metropolitan Structures**, No. 88 C 7247 (Chicago) (settled)

1991   **Samuel I. Shuman, et al. vs. United States**, Civ. No. H-85-1672 (SD Texas)
    (see also the related tax memorandum of 5 January 1990)

1991   **David E. Lahti vs. Van Douser, et. al.**, File No. 90-3641-GC, (Michigan, 10th Judicial Circuit) a deposition was taken  -  this case involved a fake Dufy print sold at auction

1992   **Lewis J. Obi and Betty Obi vs. Commissioner,** United States Tax Court, Docket No. 20227-90 (assigned by the court as arbitrator/this was the first instance in which the IRS agreed to such an arrangement)

1992   **J. Robert Orton, Jr. vs. Cincinnati Art Museum**, United States District Court, Southern District of Ohio, Western Division, Case No. C-1-91-324 (Cincinnati)

1992   **Spittler vs. Ream**, San Mateo County Superior Court No.333277 (San Mateo, Cal.)
    (settled before trial)

1992   **Neumann Trust vs. Home Insurance**, Court no.91 CH 12532 (Chicago)

1993   **United States vs. Austin**, No.93 CR 169 (Chicago)
    (see also **FTC vs. Austin Gallery of Illinois**) Civil No.88 C3845, 1988)

1993   **Marriage of Baldwin vs. Baldwin**, (Chicago)

1994   **Bruce Green vs. Alex Hergan and Susan A. Larson**, No. CH 4179, Circuit Court of Cook County (Chicago)

1994    **McDonald vs. William F. Smith and The Home Insurance Company**, No.92 M2 100286,  (Chicago) settled

1994    **Terra vs. Commissioner of the Internal Revenue Service**, Docket No. 15809-92 (Chicago) (settled before trial)

1994    **FTC vs. Renaissance Fine Arts, Ltd., etc., et al.**, United States District Court, Northern District of Ohio, Eastern Division, No. 1:94 CV0157  (Cleveland); published in *1994-2 Trade Cases* (CCH) ¶ 70,703 (N.D. Ohio)

1994    **Thierry Thompson vs. Allied Van Lines, Inc.**, United States District Court, Northern District of California , No. CV 93-1717 WHO (CMP) (San Francisco)

1995    **Neumann Trust vs. Home Insurance Company**, Court No. 91 CH 12532, Chicago (settled)

1995    **Townes vs. Commissioner**, United States Tax Court, New York City, Docket Nos. 11061-94 and 3365-95  (settled)

1996    **Ruth Slavin and Rachelle Gordon vs. United Van Lines**,  Case No: 94 C 7325 (Chicago)

1998    **William Graves v. Michael's Stores, Inc.**, Cuyahoga County Court of Common Pleas, Cleveland, Ohio, Case No.343304

1999    **The Jeffrey Horvitz Foundation v. Mitchell C. Shaheen d/b/a The Brett Mitchell Collection**, Cuyhahoga County Court of Common Pleas Case No.344762

2000 – 2001 – **S.A.Geppi v. Commissioner of the Internal Revenue Service**  (settled)

2000 – 2002 –  **Dale Frey v. Chicago Conservation Center** U.S.District Court, Northern District of Illinios, Eastern Division, No.98 C 6434

2001    **Marriage of Lindsey**  Chicago (settled 2002)

2001    **Arber V. Masthead International, Inc.**  U.S. District Court, New Mexico No.CIV-01-154 BB/LFG (ACE)

2001    **Barry Goldberg v. Chubb Group of Insurance Companies, Inc. et al.**  Circuit Court of Cook County, Illinois, County Department, Law Division, No.98 CH 9348 (settled)

2003    **Christine Rales v. Steven Rales**  Superior Court of the District of Columbia, (art issues settled) Case No.02DR166-D

2003    **Marriage of Epstein**  (Chicago) Case No. 00 D 13312  (art issues settled)

2004    **Frank Klotz v. Her Majesty The Queen** Toronto, Canada (tax court)

2004    **Barbara Quinn v. Her Majesty The Queen**, Toronto, CA (tax court) file 2002-3718(IT)G
        **Caedmon Nash v. Her Majesty The Queen**, Toronto, CA (tax court) file 2002-3720(IT)G
        **Susan Tolley v. Her Majesty The Queen**, Toronto, CA (tax court) file 2002-3719(IT)G

2004    **Mauricio J. Villa v. Fidelity and Casualty Company,** Orleans Parish CDC No: 2001-983 (settled, January 2005)

2004    **Dan Peterman v. Big Fish, Inc. et al** Circuit Court of Cook County, Illinois, County Department Law Division, Case No.03l4392 (settled, 2005)

2004    **Marriage of Polsky,** Circuit Court of Cook County, Illinois, Domestic Relations Division No. 03 D 2662, Chicago

2005    **Marriage of Heroy** Chicago, Circuit Court of Cook County, Illinois, Domestic Relations Division No. 03 D  10451, Chicago

2005    **Maxwell Batiste v. The State Farm Fire & Casualty Company,** Chicago, Court No.02L15741 (settled by binding arbitration, 13 October 2006)

2005    **James D'Agostino v. United Parcel Service, Inc.,** Los Angeles, Superior Court of the State of California, Central Judicial District, Case no. BC342163 (settled November 2006)

2006    **James Boshart and Barbara Boshart v. Century Guild Decorative Arts, LLC et al.,** Claim no.20-853205, Court no. 05 L 002873, Chicago (settled February 2008)

2007    **Lindy M. Pilgrim v. Timothy Yarger, Timothy Yarger Fine Art, Inc. & Yarger Arts, Inc.** Case No.3:2007cv00514, Texas Northern District Court, Dallas (settled Dec. 2007)

2008    **Vasarely v. Shapps,** Chicago, (plaintiff withdrew complaint 19 May 2008)

Current:

2009    **John A. Friede v. Thomas Jaffe and Robert Friede,** Index No.601967/09, Supreme Court of the State of New York, County of New York