**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
www.flmb.uscourts.gov

**In re:**

| | |
|---|---|
| **RMS TITANIC, INC.,** | ) Case No.:  3:16-bk-02230-PMG |
| | ) **Chapter 11** |
| | ) |
| **Debtor.** | ) **Hearing scheduled for July 12, 2016 at 3:00** |
| | ) **p.m.** |
| | ) |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S**
**MOTION FOR ORDER AUTHORIZING SALE OF**
**TITANIC ARTIFACTS FREE AND CLEAR OF ALL LIENS, CLAIMS**
**AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363 AND 105**

Guy G. Gebhardt, Acting United States Trustee for Region 21 ("UST"), by and through his undersigned counsel, files this objection to the Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105 and 363 and Bankruptcy Rules 6003, 6004, and 9014 Authorizing the Debtors to Market and Sell Certain Titanic Assets Free and Clear of Liens, Claims, and Interests (Dkt. No. 28; the "Sale Motion"), and states:

**SUMMARY OF ARGUMENT**

1. The debtor in this case, RMS Titanic, Inc., ("Debtor") seeks to sell certain artifacts of the RMS Titanic. The Sale Motion should be denied because it is not noticed to all required parties, does not include a description of sale procedures, does not describe the property to be sold, and, at least at this early stage in the case, does not meet the standard set forth in *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2nd Cir. 1983). To the extent that the Debtor is seeking a declaratory judgment of ownership in the artifacts, the Debtor must proceed by adversary proceeding

1

instead of motion. Given the public and international interests at stake, the Court should deny the Sale Motion as incomplete and premature.

## BACKGROUND

2. On June 14, 2016, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

3. Also on June 14, 2016, the Debtor's parent company, *Premier Exhibitions, Inc.* (3:16-bk-022320-PMG), and certain of the Debtor's affiliates filed voluntary bankruptcy petitions. Those cases are as follows: *In re Premier Exhibitions, Inc.* (3:16-bk-02232-PMG); *In re Premier Exhibitions Management*, Inc. (3:16-bk-02233-PMG); *In re Premier International, LLC* (3:16-bk-02234-PMG); *Premier Exhibitions NYC, Inc.* (3:16-bk-02235-PMG); *In re Premier Merchandising, LLC* (3:16-bk-02236-PMG); *In re Dinosaurs Unearthed Corp.* (3:16-bk-02237-PMG); and *In re Arts and Exhibitions International, LLC* (3:16-bk-2238-PMG) (collectively "Debtor's Affiliates").

4. The Debtor has not yet filed bankruptcy schedules or statement of financial affairs. On April 14, 2016, the Debtor filed Motion to Extend Deadline to File Schedules, which was granted on June 27, 2016 (Dkt. Nos. 3 and 48). The Court has granted the Debtor through and including July 12, 2016 to file these documents, which is the same date as the final evidentiary hearing on the Sale Motion.

5. The UST has not yet conducted a section 341 meeting.[1]

6. The UST has requested that the Debtor amend its list of 20 largest unsecured creditors. The 20 largest unsecured creditor lists filed in each of the Debtor's

---

[1] Federal Rule of Bankruptcy Procedure requires a section 341 meeting of creditors to be scheduled no later than 60 days after the order for relief.

and Debtor's Affiliates' cases are identical. These cases have not been substantively consolidated. Upon information and belief, the Debtor and the Debtor's Affiliates do not have identical creditor bodies. The UST cannot properly solicit a creditor's committee until the Debtor files a proper list of 20 largest creditors.

7. The UST has received a request to form an equity committee. But without schedules and other required documents, the UST is unable to determine whether an equity committee should be formed. Based on representations in the Sale Motion, the input of an equity committee may be relevant to this case because the proceeds of the artifact sale (if it is allowed to occur) may exceed the total claims of creditors in the case (Sale Motion ¶ 24).

8. On June 20, 2016, the Debtor filed the Sale Motion. The Sale Motion explains that the Debtor has a property interest in certain artifacts recovered from the wreck of the RMS Titanic. Some 2,100 of the artifacts where brought ashore in France (the "French Artifacts"). Over 3,000 artifacts were brought ashore in Virginia (the "American Artifacts"). The Sale Motion pertains only to the sale of the French Artifacts.

9. The Sale Motion seeks to sell the French Artifacts free and clear of liens or other interests pursuant to 11 U.S.C. § 363(f). According to representations by Debtor's counsel at the hearing on first day motions, a free and clear sale through the bankruptcy Court is desired to reassure potential buyers that the Debtor has full title to the French Artifacts. The Sale Motion suggests two possible clouds on title. First, the Eastern District of Virginia approved a stipulation that (at least outside of bankruptcy) requires the Debtor to keep both the French Artifacts and the American Artifacts together

and Debtor's Affiliates' cases are identical. These cases have not been substantively consolidated. Upon information and belief, the Debtor and the Debtor's Affiliates do not have identical creditor bodies. The UST cannot properly solicit a creditor's committee until the Debtor files a proper list of 20 largest creditors.

7. The UST has received a request to form an equity committee. But without schedules and other required documents, the UST is unable to determine whether an equity committee should be formed. Based on representations in the Sale Motion, the input of an equity committee may be relevant to this case because the proceeds of the artifact sale (if it is allowed to occur) may exceed the total claims of creditors in the case (Sale Motion ¶ 24).

8. On June 20, 2016, the Debtor filed the Sale Motion. The Sale Motion explains that the Debtor has a property interest in certain artifacts recovered from the wreck of the RMS Titanic. Some 2,100 of the artifacts where brought ashore in France (the "French Artifacts"). Over 3,000 artifacts were brought ashore in Virginia (the "American Artifacts"). The Sale Motion pertains only to the sale of the French Artifacts.

9. The Sale Motion seeks to sell the French Artifacts free and clear of liens or other interests pursuant to 11 U.S.C. § 363(f). According to representations by Debtor's counsel at the hearing on first day motions, a free and clear sale through the bankruptcy Court is desired to reassure potential buyers that the Debtor has full title to the French Artifacts. The Sale Motion suggests two possible clouds on title. First, the Eastern District of Virginia approved a stipulation that (at least outside of bankruptcy) requires the Debtor to keep both the French Artifacts and the American Artifacts together

for public display, exhibition and educational purposes (Sale Motion ¶ 16). Second, according to the Sale Motion, a decision by a French Administrator noted that the Debtor "agreed to make use of such objects in conformity with the respect due the memory of their initial owners and to not carry out any commercial transaction entailing their dispersion, if not for purposes of an exhibition." (Sale Motion ¶ 7).

10. The Debtor's bankruptcy filing appears to be motivated, at least in part, by certain bankruptcy-specific language in the stipulation approved by the Eastern District of Virginia (Sale Motion ¶ 18). According to the Debtor, the bankruptcy-specific language does not require the Debtor to keep the American Artifacts and the French Artifacts together in the case of a bankruptcy filing (Sale Motion ¶ 19).

11. The Sale Motion does not contain an inventory of the French Artifacts.

12. The Sale Motion does not contain an appraisal of the French Artifacts. (Although an appraisal, but not an inventory, of the American Artifacts is included) (Sale Motion ¶ 22).

13. The Sale Motion does not specify which artifacts the Debtor intends to sell. According to the Sale Motion, the Debtor wants Court permission to sell an unspecified number (a "narrow subset") of the French Artifacts (Sale Motion ¶ 25). A list of ten artifacts is attached as an Exhibit to the Sale Motion, but the list "is not intended as an election to sell specific artifacts." (Sale Motion ¶ 26).

14. The Sale Motion does not specify whether the sale of the artifacts will be public or private and does specify any terms and condition for the sale of the artifacts.

Rather, the Sale Motion appears to seek permission to sell the Titanic artifacts "without restriction." (Sale Motion ¶ 33).

15. The Sale Motion does not set forth a deadline for objecting to the Sale Motion.

16. The Sale Motion does not appear to have been noticed to all creditors. The "Notice" section of the Sale Motion states that notice of the Sale Motion has only been provided to the creditors on the list of 20 largest creditors but not the larger creditor body (Sale Motion ¶ 40). The UST is aware that the Debtor has filed a Motion to Limit Notice (Dkt. No. 4). But the Motion to Limit Notice specifically states that notice of a 363 sale outside the ordinary course of business will be noticed to all creditors and parties-in-interest (Dkt. No. 4).

17. The French government has not been provided with a notice of the Sale Motion. The Debtor has attached to the Sale Motion a Declaration by Denis Mouralis stating the legal opinion that the French government does not have an enforceable property interest in the Titanic artifacts (Sale Motion, Exhibit E). However, it is unknown if the French government shares the view.

18. The Sale Motion suggests that the Titanic artifacts are appreciating. According to the Sale Motion, the American Artifacts (which are not subject to the Sale Motion) appraised for approximately $189 million in 2007 (Sale Motion ¶ 22). In 2014, the American Artifacts appraised for $218 million (Sale Motion ¶ 22).

19. The Titanic artifacts appear to be the Debtor's dominant and most profitable asset. According to the Sale Motion, the sale of the French Artifacts would

allow the Debtor to pay off all unsecured creditors and make a distribution to equity (Sale Motion ¶ 24).

## OBJECTIONS

20.  The UST objects to the Sale Motion as follows.

### A.  The Sale Motion has not been Noticed to Required Parties

21.  Federal Rule of Bankruptcy Procedure 2002(a)(2) requires that "all creditors" must be given 21-day notice by mail of "a proposed use, sale, or lease of property of the estate other than in the ordinary course of business."

22.  The Sale Motion does not comply with Rule 2002(a)(2). The Debtor has noticed its 20 largest creditors but not the larger creditor body.[2] The UST is aware that the Debtor has filed a Motion to Limit Notice (Dkt. No 4). However, by its own terms, the Debtor's request to limit notice does not apply to section 363 sales outside the ordinary course of business (Dkt. No. 4).

23.  Federal Rule of Bankruptcy Procedure 6004(c) requires that a sale and free and clear of liens and other interests must be served "on parties who have liens or other interests in the property to be sold."

24.  The government of France should be noticed and allowed an opportunity to assert whether or not it asserts an interest in the French Artifacts. The Debtor has attached an expert's declaration to the effect that the French government does not have a property interest in the French Artifacts. But the mere fact that the Debtor feels the need to argue the point compels that the French government receives appropriate notice.

---

[2] As noted above, the list of 20 largest creditors is identical in the cases of all of Debtor's Affiliates.

**B.     The Sale Motion Does Not Include Required Information**

25.     Federal Rule of Bankruptcy Rule 2002(c)(1) provides that a notice of a proposed sale of property outside the ordinary course of business shall include: (1) "the time and place of any public sale" or, in the alternative, "the terms and conditions of any private sale"; (2) "the time fixed for filing objections"; and (3) a general description of the property.

26.     The Sale Motion does not comply with Rule 2002(c)(1) because it does not include the method of the proposed public or private sale. Instead, the Sale Motion seeks to sell the French Artifacts "without restriction" (Sale Motion ¶ 33).

27.     The Sale Motion does not comply with Rule 2002(c)(1) because it does not include the deadline for filing objections.

28.     The Sale Motion does not comply with Rule 2002(c)(1) because it does not include a description of the property to be sold. Although the Sale Motion includes descriptions of a handful of the French Artifacts, it specifically declaims any commitment to sell those particular artifacts and does not otherwise identify or describe the artifacts that will be sold.

**C.     The Sale Motion Does not Meet the *Lionel* Standard**

29.     In support of the Sale Motion, the Debtor cites *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2nd Cir. 1983) in support of

the proposed artifacts sale. However, the Sale Motion does not meet the requirements of the standard as set out in *Lionel*.[3]

30. In the *Lionel* case, the debtor was attempting to sell the dominant and profitable asset of the bankruptcy estate, which was 82% of the stock in the Dale Electronics, Inc. *Lionel,* 722 F.2d at 1064. The creditor's committee supported the sale, but the equity committee opposed it because nothing would be left for equity after the payment of higher-priority claimants. The bankruptcy Court approved the sale. *Id.* at 1066. The Second Circuit reversed the sale order on appeal because there was no sound reason for the immediate sale of the debtor's dominant and profitable asset. *Id.* at 1072. The Second Circuit approved of the equity committee's arguments that no reason for an immediate sale existed because "[f]irst, the sale was premature because Dale is not a wasting asset and there is no emergency; second, there is not justifiable cause present since Dale, if anything, is improving; and third, the price was inadequate." *Id.* at 1071.

31. The Court should deny the Sale Motion under the *Lionel* standard. As in *Lionel*, the French Artifacts are not wasting and are probably increasing in value according to the Debtor's own appraisals. The Sale Motion does not cite to any emergency. There is no basis for determining whether the proposed price of the French Artifacts is reasonable because the Debtor does not identify the artifacts to be sold, does

---

[3] The familiar *Lionel* standard is as follows. "In fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather, he should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge." *Lionel*, 722 F.2d at 1071.

not include an appraisal of the French Artifacts, and does not specify the manner of sale. In addition, the sale would be premature for other reasons. The Debtor has not filed Schedules or answered questions under oath at a section 341 meeting. The UST has not yet appointed creditor and equity committees.

32.     Other cases cited to by the Debtor are distinguishable from the instant case. In *Delaware & Hudson River Co.*, 124 B.R. 169 (D. Del. 1991), the bankruptcy Court below found that "the Trustee made reasonable and good faith efforts to identify and solicit offers from potential good faith purchasers" and "the notice accurately disclosed the full terms of the sale" *Id.* at 173. In *In re Phoenix Steel Corp.*, 82 B.R. 334 (Bankr. D. Del. 1987), the Debtor had advertised the sale for the past year. In *Stephens Indus., Inc. v. McGlung*, 789 F.2d 386, 391 (6th Cir. 1986), there was an emergency because the Debtor was on the verge of running out of money and shutting down. The Debtor does not cite similar facts in the Sale Motion. Other cases cited to by the Debtor discuss the business judgment rule in contexts other than section 363 sales of a chapter 11 debtor's dominant and most profitable assets.

**D.   The Debtor may Need to File an Adversary Proceeding**

33.     The Debtor may argue that the purpose of the Sale Motion is to establish clear title to the French Artifacts, so that the Debtor may sell them later. If this is the case, the Debtor is required to file an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001(2), which applies to proceedings to determine the "validity, priority, or extent of a lien or other interest in property . . . ." To the extent that the

Debtor is seeking a declaratory judgment of ownership, the Sale Motion does not meet the requirements of due process.

## **CONCLUSION**

34.     The Sale Motion should be denied. The Sale Motion has not been noticed to the proper parties and does not contain the required information. The proposed sale does not meet the *Lionel* standard for sale of a debtor's dominant and most profitable assets early in the bankruptcy case and outside of the plan confirmation process. Furthermore, the proposed sale is premature since the Debtor has not filed Schedules or attended a section 341 meeting and no creditor's committee or equity committee has been appointed. Given the cultural and international importance of the French Artifacts, the Bankruptcy Court should give all parties the opportunity to appear and be heard and require strict compliance with the bankruptcy code and rules.

WHEREFORE, the UST requests that (1) the Court deny the Sale Motion; (2) the Court continue the hearing on the sale motion no less than 60 days; and/or (3) the Court take such other action as the Court deems necessary.

DATED:  July 5, 2016.

GUY G. GEBHARDT
Acting United States Trustee, Region 21

  */s/  Scott Bomkamp*  
Scott Bomkamp, Trial Attorney
Indiana Bar No.: 28475-49
Office of the United States Trustee
U.S. Department of Justice
George C. Young Federal Building and Courthouse
400 W. Washington Street, Suite 1100
Orlando, FL 32801
Telephone No.:   (407) 648-6301, Ext. 150
Facsimile No.:    (407) 648-6323
Email: scott.e.bomkamp@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing motion has been served electronically through CM/ECF on July 5, 2016, to all parties having appeared electronically in the instant matter.

  */s/  Scott Bomkamp*  
Scott Bomkamp, Trial Attorney