```
1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
2                     Norfolk Division


3

4   - - - - - - - - - - - - - - - - - -
                                      )
5     R.M.S. TITANIC, INC.,           )
      SUCCESSOR IN INTEREST TO        )
6     TITANIC VENTURES, LIMITED       )
      PARTNERSHIP,                    )
7                                     )    CIVIL ACTION NO.
             Plaintiff,               )    2:93cv902
8                                     )
      v.                              )
9                                     )
      THE WRECKED AND ABANDONED       )
10    VESSEL, ETC.,                   )
                                      )
11           Defendant.               )
    - - - - - - - - - - - - - - - - - -
12

13

14                   TRANSCRIPT OF PROCEEDINGS

                        Norfolk, Virginia
15
                         June 21, 2016
16

17

18  BEFORE:  THE HONORABLE REBECCA BEACH SMITH
             Chief United States District Judge
19

20  APPEARANCES:

21          KALEO LEGAL
            By:  Brian A. Wainger
22                    And
            McGUIRE WOODS LLP
23          By:  Robert W. McFarland
                 Counsel for R.M.S. Titanic
24

25
```

```
1
     APPEARANCES CONTINUED:
2
3           UNITED STATES ATTORNEY'S OFFICE
            By:  Kent Porter
4                Assistant United States Attorney
                 Counsel for Amicus United States
5
            THE NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION
6           By:  Jackie Rolleri
                 Counsel for NOAA
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

| | |
|---|---|
| 1 | (Hearing commenced at 11:31 a.m.) | |
| 2 | THE CLERK:  In case 2:93cv902, R.M.S. Titanic, Inc., | 11:31:5 |
| 3 | Successor in Interest to Titanic Ventures, Limited | 11:32:0 |
| 4 | Partnership, versus The Wrecked and Abandoned Vessel, et | 11:32:0 |
| 5 | cetera. | 11:32:1 |
| 6 | Mr. McFarland, Mr. Wainger, is the plaintiff ready | 11:32:1 |
| 7 | to proceed? | 11:32:1 |
| 8 | MR. McFARLAND:  Good morning, Your Honor.  The | 11:32:1 |
| 9 | plaintiff is ready. | 11:32:1 |
| 10 | THE COURT:  Good morning, counsel. | 11:32:1 |
| 11 | THE CLERK:  Mr. Porter, Ms. Rolleri, is Amicus | 11:32:1 |
| 12 | United States of America ready to proceed? | 11:32:2 |
| 13 | MR. PORTER:  Good morning, Your Honor.  We are ready | 11:32:2 |
| 14 | to proceed. | 11:32:2 |
| 15 | THE COURT:  Good morning, counsel.  I believe that | 11:32:2 |
| 16 | we began this hearing, when it was originally scheduled, | 11:32:2 |
| 17 | Mr. McFarland, to catch up on the various status reports that | 11:32:3 |
| 18 | you have filed, your most recent one, and then there was one | 11:32:3 |
| 19 | received in April and another in February, and so I believe | 11:32:4 |
| 20 | you've got some catch-up to do with the status reports. | 11:32:5 |
| 21 | You filed one on November 4, 2015, February 23rd, | 11:33:0 |
| 22 | 2016, and then April 10th, 2015.  Then just recently, I | 11:33:0 |
| 23 | believe it was around June 15, 2016, an additional report was | 11:33:1 |
| 24 | received.  So why don't we start the hearing with you | 11:33:1 |
| 25 | summarizing or going through -- I certainly reviewed the | 11:33:2 |

1    reports -- to advise the Court, in a summary fashion, where   11:33:2

2    the status of the matter is at this juncture.   11:33:3

3         MR. McFARLAND:  Thank you, Your Honor.  We   11:33:3

4    appreciate the opportunity to be before the Court today, Your   11:33:3

5    Honor, and certainly there have been a number of developments   11:33:4

6    since the first status report that Your Honor made, including   11:33:4

7    the status report that we filed last week on June 15th.   11:33:4

8         Going back to February 23rd of this year, we   11:33:5

9    submitted a confidential periodic report which outlined the   11:33:5

10    company's financial condition and status at that period in   11:34:0

11    time, as well as advising the Court on the status of the   11:34:0

12    collection and the exhibitions that were going on.   11:34:0

13         We filed a supplemental or next report in April, and   11:34:0

14    then this Court scheduled this status conference.  Then since   11:34:1

15    that scheduling, the company has filed a petition for   11:34:1

16    reorganization under Chapter 11 of the U.S. Code in the   11:34:2

17    Middle District of Florida, Jacksonville Division.   11:34:2

18         To fully inform the Court about that Chapter 11   11:34:3

19    proceeding and filing, we filed a supplemental periodic   11:34:3

20    report on June 15th last week, Your Honor.  We then filed,   11:34:3

21    that same day, a suggestion in bankruptcy in this court on   11:34:4

22    June 15th, 2016, under 11 U.S.C. 362, which we believe   11:34:4

23    provides an automatic stay of all litigation/judicial   11:34:5

24    proceedings.   11:34:5

25         THE COURT:  Well, I don't agree with you on that in   11:34:5

1    regard to this proceeding, but we'll get to that.  It does    11:35:0

2    not stay this proceeding, and I will tell you the legal    11:35:0

3    reasons why.    11:35:0

4           MR. McFARLAND:  Very well, Your Honor.  It is the    11:35:0

5    Titanic's position that pursuant to the Chapter 11    11:35:1

6    reorganization filing that there is an automatic stay of all    11:35:1

7    judicial proceedings, including this one.  That would apply    11:35:1

8    such that while we are certainly here to provide information    11:35:2

9    to the Court, we do not believe that any further litigation    11:35:2

10   or adversarial proceedings could go forth at this point in    11:35:3

11   time.    11:35:3

12          THE COURT:  Well, adversarial proceedings are one    11:35:3

13   thing, but staying this action is another, because an    11:35:3

14   automatic stay is meant to protect debtors from judgments,    11:35:4

15   collection activities, foreclosures and repossessions against    11:35:4

16   them.  It is not meant to operate in an action which they    11:35:5

17   have initiated, and that's been before the Court, and we have    11:35:5

18   our covenants and conditions.    11:35:5

19          I have the law on that, and the automatic stay does    11:36:0

20   not operate to relieve you from this salvage action in this    11:36:0

21   court and any proceedings thereon, but I'll go through the    11:36:1

22   law with you so you don't need to get to that yet.  What I'm    11:36:1

23   asking you to do is to bring the Court up to date    11:36:2

24   particularly with this merger with Dinoking.  Is that the way    11:36:2

25   it is pronounced?    11:36:3

1          MR. McFARLAND:  Yes, Your Honor.  That went through
2    in, I believe, late 2015.  Mr. Daoping Bao is now the
3    Chairman and CEO of the company, and there is a board of
4    directors that he is head of.  Other members are
5    Mr. Mingcheng Tao, Mr. Sid Dutchak, Mr. Rick Kraniak, Doug
6    Banker, who the Court may remember is a longstanding member
7    of the Premier Board of Directors, and Jerry Henschel.
8          THE COURT:  It is my understanding that you have
9    indicated to the Court that R.M.S.T. remains the holder of
10   the rights on the Titanic artifacts, and although it may be a
11   wholly owned subsidiary of Premier, the two transactions, in
12   terms of the merges, did not affect the ownership of the
13   Titanic artifacts.  That is what has been represented to the
14   Court.
15         MR. McFARLAND:  Did not affect the ownership of the
16   artifacts, that's correct, Your Honor, absolutely.  In that
17   sense let me say that even with the Chapter 11 filing, the
18   company recognizes its obligations under the covenants and
19   conditions and fully intends to adhere to those throughout
20   the Chapter 11 reorganization proceeding.
21         THE COURT:  All right.  So basically what I'm doing
22   is going through each report.  I'm going back to the November
23   15, 2015 report when you first reported that R.M.S.T.'s
24   parent company closed on November 1, 2015, and it was a way
25   of surviving as an entity in the merger, and what I'm trying

1  to do is go back and trace for the record now where the Court

2  is.  As I understood it from your submission, the documents

3  governing the transactions recognized R.M.S.T. as the sole

4  owner of the artifacts and warranted that R.M.S.T. is in

5  compliance with all of the Court's orders, and pursuant to

6  its terms, the promissory note was converted to Premier

7  common stock on October 30, 2015, thus terminating the debt

8  held by the investor in the group.

9           MR. McFARLAND:  Correct, Your Honor.

10           THE COURT:  All right.  Then you had something in

11  that report about the corporate structure.  As I understood

12  the structure, the primary shareholders, you had an executive

13  chairman of the board, a president, a chief executive

14  officer, and so forth.  If you can go through all of those

15  positions and tell the Court if they are still current.

16           MR. McFARLAND:  Certainly, Your Honor.  Daoping Bao,

17  spelled B-a-o, pronounced Bao, is the Chairman and CEO.

18  Michael Little is the Chief Financial Officer.  Ms. Alex

19  Klingelhoffer, who the Court may recall from testimony

20  previously, is the Vice President for collections.  The board

21  of directors is, as I mentioned a few minutes ago, composed

22  of, I believe, five gentlemen.

23           THE COURT:  Have you given those names to the Court?

24           MR. McFARLAND:  I believe we provided the names of

25  the board, but we can certainly update that, Your Honor.

1        THE COURT:  All right.  As I understand, on November

2  5, 2015, Mr. Sellers resigned from the board of directors?

3        MR. McFARLAND:  That is correct, Your Honor,

4  Mr. Sellers who had been an investor.  I guess we do need to

5  provide Mr. Henschel, who we will update.  He is a very

6  recent addition to the board of directors following

7  Mr. Evans' resignation as a director last month, I believe.

8        THE COURT:  Then what you need to do is just file

9  with the Court for the record any changes in the corporate

10  structure in terms of who's running the company, who's on the

11  board, and when you file that with the Court, you need to

12  show, for instance, that somebody was there, and then they

13  resigned on such and such a date, and then whoever took their

14  place.  So it's just a simple snapshot for the Court to have.

15        MR. McFARLAND:  Certainly, Your Honor.  I'm happy to

16  do that.

17        The company continued to operate, Your Honor,

18  throughout late 2015/early 2016.  We have had extensive

19  discussions with the Government representatives of NOAA,

20  Department of Justice, about the company's operations,

21  keeping them fully informed, largely under a nondisclosure

22  agreement.

23        But as we advised the Court of the company's

24  financial situation going back to last year and continuing

25  into this year, it was not strong, largely due to a

1  transaction in New York City where the company entered into a   11:41:4

2  long-term lease for space on 5th Avenue between 38th and 39th   11:41:4

3  Streets that was hosting the "Saturday Night Live"   11:41:5

4  exhibition.  That exhibition has not proven to be financially   11:41:5

5  successful.  We have the obligations under the lease, and   11:42:0

6  those have been choking or make it difficult for the company   11:42:0

7  to operate financially.   11:42:0

8        THE COURT:  This is Premier?   11:42:1

9        MR. McFARLAND:  Yes, Your Honor.  The lease is under   11:42:1

10  Premier's name.   11:42:1

11        THE COURT:  All right.   11:42:1

12        MR. McFARLAND:  The space was to hold the "Saturday   11:42:1

13  Night Live" exhibition and also Titanic exhibition.  We   11:42:1

14  continued to analyze our financial situation into 2016,   11:42:2

15  looking at the picture, analyzing it carefully with the hope   11:42:2

16  of financial advisors what could be done, and very recently,   11:42:3

17  Your Honor, as we've advised the Court last week, the company   11:42:3

18  filed a Chapter 11 proceeding in Florida.  The company is   11:42:4

19  incorporated in Florida, as the Court will recall, filing in   11:42:4

20  the Middle District of Florida, Jacksonville.   11:42:5

21        In keeping with that proceeding, I've advised the   11:42:5

22  Court through the supplemental periodic report.   11:43:0

23        THE COURT:  One thing, before you go forward with   11:43:0

24  that, in your February periodic report you also explained   11:43:0

25  that the NASDAQ stock market had delisted Premier on February   11:43:1

1    10, 2016, and it was because the merger with DK was a change    11:43:1

2    in control, which then required the post-merger entity to    11:43:2

3    file a listing application, and Premier did not meet the    11:43:2

4    minimum required stock price, so the stock was then being    11:43:3

5    traded through an over-the-counter marketplace called OTCQB?    11:43:3

6    So is it still in the same situation?    11:43:4

7         MR. McFARLAND:  It's my understanding that is    11:43:4

8    correct, Your Honor.  We have not been listed again.    11:43:5

9         (Conferring with co-counsel.)    11:43:5

10        MR. McFARLAND:  I'm advised, Your Honor, it's still    11:43:5

11   an Over-the-Counter Pink Sheets trading, is what the stock's    11:44:0

12   current listing is.    11:44:0

13        THE COURT:  All right.  You can go ahead.    11:44:0

14        MR. McFARLAND:  Thank you, Your Honor.  With the    11:44:1

15   filing of the Chapter 11 petition, Your Honor, it is the    11:44:1

16   company's hope that it can emerge from a Chapter 11 through a    11:44:2

17   reorganization with the ability to pay off its creditors in    11:44:2

18   full, continue to employ the folks who have been at the    11:44:3

19   company, keep the shareholders' equity stakes in the company    11:44:3

20   and also continue to preserve, what we certainly have been    11:44:4

21   doing all along, and continue to preserve and curate the    11:44:4

22   collection, both pursuant to the covenants and conditions and    11:44:4

23   our recognized efforts all along in this matter.    11:44:5

24        Yesterday, Your Honor, the Court and the Court in    11:44:5

25   Florida, we filed a motion for order seeking Court approval    11:45:0

1    of the sale of a limited number of the French artifacts.                    11:45:0

2         THE COURT:  My understanding that it's only the                        11:45:1

3    French artifacts that are involved in this sale, and those                  11:45:1

4    were excepted in the covenants and conditions that protected                11:45:1

5    the artifacts that were before this Court?                                  11:45:2

6         MR. McFARLAND:  Yes, Your Honor, that is correct.                      11:45:2

7    The French artifacts, no question they are part of the                      11:45:2

8    estate, the bankruptcy estate.  So we have filed there a                    11:45:3

9    motion for seeking the Court's approval for a potential sale                11:45:3

10   of certain of those French artifacts, the idea being,                       11:45:4

11   although we didn't come to this motion and decision lightly,                11:45:4

12   but given the company's financial circumstances, a limited                  11:45:5

13   sale of certain of the French artifacts, if it were to occur,               11:45:5

14   could provide the revenue necessary for the company to pay                  11:45:5

15   off its creditors, including ending its lease obligations in                11:46:0

16   New York City, provide the company working capital going                    11:46:0

17   forward, and allow the shareholders to maintain their equity                11:46:1

18   stakes in the company.  All the shareholders would maintain                 11:46:1

19   their positions, and we would be able to operate the company                11:46:2

20   profitably, we believe, going forward coming out of the                     11:46:2

21   Chapter 11 proceeding.                                                      11:46:2

22        THE COURT:  All right.  Well, I would remind you,                      11:46:2

23   Mr. McFarland, and anyone else involved in this bankruptcy,                 11:46:3

24   that this Court's order on the covenants and conditions takes               11:46:3

25   precedent.  It was entered a few years ago, and the covenants               11:46:4

1  and conditions specifically exclude the Titanic artifacts -- 11:46:4
2  I'm not talking about the French artifact collection -- from 11:46:5
3  the bankruptcy estate of the trustee, and that's your 11:46:5
4  covenant and conditions Section 7(d). They also give this 11:46:5
5  Court the right to take all appropriate action to enforce the 11:47:0
6  covenants and conditions and to hold any hearing necessary to 11:47:1
7  determine if any insolvency bond should even be forfeited and 11:47:1
8  any funds applied to protect the Titanic collection. 11:47:2
9       So I would encourage everyone to go back and read 11:47:2
10 the covenants and conditions that govern the Titanic 11:47:2
11 artifacts before this Court. That's in Section 7(d). So I 11:47:3
12 would encourage everyone to go back and read that. That is 11:47:4
13 an order that takes precedent for the Titanic artifacts, 11:47:4
14 which are before this Court. 11:47:4
15      The Fourth Circuit up to the Supreme Court have made 11:47:5
16 it clear about what the status of being a 11:47:5
17 salvor-in-possession is. This Court has made it clear about 11:48:0
18 the ownership of any assets, and the covenants and conditions 11:48:0
19 make it very clear that they are not part of the bankruptcy 11:48:0
20 estate. So if anybody is beginning to think that, they 11:48:1
21 better dissuade that notion from their paperwork and their 11:48:1
22 minds. 11:48:1
23      MR. McFARLAND: We appreciate what the Court is 11:48:2
24 saying, Your Honor, and let me say to the Court that 11:48:2
25 throughout all the proceedings going back since we have been 11:48:2

1    before this Court, the company has always recognized and                    11:48:3

2    taken most seriously its obligations to preserve the                        11:48:3

3    collection, curate the collection.  The Court will recall the               11:48:3

4    testimony, and that has continued to be done.  Even with the                11:48:4

5    financial difficulties that the company has experienced, we                 11:48:4

6    have continued to maintain the collection in A1 condition.                  11:48:4

7    We are working with NOAA to set up a mutually convenient time               11:48:5

8    for them to come see the collection again.  We would welcome                11:48:5

9    the Court.  We have asked Your Honor before, I know with your               11:48:5

10   schedule it is difficult, but we would love to have you come               11:49:0

11   to Atlanta and see the collection.                                          11:49:0

12          THE COURT:  You need to give me some type of notice.                 11:49:0

13   I don't know if I can do it, but you would need to give me                  11:49:0

14   some type of notice.  You obviously don't need any scheduling              11:49:1

15   pursuant to my schedule, but if you give me notice, and I'm                 11:49:1

16   available and determine that it's something that should be                  11:49:1

17   done in the case, I will see to your request.  But you would               11:49:2

18   need to let me know well in advance.                                        11:49:2

19          MR. McFARLAND:  Very good, Your Honor.  Be happy to                  11:49:3

20   set that up.  In addition to taking care of the preservation               11:49:3

21   and curation of the artifacts, we have continued to fund the               11:49:3

22   reserve account.                                                            11:49:4

23          THE COURT:  That was my next question.                               11:49:4

24          MR. McFARLAND:  Well, I thought it might be.  I                      11:49:4

25   wanted to fully inform the Court.  We have continued to fund               11:49:4

1  the reserve account.  There is at this point in time                    11:49:4

2  approximately between $450 and $500,000 in it, and that is              11:49:5

3  in, if I could use the term that was used, and I guess it was           11:49:5

4  the last presidential election, we consider it a lockbox,               11:49:5

5  Your Honor.  It is not part of the estate, and it is secure,            11:50:0

6  and it will continue to be funded.                                      11:50:0

7       THE COURT:  The reason I was asking, the February                  11:50:1

8  23rd report indicated that you had continued to fund it, and            11:50:1

9  at that time it totaled about $433,000, but in the most                 11:50:1

10 recent report, the June 15th, 2016, there was no mention of             11:50:2

11 the reserve account and its current total.  So I would                  11:50:2

12 appreciate if you would, in this supplemental filing, advise            11:50:3

13 the Court, and obviously copy Mr. Porter and the United                 11:50:3

14 States on anything that you file with the Court, stating the            11:50:4

15 account balance.  You can either do it June 15th or July 1,             11:50:4

16 whatever date you choose, but I need some current date to               11:50:5

17 operate from since February.                                            11:50:5

18      MR. McFARLAND:  Certainly, Your Honor.  I don't have               11:51:0

19 the exact figure but it is between 450 and 500.  So it's                11:51:0

20 $500,000, so it has increased since the February report, and            11:51:0

21 we apologize for the oversight in the June report for not               11:51:1

22 including the figure but we will get that.                              11:51:1

23      Your Honor mentioned informing the Government and                  11:51:1

24 Mr. Porter, and we have done that throughout this, Your                 11:51:2

25 Honor.                                                                  11:51:2

1          THE COURT:  I know.  I'm not saying you haven't.

2     I'm just reinforcing it for the record.

3          MR. McFARLAND:  Right.  But I wanted to advise the

4     Court that for the past eight months, Your Honor, give or

5     take -- I could be off a little bit -- but we have been

6     meeting with representatives of the Government and NOAA to

7     discuss any concerns they might have to apprise them of the

8     company status to work out.  The Court may recall the mapping

9     project was discussed.  We've talked with them about that,

10    about giving them certain access to the collection online so

11    that they can see for themselves the artifacts and the

12    conditions and the reports on them, and then also, as I said,

13    to have them come down and actually see the artifacts in

14    person.

15          So we have been working hand in hand with NOAA.  It

16    isn't to say we agree on everything a hundred percent all the

17    time, but they have been productive meetings, and we

18    certainly will continue those going forward even after the

19    filing of the Chapter 11.

20          As I mentioned, Your Honor, we've had the management

21    change with Mr. Bao as the chairman and CEO now, and our

22    goal, Your Honor, is to come out of the Chapter 11 proceeding

23    in a financially sound condition that we think will not only

24    address the needs of our creditors, shareholders and

25    employees, but also, frankly, provide further protection for

1    the collection.

2          Our goal is to always maintain and preserve the

3    collection, and with the revenue that may be gained from the

4    limited sale from the French artifacts, we think that can be

5    done and to continue to preserve and curate the collection in

6    a stronger position.

7          THE COURT:  All right.  Anything else that you would

8    have to add, Mr. Wainger?

9          MR. WAINGER:  No, Judge.  Nice to see you again.

10         THE COURT:  Let me see if Mr. Porter has anything

11   that he wants to add today.

12         MR. PORTER:  Good morning, Your Honor.

13         THE COURT:  Good morning.

14         MR. PORTER:  Nothing really.  I would reiterate what

15   Mr. McFarland has said.  There has been communications about

16   continuing NOAA's oversight role.  There is discussions to

17   set up the site visit.  Some information was provided as of

18   yesterday with some of the information about the artifacts,

19   and I confirmed with Mr. Wainger just this morning that a

20   conversation we had about a week or so ago to get further

21   information is still on board, and so in terms of NOAA's

22   oversight role, I think we are on the right track.  There is

23   information we still need to get, but I think we're on the

24   right track with that.

25         THE COURT:  All right.  There are a number of

1    individuals in the courtroom, and I don't know if you would          11:54:1

2    like to introduce them, Mr. McFarland, or you'd prefer that          11:54:1

3    they introduce themselves?                                           11:54:1

4            MR. McFARLAND:  I'm happy to introduce them, Your            11:54:2

5    Honor.  I apologize.  I should have done that at the outset.         11:54:2

6            THE COURT:  And, what their role is in this.                 11:54:2

7            MR. McFARLAND:  Absolutely, Your Honor.  Let me say          11:54:2

8    that I can introduce the individuals on my left side.  I'm           11:54:2

9    going to leave to Mr. Porter the individuals to my right.            11:54:3

10           To my immediate left, Billy Poynter, Your Honor, who         11:54:3

11   is with Kaleo Legal, Mr. Wainger's partner, and assists with         11:54:3

12   legal issues for Premier.  Next, Michael Little, who is the          11:54:4

13   Chief Financial Officer for the company, Your Honor.                 11:54:4

14           To Mike's left is Alex Klingelhoffer, our Vice              11:54:5

15   President of collections, who is in charge of curating and           11:54:5

16   preserving the collection.  Then Tina Bingham, who is Billy          11:54:5

17   and Brian Wainger's partner, Your Honor, at Kaleo Legal and          11:55:0

18   corporate counsel for Premier.                                       11:55:0

19           THE COURT:  All right.  Thank you.  Mr. Porter, if           11:55:0

20   you would like to introduce the individuals or have them             11:55:0

21   introduce themselves and counsel at the table.                       11:55:1

22           MR. PORTER:  I'll be happy to introduce them.  This          11:55:1

23   is Jack Rolleri.  She is counsel with NOAA.  She has been my         11:55:1

24   primary contact since I became involved in the case about            11:55:2

25   three weeks ago or a month ago.                                      11:55:2

```
 1            THE COURT:  Nice to have you, Ms. Rolleri.        11:55:2

 2            MR. PORTER:  Ole Varmer, who I believe has appeared   11:55:3

 3    before you before.  He's also counsel with NOAA.  Next to him  11:55:3

 4    is Jim Delgado.  He is the director of NOAA's Maritime      11:55:3

 5    Heritage Program.  Next to him, I believe you know         11:55:4

 6    Mr. Stefan.  He has been assisting me when the bankruptcy was  11:55:4

 7    filed to give me some advice on that.                      11:55:4

 8            Next to him is Russ Craig, senior counsel,         11:55:4

 9    Department of Commerce.  Next to him, Alicia Rector is an   11:55:5

10    intern with NOAA this summer working with Ms. Rolleri.     11:55:5

11    Brittney McGail is an intern in our office, a third-year    11:56:0

12    practice at William & Mary in our office this summer.      11:56:0

13            Next to her is Mike Cannon, also with the Department  11:56:3

14    of Commerce counsel.  In the last row is Dave Alberg, who is  11:56:3

15    the superintendent of the Monitor National Maritime        11:56:4

16    Sanctuary.                                                 11:56:4

17            THE COURT:  Nice to have all of you.               11:56:4

18            MR. PORTER:  Thank you, Your Honor.                11:56:4

19            THE COURT:  Before we adjourn today, I do want to  11:56:4

20    put on the record the Court's position in regard to any    11:56:5

21    bankruptcy that has been filed by R.M.S.T., or Premier, and I  11:56:5

22    will put that on the record so that there is no question   11:57:0

23    where the Court stands in this matter.                     11:57:0

24            R.M.S.T. filed a Suggestion of Bankruptcy which,   11:57:1

25    quote, "Suggests that this action has been stayed by the   11:57:1
```

1    operation of 11 U.S.C. Section 362," and that's in their            11:57:1

2    Suggestion of Bankruptcy at 1.  However, that particular           11:57:2

3    provision protects debtors, as I indicated earlier, from           11:57:3

4    judgments, collection activities, foreclosures or                  11:57:3

5    repossessions of property on debts or claims arising before        11:57:4

6    the bankruptcy petition was filed.                                 11:57:4

7            In other words, it protects debtors who are or who         11:57:5

8    could be defendants in actions.  Section 362 provides an           11:57:5

9    automatic stay that, "Stops actions against the debtor, not        11:58:0

10   actions originally brought by the debtor, the trustee or the       11:58:0

11   debtor-in-possession."  I selected that case because the           11:58:1

12   quote is right on point.  It is from *In re KTMA Acquisition*       11:58:2

13   *Corp.*  It's 153 B.R. 238 at 260.  It's an opinion in 1993 out    11:58:2

14   of the District of Minnesota, which is still good law              11:58:3

15   throughout the bankruptcy community.                               11:58:3

16           I would also invite you to see *Overnite Transport*        11:58:3

17   *Company v. Ryder/P-I-E Nationwide, Inc.*, which is at 137 B.R.    11:58:4

18   766, 768.  That's out of the Eastern District of Missouri in       11:58:4

19   1992 stating that the Eighth Circuit had not specifically          11:58:5

20   addressed the issue at that time but other circuits in all         11:59:0

21   the district courts had concluded that the automatic stay --       11:59:0

22   there is a long line of cases -- does not apply to actions         11:59:0

23   originally commenced by the bankrupt party.  So that is            11:59:1

24   important.                                                         11:59:1

25           Moreover, a number of other district courts                11:59:1

1    traditionally retain jurisdiction to determine the                    11:59:2

2    applicability of the automatic stay of a bankruptcy court to          11:59:2

3    litigation pending before them.  So even at a threshold               11:59:3

4    level, this Court would have jurisdiction to even determine           11:59:3

5    whether the automatic stay had any applicability, and based           11:59:4

6    upon the law that I have reviewed, it would not have                   11:59:4

7    applicability, and it's even more strengthened by, rather             11:59:5

8    than the general rules that I've just stated, by the                  11:59:5

9    covenants and conditions, which I will go through in a                11:59:5

10   moment.                                                               12:00:0

11        You have the case out of the Fifth Circuit, *Picco v.*           12:00:0

12   *Global Marine Drilling Company*, 900 F.2d 846 at 850, and            12:00:0

13   based upon the review of the law that I've read, I would             12:00:1

14   conclude that the automatic stay does not apply to this               12:00:1

15   proceeding because this is a type of proceeding that                  12:00:2

16   basically was commenced by R.M.S.T. many, many years ago, to         12:00:2

17   be salvor-in-possession, and I think that R.M.S.T. recognizes        12:00:3

18   this, too, whether they want to openly admit it, because they        12:00:4

19   do state that they will continue to work with NOAA under the         12:00:4

20   framework set in the covenants and conditions.                        12:00:5

21        The covenants and conditions are very specific in               12:00:5

22   how they relate to any bankruptcy proceeding because,                 12:00:5

23   obviously, it was certainly on NOAA's mind and concern, and           12:01:0

24   certainly on the Court's, when you start down the road and            12:01:0

25   you don't want anyone making an end run around Court rulings          12:01:1

 1    by using other proceedings and mechanisms.                    12:01:1

 2          The covenants and conditions, I'll just review those    12:01:2

 3    very briefly.  I'm not going to sit here and read all of      12:01:2

 4    those to you, but the covenants and conditions contain        12:01:2

 5    provisions that protect the Titanic artifact collection in    12:01:3

 6    the event of the trustee's bankruptcy, and you can go back    12:01:3

 7    and look at those, but in particular I'm reading from         12:01:4

 8    covenant and condition VIII, Subsection B.  This is the       12:01:4

 9    quote:  "To the extent allowed by federal law, the beneficial 12:01:5

10    interest to the Titanic artifact collection shall not be      12:01:5

11    considered as part of the bankruptcy estate of the trustee in 12:02:0

12    the event of bankruptcy, insolvency, dissolution, winding up  12:02:0

13    or similar event.  Further, all measures taken by a trustee,  12:02:1

14    debtor-in-possession, or similar agent of the trustee," are   12:02:1

15    subject to review by this Court, meaning this United States   12:02:2

16    District Court for the Eastern District of Virginia.          12:02:2

17          That is, "To protect the unity and integrity of the     12:02:3

18    Titanic artifacts."  The covenants and conditions then        12:02:3

19    provide specific procedures in the event of the trustee's     12:02:4

20    bankruptcy.  They are found in Subsection 7(d) in the         12:02:4

21    covenants and conditions.  They are, number one, this Court   12:03:0

22    may take all appropriate action within its jurisdiction to    12:03:0

23    enforce the covenants and conditions.  This Court may request 12:03:1

24    information from the trustee and/or conduct a hearing to       12:03:1

25    ascertain whether the trustee's insolvency bond would be      12:03:1

1    forfeited and recommend the modalities under which the funds       12:03:2

2    will be applied to protect the Titanic collections.  NOAA has       12:03:2

3    the right to make submissions in these proceedings and              12:03:3

4    represent the public interest.  If another bankruptcy court         12:03:3

5    attempts to exercise jurisdiction over the Titanic artifact         12:03:3

6    collection, this district court, or that district court in          12:03:4

7    which the bankruptcy case is pending, may have the reference        12:03:4

8    withdrawn under 28 United States Code Section 157 or transfer       12:03:5

9    venue to this Court under 28 United States Code Section 1412.       12:03:5

10   That's in the covenants and conditions at Section 7(d).            12:04:0

11          So I would remind everyone of all of those covenants         12:04:0

12   and conditions upon which this Court has issued an order, and       12:04:1

13   any violation of that order would be subject to appropriate         12:04:1

14   action from this Court, and everyone, I think, knows what           12:04:2

15   that potential action would be.                                     12:04:2

16          As I understand it, at this juncture Mr. McFarland           12:04:3

17   can just clarify for the Court on the record that the only          12:04:3

18   artifacts that are looking to be liquidated are those which         12:04:3

19   have been referred to as the French artifacts which are not        12:04:4

20   subject to the covenants and conditions?                            12:04:4

21          MR. McFARLAND:  That is correct, Your Honor.  That           12:04:4

22   is correct.  As the Court noted in 7(a) through (c) that was        12:04:5

23   read there, those are the conditions applying to the stack,         12:04:5

24   yes.                                                                12:05:0

25          THE COURT:  The only other matter I want to state           12:05:0

1    for the record, it is the Court's understanding, through all

2    of these reports, that Ms. Klingelhoffer, who has managed and

3    cared for the collection and has testified before the Court,

4    she's been managing it since October of 2008, continues to

5    serve as the caretaker of the artifacts, and that you

6    maintain the same standards of conservation, curation,

7    collection, and management that you have since she joined

8    R.M.S.T. because she's the one I think who pushed things in

9    the proper direction, as I recall.

10        MR. McFARLAND:  She did, Your Honor, and we have

11   continued to do that.  That is one of the things I wanted to

12   assure the Court, that that has continued throughout, since

13   her joining us in 2008, and even given the company's

14   financial circumstances, we have always made sure that we

15   have maintained and preserved the collection and followed the

16   highest standards.

17        THE COURT:  All right.  The only thing left, then,

18   if you could file with the Court by July 15th the corporate

19   structure and any changes and also the status of the reserve

20   fund.  If you want to file it earlier, you can.  Just be

21   sure, Mr. Porter, as I said, gets a copy.  Then also I'm

22   going to direct you to continue to file the periodic reports.

23   I think at this juncture you need to increase that.  You're

24   filing them what, every three months now?

25        MR. McFARLAND:  Yes, Your Honor.  They have been

1  quarterly.                                                    12:06:5

2          THE COURT:  You have been filing them quarterly.  I   12:06:5

3  think that we are going to have to increase that to six.  So  12:06:5

4  your last one was June, so your next one will be due by       12:07:0

5  August 15th.                                                  12:07:0

6          MR. McFARLAND:  Absolutely, Your Honor.               12:07:0

7          THE COURT:  In the meantime, you can always           12:07:1

8  obviously file a supplemental report if something else is     12:07:1

9  going on.                                                     12:07:1

10          MR. McFARLAND:  Exactly, Your Honor.  I was going to  12:07:1

11  say more information, I know, is better than less, and in     12:07:2

12  that sense we will also keep the Court advised of significant 12:07:2

13  proceedings in the Middle District of Florida action, the    12:07:2

14  bankruptcy Chapter 11 action.                                12:07:2

15          THE COURT:  Please do, and in the meantime at         12:07:3

16  minimum file the reports now every two months, obviously with 12:07:3

17  a copy to Mr. Porter, and if at any point any party feels     12:07:3

18  they need a hearing before this Court, just please notify the 12:07:4

19  Court, and that includes you also, Mr. Porter.               12:07:4

20          MR. PORTER:  Yes, Your Honor.                         12:07:4

21          THE COURT:  If NOAA feels that they need some advice  12:07:5

22  or some guidance from the Court or something's occurring that 12:07:5

23  needs to come before the Court, so please advise if you need  12:07:5

24  any further hearing.  Otherwise, I will continue as I have,   12:08:0

25  reading your periodic reports and periodically having you     12:08:0

1    come to court.  I would note that this hearing was scheduled    12:08:1

2    before your bankruptcy.    12:08:1

3            MR. McFARLAND:  Yes.    12:08:1

4            THE COURT:  It was just to catch-up.  I felt like we    12:08:1

5    hadn't had a catch-up on the reports.    12:08:2

6            MR. PORTER:  Your Honor, one point.  In their    12:08:2

7    periodic report, the most recent one, they indicated that    12:08:2

8    they would be providing courtesy copies of the filings in the    12:08:2

9    bankruptcy court to this court.  I don't know if the Court    12:08:3

10   needs all of the filings.  I would appreciate, though, if    12:08:3

11   they would be providing us all the filings.    12:08:3

12           THE COURT:  I would like all of the filings.  You    12:08:3

13   don't have to do it necessarily in the report but I do want    12:08:4

14   copies of all of the filings.    12:08:4

15           MR. PORTER:  That would be the same day, counsel.    12:08:4

16           That is fine.  Thank you, Your Honor.    12:08:5

17           THE COURT:  They can do the filings because then I    12:08:5

18   can also follow it on the docket sheet, and so forth.    12:08:5

19           All right.  Is there anything else we need to take    12:08:5

20   up today?    12:09:0

21           MR. McFARLAND:  Not from Titanic standpoint, Your    12:09:0

22   Honor.    12:09:0

23           MR. PORTER:  No, Your Honor.    12:09:0

24           THE COURT:  All right.  Then the Court stands in    12:09:0

25   recess until 2:00.    12:09:0

JODY A. STEWART, Official Court Reporter

1        (Hearing adjourned at 12:09 p.m.)                    12:09:1

2                        CERTIFICATION

3

4        I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7

8        X_____/s/_____x

9                    Jody A. Stewart

10           X_____6-21-2016 _____x

11                        Date

12

13

14

15

16

17

18

19

20

21

22

23

24

25