# Exhibit 2

# Exhibit A

# Revised Covenants and Conditions

**COVENANTS AND CONDITIONS
FOR THE FUTURE DISPOSITION OF OBJECTS
RECOVERED FROM THE *RMS TITANIC* BY RMS TITANIC, INC.
PURSUANT TO AN *IN SPECIE* SALVAGE AWARD
GRANTED BY THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

I. RECITALS OF PURPOSE

    A. WHEREFORE, These covenants are entered into by R.M.S. Titanic, Inc., d/b/a/ Premier Exhibitions, Inc. (hereinafter "RMST") as a condition precedent for receiving an *in specie* salvage award from the U.S. District Court for the Eastern District of Virginia ("the Court") in relation to RMST's Motion for an Interim Salvage Award (dated November 30, 2007) in the case styled *R.M.S. TITANIC, INC., Successor in interest to Titanic Ventures, limited partnership, Plaintiff v. The Wrecked and Abandoned Vessel, its engines, tackle, apparel, appurtenances, cargo, etc., located within one (1) nautical mile of a point located at 41° 43' 32" North Latitude and 49° 56' 49" West Longitude, believed to be the R.M.S. TITANIC, in rem, Defendant* (Civil Action No. 2:93cv902) ("the pending admiralty action");

    B. WHEREFORE, RMST has, by order of the Court (since June 1994) served as salvor-in-possession of The RMS TITANIC wreck site, and (since 1993) as substitute custodian of the artifacts recovered therefrom;

    C. WHEREFORE, RMST has conducted six dive expeditions to The TITANIC wreck site, logging 360 day-equivalents on the site, and has devoted thousands of hours to the recovery, stabilization, conservation, curation and exhibition of artifacts salvaged from The TITANIC;

    D. WHEREFORE, These Covenants and Conditions shall apply to the present and future disposition, care, conservation, and management of the Subject TITANIC Artifact Collection;

    E. WHEREFORE, It is the intent to grant RMST an *in specie* salvage award in the form of title to the artifacts that RMST has recovered and which are within the Court's jurisdiction in the pending admiralty action, such *in specie* salvage award shall be a trust for the benefit of and

subject to the beneficial interest of the public in the historical, archeological, scientific, or cultural aspects of the wreck and its artifacts, and the Covenants and Conditions herein expressed;

F. WHEREFORE, These Covenants and Conditions shall be perpetual in duration, and are intended to govern the disposition, care, conservation, and management of the Subject TITANIC Artifact Collection within the scope of its terms, forever, and irrespective of whether such artifacts continue to be possessed by RMST, and shall be applied to all subsequent owners or possessors of TITANIC artifacts within the scope of its terms; {Court 4/15/2008 Order, at 5}

G. WHEREFORE, These Covenants and Conditions are intended to ensure that TITANIC artifacts within the scope of its terms are, for the benefit of the public interest, kept together and intact and are available to posterity for public display and exhibition, historical review, scientific and scholarly research, and educational purposes. {International Agreement pmbl. ¶ 7; Court 4/15/2008 Order, at 3 & 4}

## II. DEFINITIONS OF OPERATIVE TERMS

For the purposes of these Covenants and Conditions:

A. "RMS TITANIC" means the shipwrecked vessel Royal Mail Ship *Titanic*, sunk in the North Atlantic on April 15, 1912, and includes the wreck site and debris field of the shipwrecked vessel. {Titanic Memorial Act 3(c); NOAA Guidelines Scope (f); International Agreement art. 1(a)}

B. "TITANIC Artifacts" means the cargo, tackle, appurtenances and hull of RMS TITANIC, and other contents, including those associated objects (or portions thereof) that are scattered in its vicinity on the ocean floor within the wreck site and debris field, and all such property recovered from the wreck site since September 1, 1985, and any human remains of those aboard the vessel who perished. {NOAA Guidelines Scope (a); International Agreement art. 1(b); Proposed Legislation § 3(d)-sub(e)}

C. "RMST" means R.M.S. Titanic, Inc., d/b/a/ Premier Exhibitions, Inc., its heirs, successors, and assigns, in exercise of its rights and obligations under these Covenants and Conditions. {Proposed Legislation § 17(h)}

D. "The Court" means the U.S. District Court for the Eastern District of Virginia exercising its jurisdiction in the case styled *R.M.S. TITANIC, INC., Successor in interest to Titanic Ventures, limited partnership, Plaintiff v. The Wrecked and Abandoned Vessel, its engines, tackle, apparel, appurtenances, cargo, etc., located within one (1) nautical mile of a*

2

*point located at 41° 43' 32" North Latitude and 49° 56' 49" West Longitude, believed to be the R.M.S. TITANIC, in rem, Defendant* (Civil Action No. 2:93cv902).

E. "The Pending Admiralty Action" means the case styled *R.M.S. Titanic, Inc., Successor in interest to Titanic Ventures, limited partnership, Plaintiff v. The Wrecked and Abandoned Vessel, its engines, tackle, apparel, appurtenances, cargo, etc., located within one (1) nautical mile of a point located at 41° 43' 32" North Latitude and 49° 56' 49" West Longitude, believed to be the R.M.S. TITANIC, in rem, Defendant* (Civil Action No. 2:93cv902).

F. "The French TITANIC Artifact Collection" means the entirety of artifacts that were recovered by RMST's predecessor entity in the 1987 dive expedition on The TITANIC, and which were the subject of an *in specie* salvage award granted in favor of RMST's predecessor entity in a Procès-Verbal issued October 20, 1993, by the French Maritime Tribunal, exercising appropriate jurisdiction over those artifacts. {Proposed Legislation §§ 3(c)-sub (a)(3) & 6(d)}

G. "The Subject TITANIC Artifact Collection" means all objects recovered from the RMS TITANIC wreck site and debris field by RMST that are within the jurisdiction of the Court, namely all those objects and artifacts recovered by RMST during the course of its dive expeditions (conducted in 1993, 1994, 1996, 1998, 2000 and 2004) on the site after the initiation of the pending admiralty action in 1992. For the purposes of this operative definition, the Subject TITANIC Artifact Collection does not include (1) lumps of coal recovered from The RMS TITANIC wreck site; (2) extraneous objects removed from the site that, according to the best scientific and historic evidence, were not associated with the RMS TITANIC at the time of its sinking; or (3) objects that are determined to be human remains. {NOAA Guidelines Comment (17); Proposed Legislation § 3(c)-sub (a) & 6(d)}

H. "The TITANIC Collections" refers to the total assemblage of the French TITANIC Artifact Collection and the Subject TITANIC Artifact Collection. {Court 4/15/2008 Order, at 4-5; U.S. Amicus Br. 11 & n.7}

I. "Qualified Institution" means any entity (whether governmental, not-for-profit, corporate, or otherwise in form or character) that has demonstrated the willingness and capacity (by virtue of facilities, financial resources, personnel, accreditation and/or otherwise) to conserve, curate, manage, and generally care for the Subject TITANIC Artifact Collection, and to ensure that such is available to posterity for public display and exhibition, historical review, scientific and scholarly research, and educational purposes. Considerations for any evaluation of whether an entity is a qualified institution are included as Annex A to these Covenants and Conditions. For the purposes of entering into these Covenants and Conditions, RMST is, as of the effective date of these Covenants and Conditions, a qualified institution. {NOAA Guidelines Scope (g); 36 C.F.R. § 79.9}

J. "The Trustee" means any qualified institution which shall have the responsibility and authority to conserve, curate, manage, and generally care for the TITANIC Collections for the

public interest. For the purposes of the Covenants and Conditions, RMST shall be the first Trustee of the Subject TITANIC Artifact Collection.

K. "National Oceanic and Atmospheric Administration (NOAA)" refers to the federal agency that represents the public interest in TITANIC Collections and exercises oversight functions in relation to these Covenants and Conditions. NOAA's authority to represent the public interest in this matter is consistent with NOAA's authority under the RMS TITANIC Maritime Memorial Act of 1986 and NOAA's 2001 implementing Guidelines. Such authority shall be carried out consistent with the 1986 Act, other applicable law, and orders of the Court, subject to the availability of resources, appropriations, and other authorized funds. NOAA is not a formal party to these Covenants and Conditions, and does not possess mandatory legal obligations pursuant to the Covenants and Conditions. NOAA shall, however, be an intended beneficiary of these Covenants and Conditions, with the authority to enforce their terms as appropriate on behalf of the public interest. References to NOAA in the context of court proceedings shall, as appropriate, be interpreted to refer to actions by NOAA acting through its counsel the United States Department of Justice.

L. "Conservation" means, in relation to The TITANIC Collections, the handling, cleaning, stabilizing, restoration and conserving of objects in such a manner to preserve them for posterity. {36 C.F.R. § 79.4(b)(6)}

M. "Curation" means managing and preserving The TITANIC Collections for posterity, including, but not limited to: (1) inventorying, accessioning, labeling and cataloging objects; (2) identifying, evaluating and documenting objects; (3) storing and maintaining objects using appropriate methods and containers, and under appropriate environmental conditions and physically secure controls; (4) periodically inspecting objects and taking such actions as may be necessary to preserve them; (5) providing access and facilities for study and research. {Interior Archeology Standards & Guidelines, 48 Fed. Reg. 44737; 36 C.F.R. § 79.4(b)}

N. "Performance guarantee" means the reserve account established under Section V.D. hereof in order to fund an endowment the income of which is sufficient to cover the annual costs to conserve and curate the Subject TITANIC Artifact Collection. It may also include such additional financial undertakings or guarantees as the Court may order under these Covenants and Conditions.

O. "Reserve Account" means that fund set aside by the Trustee and irrevocably pledged for the purpose of providing a performance guarantee for the maintenance and preservation of the TITANIC Artifact Collections for the public interest, as provided by Section V.D. herein;.

4

III. ENSURING THE UNITY AND INTEGRITY OF THE TITANIC COLLECTIONS {U.S. Amicus Br. 11-12; Court 4/15/2008 Order, at 4-5}

A. The Subject TITANIC Artifact Collection shall be kept together and intact forever, pursuant to the terms of these Covenants and Conditions. Individual objects or artifacts, or groups of objects or artifacts, as well as all supporting documentation, shall not be dispersed through sale or other disposition (including pledge, collateralization, or similar treatment), except as through a process of deaccessioning, as provided under these Covenants and Conditions. The Subject TITANIC Artifact Collection shall, to the maximum extent possible and consistent with reasonable collections management practices, be conserved and curated together with the French TITANIC Artifact Collection as an integral whole by the Trustee. {NOAA Comment (5) & Guideline 28; & International Agreement art. 3}

B. The TITANIC Collections shall be available to present and future generations for public display and exhibition, historical review, scientific and scholarly research, and educational purposes. {International Agreement pmbl. ¶ 7 & Rule 28}

1. *Public Display and Exhibition.* Popular presentation and public display and exhibition of the TITANIC Collections may, at the Trustee's discretion, be at a fixed venue or location, or through one or more traveling exhibitions, and such displays or exhibitions may be permanent, continuous, intermittent, or occasional in character. Public display and exhibition of the TITANIC Collections may include temporary loans of objects to qualified institutions under terms no less exacting than those contained in these Covenants and Conditions. {NOAA Guideline 31; International Agreement Rule 31; 36 C.F.R. § 79.10(e)}

2. Historical Review, Scientific and Scholarly Research.

a. *Research in the Ordinary Course.* Individual objects or artifacts, or groups of objects or artifacts, within the TITANIC Collections shall be made available by the Trustee, in its discretion and consistent with professional standards, to qualified scholars, researchers, and scientists for viewing and study on appropriate terms and conditions, depending on the character of the object being studied, and the nature of the study being conducted, and consistent with best collections management practices. The Trustee may condition access to objects within the TITANIC Collections to reasonable restrictions, in order to ensure fair access, conservation of the Trustee's resources, and preservation of its rights of exhibition and media in such objects (including any relevant intellectual property rights). The Trustee shall (where appropriate) promote the public dissemination of researches and studies in relation to the TITANIC Collections. {NOAA Guideline 27; International Agreement Rule 27; Interior Archeology Standards & Guidelines, 48 Fed. Reg. 44734 (std . IV); 36 C.F.R. § 79.10(b)}

b. *Destructive or Invasive Research.* The Trustee may, in its discretion based on best scientific and research practices, permit the destructive or invasive testing or analysis of selected objects within the TITANIC Collections by highly qualified investigators,

5

using established protocols or techniques of investigation, who are pursuing studies for which no other alternative means of investigation is possible, provided that all efforts are taken to ensure that objects that are truly of an irreplaceable or historically significant nature will not be harmed. An example of legitimate destructive or invasive research within the contemplation of this provision would be metallurgical and forensic analysis of portions of The TITANIC hull, in order to determine the true causes of the vessel's sinking. The Trustee may allow access to objects within the TITANIC Collections for destructive or invasive testing or analysis, subject to the payment of a user fee to the Trustee for the conduct of such research, and the Trustee may insist that the results of such destructive or invasive research be made publicly available. Research that involves potential harm or destruction of artifacts may only be conducted under a research plan approved by the Court. {NOAA Guideline 3; International Agreement Rule 3; Interior Archeology Standards & Guidelines, 48 Fed. Reg. 44734 (stds. II & IV); 36 C.F.R. § 79.10(d)(5); 36 C.F.R. § 79.9(b)(5)(iii))}

3. *Education.* The Trustee shall make all reasonable and appropriate efforts to develop and promote public educational uses and applications of the TITANIC Collections, including curricular materials and items in a variety of mediums. Without derogating its intellectual property rights in such educational materials, the Trustee shall make such materials available on preferential terms to educational institutions at all appropriate levels of instruction. {NOAA Guideline 31}

C. Deaccessioning of Objects within the Subject TITANIC Artifact Collection (STAC).

1. *General Principle.* Deaccessioning of objects in the Subject TITANIC Artifact Collection (STAC) may occur only under extraordinary circumstances and only after a rigorous process of evaluation by the Trustee, which process has demonstrated that a particular artifact or object, or group of artifacts or objects, within the Subject TITANIC Artifact Collection no longer hold historical, cultural or archaeological significance or that such items can no longer be properly conserved or curated, based on then-current best collections management practices. {NOAA Guidelines Comment (6); U.S. Amicus Br. 12 n.8}

2. *Considerations for Deaccessioning.* Considerations that may be relevant to the Trustee in any rigorous process of evaluation for deaccessioning from the STAC, include: (a) whether an object has sufficient intrinsic or historical value or aesthetic merit as an item for further study, research or exhibition; (b) whether an object is redundant or duplicative and has no value as part of a series; (c) whether the physical condition of the object is so poor as to render stabilization, conservation or restoration impossible; (d) whether the physical condition of the object is so poor that it no longer has value for exhibition, research, study or teaching purposes. Any evaluative report made by the Trustee to deaccession an object must fully document its conclusions based on then-current best collections management practices. {AAMD Practices; ICOM Professional Ethics Code 2.13 & 2.15}

6

3. *Modalities of Disposition by Deaccessioning.* Once an object within the STAC is deaccessioned it may be disposed of in a variety of ways by the Trustee without violating the principle that objects or artifacts, within the Subject TITANIC Artifact Collection, shall not be dispersed through sale or other disposition. {NOAA Guidelines Comment (6)}

    a. Disposition of a deaccessioned object from the STAC may be accomplished by (i) sale to a designated buyer, or by public auction, or by other means in an appropriate arms-length transaction; (ii) sale, exchange or gift to a museum or educational institution in an appropriate arms-length transaction; or (iii) destruction (in the case of an object that is too badly damaged or deteriorated to be properly conserved or restored). {ICOM Professional Ethics Code 2.13 & 2.15}

    b. Before disposition, an object shall be fully and permanently documented by the Trustee, including analysis and imaging, so that future researchers may consult some record of the object. {ICOM Professional Ethics Code 2.13 & 2.15}

    c. Any moneys received from the disposition of a deaccessioned object from the STAC shall be applied solely for the benefit of the TITANIC Collections. {ICOM Professional Ethics Code 2.16}

4. Any decision made concerning the deaccessioning of an object from the STAC, and the modalities of such disposition, shall be made upon the initiative of the Trustee. Such shall be based upon an evaluative analysis prepared by the Trustee and directed to the Court. After the filing of such a request and analysis, NOAA may submit information and/or a report and recommendation to the Court regarding the proposed deaccessioning of an object and the modalities of such disposition. The Trustee may make a timely response to any NOAA submission. No deaccession or disposition of an object from the STAC shall occur or be valid except with the approval of the Court. {U.S. Amicus Br. 12 n.8}

IV. ENSURING THE PROPER MANAGEMENT OF THE TITANIC COLLECTIONS {U.S. Amicus Br. 12-13; Court 4/15/2008 Order, at 4-5}

A. The TITANIC Collections shall be maintained in accordance with current internationally recognized museum standards and practices for collections management. {Proposed Legislation § 17(i)}

B. Specifically, the TITANIC Collections shall be maintained in accordance with the following rules:

1. Conservation of objects in the TITANIC Collections shall be carried out in accordance with professional standards current at the time the conservation project is to be

7

undertaken. {International Agreement Rule 24; NOAA Guideline 24}

       2. Curation of objects in the TITANIC Collections shall be carried out in accordance with professional standards current at the time the curation project is to be undertaken. {International Agreement Rule 30; NOAA Guideline 30}

       3. Transport, exhibition, and security of objects in the TITANIC Collections, to the extent that such are not otherwise subsumed within standards for curation, shall be carried out in accordance with best practices current at the time a particular activity is to be undertaken. {International Agreement Rule 23; NOAA Guideline 23}

       4. Documentation of objects in the TITANIC Collections shall be carried out in accordance with reasonably prudent archaeological standards current at the time the documentation project is to be undertaken, and shall include, where relevant, the systematic and complete recording of the provenance of objects in the TITANIC Collections in order to preserve historical, cultural and archaeological information, and the preservation of field notes, plans, sections, photographs, and imaging/recording of the objects. {International Agreement Rules 5, 21-22; NOAA Guidelines 5, 21-22; Interior Archeology Standards & Guidelines, 48 Fed. Reg. 44735-37; 36 C.F.R. § 79.9(b)(6)}

    C. The Trustee shall ensure that all conservation, curation, documentation and related projects for the TITANIC Collections shall be undertaken only under the guidance of, and in the presence of, qualified technical and/professional experts with the knowledge, experience and demonstrated competence appropriate to the projects undertaken, and that all persons associated with a project should be (1) qualified and have demonstrated experience appropriate to their project roles; and (2) fully briefed and understand the work required. {International Agreement Rules 17 & 18; NOAA Guidelines 17 & 18; 36 C.F.R. § 79.4(h); Interior Archeology Standards & Guidelines, 48 Fed. Reg. 44739-40}

    D. The Trustee shall take all necessary measures to protect the physical security of the TITANIC Collections and shall insure it against casualty or loss. {36 C.F.R. § 79.9(b)(3)}

V. *OVERSIGHT OF COMPLIANCE WITH THE COVENANTS AND CONDITIONS* {U.S. Amicus Br. 13-14; Court 4/15/2008 Order, at 5}

    A. NOAA has the authority to gather information and to submit information and/or make reports and recommendations to the Court regarding the compliance of the Trustee with these Covenants and Conditions, subject to the availability of resources, appropriations, and other authorized funds. NOAA is not a formal party to these Covenants and Conditions, and does not possess mandatory legal obligations pursuant to the Covenants and Conditions.

8

B. NOAA's authority shall be exercised within the terms of these Covenants and Conditions.

C. In order to make reports and recommendations to the Court, NOAA shall have the authority under these Covenants and Conditions:

1. To periodically inspect the TITANIC Collections and the Trustee's operations for the conservation, curation, documentation, and other activities in relation to the STAC. For these purposes, NOAA shall have full access to the TITANIC Collections, the Trustee's facilities and personnel, and any documentation NOAA determines is reasonably necessary to evaluate the condition of the STAC. {36 C.F.R. § 79.11}

2. To consult with, and seek advice from, any entity or individual who may be of assistance to evaluate the condition of the TITANIC Collections, including other federal governmental departments and agencies, and those entities or individuals who have such relevant or appropriate professional or academic credentials. Any written reports and views of such entities and individuals consulted shall be timely shared with the Trustee, which shall have the opportunity to timely respond. {16 U.S.C. § 450rr-3; 66 Fed. Reg. 18911}

3. To make recommendations to the Trustee about measures to be adopted to improve the condition of the STAC. The Trustee shall have the opportunity to respond to such recommendations, and shall subsequently report to the Court how it has implemented, or why it has not implemented, such recommendations.

4. To make recommendations as to the deaccessioning of objects from the STAC, pursuant to the procedures detailed in Covenant and Condition III.C.4, *supra*.

5. To make recommendations relating to the performance guarantee detailed in Covenant and Condition V.D, *infra*.

6. To make recommendations as to whether the Trustee is in significant default of an essential Covenant and Condition, pursuant to the procedures detailed in Covenant and Condition V.E, *infra*.

7. To make recommendations as to the designation of a Subsequent Trustee, pursuant to the procedures detailed in Covenant and Condition VI.E, *infra*.

8. To make recommendations in the event of a Trustee's bankruptcy, pursuant to the procedures detailed in Covenant and Condition VII.D, *infra*.

9. To make recommendations that the Court should appoint experts to offer opinions regarding the compliance of the Trustee with these Covenants and Conditions and/or any other matter relevant to the STAC.

        10. To make periodic reports to the Court as to the Trustee's compliance with these Covenants and Conditions.

        11. Subject to the availability of resources, appropriations, and other authorized funds, to perform any other functions requested by the Court regarding oversight of the STAC.

        12. If NOAA determines it will no longer participate in these Covenants and Conditions, it will provide timely notice to the Court and the Trustee.

    D. Performance Guarantees: Trust and Reserve Account.

        1. An incumbent Trustee hereby covenants that it will set aside and pay a designated sum of monies into a reserve account (as specified below) separate and segregated from other accounts, which may not be used for general operating or other routine expenses of the Trustee.

        2. The payments shall be made out of the money which it may now or later have on hand and available for such purposes commencing with the fiscal quarter in which these Covenants and Conditions are executed and the *in specie* salvage award is granted, and quarterly thereafter in equal amounts of US $25,000 per quarter, as a performance guarantee. The payments shall be adequate so that within twenty-five (25) years from the date hereof, and based upon reasonably anticipated rates of return, there shall be an endowment, the annual income of which (based on reasonable rates of return) would be sufficient to cover the estimated annual costs and expenses of conserving and curating the TITANIC Collections for that year. For these purposes the amount of an adequate endowment will be deemed equal to 5 million dollars (US $5,000,000), which may be adjusted from time to time to address changes in circumstances and inflation. Interest that may accrue on said reserve fund shall be retained in the reserve account until such time as the fund shall accumulate 5 million dollars (US $5,000,000), as that amount may be adjusted from time-to-time as hereinabove provided.

        3. Said reserve account shall be and is hereby irrevocably pledged to and held in trust by Trustee for the purpose of providing a performance guarantee for the maintenance and preservation of the TITANIC Collections for the public interest.

        4. All monies in the reserve account may be kept in cash or invested in direct obligations of, or obligations the principal of and interest on which are guaranteed by, the United States Government, obligations of agencies of the United States Government or certificates of deposit secured by such obligations. In all other respects, investment decisions related to the reserve fund are committed to the sound business discretion of the Trustee. Interest on such investments and/or any profits realized from the sale thereof shall be deposited in and become a part of the reserve account until the aggregate amount equals 5 million dollars (US $5,000,000), as from time-to-time may be adjusted.

5. No funds from the reserve account may be withdrawn except upon the prior written request of the Trustee with sufficient explanation as to its need and use, and with the approval of the Court. If a deficiency is created in the Reserve Account by reason of a withdrawal either for purposes of maintaining or preserving the TITANIC Collections or any item thereof, then said deficiency in the reserve account shall be made up from the money first available to the Trustee after covering current expenses of maintaining and preserving the TITANIC Collections.

6. In making any determination related to performance guarantees, the Court may request information from the Trustee and/or may convene and conduct an evidentiary hearing.

7. NOAA may submit information and/or prepare a report and recommendation for the Court, as to any issue related to performance guarantees, and the Trustee may make a timely response to such a submission. The Court may consider any information and/or report and recommendation submitted by NOAA.

E. Trustee's Material Default.

1. A "Material Default" is defined to include that conduct or omission by the Trustee, or such conditions in relation to the TITANIC Collections, that seriously compromise and jeopardize the TITANIC Collections and the objective of ensuring that it is available to posterity. Any violation of Covenants and Conditions III.A, III.C, IV.B, and IV.D will normally be assumed to be a material default.

2. Procedures to be Followed in the Event of a Material Default.

a. NOAA may, in a notice directed to the Trustee (or in a report to the Court in the event of extraordinary circumstances) indicate that a material default has occurred, or will imminently occur, and may recommend a means of response or remediation of such default. The Trustee shall have thirty (30) days to respond to such a notice or report, indicating (i) whether its conduct, or the condition of the Titanic Collections, is such as to merit characterization as a significant default, and (ii) what response or remediation efforts have, in any event, been implemented. If NOAA is satisfied with the Trustee's response that shall end the matter, but if not, NOAA may request a further set of responses from the Trustee, or shall direct a report to the Court indicating that a material default has occurred, or will imminently occur, and recommending a means of response or remediation of such default

b. The Court may request information from the Trustee and/or may convene and conduct an evidentiary hearing in order to ascertain whether a material default has occurred, and what steps the Trustee must undertake to respond or remediate;

11

    c. At the conclusion of any evidentiary hearing NOAA may submit additional information and/or prepare a report and recommendation for the Court, as to whether there has been a material default, and whether the Trustee is unwilling or unable to satisfactorily respond or remediate. The Trustee may make a timely response to such submissions;

    d. The Court may consider any information and/or report and recommendation submitted by NOAA and the Trustee;

    e. The Court may enter an Order as to whether there has been a material default, and, if so, any such action as the Trustee must make, within a specified period of time, to respond or remediate,

    f. If the Court finds that there has been a material default of an essential Covenant and Condition, and the Trustee is unable or unwilling to comply with the Court's order for response or remediation, the Court may order (i) the Trustee to make other reasonable undertakings in order to respond to or remediate the material default; (ii) the Trustee to post additional performance guarantee(s); or (iii) the use of the reserve account in a manner subject to the Court's determination to best protect and preserve the TITANIC Collections.

  F. The Continuing Jurisdiction of the Court.

    1. The Court shall be deemed to have continuing jurisdiction over the Subject TITANIC Artifact Collection as part of the pending admiralty action.

    2. Any Trustee designated under these Covenants and Conditions shall submit itself *in personam* to the jurisdiction of the Court, for the purpose of oversight of compliance with these Covenants and Conditions.

  G. Funding of Oversight

    1. The Trustee shall, as part of its obligations under these Covenants and Conditions, pay reasonable expenses of court-appointed experts. Such experts may be appointed where necessary and appropriate to assist with any issue or determination arising under these Covenants and Conditions.

    2. NOAA may recommend appointment of an expert, or the Trustee may make such recommendation, or the Court may do so *sua sponte*.

VI. PROTECTION OF THE SUBJECT TITANIC ARTIFACT COLLECTION IN THE EVENT OF ITS SALE {U.S. Amicus Br. 14-15; Court 4/15/2008 Order, at 5 & 6 n.12}

    A. The Subject TITANIC Artifact Collection (STAC) may not be sold, transferred, assigned, or otherwise be the subject of a commercial transaction, except as approved by the Court. Such transfer or assignment will be subject to orders of the Court including the provisions of these Covenants and Conditions. {U.S. Amicus Br. 15}

    B. These Covenants and Conditions for the STAC shall run in perpetuity and shall be applied to all subsequent Trustees within the scope of their terms. {Court 4/15/2008 Order, at 5}

    C. Subsequent purchasers, assignees, transferees, or otherwise of the Subject TITANIC Artifact Collection (henceforth "subsequent Trustees") shall be deemed to be on notice of the restrictions contained in these Covenants and Conditions as constituting an equitable servitude and trust imposed for the public interest and that NOAA may represent the public interest in the STAC and exercise oversight functions in relation to these Covenants and Conditions. NOAA may file or cause to be published such public notice of these Covenants and Conditions as it deems in its discretion to be necessary or convenient to protect the public interest. The Trustee shall execute such documents as may be reasonably appropriate to provide such notice.

    D. Any subsequent Trustee must be a qualified institution, as defined in provision II.I, *supra*, and in light of the considerations contained in Annex A, *infra*.

    E. Procedure for Designating a Subsequent Trustee.

        1. The Trustee may propose to the Court a transaction for the sale, transfer, assignment or otherwise of the Subject TITANIC Artifact Collection. The proposal should include all details of the transaction, shall identify the proposed Subsequent Trustee, and indicate how the candidate Subsequent Trustee is, or will become, a qualified institution, and shall include a signed acknowledgement by the proposed Subsequent Trustee to be bound by these Covenants and Conditions. The procedures outlined in this section (Section VI) of the Covenants and Conditions do not apply, however, in situations where the corporate identity of the Trustee is changed or altered by sale, purchase, merger, acquisition, or similar transaction, the form and purpose of which does not effectuate a change in the management, conservation and curation of the STAC.

        2. The Court may appoint experts to conduct and complete due diligence investigations of the candidate Subsequent Trustee, to no less an extent as permitted in regards to the operations of the Trustee. Such experts may, by communication to the Court, Trustee, and NOAA, offer opinions whether (a) the candidate Subsequent Trustee is a qualified institution; and (b) whether the transaction may proceed under the terms and conditions proposed, or whether such must be modified in order that the transaction be in conformance with these Covenants and Conditions.

13

3. The Court may request information from the Trustee on this matter, and/or may convene and conduct a hearing, in order to ascertain whether the candidate Subsequent Trustee is a qualified institution and whether the transaction may proceed.

4. The Court may consider any information and/or report and recommendation submitted by NOAA as to whether the candidate Subsequent Trustee is a qualified institution and whether the transaction may proceed. The incumbent Trustee may timely respond to such NOAA submissions.

5. The Court may enter an Order indicating whether the transaction may proceed, and (if appropriate) designating the candidate proposed as the next Trustee of the Subject TITANIC Artifact Collection. As part of its Order, the Court may confirm that, in the transfer of the STAC, the disposition of any funds having accumulated in the reserve account established in Covenant and Condition V.D. remains with the former Trustee, provided that the subsequent Trustee immediately replaces any such funds, thereby irrevocably pledging those funds for the purpose of providing for the maintenance and preservation of the TITANIC Collections for the public interest, and undertakes its continuing accretion at not less than its then-current levels, such funds being pledged for the conservation and curation of the TITANIC Collection for the public interest.

F. Special Provisions in the Event of a Transaction with an Overseas Entity.

1. Nothing in these Covenants and Conditions precludes the sale, transfer, assignment or other transaction of the Subject TITANIC Artifact Collection to a qualified institution located or constituted outside the United States ("an overseas entity").

2. An Overseas Entity must make, as a condition of the transaction, the declaration contained in provision V.F.2, in a form satisfactory to the Court.

3. As ordered by the Court, an Overseas Entity may be required to post an additional performance guarantee as a condition for being confirmed as the Subsequent Trustee, unless:

   a. The overseas entity is located or constituted in a State Party to the International Agreement Concerning the Shipwrecked Vessel RMS Titanic, done at London, November 6, 2003, or in a country mentioned in 16 U.S.C. § 450rr-3(a); or

   b. The transaction approved pursuant to the procedures indicated at provision VI.E, *supra*, requires that the STAC be leased-back to, or otherwise effectively managed by, a United States entity that has previously served as a Trustee.

14

4. Any performance guarantee required pursuant to provision VI.F.3 of the Covenants and Conditions shall have such additional purposes and objectives as designated by the Court.

## VII. PROTECTION OF THE SUBJECT TITANIC ARTIFACT COLLECTION IN THE EVENT OF A TRUSTEE'S BANKRUPTCY {U.S. Amicus Br. 16; Court 4/15/2008 Order, at 5}

A. Having been declared that any Trustee's title to and possession and use of the Subject TITANIC Artifact Collection (STAC) pursuant to the *in specie* salvage award is subject to a trust to further the public interest in the historical, archeological, scientific, or cultural aspects of the wreck and its artifacts, any Trustee of the STAC that is organized as a business association (whether for-profit, or not-for-profit), shall be required to take all appropriate measures to ensure that these Covenants and Conditions will continue to apply to the STAC for the benefit of the public interest even in the event of a Trustee's bankruptcy, insolvency, dissolution, winding-up, or similar event.

B. To the extent allowed by federal law, the beneficial interests to the STAC, including the public beneficial interest in the historical, archeological, scientific, or cultural aspects of the wreck and its artifacts, shall not be considered as part of the bankruptcy estate of the Trustee in the event of bankruptcy, insolvency, dissolution, winding up, or similar event, and all measures taken by a trustee, debtor-in-possession or similar agent of the Trustee shall be subject to review by the United States District Court for the Eastern District of Virginia to protect the unity and integrity of the STAC under these Covenants and Conditions; provided, however, nothing in this subparagraph shall be construed to deprive the Trustee of any economic benefits relating to the *in specie* salvage award and its title to the STAC consistent with these Covenants and Conditions.

C. Deleted.

D. Procedures in the Event of a Trustee's Bankruptcy.

1. In the event of a Trustee's bankruptcy, insolvency, dissolution, winding-up, or similar event, the Court may take all appropriate action, within its jurisdiction, to enforce these Covenants and Conditions;

2. The Court may request information from the Trustee and/or may convene and conduct a hearing in order to ascertain whether the Trustee's insolvency bond should be forfeited and recommend the modalities under which the funds will be applied to protect the TITANIC Collections;

3. Deleted.

4. Deleted.

5. NOAA shall have the right to make submissions in the foregoing proceedings and represent the public interest.

6. As set forth in V.F.1, jurisdiction over this matter shall remain in the United States District Court for the Eastern District of Virginia. If, however, another bankruptcy court attempts to exercise jurisdiction over the STAC artifacts, the district court in which the bankruptcy case is pending may have the reference withdrawn under 28 U.S.C. § 157, or transfer venue to this Court under 28 U.S.C. § 1412.

## VIII. OTHER PROVISIONS

A. These Covenants and Conditions constitute the entirety of a Trustee's obligations in regards to the TITANIC Collections.

B. Any controversy or claim arising out of or relating to these Covenants and Conditions shall be within the primary competence of the Court exercising jurisdiction in the pending admiralty action.

C. If any provision of these Covenants and Conditions is found to be unconstitutional or unenforceable by a court or tribunal of competent jurisdiction, such provision shall be severed from the whole and the remaining provisions shall be given full force and effect.

D. These Covenants and Conditions shall be interpreted in accordance with federal law.

## ANNEX A

## Considerations for any Evaluation of Whether an Entity is a Qualified Institution

The following considerations are relevant to a determination whether an entity is a qualified institution within the meaning of the Covenants and Conditions. An entity will be deemed to have the capability to provide adequate long-term conservation and curatorial services when the entity is able to:

(a) Accession, label, catalog, store, maintain, inventory and conserve the TITANIC Collections on a long-term basis using reasonable museum and archival practices; and

(b) Comply with the following, as appropriate to the nature and content of the collection;

> (1) Maintain complete and accurate records of the TITANIC Collections, including:
>
>> (i) Records on acquisitions;
>>
>> (ii) Catalog and artifact inventory lists;
>>
>> (iii) Descriptive information, including field notes, site forms and reports;
>>
>> (iv) Photographs, negatives and slides;
>>
>> (v) Locational information, including maps;
>>
>> (vi) Information on the condition of the TITANIC Collections, including any completed conservation treatments;
>>
>> (vii) Approved loans and other uses;
>>
>> (viii) Inventory and inspection records, including any environmental monitoring records;
>>
>> (ix) Records on lost, deteriorated, or damaged objects within the Subject TITANIC Artifact Collection (STAC); and
>>
>> (x) Records on any deaccessions and subsequent transfers, repatriations or discards of objects within the STAC;

(2) Dedicate the requisite facilities, equipment and space in the physical plant to properly store, study and conserve the collection. Space used for storage, study, conservation and, if

exhibited, any exhibition must not be used for non-curatorial purposes that would endanger or damage the collection;

(3) Keep the TITANIC Collections under physically secure conditions within storage, laboratory, study and any exhibition areas by:

(i) Having the physical plant meet local electrical, fire, building, health and safety codes;

(ii) Having an appropriate and operational fire detection and suppression system;

(iii) Having an appropriate and operational intrusion detection and deterrent system;

(iv) Having an adequate emergency management plan that establishes procedures for responding to fires, floods, natural disasters, civil unrest, acts of violence, structural failures and failures of mechanical systems within the physical plant;

(v) Providing fragile or valuable items in a collection with additional security such as locking the items in a safe, vault or museum specimen cabinet, as appropriate;

(vi) Limiting and controlling access to keys, the collection and the physical plant; and

(vii) Inspecting the physical plant for possible security weaknesses and environmental control problems, and taking necessary actions to maintain the integrity of the collection;

(4) Require staff and any consultants who are responsible for managing and preserving the STAC to be qualified professionals;

(5) Handle, store, clean, conserve and, if exhibited, exhibit the TITANIC Collections in a manner that:

(i) Is appropriate to the nature of the material remains and associated records;

(ii) Protects them from breakage and possible deterioration from adverse temperature and relative humidity, visible light, ultraviolet radiation, dust, soot, gases, mold, fungus, insects, rodents and general neglect; and

(iii) Preserves data that may be studied in future laboratory analyses. When material remains in a collection are to be treated with chemical solutions or preservatives that will permanently alter the remains, when possible, retain untreated representative samples of

each affected artifact type, environmental specimen or other category of material remains to be treated. Untreated samples should not be stabilized or conserved beyond dry brushing;

(6) Store site forms, field notes, artifacts inventory lists, computer disks and tapes, catalog forms and a copy of the final report in a manner that will protect them from theft and fire such as:

    (i) Storing the records in an appropriate insulated, fire resistant, locking cabinet, safe, vault or other container, or in a location with a fire suppression system;

    (ii) Storing a duplicate set of records in a separate location;

(7) Inspect the collection for possible deterioration and damage, and perform only those actions as are absolutely necessary to stabilize the collection and rid it of any agents of deterioration;

(8) Conduct inventories to verify the location of the material remains, associated records and any other Federal personal property that is furnished to the repository; and

(9) Provide access to the collection by the public and researchers.

{36 CFR § 79.9}