UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

Debtors.

Case No. 3:16-bk-02230-PMG
Chapter 11 (Jointly Administered)

**LIMITED OPPOSITION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO DEBTORS' MOTION FOR EXTENSION OF EXCLUSIVITY**

The Official Committee of Equity Security Holders (the "Equity Committee") of Premier Exhibitions, Inc. ("Premier"), Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG and the parent company of RMS Titanic, Inc. ("RMST"), the Chapter 11 Debtor in Case No. 3:16-bk-02230-PMG, hereby files its limited opposition ("Opposition") to the *Debtors' Motion for Extension of Exclusivity* [Docket No. 246] ("Motion"), and respectfully represents the following:

**BACKGROUND.**

1.　On June 14, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned, jointly administered bankruptcy case (the "Bankruptcy Case").

2.　The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code Section 1107 and 1108.

3.　No trustee or examiner has been appointed in the Bankruptcy Case.

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

{39833881;1}

4.      On August 24, 2016, the Acting United States Trustee, Guy G. Gebhardt, appointed the members of the Equity Committee. On August 31, 2016, the Equity Committee selected Landau Gottfried & Berger LLP and Akerman LLP as its general bankruptcy counsel.

5.      The Debtors' Motion was filed with the Court on September 30, 2016 and is set for a preliminary hearing on October 25, 2016 at 10:00 a.m.

## OPPOSITION.

### A.    Introduction.

6.      The Committee files this Opposition out of concern that little, if any, progress has been made by the Debtors towards reorganization. No plan has been filed in the Debtors' cases, nor have the Debtors proposed or even commenced negotiation of any form of plan. The Debtors' cases are now more than four months old, and the Debtors have only recently (and concurrently with the Motion) sought to retain financial advisors, a step that, in the ordinary course of a Chapter 11 case, would be a necessary component to progress towards a plan.[2]

7.      Furthermore, the Committee has, in good faith, sought to engage the Debtors in open, honest, and timely communications in an effort to be efficient and achieve the best results for all stakeholders. The Debtors have not responded in kind. Instead, the Debtors have evidenced hostility to the existence of the Committee and the Creditors' Committee appointed in these cases, and have steadfastly refused to respond in a meaningful way to the Committees' requests for information relevant to the formulation of a plan and the development of a viable reorganization strategy in the cases.

8.      The Committee's concerns regarding the lack of direction in the Debtors' cases is, moreover, exacerbated by the apparent inability of the Debtors to reliably fulfill their duties

---

[2] While the Committee believes the Debtors needed a financial advisor, the Committee has objections to a number of aspects of the Debtors proposed retention of a financial advisor and will separately file an objection to the Application of the Debtors for Entry of an Order pursuant 11 U.S.C. §§ 327(a), 328(a) and 1107(b) Authorizing Employment and Retention of GlassRatner Advisory & Capital Group LLC as Financial Advisors and Chief Restructuring Officer for the Debtors and Debtors in Possession Effective as of the Date Hereof [Docket No. 247] (the "Glass Ratner Application"). Furthermore, the Committee will seek retention of its own financial advisor in this case.

as debtors in possession to file accurate monthly operational reports, schedules and statements of affairs, all of which have been repeatedly subject to amendment and even withdrawal.

9. Based on the track record of the Debtors thus far, the Committee believes that an extension of the periods in which the Debtors exclusively may propose and solicit acceptances of a plan is not likely to promote the development of a consensual reorganization strategy or plan in these cases, but will instead lead to continued delay, lack of direction, and an accompanying increase in administrative costs, to the detriment of creditors, parties in interest, and ultimately the Debtors themselves. Accordingly, the Committee opposes the Motion.

10. To the extent that the Court grants relief through an extension of exclusivity, the Equity Committee requests that the extension be limited to the 90-day period requested, conditioned upon the Debtors providing to the Committees access to information and participation in the case that will enable the Equity Committee either to assist in the development of a reorganization plan with the Debtors or permit the Equity Committee to prepare, at the end of the exclusivity extension, to propose a plan that will be in the best interests of the Estates.

B. **The Debtors Bear the Burden of Showing That They Are Entitled to an Extension of Exclusivity.**

11. As the Debtors acknowledge, courts have generally identified four factors that may be considered in determining whether, in any given case, cause exists to warrant an extension of exclusivity: (i) the size and complexity of the case, (ii) the necessity for sufficient time to negotiate and prepare adequate information, (iii) the existence of good faith progress toward reorganization, and (iv) whether creditors will be prejudiced by the requested extension. Motion, ¶¶ 8, 9; *see also, In re: Southwest Oil Co. of Jourdanton, Inc.*, 84 B.R. 448 (Bankr. W.D. Tex. 1987) (discussing factors).

12. However, the Debtors fail to note that the burden of showing that an extension of exclusivity is warranted lies with the Debtors. *Bunch v. Hoffinger Industries, Inc. (In re Hoffinger Industries, Inc.)*, 292 B.R. 639, 643 (Bankr. 8th Cir. 2003) ("the party requesting an

extension of the exclusivity period has the burden of establishing good cause"); *accord, Southwest Oil Co.,* 84 B.R. at 451.

C. **The Debtors Cannot Meet Their Burden That an Extension of the Exclusive Periods is Warranted in These Cases.**

13. In the Motion, the Debtors address three of the four factors that courts have identified for consideration in determining whether an extension of exclusivity is warranted. They claim that the Debtors' bankruptcy cases are complex, that the Debtors have made "good faith progress toward reorganization," Motion, p.5, and that no prejudice will result to creditors and parties in interest if the Motion were granted and exclusivity extended. None of these claims has merit, and the Debtors cannot discharge their burden of showing otherwise.

(1) Lack of Good Faith Progress Towards Reorganization.

14. As noted by the court in *Southwest Oil Co.*, a debtor's diligence in plan negotiation and formulation during the initial 120 days of exclusivity is a paramount consideration in determining whether an extension of exclusivity is warranted: "[i]n virtually every case where an extension has been granted, the debtor has shown substantial progress has been made in formulating a plan during the first 120 days." *Southwest Oil Co.*, 84 B.R. at 451 (denying debtor's motion to extend exclusivity where no showing of substantial progress in plan formulation was made).

15. Yet the Debtors do not even address the status of their efforts to formulate a plan in these cases in their Motion. This is because there has been no progress in this regard. The Debtors have not proposed any plan, nor even an outline of terms that might be contained in a plan, and do not claim in the Motion to have done so. *Compare, Gaines v. Perkins (in re: Perkins),* 71 B.R. 294, 295 – 296 (W.D. Tenn. 1987) (affirming bankruptcy court's extension of exclusivity where plan was on file and enjoyed support of all but a few creditors).

16. Nor have the Debtors begun the process of negotiating a plan with the Committees, creditors and other interested parties and, again, make no claim to have done so in the Motion. *Compare, In re: Friedman's, Inc.* 336 B.R. 884, 888 – 889 (Bankr. S.D. Ga. 2005)

(extension warranted where the case was only 3 months old and the debtor was actively engaged in negotiations with vendors, landlords and other creditors and had arranged for post-petition financing). Indeed, it was not until September 30, 2016 – more than three months after the Petition date and concurrently with the Motion to extend exclusivity – that the Debtors finally deigned to file an application to employ financial advisors, an obviously important component to plan formulation.[3]

17. Instead, in paragraph 18 of the Motion the Debtors list six (6) factors in their Motion as support for their claim that good faith progress has been made towards reorganization, none of which have anything to do with reorganization, and none of which warrant an extension of exclusivity.

18. In paragraph 18(a), the Debtors argue that they have shown good faith progress towards reorganization because they "obtained approval of various first-day motions filed in this case and has [sic] taken necessary steps to implement the authorizations granted by such orders." Motion, ¶ 18(a). The reality is that while these first-day motions may have facilitated the administration of the Debtors and their bankruptcy cases, none have any impact on the Debtors' ability to reorganize.

19. In paragraph 18(b), the Debtors claim that they filed a motion to sell the French Artifacts ("French Artifacts Sale Motion") "early in the case." Motion, ¶ 18(b). This is not evidence of progress towards reorganization. To the contrary, the French Artifacts motion was filed on June 20, 2016, [Docket No. 28]. It was ill-conceived (the motion was procedurally improper) and poorly executed (not all interested parties were given notice of the motion).

20. As noted in the Court's order denying the French Artifacts Sale Motion, based on the Debtors' own admissions in that motion and in Court during the hearing to consider the motion, third parties, including the French government, may assert an "interest" in the French Artifacts within the meaning of section 363(f) of the Bankruptcy Code and Fed.R. Bankr. P.

---

[3] *See* the Glass Ratner Application [Docket No. 247].

7001. The service list for the French Artifacts Sale Motion reflects that the Debtors failed to serve the government of France with the motion in the first instance. Accordingly, the Court denied the French Artifacts Sale Motion, noting further that the motion should have been filed as an adversary proceeding under Fed. R. Bankr. P. 7001. In short, the Debtors lost five to seven weeks of the bankruptcy cases without in any way advancing the sale, or the prospects for reorganization.

21. In paragraph 18(c) of the Motion, the Debtors next claim that they "have file [sic] an adversary proceeding against the Republic of France." Motion ¶ 18(c). Again, this in no way reflects progress toward reorganization. The adversary proceeding was commenced on August 17, 2016,[4] more than three weeks after the Court denied the French Artifacts Sale Motion for procedural incompetence. The adversary proceeding sought to determine whether the Republic of France had any interest in the French Artifacts that were the subject of that motion.

22. On September 30, 2016, the Debtors filed their motion ("Default Motion") requesting that the Clerk of the Court enter a default insofar as the Republic of France had failed to respond to the complaint. On October 4, 2016, the Court entered it Order abating the Default Motion on the ground that it did not comply with Local Rule 7055-2(a). French Adversary, Docket No. 7.

23. Assuming that the Debtors are able eventually to obtain entry of the default, the Debtors still have to obtain a default judgment, by way of motion, a process that likely will take at least another month, assuming that there is no objection to the motion and assuming further that this time there are no deficiencies and the Court is satisfied with the motion.

24. The result is that, at best, the Debtors' bankruptcy cases will be five or six months old before the Debtors are even positioned *to commence* a process to sell the French

---

[4] *See, RMS Titanic, Inc. v. French Republic*, Adv. No. 3:16-ap-00183-PMG ("French Adversary"), Docket No. 1.

Artifacts. There is no telling how long that is likely to take. None of this exhibits good faith progress towards reorganization.

25. In paragraph 18(d) of the Motion, the Debtors claim to have complied with the reporting requirements of the Office of the United States Trustee ("OUST") "including the submission of initial and monthly reports." Again, it is unclear why this would evidence progress toward reorganization – these are simply basic administrative duties of a debtor in possession. In any event, a review of the docket in the RMS Titanic, Inc. case reveals further evidence of incompetence by the Debtors with previously filed, inaccurate, monthly operating reports repeatedly being amended and refiled, or withdrawn entirely. *See* RMS Titanic Docket Nos. 149 – 153, 159, 161, and 225 – 228. Further, the Debtors have failed to file requisite reports for non-filing subsidiaries and even more troubling is the unauthorized and unsubstantiated flow of funds from the Debtors to those non-filing subsidiaries who in turn are compensating the Debtors' officers.

26. In paragraph 18(e) of the Motion, the Debtors claim to have "prepared and filed voluminous and comprehensive statements of financial affairs and schedules of assets and liabilities consistent with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure." Motion, ¶ 18(e). As is the case with the Debtors' reference to monthly operating reports in paragraph 18(d), it is not clear how performance of these basic duties of a debtor advance the reorganization process. After all, these duties are the same duties regularly fulfilled by Chapter 7 debtors of various sizes who commence bankruptcy cases without any prospect for reorganization.

27. Nonetheless, the claim is misleading. The reality is that the Debtors' schedules and statements of financial affairs have been filed, amended and refiled multiple times because of errors and inaccuracies in the initial filings.[5]

---

[5] 28. At the initial meeting of creditors pursuant to section 341(a) of the Bankruptcy Code on August 10, 2016, the United States Trustee ("UST") requested that the schedules be refiled because the Debtors had listed *every* claim as contingent, unliquidated and disputed. The Debtors complied with that request. See RMS Titanic, 16-02230, Dockets 172 and 201; Dinosaurs Unearthed, 16-02238, Dockets 24 and 27; Premier Exhibitions Management LLC,

28. In paragraph 18(f) of the Motion, the Debtors claim to "have worked extensively and cooperatively with the Creditors' Committee and the Equity Committee" and to have "provided substantial documentation and information" to the Committees. With respect, this is not the reality the Committees have experienced.

29. Since their appointment and retention of counsel, the Committees have made open, honest, and timely communications with the Debtors a priority in an effort to be efficient and achieve the best results for all stakeholders. The Committees expected the Debtors to do the same. Unfortunately, the Debtors have not responded in kind. The Debtors have worked assiduously to undermine the operations of the Committees and have opposed the Committees' very existence.

30. On August 17, 2016 the Court entered an order authorizing monthly payment of compensation to estate professionals upon submission of time records to the named parties in that order [Docket No. 141]. In September, the Debtors submitted their time records to the Committees as required by that order. The Committees' review of those time records reveals the following: The Committees were appointed by the UST on August 24, 2016. The next day, on August 25, the Debtors' professionals spoke with Daoping Bao, Premier's Chairman and CEO, about the formation of the Committees and were instructed to seek to have the Committees disbanded. The time records reflect that between August 26 and August 31, the Debtors' lawyers accumulated nearly $9,000 in time billed to researching and drafting a pleading to disband the Committees. During this same period, the Debtors stonewalled the Committees' efforts to obtain information. At the emergency hearing on the Debtors' entry into the Orlando Lease the Committees expressed their frustration to the Court that requested information was not forthcoming from the Debtors. Promptly thereafter the Debtors issued a modicum of responses to outstanding requests. But to date, the Debtors have not responded to Committee requests with the diligence required to make progress in this case.

---

16-02233, Dockets 25 and 28; Premier Exhibitions, 16-02232, Dockets 34, 38, and 39; and Premier Merchandising, 16-02236, Docket 25.

31.     In paragraph 18(g) of the Motion, the Debtors note that they obtained court approval "for the rejection of an unexpired leases [sic] of nonresidential real property" in New York, New York.  This is the only assertion by the Debtors in the Motion that bears any resemblance to reality.  However, it is also the Debtors' sole accomplishment in the more than four months since then Petition Date.  As such it is hardly enough to warrant the extension of exclusivity sought in the Motion.

(2)     <u>The Debtors' Cases Are Neither Unusually Large Nor Unusually Complex and an Extension of Exclusivity is Not Warranted.</u>

32.     In two paragraphs of the Motion, the Debtors purport to address the factor dealing with the size and complexity of a chapter 11 case as a possible basis for extending exclusivity.  Motion, ¶¶ 11, 14;[6] *see also,* Motion, ¶ 7 (quoting legislative history).  However, while the Debtors cite authority in support of the proposition that an unusually large or complex case may give rise to cause to extend exclusivity, there is nothing in the Motion that discusses what, in these cases, is unusually large or complex.

33.     Instead, the Debtors merely recite that they are attempting to sell "certain French Artifacts to have sufficient capital to fund a chapter 11 plan of reorganization to pay all creditors in full," and argue that this should afford them an opportunity to propose a plan. Motion, ¶ 14.  In no way does this demonstrate unusual complexity:  plans based on sales of some or all of an estate's assets are the bread and butter of bankruptcy practice.

34.     The reality is that there is nothing about the Debtors' cases that is so large or complex to explain the Debtors' lack of progress to date.  While there are multiple Debtors, unsecured claims aggregate only approximately $12 million, and secured claims approximate only $3 million.  *See* Debtors' *Chapter 11 Case Management Summary* [Docket No. 8], at p. 16.  Moreover, the secured creditors in the case are all participants in one loan transaction

---

[6] A number of the paragraphs in the Motion are numbered incorrectly.  While these paragraphs are numbered 11 and 14, they appear consecutively in the Motion, which does not contain any paragraphs numbered 12 or 13.  In citing to the Motion, the Committee will use the paragraph numbers that appear in the Motion.

evidenced by a Revised and Restated Secured Promissory Note and Guarantee and related loan documents between Haiping Zou, Yanzi Gao and Jihe Zhang, as secured lenders (the "Secured Lenders"), and certain of the Debtors, as borrowers.  The Secured Lenders do not appear to be particularly adversarial to the Debtors, as is apparent from the fact that neither they nor the Debtors have seen the need to either obtain an order of the Court or a stipulation to allow the Debtors to use their alleged cash collateral.  Moreover, certain of the Secured Lenders also are equity holders in Premier Exhibitions Inc. and members of a Control Group that controls the Debtor through a voting trust under which these Secured Lenders have given the Debtors' Chairman and CEO, Daoping Bao, the right to vote their shares in order to control the Board and management of the Debtors.  Accordingly, negotiating with this group of insiders should not present a challenge to the Debtors as they are part of the Control Group that controls the Debtors.  See 11 U.S.C. § 101(31)(B)(iii).

35.    Nor is there anything in the authorities cited in the Motion that would compel a different conclusion. *In re McLean Industries, Inc.*, 87 B.R. 830 (Bankr. S.D.N.Y. 1987), was a case that involved four debtors, two of which in combination "operated one of the largest container lines and cargo shipping companies in the world," and which, within  seven months of the commencement of the cases, had generated 845 numbered docket entries, exclusive of proofs of claim.  *McLean,* 830 B.R. at 831.  Moreover, the lead debtor had developed a business plan, which had been made available to creditors and discussed with the committee in the case.  *Id.* at 832.  The cases involved substantial net operating loss carry forwards, the utilization of which would impact a plan in the case.  *Id.* at 833.  None of this is remotely analogous to the Debtors' cases.

36.    *In re Homestead Partners, Ltd.*, 197 B.R. 706 (Bankr. N.D. Ga. 1996) is also wholly distinguishable.  It dealt with a single asset bankruptcy where the debtor had proposed a plan based on the "new value" exception to the absolute priority rule of section 1129(b)(2)(B)(ii) of the Bankruptcy Code.  The issue considered by the court was whether the proposal of a new value plan was in and of itself ground for terminating exclusivity.  Here, the

Debtors have not proposed a plan, let alone a "new value" plan.  None of these issues are present in the Debtors' cases.

37. *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294 (W.D. Tenn. 1987) is also distinguishable.  *Perkins* involved a "twenty-plus page Bankruptcy Docket" and, unlike the Debtors, the debtor in *Perkins* had proposed a plan and "received acceptances from all but a few of the creditors." *Perkins,* 71 B.R. at 296.

38. In sum, the Debtors cannot meet their burden of showing that their cases are sufficiently complex and large to warrant, under the circumstances (and especially the failure of the Debtors to demonstrate any meaningful progress towards reorganization), the extension of exclusivity sought in the Motion.

(3)  <u>Extending Exclusivity As Requested by the Debtors Will Prejudice Creditors and Parties in Interest.</u>

39. In the Motion, the Debtors argue, without foundation or support, that the Debtors would be prejudiced if exclusivity were not extended because it would "deny the Debtors a meaningful opportunity to negotiate and propose a confirmable plan" and "<u>could</u>" have the effect of "encouraging the development of competing multiple plans that <u>could</u> lead to unwarranted confrontations, litigation, and administrative expenses." Motion, ¶ 21 (emphasis added).

40. On its face this is specious.  The Debtors have had four months in which to negotiate and propose a plan, but have taken no meaningful steps to do either.  There is every reason to believe that, based on the Debtors' record to date, a blanket extension of exclusivity will not foster progress towards the negotiation and proposal of any plan or resolution of the Debtors' cases, but will merely encourage further delay and lack of direction, and the mounting administrative costs that implies, to the real detriment of creditors and parties in interest.

41. The Debtors further argue in the Motion that the Debtors would be prejudiced if an extension of exclusivity were not granted because it may lead to "a creditor-initiated plan lacking the necessary information, foundation, and support." Motion, 21.  Given the Debtors' steadfast failure to cooperate with the Committees or to provide them with the information they

legitimately have requested, this argument is self-serving and circular. It is also wholly unpersuasive.

42. The Equity Committee represents the shareholders of the company, the parties with the residual interest in what appears to be a solvent though illiquid entity. Rather than being excluded from the plan process, the Debtors should be encouraging the Committees' participation. That is a core concept of the Bankruptcy Code. In *In re Mother Hubbard, Inc.*, 152 B.R. 189 (W.D. Mich. 1993), the bankruptcy court noted that Bankruptcy Code § 1121 does not merely provide the debtor an exclusive period in which to confirm a plan, but also works to limit the period of time that other parties in interest are precluded from filing a competing plan. That Code section "ensures that creditors will not endure unreasonable delay after a debtor files chapter 11." *Id.* at **18. Thus, the Code contemplates that other parties in interest should have an opportunity to file a plan after the debtor has had a reasonable opportunity to do so. In fact, the potential for a third party to file a plan may "motivate the debtor to more earnestly negotiate an acceptable consensual plan." *Id.* at **19. More to the point, the prospect of a competing plan also fosters the implied Bankruptcy Code policy of "creditor democracy." *Id.* at **21, FN 14.

43. If exclusivity is to be extended, the Equity Committee should be afforded the opportunity to do the work that the Debtors so far have failed to do. In that regard, the Equity Committee intends to seek authority to retain financial advisors that will, among other things, help the Equity Committee evaluate the Debtors and any reorganization plans proposed by the Debtors and to independently assess the best way to restructure the Debtors in order to maximize value and a return for all stakeholders. In the meantime, any extension of exclusivity should be conditioned upon the Debtors honoring their obligations to engage in meaningful dialog with and provide critical information to the Committees.

**D.    Conclusion.**

Accordingly, and for the reasons set forth above, the Committee respectfully requests that if the Court enters an order extending exclusivity, the extension be limited to the 90-day period requested by the Debtors with explicit reservation of the Committees' right to develop plan

proposals in the interim and relief from exclusivity in favor of the Committees at the end of the 90-day extension period for the Committees own 90-day period of exclusivity to run immediately thereafter.

Date: October 21, 2016

Peter J. Gurfein, Esq.
**LANDAU GOTTFRIED & BERGER LLP**
1801 Century Park East, Suite 700
Los Angeles, California 90067
(310) 557-0050
(310) 557-0056 (Facsimile)
pgurfein@lgbfirm.com

-and-

**AKERMAN LLP**

By: */s/ Jacob A. Brown*
Jacob A. Brown
Florida Bar No. 170038
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
(904) 798-3700
(904) 798-3730 (Facsimile)
Jacob.brown@akerman.com

Attorneys for the Official Committee of Equity Security Holders of Premier Exhibitions, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 21, 2016, the foregoing was transmitted to the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a notice of electronic filing to all creditors and parties in interest who have consented to receiving electronic notifications in this case. In accordance with the Court's Order Granting Debtors' Motion for an Order Pursuant to 11 U.S.C. § 105(a) and Rule 2002 Establishing Notice Procedures (Doc. 140), a copy of the foregoing was also furnished on October 21, 2016 by U.S. mail, postage prepaid and properly addressed, to the Master Service List attached hereto.

*/s/ Jacob A. Brown*
Attorney

**MASTER SERVICE LIST**
*Case No. 3:16-bk-02230-PMG*

417 5th Ave Real Estate, LLC
c/o Sebastian Capital, Inc.
417 Fifth Avenue
New York, NY 10016

ABC Imaging
1155 21st Street NW
Suite M400
Washington, DC 20036

ATS, Inc.
1900 W. Anaheim Street
Long Beach, CA 90813

CBS Outdoor/Outfront Media
185 US Highway 48
Fairfield, NJ 07004

Enterprise Rent-A-Car Canada
709 Miner Avenue
Scarborough, ON M1B 6B6

Lange Feng
15953 107th Avenue
Surrey, BC V4N 5N7

George Young Company
509 Heron Drive
Swedesboro, NJ 08085

Hoffen Global Ltd.
305 Crosstree Lane
Atlanta, GA 30328

MNP LLP
15303 - 31st Avenue
Suite 301
Surrey, BC V3Z 6X2

A-1 Storage and Crane
2482 197th Avenue
Manchester, IA 52057

A.N. Deringer, Inc.
PO Box 11349
Succursale Centre-Ville
Montreal, QC H3C 5H1

Broadway Video
30 Rockefeller Plaza
54th Floor
New York, NY 10112

Dentons Canada LLP
250 Howe Street
20th Floor
Vancouver, BC V6C 3R8

Expedia, Inc.
10190 Covington Cross Drive
Las Vegas, NV 89144

George F. Eyde LLC
300 S. Washington Square
Suite 400
Lansing, MI 48933

Gowling Lafleuer Henderson
550-2300 Burrard Street
Vancouver, BC V6C 2B5

Kirvin Doak Communications
7935 W. Sahara Avenue
Las Vegas, NV 89117

Morris Visitor Publications
PO Box 1584
Augusta, GA 30903

NASDAQ Stock Market, LLC
805 King Farm Blvd.
Rockville, MD 20850

National Geographic Society
1145 - 17th Avenue NW
Washington, DC 20036

NYC Dept. of Finance
PO Box 3646
New York, NY 10008

NY Dept. of Taxation and Finance
Attn: Office of Counsel
W.A. Harriman Campus Bldg. 9
Albany, NY 12227

NY Dept. of Taxation and Finance
PO Box 4127
Binghamton, NY 13902

PacBridge Limited Partners
22/F Fung House
19-20 Connaught Road
Central Hong Kong

Pallet Rack Surplus, Inc.
1981 Old Covington Cross Road NE
Conyers, GA 30013

Ramparts, Inc.
d/b/a Luxor Hotel and Casino
3900 Las Vegas Blvd. South
Las Vegas, NV 89119

Screen Actors Guild
1900 Broadway
5th Floor
New York, NY 10023

Seaventures, Ltd.
5603 Oxford Moor Blvd.
Windemere, FL 34786

Sophrintendenza Archeologica
di Napoli e Pompei
Piazza Museo 19
Naples, Italy 80135

Structure Tone, Inc.
770 Broadway
9th Floor
New York, NY 10003

Syzygy3, Inc.
1350 6th Avenue
2nd Floor
New York, NY 10019

Time Out New York
475 Tenth Avenue
12th Floor
New York, NY 10018

TPL
3340 Peachtree Road
Suite 2140
Atlanta, GA 30326

TSX Operating Co.
70 West 40th Street
9th Floor
New York, NY 10018

Verifone, Inc.
300 S. Park Place Blvd.
Clearwater, FL 33759

Sam Weiser
565 Willow Road
Winnetka, IL 60093

WNBC - NBC Universal Media
30 Rockefeller Center
New York, NY 10112

Jihe Zhang
59 Dongsanhuan Middle Road
Fuli Shuangzi Towers, Building A

                                                              Suite 2606, Chaoyang Dist.
                                                              Beijing, China 100021

Haiping Zou
Unit 110-115 Wanke Qingqing Homeland
Dougezhuang, Chaoyang Dist.
Beijing, China 100021

~#4815-9164-9591 v.1~