# EXHIBIT A



ENGAGEMENT LETTER

October 20, 2016

***Privileged and Confidential***

To: The Official Equity Committee of Equity Security Holders of Premier Exhibitions, Inc.

Dear Equity Committee Members:

This letter agreement confirms the understanding and agreement (the "*Agreement*") by and between Teneo Securities LLC, a Delaware limited liability company ("*Teneo*"), and the Official Equity Committee of Equity Security Holders (the "*Equity Committee*") of Premier Exhibitions, Inc., Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG and the parent company of RMS Titanic, Inc., the Chapter 11 Debtor in Case No. 3:16-bk-02230-PMG (collectively with any entity formed or used for the purpose set forth herein, the "*Debtors*"). Teneo acknowledges and agrees that this Agreement and the Indemnification Agreement annexed hereto as Schedule 1 are both subject to Bankruptcy Court (defined below) approval and the terms of the order of the Bankruptcy Court approving Teneo's retention.

1. **Engagement**. Teneo is being retained to provide financial advisory services for the Equity Committee in connection with the Debtors' restructuring and Chapter 11 cases (the "*Chapter 11 Cases*"), including the analysis, consideration and potential development of a Chapter 11 plan or plans of reorganization, before the United States Bankruptcy Court for the Middle District of Florida (the "*Bankruptcy Court*"). Upon retention, Teneo will work at the direction of the Equity Committee to:

   a. Review and analyze the Debtors' operations, assets, financial condition, business plan, strategy, and operating forecasts;

   b. Evaluate the assets and liabilities of the Debtors and evaluate the Debtors' strategic and financial alternatives;

   c. Assist in the determination of an appropriate go-forward capital structure for the Debtors;

   d. Analyze and assist with any proposed financing(s), including assistance with obtaining debtor in possession and/or exit financing;

   e. Assist the Equity Committee in developing, evaluating, structuring and negotiating the terms and conditions of a restructuring, plan of reorganization, or sale transaction, including the value of the securities, if any, that may be issued to the Equity Committee under any such restructuring, plan of reorganization, or sale transaction;

 f. Analyze any merger, divestiture, joint-venture, or investment transaction, including the proposed structure and form thereof;

 g. Analyze any new debt or equity capital (including advice on the nature and terms of new securities) and assist with obtaining new debt or equity capital;

 h. Assist in the evaluation and investigation of prepetition transactions in which the Debtors and/or their insiders were involved;

 i. If requested by the legal counsel to the Equity Committee, prepare report(s) with respect to any and all proposed financings, the valuation of the Debtors (as a going concern or otherwise) or any specific assets of the Debtors, or proposed merger, divestiture, joint-venture, or investment transaction;

 j. Provide the Equity Committee with other appropriate general restructuring advice as the Equity Committee and its counsel deems appropriate; and

 k. Testify in connection with Teneo's provision of any of the above-mentioned services in the Bankruptcy Court or other court.

The services and compensation arrangements set forth herein do not encompass any other investment banking or financial advisory services not set forth in this paragraph 1. Notwithstanding anything contained in this Agreement to the Contrary, Teneo shall have no responsibility for designing or implementing any initiatives to improve the Debtors' operations, profitability, cash management or liquidity. Teneo makes no representations or warranties about the Debtors' ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a restructuring, sale transaction or plan of reorganization.

2. **Term of Agreement**. This Agreement shall commence upon its execution by both parties and shall continue until (i) either party gives 30 days prior written notice of termination to the other party, (ii) the effective date of a confirmed plan in the Chapter 11 cases, or (iii) as otherwise ordered by the Bankruptcy Court or agreed by Teneo and the Equity Committee. Upon any termination, the provisions of Paragraph 3 (to the extent applicable) shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees due on or before the effective date of termination. The provisions of Paragraphs 2, 3, 5, 6, 7, 8, 9, 11, 12 and 13 shall survive the termination of this Agreement and shall remain in effect.

3. **Fees and Expenses**.

All fees and expenses hereunder shall be paid subject to application to the Bankruptcy Court pursuant to the court-approved compensation procedures and allowance by the Bankruptcy Court.

   a) Compensation: The Debtors shall pay Teneo on an hourly basis based upon the time incurred by Teneo professionals in providing the services under this Agreement to the Equity Committee as follows:

   *Title / Hourly Rates:*

   | | |
   |---|---|
   | Brent C. Williams, Senior Managing Director | $565 |
   | Brendan J. Murphy, Managing Director | $525 |
   | Analyst to Vice President | $320 to $480 |

Notwithstanding the above hourly rates, Teneo hereby agrees to cap all fees for any given month at no more than $25,000 (the "Monthly Fee Cap").

   b) Equity Distribution Fee: In the event there is a distribution to the Debtors' equityholders, Teneo shall be entitled to allocation based on the amount of the cash, cash equivalent or value of equity distributed as follows:

   1.00% of the first $20 million, plus

   1.25% of the amount of between $20 million and $40 million, plus

   1.50% of the amount above $40 million;

Aggregate Consideration, for purposes of calculating the Equity Distribution Fee, shall be deemed to be the total amounts paid to or otherwise realized by, the Debtors' equity security holders in connection with the Restructuring or any transaction related thereto.

In the event that the aggregate consideration to equity holders comprises securities, in whole or in part, the value of such securities, for purposes of calculating the Equity Distribution Fee, shall be the fair market value thereof, as the Debtors and the Equity Committee shall mutually agree (and in the event of no mutual agreement, as determined by the Bankruptcy Court), on the day prior to the public announcement of such Restructuring; provided, however, that the value of securities with an existing public trading market shall be determined by the average of the last sales prices for such securities on the five trading days ending five days prior to the consummation of the transaction in question.

It is further agreed that if, at any time during the period commencing on the effective date of termination of this Agreement in accordance with Section 2 and ending 6 months from the date thereto, either the Debtors effect a distribution to its equity holders, or enters into an agreement (or reaches an agreement in principle) in respect thereof, in each case Teneo will be entitled to allocation calculated in accordance with this Section 3(b).

    c) <u>Expense Reimbursement</u>: Teneo shall be entitled to monthly reimbursement of reasonable documented out-of-pocket expenses incurred in connection with the services to be provided under this Agreement, as permitted by applicable rules and guidelines of the Bankruptcy Court and the Office of the United States Trustee, and by the Court's Order Granting Motion to Establish Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals [Docket 141] and the Expense Reimbursement Guidelines for the United States Bankruptcy Court for the Middle District of Florida, attached hereto as **Exhibit A.**

    d) <u>No Third Party Fees</u>: No fee payable to any third party, by the Debtors, the Equity Committee or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to Teneo.

    e) Out-of-pocket expenses shall include, but not be limited to all reasonable documented travel expenses, meals, computer and database research charges, reasonable documented outside attorney fees (including, without limitation, engagement documentation and similar pleadings by outside counsel), messenger services and long-distance telephone calls incurred by Teneo in connection with the services to be provided to the Equity Committee and as permitted by applicable rules and guidelines of the Bankruptcy Court and the Office of the United States Trustee and by the Court's Order Granting Motion to Establish Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals [Docket 141] and the Expense Reimbursement Guidelines for the United States Bankruptcy Court for the Middle District of Florida, attached hereto as **Exhibit A.** Teneo will not seek reimbursement for non-working travel time.

4. **Company Information**. The Equity Committee recognizes and confirms that in rendering services hereunder, Teneo will be using and relying on, and assuming the accuracy of, without any independent verification, data, material and other information (collectively, the "*Information*") furnished to Teneo by or on behalf of the Equity Committee, the Debtors or other third parties (including their agents, counsel, employees and representatives). The Equity Committee understands that Teneo will not be responsible for independently verifying the accuracy of the Information provided to Teneo and shall not be liable for inaccuracies in any such Information. Unless required by subpoena or other valid legal or regulatory process, and prior written notice is provided to you so that you may challenge such disclosure, Teneo will not disclose to any third party (other than Teneo's or the Equity Committee's counsel) any portion of the Information provided by the Equity Committee which constitutes confidential, proprietary or trade secret information except in furtherance of the Equity Committee's engagement hereunder; provided that Teneo may disclose Information provided by the Debtors to anyone who has executed a non-disclosure agreement with the Debtors. Teneo will not use such confidential Information for any purpose other than pursuant to Teneo's engagement hereunder.

5. **Indemnification**. The Debtors shall provide indemnification and other obligations set forth in Schedule I hereto, which is an integral part hereof and is hereby incorporated by reference.

6. **Bankruptcy Court Approval**. This Agreement is subject to the entry of an order by the Bankruptcy Court in the Chapter 11 Cases approving the retention of Teneo pursuant to the terms hereof. The Equity Committee shall use commercially reasonable efforts to obtain authorization of the retention of Teneo, *nunc pro tunc* to Thursday, October 20, 2016, on the terms and provisions in this Agreement. The Equity Committee shall supply Teneo with a draft of the retention application and proposed order prior to the filing of such application and proposed order to enable Teneo and its counsel to review and comment thereon. The order approving the Agreement and authorizing the retention shall be acceptable to Teneo in its sole and absolute discretion.

7. **Limited Role; No Additional Services**. In performing its services pursuant to this Agreement, Teneo is not assuming any responsibility for the decision of the Debtors or any third party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any restructuring, sale transaction or other transaction.

8. **No Commitment**. It is understood and agreed that nothing contained in this Agreement would constitute an express or implied commitment by Teneo or any of its respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate agreement relating to the financing, and this Agreement does not constitute any representation, warranty or agreement that any transaction will be available.

9. **Engagement & Reliance**. The Equity Committee recognizes that Teneo has been retained only by the Equity Committee and that the Equity Committee's engagement of Teneo is not deemed to be on behalf of and is not intended to and does not confer rights upon the Debtors or any of their shareholders, partners or other owners, employees or representatives of the Debtors, or any individual members of the Equity Committee. Unless otherwise expressly agreed, no one other than the Equity Committee is authorized to rely upon the engagement of Teneo or any statements, advice, opinions or conduct by Teneo.

10. **Use of Affiliates**. In connection with the services to be provided hereunder, Teneo may employ the services of its affiliates and may share with any such entity any information concerning the Equity Committee or the Debtors; provided, however, that Teneo and such entities shall hold any non-public information confidential in accordance with their respective customary policies relating to non-public information. Any such entity so employed shall be entitled to all of the benefits afforded to Teneo hereunder and under the indemnification provisions hereof and shall be entitled to be reimbursed for its costs and expenses on the same basis as Teneo.

11. **Entire Agreement**. This Agreement represents the entire Agreement between the parties and may not be modified except in writing signed by both parties. This Agreement may be executed in counterparts, each of which shall constitute an original. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.

12. **Publicity**. The Equity Committee acknowledges and agrees that Teneo may, at its option and expense, place a customary "tombstone" announcement in such newspapers and periodicals as it may choose, describing its services in connection with any transaction.

13. **Governing Law**. This Agreement will be governed by, and construed in accordance with, the laws of the State of New York without regard to the provisions, policies or principals thereof relating to choice or conflicts of law. Each of the parties hereto agrees to submit any claim or dispute arising out of or related to this Agreement to the Bankruptcy Court in the Chapter 11 Cases. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any Florida state or federal court of competent jurisdiction sitting in Jacksonville, Florida, to whose jurisdiction each of the parties hereto hereby irrevocably submit. Nothing in this paragraph shall pertain to or affect the authority of a bankruptcy court having jurisdiction over the Debtors to consider and rule upon Teneo's applications for interim or final compensation pursuant to this Agreement.

14. **Other Matters**. If this letter correctly sets forth our Agreement on the matters covered herein, please so indicate by signing and returning the enclosed copy of this letter and signing and retaining the duplicate we are enclosing for your records. Upon execution by both parties, this letter will constitute a legally binding Agreement between the Equity Committee and Teneo.

We trust the foregoing terms and provisions are agreeable to you, and request that you sign and return the enclosed copy of this Agreement to us at your earliest convenience.

        TENEO SECURITIES LLC

By: _____
Name: Henry van Dyke V
Title: Chief Executive Officer

By: _____
Name: Brent C. Williams
Title: Senior Managing Director

THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF PREMIER EXHIBITIONS, INC.

By: _____
Name:
Title:

 **INDEMNIFICATION**

## Schedule I

This Schedule I is a part of and is incorporated into that certain letter agreement (the "*Agreement*") dated as of October 20, 2016 by and between the Official Committee of Equity Security Holders (the "*Equity Committee*") of Premier Exhibitions, Inc., Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG and the parent company of RMS Titanic, Inc., the Chapter 11 Debtor in Case No. 3:16-bk-02230-PMG (collectively with any entity formed or used for the purpose set forth herein, the "*Debtors*", and Teneo Securities LLC, a Delaware limited liability company ("*Teneo*"). Capitalized terms not defined herein shall have the same meaning assigned in the Agreement.

The Debtors shall, jointly and severally, indemnify and hold harmless Teneo and its affiliates and their respective directors, officers, employees, members, attorneys, other agents and consultants appointed by any of the foregoing and each other person, if any, directly or indirectly controlling Teneo or any of its affiliates (Teneo and each such person and entity being referred to as an "*Indemnified Person*"), from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "*Liabilities*") arising out of or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to the Agreement, any transaction contemplated thereunder or any Indemnified Persons' actions or inactions in connection with any such advice, services or transaction (the "*Services*"), and will reimburse each Indemnified Person for all reasonable documented fees and expenses (including the reasonable documented fees and expenses of outside counsel) (collectively, "*Expenses*") as they are incurred in investigating, preparing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party relating to the Services (collectively, "*Actions*"); provided that the Debtors will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a final judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct in connection with the Services (other than an action or failure to act undertaken at the request or with the consent of the Debtors). The Debtors shall also, jointly and severally, reimburse such Indemnified Person for all Expenses as they are incurred in connection with enforcing such Indemnified Persons' rights under the Agreement (including without limitation its rights under this Schedule I). Such Indemnified Person shall reasonably cooperate, at the cost of the Debtors, with the defense of any Actions.

Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought under the Agreement, such Indemnified Person shall promptly notify the Debtors and the Equity Committee in writing; provided that failure to so notify the Debtors and the Equity Committee shall not relieve the Debtors from any liability which the Debtors or any other person may have on account of this indemnity or otherwise, except to the extent the Debtors shall have been materially prejudiced by such failure. The Debtors shall, upon receipt of notice, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Teneo. Any Indemnified Person shall have the right to employ separate counsel in any Action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person, unless: (i) the Debtors have failed promptly to assume the

defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Person and the Debtors, and such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Debtors; provided that the Debtors shall not in such event be responsible hereunder for the fees and expenses of more than one separate counsel in connection with any Action in the same jurisdiction, in addition to any local counsel. The Debtors shall not be liable for any settlement of any Action effected without its written consent (which shall not be unreasonably withheld, conditioned or delayed). In addition, the Debtors will not, without prior written consent of Teneo (which shall not be unreasonably withheld, conditioned or delayed), settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of such Indemnified Person from all liabilities arising out of such Action.

If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason or insufficient to hold such Indemnified Person harmless, then the Debtors and Teneo will contribute to the Liabilities and Expenses for which such indemnification is held unavailable or insufficient (1) in such proportion as is appropriate to reflect the relative benefits received (or anticipated) from the proposed transaction by the Debtors on the one hand and the Indemnified Person on the other, in connection with Teneo's engagement referred to above (whether or not the transaction contemplated by the engagement is consummated) or (2) if (but only if) the allocation provided in clause (1) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated) from the proposed transaction by the Debtors on the one hand and the Indemnified Person on the other, but also the relative fault of the Debtors and the Indemnified Person, as well as any other relevant equitable considerations, in each case subject to the limitation that the contribution by Teneo will not exceed the amount of fees actually received by Teneo pursuant to Teneo's engagement. It is hereby agreed that the relative benefit to the Debtors on the one hand and Teneo on the other, with respect to Teneo's engagement, shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received by the Debtors in connection with any sale transaction, whether or not consummated, or the total value received or proposed to be received by the Debtors' creditors and its stockholders in connection with any restructuring, for which Teneo is engaged to render financial advisory services bears to (2) all fees actually received by Teneo in connection with such engagement (excluding reimbursable expenses).

No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Debtors or the Equity Committee for or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, services or transactions except for Liabilities (and related Expenses) of the Debtors or the Equity Committee that are determined by a final judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct in connection with any such advice, actions, inactions or services (other than an action or failure to act undertaken at the request or with the consent of the Debtors).

These indemnification, contribution and other provisions of this Schedule I shall (i) remain operative and in full force and effect regardless of any termination of the Agreement or completion of the engagement by Teneo; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have.