**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | |
| RMS TITANIC, INC., et al., | ) | Case No. 3:16-bk-2230-PMG |
| Debtors. | ) | Chapter 11 |
| _____ | ) | |

**OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS' OBJECTION TO DEBTORS' MOTION TO**
**EXTEND EXCLUSIVITY AND RESPONSE TO EQUITY**
**COMMITTEE'S MOTION TO TERMINATE EXCLUSIVITY**

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of RMS Titanic, Inc. and its debtor affiliates (together, the "Debtors") objects to the Debtors' motion to extend exclusivity by ninety days [ECF No. 382] and responds as follows to the motion of the Official Committee of Equity Security Holders (the "Equity Committee") to terminate exclusivity [ECF No. 380]:

**Objection to Debtors' Motion**

1.    The Debtors' argument that their unsecured creditors would not be prejudiced by the requested exclusivity extension through April 10 is disingenuous, at best:

(a)    From the commencement of these cases, the Debtors have been focused almost exclusively on selling select French artifacts to repay their creditors and reorganizing around the balance of the Titanic collection. To date, the Debtors have done little to pursue alternative strategies, such as the sale of the entire Titanic collection,

subject to the Revised Covenants and Conditions (reported at 742 F. Supp. 2d 784).  The

Debtors have acknowledged as much in their motion.  (*See* Debtor Mot. ¶17.b, stating the

RFP issued to auction houses solicited proposals "in connection with a potential sale of

the French artifacts should the Debtors obtain a favorable outcome in the French

Adversary").[1]

       (b)    The cash collateral budget prepared by the Debtors' financial

advisor and shared with the Creditors' Committee earlier this month indicates the Debtors

are operationally insolvent and are expected to run out of cash in a matter of months

absent a DIP loan.

       (c)    The Debtors have acknowledged that their ability to close on a DIP

loan hinges on their obtaining clean title to the French artifacts, which in turn requires

that they prevail in the pending adversary proceeding against France, which has yet to

occur.

       2.    Accordingly, unsecured creditors <u>would</u> be prejudiced by an exclusivity

extension, as such relief would permit the Debtors to continue to avoid pursuing a dual-

track sale process, a strategy both official committees have pressed the Debtors to pursue

since September, even though the Debtors' preferred strategy carries tremendous risks to

the success of these cases.  The Debtors' statement that they have received no proposals

from any party regarding an alternative strategy (Debtor Mot. ¶¶20, 22) is patently false.

---

[1]  By letter, dated December 23, 2016, the Debtors advised the official committees that the Debtors "fully intend to consult with any auction company ultimately retained on any potential sale of the collection in its entirety," but to date have done little, if anything, in furtherance of any such sale.  Further, the Debtors' prior communications concerning the RFP process make clear they have no intention of running a dual-track sale process, but instead will only consider a sale of the entire collection after a French artifact sale process is well underway.

3.      The Debtors attempt to portray their limited cash resources as a reason to extend exclusivity (Debtor Mot. ¶21), arguing that absent such relief the Debtors will have to pay administrative expenses that they can ill afford associated with another party's potentially proposing a plan that contemplates an alternative strategy.

4.      The Debtors' deteriorating cash position, however, weighs <u>against</u> extending exclusivity.  The legislative history to section 1121(d) provides "[a]n extension should not be employed as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory." S. Rep. No. 989, 95th Cong., 2d Sess. 118 (1978). By arguing, in effect, an extension is needed because the estate cannot afford to pay professionals to pursue an alternative reorganization strategy the Debtors are doing exactly that.

5.      Given the foregoing and the advance notice required to obtain disclosure statement approval and plan confirmation under Bankruptcy Rules 2002 and 3017, exclusivity should be terminated now, and the Debtors' motion should therefore be denied.[2]

### Response to Equity Committee's Motion

6.      The Creditors' Committee disputes the Equity Committee's position that common stockholders are the "real stakeholders" because "there appears to be ample value at hand to ensure that … unsecured creditors … will be paid in full." (Equity Comm. Mot. ¶¶14-15, 25-28.)  The Debtors previously stated that if they are unable to

---

[2] Alternatively, the Creditors' Committee requests that the Court enter a bridge order extending exclusivity only through January 23, and hold a status conference pursuant to Bankruptcy Code section 105(d)(2)(B) on the Debtors' exclusivity request following consideration of the Debtors' default judgment motion at the January 23 hearing.

promptly consummate their contemplated plan of selling French artifacts and reorganizing around the remainder of the Titanic collection, there is a very real possibility unsecured creditors will <u>not</u> be paid in full.  (Oct. 25 Tr. 10:5-24, 23:21-24:11, attached as **<u>Exhibit 1</u>**.)   Likewise, unsecured creditors may not be paid in full if the Debtors cannot fund these chapter 11 cases.  (*See* ¶1.b, *supra*; Oct. 25 Tr. 23:11-14, noting the urgency with which the Debtors must emerge from bankruptcy because of the Debtors' financial position*.*)

7.     Nevertheless, the Creditors' Committee does not oppose the relief sought by the Equity Committee (termination of exclusivity solely as to the Equity Committee), provided exclusivity is <u>also</u> terminated as to the Creditors' Committee.  The Creditors' Committee has consulted with the Equity Committee, which has consented to the foregoing relief.

WHEREFORE, the Creditors' Committee requests that the Court deny the Debtors' motion and extend the coexclusivity relief sought by the Equity Committee to the Creditors' Committee, and grant such other and further relief as the Court deems appropriate.

Dated: December 28, 2016

Jeffrey Chubak (admitted *pro hac vice*)
**STORCH AMINI PC**
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
(212) 490-4208 (Facsimile)
jchubak@storchamini.com

- and -

**THAMES MARKEY & HEEKIN, P.A.**

*Robert A. Heekin, Jr.*

By _____

     Richard R. Thames
     Robert A. Heekin
Florida Bar No. 0718459
Florida Bar No. 652083
50 North Laura Street, Suite 1600
Jacksonville, Florida  32202
(904) 358-4000
(904) 358-4001 (Facsimile)
rrt@tmhlaw.net
rah@tmhlaw.net

Attorneys for the Official Committee
of Unsecured Creditors

## Certificate of Service

I hereby certify that on December 28, 2016, the foregoing pleading was transmitted to the Clerk of the Court for uploading to the Case Management/Electronic Case Files System, which will send a notice of electronic filing to all parties who have consented to receiving electronic notifications in this case. I further certify that on, December 28, 2016, copies of the foregoing were furnished by U.S. Mail, postage prepaid to the following:

417 5th Ave Real Estate, LLC
c/o Sebastian Capital, Inc.
417 Fifth Avenue
New York, NY 10016

A-1 Storage and Crane
2482 197th Avenue
Manchester, IA 52057

ABC Imaging
1155 21st Street NW
Suite M400
Washington, DC 20036

A.N. Deringer, Inc.
PO Box 11349
Succursale Centre-Ville
Montreal, QC H3C 5H1

ATS, Inc.
1900 W. Anaheim Street
Long Beach, CA 90813

Broadway Video
30 Rockefeller Plaza
54th Floor
New York, NY 10112

CBS Outdoor/Outfront Media
185 US Highway 48
Fairfield, NJ 07004

Dentons Canada LLP
250 Howe Street
20th Floor
Vancouver, BC V6C 3R8

Enterprise Rent-A-Car Canada
709 Miner Avenue
Scarborough, ON M1B 6B6

Expedia, Inc.
10190 Covington Cross Drive
Las Vegas, NV 89144

Lange Feng
15953 107th Avenue
Surrey, BC V4N 5N7

George F. Eyde LLC
300 S. Washington Square
Suite 400
Lansing, MI 48933

George Young Company
509 Heron Drive
Swedesboro, NJ 08085

Gowling Lafleuer Henderson
550-2300 Burrard Street
Vancouver, BC V6C 2B5

Hoffen Global Ltd.
305 Crosstree Lane
Atlanta, GA 30328

Kirvin Doak Communications
7935 W. Sahara Avenue
Las Vegas, NV 89117

MNP LLP
15303 - 31st Avenue
Suite 301
Surrey, BC V3Z 6X2

Morris Visitor Publications
PO Box 1584
Augusta, GA 30903

NASDAQ Stock Market, LLC
805 King Farm Blvd.
Rockville, MD 20850

National Geographic Society
1145 - 17th Avenue NW
Washington, DC 20036

NYC Dept. of Finance
PO Box 3646
New York, NY 10008

NY Dept. of Taxation and Finance
Attn: Office of Counsel
W.A. Harriman Campus Bldg. 9
Albany, NY 12227

NY Dept. of Taxation and Finance
PO Box 4127
Binghamton, NY 13902

PacBridge Limited Partners
22/F Fung House
19-20 Connaught Road

Central Hong Kong
Pallet Rack Surplus, Inc.
1981 Old Covington Cross Rd NE
Conyers, GA 30013

Ramparts, Inc.
d/b/a Luxor Hotel and Casino
3900 Las Vegas Blvd. South
Las Vegas, NV 89119

Screen Actors Guild
1900 Broadway
5th Floor
New York, NY 10023

Seaventures, Ltd.
5603 Oxford Moor Blvd.
Windemere, FL 34786

Sophrintendenza Archeologica
di Napoli e Pompei
Piazza Museo 19
Naples, Italy 80135

Structure Tone, Inc.
770 Broadway
9th Floor
New York, NY 10003

Syzygy3, Inc.
1350 6th Avenue
2nd Floor
New York, NY 10019

Time Out New York
475 Tenth Avenue
12th Floor
New York, NY 10018

TPL
3340 Peachtree Road
Suite 2140
Atlanta, GA 30326

TSX Operating Co.
70 West 40th Street
9th Floor
New York, NY 10018

Verifone, Inc.
300 S. Park Place Blvd.
Clearwater, FL 33759

Sam Weiser
565 Willow Road
Winnetka, IL 60093

WNBC - NBC Universal Media
30 Rockefeller Center
New York, NY 10112

Jihe Zhang
59 Dongsanhuan Middle Road
Fuli Shuangzi Towers, Building A
Suite 2606, Chaoyang Dist.
Beijing, China 100021

Haiping Zou
Unit 110-115 Wanke Qingqing
Homeland
Dougezhuang, Chaoyang Dist.
Beijing, China 100021

*/s/ Robert A. Heekin, Jr.*

_____
Attorney

# Exhibit "1"

1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


In re:

RMS TITANIC, INC.,                    CASE NO:  16-02230-3G1

        Debtor.
_____/


TRANSCRIPT OF PROCEEDINGS


        DATE TAKEN:     October 25, 2016
        TIME:          10:02 a.m. - 10:37 a.m.
        PLACE:         United States Courthouse
                       300 North Hogan Street
                       Courtroom 4A
                       Jacksonville, Florida 32202


        BEFORE:        The Honorable Paul M. Glenn
                       U.S. Bankruptcy Judge



  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE
    APPROVED BY ADMINISTRATIVE OFFICE OF U.S. COURTS



This cause came on to be heard at the time and place
aforesaid, when and where the following proceedings
were transcribed by:


**Cindy Danese, Notary Public**
**STATEWIDE REPORTING SERVICE**
**233 East Bay Street, Suite 606**
**Jacksonville, Florida  32202**
**(904) 353-7706**

8

1      Would anyone else like to be heard?

2      Mr. Gurfein, Mr. Brown.

3      MR. GURFEIN:  Your Honor, Peter Gurfein.

4      That's correct, the Equity Committee supports

5   this motion.

6      THE COURT:  Thank you.

7      Mr. Thames?

8      MR. THAMES:  Your Honor, on behalf of the

9   Creditors Committee, no objection.

10      THE COURT:  And Mr. Bomkamp.

11      MR. BOMKAMP:  No objection, Your Honor.

12      THE COURT:  Very good.  Thank you very much.

13      And so that motion is granted.

14      And, Mr. Blanks, would you prepare an order

15   granting that and review it with those who wish to

16   review it?

17      MR. BLANKS:  I will, Your Honor.  Thank you

18   very much.

19      And the last item on the calendar for this

20   morning, Your Honor, is the Debtors' motion for an

21   extension of time, exclusivity time to file this

22   plan and solicit votes with respect to that plan.

23      Your Honor, as set forth in the motion, the

24   Debtors request additional time so that they can

25   formulate a plan and solicit votes of

9

1    reorganization.

2          Your Honor, as set forth in the motion and, as

3    you know, the Court would grant such a motion for

4    cause.  The cause is set forth in the motion, but,

5    to supplement that, Your Honor, as Your Honor is

6    very much aware and has been in front of this

7    Court, the Debtors' intention, both stated publicly

8    in this courtroom as well as in filings in this

9    Court, is that we'd like to sell some French

10   artifacts, pay all the creditors in full and have a

11   complete return to equity.

12         Your Honor denied our initial motion with

13   respect to the sale of those French artifacts.  We

14   have now initiated an adversary proceeding with

15   respect to the Republic of France -- I think it was

16   a declaratory judgment action -- to say that France

17   does not have any interest in that property.

18         Our stated goal continues to be that we would

19   like to sell a portion of the French artifacts and

20   have a complete return to equity and pay every

21   single creditor in full.

22         We are working -- that is what I'll call Plan

23   A.  That is certainly our intention, that is our

24   goal, both publicly and privately, with all the

25   people that are in this room.  That is our plan.

1    That's the plan that we set forth almost on the

2    very first day and that continues to be our goal,

3    and we'll be hopefully achieving this

4    reorganization process.

5        If forced, we would follow what we call Plan

6    B.  Unfortunately, Plan B, if we're unable to sell

7    the French artifacts and the French artifacts -- we

8    cannot get proper title with respect to those

9    artifacts, unfortunately, at this time, based upon

10   the claims that have been asserted against the

11   estates as well as the stated assets that are

12   listed in our schedules, there would not be a

13   return to equity and, in fact, the creditors would

14   not get paid in full and probably get paid cents on

15   the dollar.

16       And so, if that's the plan that we would have

17   to submit at this particular time, that's what the

18   plan would effectively be.

19       Unfortunately, with the facts as they exist

20   today, if we're unable to sell the French

21   artifacts, there is insufficient amount of assets

22   to pay all the creditors in full, and the Equity

23   Committee and all of its members would be out of

24   the money in that particular instance.

25       We are diligently trying other alternatives

11

1    and, unlike what is stated in the opposition, we

2    are formulating different plans, we are talking to

3    different people.

4         We have recently filed a motion to retain

5    GlassRatner as our financial advisor.  With that

6    financial advisor, we would like to help us to

7    formulate that plan in order to exit bankruptcy,

8    with or without the sale of the French artifacts.

9         The Equity Committee, unfortunately, has filed

10   an opposition to GlassRatner.  And so, not only are

11   they frustrating the efforts or are not assisting

12   in the efforts to try to formulate a plan to exit

13   bankruptcy, they are opposing the help the Debtors

14   have requested.

15        Your Honor, so we are diligently trying to

16   formulate a plan.

17        If called to testify, the CFO or the CEO of

18   the company would testify that their stated goal to

19   me as well as the company is to exit Chapter 11 as

20   quickly as possible.  They have no desire

21   whatsoever to stay in Chapter 11 a second longer

22   than absolutely necessary.

23        Unfortunately, we are in the circumstance

24   where we are effectively waiting on an adversary

25   proceeding with respect to France before we can

1    effectively formulate a plan of reorganization that

2    would achieve the goals that we've stated publicly

3    in this courtroom, which is to pay all the

4    creditors in full and have a return to equity.

5         I believe that's sufficient cause to grant the

6    relief requested in our motion today.

7         I would like to note that, although styled as

8    an objection to -- or a limited objection to our

9    request for exclusivity, I read through the Equity

10   Committee's objection and I would submit that it's

11   not an actual objection.  Although it's styled as a

12   limited objection, I don't believe that they

13   directly say that they would like us not to have

14   exclusivity.

15        I believe that, Your Honor, most of that --

16   most of that opposition is really an opportunity

17   that the Equity Committee took to take a swipe at

18   management and in the objection that they see with

19   the current status of management duties and

20   actions.

21        And, Your Honor, they took a couple of swipes

22   -- at the previous hearing, counsel for the

23   committees took a couple of swipes at management,

24   as you may recall, and I declined to respond in

25   kind.  That's not the way I want to litigate.  I

13

1    don't want to litigate this particular motion that

2    way or anything else before Your Honor.

3         But in reading through the objection, I think

4    there's a couple of different agendas that may be

5    at play here, and not just objecting to the relief

6    requested in that motion.

7         And I wanted to point out to Your Honor that

8    members of the Equity Committee may have separate

9    agendas from what is stated -- what they state in

10   the limited objection, which is they may have had

11   previous problems with previous management, as well

12   as this current management, but those -- that

13   distrust or that those problems that they may have

14   had with previous management is not cause to deny

15   the current Debtors' motion to extend exclusivity

16   at this time.

17        And with that, Your Honor, I'll turn the

18   podium over to counsel for the Equity Committee who

19   filed the objection.

20        THE COURT:  Thank you.

21        Mr. Gurfein.

22        MR. GURFEIN:  Thank you, Your Honor.

23        The Equity Committee is fully cognizant that

24   there's a Bankruptcy Code policy on exclusivity

25   that fosters the opportunity for debtors to

1         THE COURT:  Mr. Wainger.

2         MR. WAINGER:  Try to find a common ground

3    where we can here, Judge, and it appears that

4    everybody in the courtroom is interested in moving

5    this process forward as quickly as possible.  And

6    that is absolutely the goal of the Debtors, and it

7    likewise appears to be the goal of every other

8    constituency here.

9         And a number of the decisions the Debtors have

10   made have been in an effort to expedite this

11   process, some unsuccessfully, but the Debtors have

12   consistently told this Court and will consistently

13   tell this Court that speed is urgent.  All we have

14   to do is look at the financials to know that.  So I

15   think there is very much common ground there.

16        But I think that we need to be very careful

17   about saying there are a variety of options and

18   that they're only putting their eggs in one basket.

19        Certainly, the Debtors have said publicly that

20   a sale of the artifacts, after careful analysis,

21   appears to be the best solution.  When Mr. Thames

22   said there are $200 million of assets that we can

23   look at for a variety of possibilities, that defies

24   certain restrictions and challenges associated with

25   what we have called the American artifacts and with

1    what we are about to litigate with this Court with

2    regards to the French artifacts.

3        So it's easy to say there's $200 million

4    dollars of assets, but, when you dig a little bit

5    deeper, we recognize that at some point -- at some

6    point there is some wisdom to what the company is

7    looking to achieve, and I act on what Mr. Blanks

8    said, which is, if the company is not able to

9    achieve that, well, then the Equity Committee, for

10   starters, doesn't really have a seat at the table

11   or any legitimately viable benefits.

12       Having read the 20-page brief, which was

13   pretty direct about their feelings, and having seen

14   the $100,000 billed in the first month for counsel

15   to the Equity Committee, I see some other issues

16   being at play here, Judge.  And most recently I saw

17   a motion to extend the timeline to file claims so

18   that the Equity Committee could explore claims and

19   explore a class action.

20       And so I heard Mr. Gurfein talk about the

21   necessity for the Debtors to engage, and I read

22   that the Debtors have not provided information to

23   the Equity Committee.  It's not true.  The level of

24   engagement has been substantial.

25       But when we talk about mistrust and agendas,

1     Judge, when the company believes -- when the

2     Debtors believe that the primary agenda of the

3     Equity Committee is to pursue a class action claim

4     against the Equity Committee and use the

5     appointment and use the Debtor's money to develop

6     those claims, well, then there is a bit of caution.

7          So I think it's absolutely appropriate on

8     behalf of the Debtors to exercise that caution,

9     Judge.  And so when we look at the intentions of

10    the parties and what's happening here, we're not

11    taking potshots.  That's not the way we choose to

12    litigate.  But we all need to be clear there's a

13    lot going on here.

14         And so, at the end of the day, Judge, we will

15    honor our obligations as counsel to the Debtors,

16    and, as Debtors, to inform the committees as they

17    need to be informed.  We will engage with them.  We

18    will help them prepare, as we have done, but we

19    will do so judiciously and cautiously.

20         And the last thing I'll say, Judge, is to

21    attribute malice to a whereas clause in the brief

22    we filed is simply nonsense.  We're not looking to

23    create a gotcha moment here.

24         We're asking for what is appropriate, 90 days.

25    And to the extent that detail isn't there, shame on

26

1      us for not providing that detail.  But let's not --

2      let's not go so low as to suggest that that's an

3      intentional action.  That's not what we're trying

4      to accomplish here.

5           The Debtors and their counsel respect this

6      process and will continue to do the best they can

7      for all of the constituencies.

8           THE COURT:  Thank you.  Thank you.

9           Anyone else wish to be heard?

10          MR. GURFEIN:  Your Honor, Peter Gurfein, if I

11     may?

12          THE COURT:  Certainly.

13          MR. GURFEIN:  It's as if it gives on one hand

14     and takes away with the other.

15          We're here today talking about a plan process

16     and we're here today talking about the Chapter 11

17     process.  Part of that process requires official

18     committees to fulfill their fiduciary duty to their

19     constituencies, and among those is to determine

20     what the assets of the estate are and to determine

21     whether there are claims, and that is something the

22     committee will do.

23          That in no way detracts from the fact that

24     this is a case with some challenges, and we're

25     Chapter 11 professionals who know how to roll up

30

1                 C E R T I F I C A T E

2   STATE OF FLORIDA   )

3   COUNTY OF DUVAL    )

4            I, Cindy Danese, a Notary Public, State of

5   Florida at Large, do hereby certify that the foregoing

6   is the official transcript, prepared to the best degree

7   possible from the digital audio recording and logs

8   provided by the Court.

9            I further certify that I am neither counsel

10  for, nor related to, nor am employee of any of the

11  parties to the action in which this hearing was taken.

12           I further certify that I have no personal

13  interest in the outcome of the action.

14           Dated this 14th day of November, 2016, in

15  Duval County, Florida.

16

17

18                            STATEWIDE REPORTING SERVICE

19

20                            _____

21                            Cindy Danese

22

23

24

25