## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,

      Debtors. [1]

_____/

Case No.: 3:16-bk-02230-PMG

Chapter 11

(Jointly Administered)

### APPLICATION TO EMPLOY LINCOLN PARTNERS ADVISORS LLC
### AS FINANCIAL ADVISOR TO THE EQUITY COMMITTEE
### *NUNC PRO TUNC* TO APRIL 3, 2017 AND FOR RELATED RELIEF

The Official Committee of Equity Security Holders (the "Equity Committee") of Premier Exhibitions, Inc. ("Premier"), Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG and the parent company of RMS Titanic, Inc. ("RMST"), the Chapter 11 Debtor in Case No. 3:16-bk-02230-PMG, by and through undersigned counsel, file its Application to Employ Lincoln Partners Advisors LLC ("Lincoln Advisors") as financial advisor, *nunc pro tunc* to April 3, 2017, and pursuant to Sections 105, 327, 328, 363, 1103 and 1107 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), as complemented by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and for related relief, and respectfully represent as follows:

### BACKGROUND

1.     On June 14, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned, jointly administered bankruptcy case (the "Bankruptcy Case").

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309) (collectively, the "Debtors"). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

2.      The Debtors continue to operate their businesses as debtors in possession pursuant to Bankruptcy Code Section 1107 and 1108.

3.      No trustee or examiner has been appointed in the Bankruptcy Case.

4.      On August 24, 2016, the Acting United States Trustee, Guy G. Gebhardt, appointed the members of the Equity Committee. On August 31, 2016, the Equity Committee selected Landau Gottfried & Berger LLP and Akerman LLP as its general bankruptcy counsel.

5.      On October 28, 2016, the Equity Committee filed its Application to Employ Teneo Securities LLC ("Teneo") as Financial Advisor to the Equity Committee *Nunc Pro Tunc* to October 20, 2016 and for Related Relief (Doc. 313) (the "Teneo Application").   Attached as Exhibit B to the Teneo Application is the engagement letter dated October 20, 2016 between Teneo and the Equity Committee (the "Teneo Engagement Letter")[2].

6.      On November 22, 2016, the Debtors filed a Response in Opposition to Employ Teneo Securities LLC as Financial Advisor to the Equity Committee *Nunc Pro Tunc* to October 20, 2016 and for Related Relief (Doc. 345).

7.      On November 23, 2016, the Equity Committee filed its Reply to Debtors' Opposition to Retention of Teneo Securities LLC (Doc. 350).

8.      On November 28, 2016, the Debtors and the Equity Committee entered into a Stipulation Respecting Withdrawal of Oppositions to and Consent to Engagement of GlassRatner Advisory and Capital Group LLC, as Financial Advisor to the Debtors and of Teneo Capital LLC as Financial Advisor to the Equity Committee (Doc. 351).

9.       On December 8, 2016, the Court entered the Order Authorizing Employment of Teneo Securities LLC as Financial Advisor *Nunc Pro Tunc* to October 20, 2016 and Granting

---

[2] Capitalized terms used but not otherwise defined herein are used as defined in the Application and/or Teneo Engagement Letter and/or Lincoln Advisors Engagement Letter.

Related Relief (Doc. 371) (the "Order"), which, *inter alia*, approved the terms of the Teneo Engagement Letter.

10.     Since entry of the Order, Teneo has served as financial advisor to the Equity Committee and, pursuant to a letter agreement, dated November 29, 2016, among counsel to the Equity Committee and counsel to the Official Committee of Unsecured Creditors (the "Creditors Committee), Teneo also has provided financial advisory services to the Creditors Committee under the same engagement and at no additional cost to the estate (the "Sharing Agreement").

11.     As of April 3, 2017, Brent C. Williams ("Williams") and Brendan J. Murphy ("Murphy"), formerly Managing Directors at Teneo who provided services under the Teneo Engagement Letter, became Managing Directors at Lincoln Advisors.

12.     Services for the Equity Committee and the Creditors Committee below the Managing Director level will continue to be provided by Teneo employees under the Teneo Engagement Letter, specifically by Jeremy DeKoe ("DeKoe").  Lincoln Advisors and Teneo agree to coordinate with each other to provide the services set out in the Lincoln Advisors Engagement Letter (as defined herein) and Teneo Engagement Letter, as applicable.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

14.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

15.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

16.     Through this Application, the Equity Committee seeks authorization to employ Lincoln Advisors as its financial advisor in connection with the Bankruptcy Case.  Specifically,

41908315;2

the Equity Committee requests entry of an Order pursuant to sections 105, 327(a), 328(a), 363(b), 1103(a) and (b), and 1107 of the Bankruptcy Code, in the form attached hereto **Exhibit A**, authorizing Lincoln Advisors to perform those financial advisory services that will be necessary during the Bankruptcy Case, as more particularly described below.

## SERVICES TO BE RENDERED BY LINCOLN ADVISORS

17.   The Equity Committee proposes to employ Lincoln Advisors pursuant to the terms of the engagement letter dated as of April 3, 2017 and attached hereto as **Exhibit B** (the "Lincoln Advisors Engagement Letter"), and anticipate Lincoln Advisors may render the following services in connection with the Bankruptcy Case:

a. Review and analyze the Debtors' operations, assets, financial condition, business plan, strategy, and operating forecasts;

b. Evaluate the assets and liabilities of the Debtors and evaluate the Debtors' strategic and financial alternatives;

c. Assist in the determination of an appropriate go-forward capital structure for the Debtors;

d. Analyze and assist with any proposed financing(s), including assistance with obtaining debtor in possession and/or exit financing;

e. Assist the Equity committee in developing, evaluating, structuring and negotiating the terms and conditions of a restructuring, plan of reorganization, or sale transaction, including the value of the securities, if any, that may be issued to the Equity committee under any such restructuring, plan of reorganization, or sale transaction;

f. Analyze any merger, divestiture, joint-venture, or investment transaction, including the proposed structure and form thereof;

g. Analyze any new debt or equity capital (including advice on the nature and terms of new securities) and assist with obtaining new debt or equity capital;

h. Assist in the evaluation and investigation of prepetition transactions in which the Debtors and/or their insiders were involved;

i. If requested by the legal counsel to the Equity committee, prepare report(s) with respect to any and all proposed financings, the valuation of the Debtors (as a

4

going concern or otherwise) or any specific assets of the Debtors, or proposed merger, divestiture, joint-venture, or investment transaction;

j.    Provide the Equity committee with other appropriate general restructuring advice as the Equity committee and its counsel deems appropriate; and

k.    Testify in connection with Lincoln Advisors' provision of any of the above-mentioned services in the Bankruptcy Court or other court.

18.    Services for the Equity Committee and the Creditors Committee below the Managing Director level will continue to be provided by Teneo employees under the Teneo Engagement Letter, specifically DeKoe. Lincoln Advisors and Teneo agree to coordinate with each other to provide the services set out in the Lincoln Advisors Engagement Letter and Teneo Engagement Letter, as applicable.

## QUALIFICATIONS OF PROFESSIONALS

19.    The Equity Committee has selected Lincoln Advisors because of its diverse experience and extensive knowledge in, *inter alia*, the field of bankruptcy and restructuring.

20.    Lincoln Advisors is a professional services firm engaged in the business of providing financial advisory and related professional investment banking services with an office located at 444 Madison Avenue, Suite 300, New York, NY 10022. Lincoln Advisors provides a broad range of services to its clients and has extensive experience in dealing effectively with a full range of issues and challenges that arise in corporate restructurings and business reorganizations.

21.    Lincoln Advisors' professionals have served as financial advisors in numerous recent Chapter 11 cases, and have advised debtors and committees in numerous restructuring transactions, including some of the largest and most complicated cases. Some of the more prominent recent debtor and creditor cases handled by Lincoln Advisors' principals include, *inter alia*: *In re: Comprehensive Clinical Development, Inc.*, No. 13-17273 (JKO) (Bankr. S.D. Fla.

Apr. 15, 2013); *In re Humboldt Creamery, LLC*, No. 09-11078 (Bankr. N.D. Cal. June 11, 2009); *In re Omtron USA, LLC*, No. 12-81931 (CRA) (Bankr. M.D.N.C. Feb. 5, 2013); *In re ClearEdge Power Inc.*, No. 14-44191 (Bankr. N.D. Cal. July 23, 2014); *In re Allens, Inc.*, No. 13-73597 (BTB) (Bankr. D. AR Oct. 28, 2014); *In re K-V Discovery Solutions, Inc.*, No. 12-13346 (ALG) (Bankr. D. S.D.N.Y. Aug. 4, 2012); *In re Real Mex Restaurants, Inc.*, No. 11-13122 (BLS) (Bankr. D. Del. Jan. 23, 2012); *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. Sept. 11, 2009); *In re Dura Automotive Sys., Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. Dec. 21, 2006); *In re Hayes Lemmerz Int'l*; No. 09-11655 (MFW) (Bankr. D. Del. May 11, 2009); *In re Global Power Equip. Group, Inc.*, No. 06-11045 (BLS) (Bankr. D. Del. Nov. 17, 2006); *In re Citadel Broad. Corp.*, No. 09-17442 (BRL) (Bankr. S.D.N.Y. Apr. 12, 2010); *In re Philadelphia Newspapers, LLC*, No. 09-11204 (JKF) (Bankr. D. Del. June 6, 2009), *In re Trico Marine Servs., Inc.*, No. 10-12653 (BLS) (Bankr. D. Del. Oct. 1, 2010); and  *In re AES Technologies, LLC* (PMG) (Bankr. M.D. Fla. October 31, 2014).

22.     The Equity Committee needs assistance in analyzing financial information, providing financial advisory services and assisting in negotiations with parties in interest in the Bankruptcy Case. The professionals of Lincoln Advisors have considerable experience with rendering such services to creditors, shareholders, and other parties in numerous Chapter 11 cases.  Accordingly, Lincoln Advisors is well-qualified to represent the Equity Committee in the Bankruptcy Case and the Equity Committee respectfully requests authorization to retain Lincoln Advisors *nunc pro tunc* to April 3, 2017.

23.     The Equity Committee believes it is necessary to employ Lincoln Advisors and such employment is in the best interest of the Debtors' bankruptcy estates.

## DISINTERESTEDNESS OF PROFESSIONALS

24.     Based upon the affidavit of Brent C. Williams attached hereto and incorporated herein as **Exhibit C** (the "Williams Affidavit"), the Equity Committee is satisfied that (i) Lincoln Advisors represents no interest adverse to the Debtors, the bankruptcy estates, or the Equity Committee in the matters upon which Lincoln Advisors is to be engaged, and that Lincoln Advisors' employment is in the best interest of the bankruptcy estates; (ii) Lincoln Advisors has no connection with the United States Trustee or any other person employed in the office of the United States Trustee; and (iii) Lincoln Advisors has not been paid any retainer against which to bill fees and expenses.

25.     Accordingly, the Equity Committee is satisfied that Lincoln Advisors does not have any interests adverse to these bankruptcy estates.

## PROFESSIONAL COMPENSATION

26.     The Equity Committee seeks approval of the Lincoln Advisors Engagement Letter and the provisions set forth therein to retain and employ Lincoln Advisors pursuant to section 328(a) of the Bankruptcy Code.  Section 328(a) provides, in relevant part, that a debtor-in-possession "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 … on any reasonable terms and conditions of employment, including a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

27.     Subject to this Court's approval, and as described in the Lincoln Advisors Engagement Letter, the Equity Committee requests that Lincoln Advisors and Teneo be entitled to monthly fees at the rate set forth in the Teneo Engagement Letter and Lincoln Advisors Engagement Letter with a cap of $25,000/month (collectively, the "Monthly Fee") as

7

compensation for professional services rendered to the Equity Committee, as well as reimbursement for reasonable and documented out-of-pocket expenses.

28.     In addition to the Monthly Fee, if the Debtors announce, consummate or enter into an agreement with respect to one or more Equity Distributions during the term of Teneo's and Lincoln Advisors' engagement, then the Debtors shall pay Teneo and Lincoln Advisors, immediately upon consummation, a non-refundable cash fee equal to:

       1.00% of the first $20 million, plus

       1.25% of the amount of between $20 million and $40 million, plus

       1.50% of the amount above $40 million (the "Equity Distribution Fee").

29.     The Equity Distribution Fee shall be paid by the Debtors as follows: 50% to Lincoln Advisors (or a designated US affiliate thereof) and 50% to Teneo.

30.     As described more fully in the Williams Affidavit in support of the Application, the retention of Lincoln Advisors and Teneo that is contemplated by this Application will be without additional costs to the estate.  The terms of the Lincoln Advisors Engagement Letter are similar to the terms, both financial and otherwise, agreed to by Lincoln Advisors and other financial advisory firms, both inside and outside of the bankruptcy, for an engagement such as this one.  The terms of the Lincoln Advisors Engagement Letter were negotiated between the Equity Committee and Lincoln Advisors, and reflect the extensive work to be performed by Lincoln Advisors in the Bankruptcy Case and the firm's financial advisory expertise.

31.     Lincoln Advisors intends to apply to the Court from time to time for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines promulgated by the Office of the United States Trustee, the Local Rules and Orders of this Court, the Order Granting Motion to Establish

8

Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals (Doc. 141) (the "Interim Compensation Order"), and pursuant to any additional procedures which may be or have already been established by the Court in the Bankruptcy Case.  The expenses and disbursements may include, among other things, travel expenses, meals, computer and research charges, reasonable documented outside attorney fees (including, without limitation, engagement documentation and similar pleading by outside counsel), messengers services, long-distance telephone calls and other direct expenses incurred in connection with Lincoln Advisors providing professional services to the Equity Committee.

32.    The Equity Committee submits that the fee and expense structure and the indemnification and related provisions are reasonable terms and conditions of employment in light of (i) industry practice, (ii) market rates charged for comparable services both in and out of the Chapter 11 context, (iii) Lincoln Advisors' substantial experience with respect to financial advisory services, and (iv) the nature and scope of work performed by Lincoln Advisors in the Bankruptcy Case.

33.    Further, the Equity Committee requests that any fee application submitted by Lincoln Advisors is only subject to the standards of review set forth in section 328(a) of the Bankruptcy Code, and not subject to the standards of review set forth in section 330 of the Bankruptcy Code, whereby the right to raise any challenges to fee applications pursuant to section 330 of the Bankruptcy Code is only reserved by the U.S. Trustee.  The Equity Committee submits that Lincoln Advisors' proposed compensation structure, as described in the Lincoln Advisors Engagement Letter, should be approved unless Lincoln Advisors' fees "prove to have been improvident in light of developments not capable of being anticipated at the time" such compensation structure was initially approved.  *See* 11 U.S.C. § 328(a).

41908315;2

34.     Other than a set forth herein, no arrangement is proposed between the Equity Committee and Lincoln Advisors for compensation to be paid in the Bankruptcy Case. In light of the above, the Equity Committee submits that such proposed compensation is fair and reasonable and should be approved under section 328(a) of the Bankruptcy Code.

## **INDEMNIFICATION**

35.     As set forth in the Lincoln Advisors Engagement Letter, as part of the overall compensation payable to Lincoln Advisors under the terms of the Lincoln Advisors Engagement Letter, the Equity Committee has agreed to indemnify and hold harmless Lincoln Advisors, its affiliates and their respective officers, directors, employees, agents and each other entity or person, if any, controlling Lincoln Advisors or any of its affiliates against certain losses, claims damages, demands and liabilities, excluding any such losses, claim, demands, liabilities or damages arising from acts of willful misconduct or gross negligence.

36.     The Equity Committee submits that such indemnification is standard in the restructuring industry and that the provision of such indemnification by the Equity Committee is fair and reasonable for this engagement.  See, e.g. *In re Fontainebleau Las Vegas Holdings, LLC*, et al., Case No. 09-21481 (Bankr. S.D. Fla. June 10, 2009); *In re TOUSA, Inc.*, Case No. 08-10928 (Bankr. S.D. Fla. Jan. 31, 2008).

37.     Accordingly, the Equity Committee respectfully submits that the terms of the indemnification of Lincoln Advisors under the terms of the Lincoln Advisors Engagement Letter are reasonable and customary and should be approved in this case.

41908315;2

## BASIS FOR RELIEF REQUESTED

38.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

39.     As required by Bankruptcy Rule 2014(a), this Application sets forth the following: (a) the specific facts showing the necessity for Lincoln Advisors' employment, (b) the reasons for the Equity Committee's selection of Lincoln Advisors as financial advisor in connection with the Bankruptcy Case, (c) the professional services to be provided by Lincoln Advisors, (d) the arrangement between the Equity Committee and Lincoln Advisors with respect to Lincoln Advisors' compensation, and (e) the best of the Equity Committee's knowledge, the extent of Lincoln Advisors' connections, if any, to certain parties in interest in the Bankruptcy Case.

40.     Based on the foregoing, the employment of Lincoln Advisors as financial advisor is in the best interests of the creditors and these bankruptcy estates.

41.     No previous motion or application for the relief sought herein has been made to this or any other court.

## APPROVAL OF ENGAGEMENT PURSUANT TO 11 U.S.C. § 328(a)

42.     In addition, given the numerous issues that Lincoln Advisors may be required to address in the performance of the services hereunder, Lincoln Advisors' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Lincoln Advisors' services for engagements of this nature, the Equity Committee believes that the fee structure set forth in the Lincoln Advisors Engagement Letter is reasonable under the standards set forth in section 328 of the Bankruptcy Code.  Lincoln Advisors also

11

seeks approval of the fee structure pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 of the Bankruptcy Code on any reasonable terms and conditions of employment, including a retainer or on a contingent fee basis." 11 U.S.C. §328(a).  Accordingly, section 328(a) of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on flexible terms that reflect the nature of their services and market conditions.

43.    As recognized by numerous courts, Congress intended in section 328(a) of the Bankruptcy Code to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." *See Donaldson, Lufkin & Jenrette Sec. Com. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862-63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.")  Recently, similar fee agreements have been approved in other large and complex cases.  *See In re TOUSA, Inc.*, Case No. 08-10928 (JKO) (Bankr. S.D. Fla. Aug. 27, 2008); *In re Arch Aluminum & Glass Co, Inc. et al.*, Case No. 09-36232-BKC-JKO (Bankr. S.D. Fla. Dec. 28, 2009)

44.    The Equity Committee submits that the fee and expense structure and the indemnification and related provisions set forth in the Lincoln Advisors Engagement Letter satisfy the above statutory criteria and are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code.  They appropriately reflect the

12

nature of the services to be provided by Lincoln Advisors and the fee structures and indemnification provisions typically utilized by Lincoln Advisors and other leading financial advisory firms, which do not bill their clients on an hourly basis and generally are compensated on a transactional basis.  In particular, the Equity Committee believes that the proposed fee structure creates a proper balance between fixed and contingency fees bases on the successful consummation of relevant transactions.

## NO DUPLICATION OF SERVICES

45.    The Equity Committee intends that the services of Lincoln Advisors will complement and not duplicate, the services being rendered by other professionals in the Bankruptcy Case. Lincoln Advisors and Teneo agree to coordinate with each other to provide the services set out in the Lincoln Advisors Engagement Letter and in the Teneo Engagement Letter, as applicable.

46.    Lincoln Advisors understands that the Debtors and the Equity Committee have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors and/or the Equity Committee.

47.    Lincoln Advisors will also provide services to the Official Committee of Unsecured Creditors under the same terms and conditions as Teneo has and will continue to provide to the Official Committee of Unsecured Creditors.

48.    Except as specifically set forth in this Application and Exhibit B hereto, the Equity Committee does not seek to modify the Teneo Application and corresponding Order.

41908315;2

## CONCLUSION

WHEREFORE, the Official Committee of Equity Security Holders of Premier Exhibitions, Inc. respectfully requests the Court enter an Order in the form attached hereto as **Exhibit A**, (i) authorizing the Equity Committee to employ Lincoln Advisors as financial advisor *nunc pro tunc* to April 3, 2017 on the terms set forth in the Lincoln Advisors Engagement Letter, (ii) approving the Equity Distribution Fee, (iii) authorizing payment to Lincoln Advisors as provided for in the Interim Compensation Order and as otherwise permitted under the Bankruptcy Code, and (iv) granting such other and further relief as the Court deems just and proper.

Dated: June 5, 2017

Peter J. Gurfein, Esq.
**LANDAU GOTTFRIED & BERGER LLP**
1801 Century Park East, Suite 700
Los Angeles, California 90067
(310) 557-0050
(310) 557-0056 (Facsimile)
pgurfein@lgbfirm.com

-and-

**AKERMAN LLP**

By: */s/ Jacob A. Brown*
Jacob A. Brown
Florida Bar No. 170038
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
(904) 798-3700
(904) 798-3730 (Facsimile)
Jacob.brown@akerman.com

Attorneys for the Official Committee of Equity Security Holders of Premier Exhibitions, Inc.

14

41908315;2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 5, 2017, the foregoing was transmitted to the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a notice of electronic filing to all creditors and parties in interest who have consented to receiving electronic notifications in this case.  In accordance with the Court's Order Granting Debtors' Motion for an Order Pursuant to 11 U.S.C. § 105(a) and Rule 2002 Establishing Notice Procedures (Doc. 140), a copy of the foregoing was also furnished on June 5, 2017 by U.S. mail, postage prepaid and properly addressed, to the Master Service List attached hereto.

*/s/ Jacob A. Brown*
Attorney

41908315;2

**MASTER SERVICE LIST**
*Case No. 3:16-bk-02230-PMG*

A-1 Storage and Crane
2482 197th Avenue
Manchester, IA 52057

ABC Imaging
14 East 38th Street
New York, NY 10017

A.N. Deringer, Inc.
PO Box 11349
Succursale Centre-Ville
Montreal, QC H3C 5H1

ATS, Inc.
1900 W. Anaheim Street
Long Beach, CA 90813

Broadway Video
30 Rockefeller Plaza
54th Floor
New York, NY 10112

CBS Outdoor/Outfront Media
185 US Highway 48
Fairfield, NJ 07004

Dentons Canada LLP
250 Howe Street, 20th Floor
Vancouver, BC V6C 3R8

Enterprise Rent-A-Car Canada
709 Miner Avenue
Scarborough, ON M1B 6B6

Expedia, Inc.
10190 Covington Cross Drive
Las Vegas, NV 89144

George Young Company
509 Heron Drive
Swedesboro, NJ 08085

Gowlings
550 Burrard Street
Suite 2300, Bental 5
Vancouver, BC V6C 2B5

Hoffen Global Ltd.
305 Crosstree Lane
Atlanta, GA 30328

Kirvin Doak Communications
5230 W. Patrick Lane
Las Vegas, NV 89118

MNP LLP
15303 - 31st Avenue
Suite 301
Surrey, BC V3Z 6X2

Morris Visitor Publications
PO Box 1584
Augusta, GA 30903

NASDAQ Stock Market, LLC
805 King Farm Blvd.
Rockville, MD 20850

National Geographic Society
1145 - 17th Avenue NW
Washington, DC 20036

NYC Dept. of Finance
PO Box 3646
New York, NY 10008

PacBridge Limited Partners
22/F Fung House
19-20 Connaught Road
Central Hong Kong

Ramparts, Inc.
d/b/a Luxor Hotel and Casino
3900 Las Vegas Blvd. South
Las Vegas, NV 89119

Seaventures, Ltd.
5603 Oxford Moor Blvd.
Windemere, FL 34786

Syzygy3, Inc.
231 West 29th Street
Suite 606
New York, NY 10001

TPL
3340 Peachtree Road
Suite 2140
Atlanta, GA 30326

Verifone, Inc.
300 S. Park Place Blvd.
Clearwater, FL 33759

WNBC - NBC Universal Media
30 Rockefeller Center
New York, NY 10112

Jonathan B. Ross, Esq.
Gowling WLG (Canada) LLP
550 Burrard Street, Suite 2300, Bentall 5
Vancouver, BC V6C 2B5

Pallet Rack Surplus, Inc.
1981 Old Covington Cross Road NE
Conyers, GA 30013

Screen Actors Guild
1900 Broadway
5th Floor
New York, NY 10023

Sophrintendenza Archeologica
di Napoli e Pompei
Piazza Museo 19
Naples, Italy 80135

Time Out New York
405 Park Avenue
New York, NY 10022

TSX Operating Co.
70 West 40th Street
9th Floor
New York, NY 10018

Samuel Weiser
565 Willow Raod
Winnetka, IL 60093

United States Attorney's Office
Middle District of Florida
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202

Christine R. Etheridge, Esq.
Bankruptcy Administration
Wells Fargo Vendor Financial Services, LLC
PO Box 13708
Macon, GA 31208

TSX Operating Co., LLC
c/o James Sanna
70 W. 40th Street
New York, NY 10018
***Creditor Committee***

B.E. Capital Management Fund LP
Thomas Branziel
205 East 42nd Street , 14th Floor
New York, NY 10017
***Creditor Committee***

Dallian Hoffen Biotechnique Co., Ltd.
c/o Ezra B. Jones
305 Crosstree Lane
Atlanta, GA 30328
***Creditor Committee***

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re:

RMS TITANIC, INC., *et al.*,

    Debtors. [1]

_____/

Case No.: 3:16-bk-02230-PMG

Chapter 11

(Jointly Administered)

**ORDER AUTHORIZING EMPLOYMENT OF LINCOLN PARTNERS**
**ADVISORS LLC AS FINANCIAL ADVISOR *NUNC PRO TUNC* TO**
**APRIL 3, 2017 AND GRANTING RELATED RELIEF**

THIS CASE is before the Court for consideration of the Application (the "Application")[2]

(Doc. _____) of the Committee of Equity Security Holders of Premier Exhibitions, Inc. for an

Order authorizing the Equity Committee to retain and employ Lincoln Partners Advisors LLC

("Lincoln Advisors"), effective as of April 3, 2017, as financial advisor in the above-captioned

jointly administered cases. The Court being satisfied Lincoln Advisors is "disinterested" as

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309) (collectively, the "Debtors"). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

[2] Defined terms from the Application are incorporated by reference herein.

41730928;1

**Exhibit A**

defined in section 101(14) of the Bankruptcy Code and holds no interest adverse to the Debtors or their estates in connection with the matters for which Lincoln Advisors is to be retained by the Equity Committee, as required by section 327(a) of the Bankruptcy Code; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided under the circumstances of these Chapter 11 cases, and it appearing that no other or further notice need be provided; the Court having reviewed the Application and having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before this Court, after due deliberation and sufficient cause appearing therefore, and based upon the Application and the representations on the record at the hearing on _____, 2017, the Court **FINDS** as follows:

1.      It is in the best interests of the Debtors' estates, creditors, and equity holders to appoint Lincoln Advisors as financial advisor to the Equity Committee.

2.      Lincoln Advisors is well-qualified to perform and assume the duties set forth in the Application.

Accordingly, it is **ORDERED**:

3.      The Application is approved, as set forth herein.

4.      The Equity Committee's retention of Lincoln Advisors is approved pursuant to 11 U.S.C. §§ 105, 327(a), 328(a), 363(b), and 1103.

5.      Lincoln Advisors is hereby appointed financial advisor to the Equity Committee.

41730928;1

**Exhibit A**

6.    The Lincoln Advisors Engagement Letter (the "Lincoln Advisors Engagement Letter") for Lincoln Advisors attached as Exhibit B to the Application is approved pursuant to section 328(a) of the Bankruptcy Code.

7.    The Unsecured Creditors Committee ("UCC") may also utilize the services of Lincoln Advisors as financial advisor as agreed between the UCC and the Equity Committee.  To the extent Lincoln Advisors provides information, input, and recommendations to the UCC, the Equity Committee and the UCC shall have joint work product and other applicable privileges with respect to all such information, input, and recommendations provided by Lincoln Advisors unless specifically waived in writing by the Committees.  Nothing in this paragraph modifies the monthly limitation on fees to be charged by Lincoln Advisors under the Lincoln Advisors Engagement Letter, and nothing in this paragraph shall prejudice the rights of the Debtors to challenge any assertions of privilege or work product protections by the UCC or Equity Committee in the future pertaining to the subject matter of this order.

8.    Lincoln Advisors shall be entitled to interim compensation in accordance with the Court's August 17, 2016 Interim Compensation Order and pursuant to any additional procedures which may be or have already been established by this Court in the Bankruptcy Case.

9.    The Equity Committee is authorized to indemnify and hold harmless Lincoln Advisors and its affiliates, their respective officers, directors, employees, agents and each other entity or person, if any, controlling Lincoln Advisors or any of its affiliates, and each of their respective successors and assignees pursuant to the indemnification provisions of the Lincoln Advisors Engagement Letter.  In addition to carving out from the indemnification provisions of the Lincoln Advisors Engagement Letter any gross negligence or willful misconduct, any claims

**Exhibit A**

that may arise from a breach of fiduciary duty by Lincoln Advisors shall likewise be excluded from the indemnification provisions of the Lincoln Advisors Engagement Letter.

10.    The Equity Committee is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

11.    The terms of this Order shall be immediately effective and enforceable upon its entry.

12.    Nothing in this Order precludes the Court, the United States Trustee or other interested parties from review and challenge of any fee application under 11 U.S.C. § 330.

13.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.   Specifically and notwithstanding anything in the Lincoln Advisors Engagement Letter to the contrary, the Court shall have and retain jurisdiction to hear, determine, and resolve any disputes under the Lincoln Advisors Engagement Letter.


Attorney Jacob A. Brown is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

41730928;1

**Exhibit A**



Lincoln Partners Advisors LLC
500 West Madison Street
Suite 3900
Chicago, IL 60661

tel    312 580 8339
fax    312 580 8317
www.lincolninternational.com

May 30, 2017

**_Privileged and Confidential_**

To:  The Official Equity Committee of Equity Security Holders of Premier Exhibitions, Inc.

Dear Equity Committee Members:

This letter agreement confirms the understanding and agreement (the "*Agreement*") by and between Lincoln Partners Advisors LLC, an Illinois limited liability company ("***Lincoln Advisors***"), and the Official Equity Committee of Equity Security Holders (the "***Equity Committee***") of Premier Exhibitions, Inc., Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG and the parent company of RMS Titanic, Inc., the Chapter 11 Debtor in Case No. 3:16-bk-02230-PMG (collectively with any entity formed or used for the purpose set forth herein, the "***Debtors***"), retroactively effective as of April 3, 2017 (the "Effective Date").  Lincoln Advisors and Teneo each acknowledge and agree that this Agreement and the Indemnification Agreement annexed hereto as Schedule I are both subject to Bankruptcy Court (defined below) approval and the terms of the order of the Bankruptcy Court approving Lincoln Advisors' retention. Reference is made to the certain letter agreement dated October 20, 2016 between Teneo Securities LLC, a Delaware limited liability company ("***Teneo***") and the Equity Committee (as amended from time to time, the "***Teneo Engagement Letter***").  The Equity Committee acknowledges that Brent C. Williams ("***Williams***") and Brendan J. Murphy ("***Murphy***"), formerly Managing Directors at Teneo who provided services under the Teneo Engagement Letter, became Managing Directors at Lincoln Advisors as of the Effective Date and are providing services under this Agreement on behalf of Lincoln Advisors as of the Effective Date forward, and that services for the Equity Committee below the Managing Director level will continue to be provided by Teneo employees under the Teneo Engagement Letter, specifically by Jeremy DeKoe ("***DeKoe***").  Lincoln Advisors and Teneo agree to coordinate with each other to provide the services set out herein and in the Teneo Engagement Letter, as applicable.  In addition, the parties hereto agree that the Teneo Engagement Letter shall remain in full force and effect except as amended pursuant to the Amendment Agreement dated as of May 30, 2017 between Teneo and the Equity Committee.

1. **Engagement**.  Lincoln Advisors is being retained to provide financial advisory services for the Equity Committee in connection with the Debtors' restructuring and Chapter 11 cases (the "***Chapter 11 Cases***"), including the analysis, consideration and potential development of a Chapter 11 plan or plans of reorganization, before the United States Bankruptcy Court for the Middle District of Florida (the "***Bankruptcy Court***").  Upon retention, Lincoln Advisors will work at the direction of the Equity Committee to:

**Exhibit B**

LincolnPartners
Advisors

   a.  Review and analyze the Debtors' operations, assets, financial condition, business plan, strategy, and operating forecasts;

   b.  Evaluate the assets and liabilities of the Debtors and evaluate the Debtors' strategic and financial alternatives;

   c.  Assist in the determination of an appropriate go-forward capital structure for the Debtors;

   d.  Analyze and assist with any proposed financing(s), including assistance with obtaining debtor in possession and/or exit financing;

   e.  Assist the Equity Committee in developing, evaluating, structuring and negotiating the terms and conditions of a restructuring, plan of reorganization, or sale transaction, including the value of the securities, if any, that may be issued to the Equity Committee under any such restructuring, plan of reorganization, or sale transaction;

   f.  Analyze any merger, divestiture, joint-venture, or investment transaction, including the proposed structure and form thereof;

   g.  Analyze any new debt or equity capital (including advice on the nature and terms of new securities) and assist with obtaining new debt or equity capital;

   h.  Assist in the evaluation and investigation of prepetition transactions in which the Debtors and/or their insiders were involved;

   i.  If requested by the legal counsel to the Equity Committee, prepare report(s) with respect to any and all proposed financings, the valuation of the Debtors (as a going concern or otherwise) or any specific assets of the Debtors, or proposed merger, divestiture, joint-venture, or investment transaction;

   j.  Provide the Equity Committee with other appropriate general restructuring advice as the Equity Committee and its counsel deems appropriate; and

   k.  Testify in connection with Lincoln Advisors' provision of any of the above-mentioned services in the Bankruptcy Court or other court.

The services and compensation arrangements set forth herein do not encompass any other investment banking or financial advisory services not set forth in this paragraph 1. Notwithstanding anything contained in this Agreement to the Contrary, Lincoln Advisors shall have no responsibility for designing or implementing any initiatives to improve the Debtors' operations, profitability, cash management or liquidity or provide any "crisis management" services for the Debtors or any other party. Lincoln Advisors makes no representations or warranties about the Debtors' ability to (i) successfully improve its

**Exhibit B**



operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a restructuring, sale transaction or plan of reorganization.

2. **Term of Agreement**. This Agreement shall commence upon its execution by both parties and shall continue until (i) either party gives 30 days prior written notice of termination to the other party, (ii) the effective date of a confirmed plan in the Chapter 11 cases, or (iii) as otherwise ordered by the Bankruptcy Court or agreed by Lincoln Advisors and the Equity Committee. Upon any termination, the provisions of Paragraph 3 (to the extent applicable) shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees due on or before the effective date of termination. The provisions of Paragraphs 2, 3, 5, 6, 7, 8, 9, 11, 12 and 13 shall survive the termination of this Agreement and shall remain in effect.

3. **Fees and Expenses**.

All fees and expenses hereunder shall be paid subject to application to the Bankruptcy Court pursuant to the court-approved compensation procedures and allowance by the Bankruptcy Court.

   a) <u>Compensation</u>: The Debtors shall pay Teneo on an hourly basis based upon the time incurred by Teneo's and Lincoln Advisors' professionals in providing the services under this Agreement to the Equity Committee as follows:

| *Title / Hourly Rates:* | |
| --- | --- |
| Brent C. Williams, Senior Managing Director | $565 |
| Brendan J. Murphy, Managing Director | $525 |
| Analyst to Vice President | $320 to $480 |

Notwithstanding the above hourly rates, Lincoln Advisors and Teneo hereby agree to cap all fees for any given month at no more than $25,000 (the "Monthly Fee Cap"). In the event that Jeremy DeKoe ceases to provide services to the Equity Committee under the Teneo Engagement Letter, the Debtors shall thereafter pay the compensation set out in this Paragraph 3(a) to Lincoln Advisors instead of Teneo, and Teneo and Lincoln Advisors agree to provide joint notice as soon as practicable to the Equity Committee and Debtors upon the occurrence of such event.

   b) <u>Equity Distribution Fee</u>:  In the event there is a distribution to the Debtors' equityholders, Teneo and Lincoln Advisors shall be entitled to allocation based on the amount of the cash, cash equivalent or value of equity distributed as follows:

   1.00% of the first $20 million, plus

   1.25% of the amount of between $20 million and $40 million, plus

   1.50% of the amount above $40 million. (the "Equity Distribution Fee")

The Equity Distribution Fee shall be paid by the Debtors as follows: 50% to Lincoln

**Exhibit B**

Advisors (or a designated US affiliate thereof) and 50% to Teneo.    Aggregate Consideration, for purposes of calculating the Equity Distribution Fee, shall be deemed to be the total amounts paid to or otherwise realized by, the Debtors' equity security holders in connection with the Restructuring or any transaction related thereto.

In the event that the aggregate consideration to equity holders comprises securities, in whole or in part, the value of such securities, for purposes of calculating the Equity Distribution Fee, shall be the fair market value thereof, as the Debtors and the Equity Committee shall mutually agree (and in the event of no mutual agreement, as determined by the Bankruptcy Court), on the day prior to the public announcement of such Restructuring; provided, however, that the value of securities with an existing public trading market shall be determined by the average of the last sales prices for such securities on the five trading days ending five days prior to the consummation of the transaction in question.

It is further agreed that if, at any time during the period commencing on the effective date of termination of this Agreement in accordance with Paragraph 2 and ending 6 months from the date thereto, either the Debtors effect a distribution to its equity holders, or enters into an agreement (or reaches an agreement in principle) in respect thereof, in each case Lincoln Advisors and Teneo will be entitled to allocation calculated in accordance with this Paragraph 3(b).

c) Expense Reimbursement: Lincoln Advisors shall be entitled to monthly reimbursement of reasonable documented out-of-pocket expenses incurred in connection with Lincoln Advisors' services to be provided under this Agreement, as permitted by applicable rules and guidelines of the Bankruptcy Court and the Office of the United States Trustee, and by the Court's Order Granting Motion to Establish Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals [Docket 141] and the Expense Reimbursement Guidelines for the United States Bankruptcy Court for the Middle District of Florida, attached hereto as **Exhibit A.**

d) No Third Party Fees: No fee payable to any third party, by the Debtors, the Equity Committee or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to Lincoln Advisors or Teneo.

e) Out-of-pocket expenses shall include, but not be limited to all reasonable documented travel expenses, meals, computer and database research charges, reasonable documented outside attorney fees (including, without limitation, engagement documentation and similar pleadings by outside counsel), messenger services and long-distance telephone calls incurred by Lincoln Advisors in connection with the services to be provided to the Equity Committee and as permitted by applicable rules and guidelines of the Bankruptcy Court and the Office of the United States Trustee and by the Court's Order Granting Motion to Establish Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals [Docket 141] and the Expense Reimbursement Guidelines for the

**Exhibit B**



United States Bankruptcy Court for the Middle District of Florida, attached hereto as **Exhibit A.** Lincoln Advisors will not seek reimbursement for non-working travel time.

4. **Company and Third Party Information.** The Equity Committee recognizes and confirms that in rendering services hereunder, Lincoln Advisors will be using and relying on, and assuming the accuracy of, without any independent verification, data, material and other information (collectively, the *"Information"*) furnished to Lincoln Advisors by or on behalf of the Equity Committee, the Debtors or other third parties (including their agents, counsel, employees and representatives). The Equity Committee understands that Lincoln Advisors will not be responsible for independently verifying the accuracy of the Information provided to Lincoln Advisors and shall not be liable for inaccuracies in any such Information. Unless required by subpoena or other valid legal or regulatory process, and prior written notice is provided to you so that you may challenge such disclosure, Lincoln Advisors will not disclose to any third party (other than Lincoln Advisors' or the Equity Committee's counsel) any portion of the Information provided by the Equity Committee which constitutes confidential, proprietary or trade secret information except in furtherance of the Equity Committee's engagement hereunder; provided that Lincoln Advisors may disclose Information provided by the Debtors to anyone who has executed a non-disclosure agreement with the Debtors. Lincoln Advisors will not use such confidential Information for any purpose other than pursuant to Lincoln Advisors' engagement hereunder. In evaluating potential parties to a transaction, Lincoln Advisors will be using publicly available information; information contained in public reports provided by third party vendors (such as Dun & Bradstreet, Inc.); and information furnished to Lincoln Advisors by such potential parties to a transaction. Lincoln Advisors does not assume responsibility for the accuracy or completeness of any information regarding any potential parties to a transaction.

5. **Indemnification.** The Debtors shall provide indemnification and other obligations set forth in Schedule I hereto, which is an integral part hereof and is hereby incorporated by reference. The Equity Committee hereby agrees to use its best efforts to cause to be included in any reorganization or liquidation plan (a) provisions releasing Lincoln Advisors from and (b) provisions indemnifying Lincoln Advisors against, any liability or expense and related defense costs related to this engagement, all pursuant to language no less favorable to Lincoln Advisors in any material respect than that set forth in Schedule I.

6. **Bankruptcy Court Approval.** This Agreement is subject to the entry of an order by the Bankruptcy Court in the Chapter 11 Cases approving the retention of Lincoln Advisors pursuant to the terms hereof. The Equity Committee shall use commercially reasonable efforts to obtain authorization of the retention of Lincoln Advisors pursuant to, and subject to the standards set forth in, Section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in Section 330 of the Bankruptcy Code), *nunc pro tunc* to April 3, 2017, on the terms and provisions in this Agreement. The Equity Committee shall supply Lincoln Advisors with a draft of the retention application and proposed order prior to the filing of such application and proposed order to enable Lincoln Advisors and its

**Exhibit B**

LincolnPartners
Advisors

counsel to review and comment thereon. The order approving the Agreement and authorizing the retention shall be acceptable to Lincoln Advisors in its sole and absolute discretion.

7. **Limited Role; No Additional Services**. In performing its services pursuant to this Agreement, Lincoln Advisors is not assuming any responsibility for the decision of the Debtors or any third party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any restructuring, sale transaction or other transaction.

8. **No Commitment**. It is understood and agreed that nothing contained in this Agreement would constitute an express or implied commitment by Lincoln Advisors or any of its respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate agreement relating to the financing, and this Agreement does not constitute any representation, warranty or agreement that any transaction will be available.

9. **Engagement & Reliance**. The Equity Committee recognizes that Lincoln Advisors has been retained only by the Equity Committee and that the Equity Committee's engagement of Lincoln Advisors is not deemed to be on behalf of and is not intended to and does not confer rights upon the Debtors or any of their shareholders, partners or other owners, employees or representatives of the Debtors, or any individual members of the Equity Committee. Unless otherwise expressly agreed, no one other than the Equity Committee is authorized to rely upon the engagement of Lincoln Advisors or any statements, advice, opinions or conduct by Lincoln Advisors. The Equity Committee agrees that Lincoln Advisors is acting as an independent contractor to perform the services for the Equity Committee contemplated by this Agreement and neither this Agreement nor Lincoln Advisors' services to the Equity Committee shall create any fiduciary or agency relationship with the Equity Committee, the Debtors or any other party (including but not limited to Teneo). In addition, the Equity Committee agrees that Lincoln Advisors shall have no responsibility or liability for services provided by, or the actions or omissions of, Teneo or its affiliates, including, without limitation, the services provided by, or the actions or omissions of, Williams and Murphy prior to the Effective Date and any services provided by, or any or omissions of, Jeremy DeKoe or any employee or representative of Teneo (or its affiliates).

10. **Use of Affiliates**. In connection with the services to be provided hereunder, Lincoln Advisors may employ the services of its affiliates and may share with any such entity any information concerning the Equity Committee or the Debtors; provided, however, that Lincoln Advisors and such entities shall hold any non-public information confidential in accordance with their respective customary policies relating to non-public information. Any such entity so employed shall be entitled to all of the benefits afforded to Lincoln Advisors hereunder and under the indemnification provisions hereof and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lincoln Advisors. Without limiting the generality of the foregoing, Lincoln Advisors reserves the right to assign certain rights and obligations under this Letter Agreement, including, without limitation, activities that require broker-dealer registration and related fees, to its US Affiliate, Lincoln International LLC, as they relate to the broker-dealer activities and services to be provided under this Agreement. The Equity Committee acknowledges that this Letter Agreement is

**Exhibit B**

**Lincoln**Partners
Advisors

being entered into with Lincoln Advisors, an Illinois limited liability company. The Company agrees that it has contracted solely with Lincoln Advisors and shall have no recourse to any Lincoln Advisors affiliate, but shall look solely to Lincoln Advisors, for performance of the terms and conditions hereof. Lincoln Advisors may obtain assistance from its affiliates for the provision of services hereunder but such affiliates shall have no liability to the Equity Committee, the Debtors, or their creditors or affiliates, with respect to the engagement contemplated hereby.

11. **Entire Agreement; Miscellaneous**. This Agreement (together with the Teneo Engagement Letter with respect to Teneo and the Equity Committee) represents the entire Agreement among the parties and may not be modified except in writing signed by all parties. This Agreement may be executed in counterparts, each of which shall constitute an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts will be valid for all purposes. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision. This Agreement may not be assigned by the Equity Committee without the prior written consent of Lincoln Advisors and Teneo. This Agreement may not be amended or modified, nor may any provision be waived, except in writing signed by each of the parties. THE EQUITY COMMITTEE AND LINCOLN ADVISORS EACH WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR PROCEEDING WITH RESPECT TO THE ENGAGEMENT OF LINCOLN ADVISORS UNDER THIS LETTER AGREEMENT OR ITS ROLE IN CONNECTION HEREWITH.

12. **Publicity**. The Equity Committee acknowledges and agrees that Lincoln Advisors may, at its option and expense, place a customary "tombstone" announcement in such newspapers and periodicals as it may choose, describing its services in connection with any transaction.

13. **Governing Law**. This Agreement will be governed by, and construed in accordance with, the laws of the State of New York without regard to the provisions, policies or principals thereof relating to choice or conflicts of law. Each of the parties hereto agrees to submit any claim or dispute arising out of or related to this Agreement to the Bankruptcy Court in the Chapter 11 Cases. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any Florida state or federal court of competent jurisdiction sitting in Jacksonville, Florida, to whose jurisdiction each of the parties hereto hereby irrevocably submit. Nothing in this paragraph shall pertain to or affect the authority of a bankruptcy court having jurisdiction over the Debtors to consider and rule upon Lincoln Advisors' applications for interim or final compensation pursuant to this Agreement.

14. **Other Matters**. If this letter correctly sets forth our Agreement on the matters covered herein, please so indicate by signing and returning the enclosed copy of this letter and signing and retaining the duplicate we are enclosing for your records. Upon execution by the parties, this letter will constitute a legally binding Agreement among the Equity Committee, Lincoln Advisors and Teneo.

**Exhibit B**



We trust the foregoing terms and provisions are agreeable to you, and request that you sign and return the enclosed copy of this Agreement to us at your earliest convenience.

LINCOLN PARTNERS ADVISORS  LLC

By:

Name: Brent C. Williams

Title:  Managing Director


THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF PREMIER EXHIBITIONS, INC.

By:

Name: Andrew Shapiro

Title: Chairman

Acknowledged by:

TENEO SECURITIES LLC

By:

Name:  Henry van Dyke

Title:  CEO

**Exhibit B**

**Lincoln**Partners
Advisors

<u>**Schedule I**</u>

This Schedule I is a part of and is incorporated into that certain letter agreement (the "***Agreement***") dated as of October 20, 2016 by and between the Official Committee of Equity Security Holders (the "***Equity Committee***") of Premier Exhibitions, Inc., Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG and the parent company of RMS Titanic, Inc., the Chapter 11 Debtor in Case No. 3:16-bk-02230-PMG (collectively with any entity formed or used for the purpose set forth herein, the "***Debtors***", and Lincoln Partners Advisors LLC, an Illinois limited liability company ("***Lincoln Advisors***"). Capitalized terms not defined herein shall have the same meaning assigned in the Agreement.

The Debtors shall, jointly and severally, indemnify and hold harmless Lincoln Advisors and its affiliates and their respective directors, officers, employees, members, attorneys, other agents and consultants appointed by any of the foregoing and each other person, if any, directly or indirectly controlling Lincoln Advisors or any of its affiliates (Lincoln Advisors and each such person and entity being referred to as an "***Indemnified Person***"), from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "***Liabilities***") arising out of or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to the Agreement or advice or services rendered or to be rendered by Teneo, any transaction contemplated thereunder or any Indemnified Persons' actions or omissions (or the actions or omissions of Teneo or its affiliates including, without limitation, the services provided by, or the actions or omissions of, Williams and Murphy prior to the Effective Date and any services provided by, or any or omissions of, Jeremy DeKoe or any employee or representative of Teneo (or its affiliates)) in connection with any such advice, services or transaction (the "***Services***"), and will reimburse each Indemnified Person for all reasonable documented fees and expenses (including the reasonable documented fees and expenses of outside counsel) (collectively, "***Expenses***") as they are incurred in investigating, preparing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party relating to the Services (collectively, "***Actions***"); provided that the Debtors will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a final judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct in connection with the Services (other than an action or failure to act undertaken at the request or with the consent of the Debtors). The Debtors shall also, jointly and severally, reimburse such Indemnified Person for all Expenses as they are incurred in connection with enforcing such Indemnified Persons' rights under the Agreement (including without limitation its rights under this Schedule I).  Such Indemnified Person shall reasonably cooperate, at the cost of the Debtors, with the defense of any Actions.

Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought under the Agreement, such Indemnified Person shall promptly notify the Debtors and the Equity Committee in writing; provided that failure to so notify the Debtors and the Equity Committee shall not relieve the

**Exhibit B**



Debtors from any liability which the Debtors or any other person may have on account of this indemnity or otherwise, except to the extent the Debtors shall have been materially prejudiced by such failure. The Debtors shall, upon receipt of notice, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Lincoln Advisors; provided that the Debtors shall not have the right to assume the defense of any Action to the extent involving equitable relief against an Indemnified Person. Any Indemnified Person shall have the right to employ separate counsel in any Action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person, unless: (i) the Debtors have failed promptly to assume the defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Person and the Debtors, and such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Debtors; provided that the Debtors shall not in such event be responsible hereunder for the fees and expenses of more than one separate counsel in connection with any Action in the same jurisdiction, in addition to any local counsel. The Debtors shall not be liable for any settlement of any Action effected without its written consent (which shall not be unreasonably withheld, conditioned or delayed). In addition, the Debtors will not, without prior written consent of Lincoln Advisors (which shall not be unreasonably withheld, conditioned or delayed), settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of such Indemnified Person from all liabilities arising out of such Action.

If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason or insufficient to hold such Indemnified Person harmless, then the Debtors and Lincoln Advisors will contribute to the Liabilities and Expenses for which such indemnification is held unavailable or insufficient (1) in such proportion as is appropriate to reflect the relative benefits received (or anticipated) from the proposed transaction by the Debtors on the one hand and the Indemnified Person on the other, in connection with Lincoln Advisors' engagement referred to above (whether or not the transaction contemplated by the engagement is consummated) or (2) if (but only if) the allocation provided in clause (1) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated) from the proposed transaction by the Debtors on the one hand and the Indemnified Person on the other, but also the relative fault of the Debtors and the Indemnified Person, as well as any other relevant equitable considerations, in each case subject to the limitation that the contribution by Lincoln Advisors will not exceed the amount of fees actually received by Lincoln Advisors pursuant to Lincoln Advisors' engagement.  It is hereby agreed that the relative benefit to the Debtors on the one hand and Lincoln Advisors on the other, with respect to Lincoln Advisors' engagement, shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received by the Debtors in connection with any sale transaction, whether or not consummated, or the total value received or proposed to be received by the Debtors' creditors and its stockholders in connection with any restructuring, for which Lincoln Advisors is engaged to render financial advisory services bears to (2) all fees actually received by Lincoln Advisors in connection with such engagement (excluding reimbursable expenses).

**Exhibit B**



No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Debtors or the Equity Committee for or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, services or transactions except for Liabilities (and related Expenses) of the Debtors or the Equity Committee that are determined by a final judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct in connection with any such advice, actions, inactions or services (other than an action or failure to act undertaken at the request or with the consent of the Debtors).

These indemnification, contribution and other provisions of this Schedule I shall (i) remain operative and in full force and effect regardless of any termination of the Agreement or completion of the engagement by Lincoln Advisors; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have.

**Exhibit B**

ORDERED.

**Dated:  August 17, 2016**

Paul M. Glenn
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

       Debtors.

Case No. 3:16-bk-02230-PMG
Chapter 11 (Jointly Administered)

## ORDER GRANTING MOTION TO ESTABLISH PROCEDURES
## TO PERMIT MONTHLY PAYMENT OF INTERIM FEE
## APPLICATIONS OF CHAPTER 11 PROFESSIONALS

THIS PROCEEDING came on for hearing on August 2, 2016, on the Debtors'

Motion to Establish Procedures to Permit Monthly Payment of Interim Fee Applications

of Chapter 11 Professionals [D.E. 89] ("Motion").

Accordingly, it is

**ORDERED:**

1.      The Motion is GRANTED.

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309).   The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

**Exhibit A to Engagement Letter**

2.      On or before the 15th day of each month following the month for which compensation is sought, each Professional whose employment was approved by order of this Court authorized to seek compensation may serve a monthly statement, by email to the United States Trustee, counsel for the Debtors, counsel for any appointed committee, if any, counsel for the secured creditors Lang, Fenge, Haiping Zou, and Jihie Zhang, and any other party that the Court may designate (collectively, the "Service Parties").

3.      The monthly statement need not be filed with the Court and a courtesy copy need not be delivered to the presiding judge's chambers because this Order is not intended to alter the fee application requirements outlined in Sections 330 and 331 of the Bankruptcy Code because professionals are still required to serve and file interim and final applications for approval of fees and expenses in accordance with the relevant provisions of the Bankruptcy Code, and the Bankruptcy Rules.

4.      Each monthly fee statement must contain an abbreviated narrative of the services rendered, accompanied by a printout or schedule of the reimbursable expenses incurred and the Professional and paraprofessional time spent (in sufficient detail to allow the review of the time by the Service Parties), which shall ordinarily be for services rendered through a particular calendar month.

5.      Each Service Party receiving a statement may object to the payment of the fees and the reimbursement of costs set forth therein by serving a written objection (which shall not be filed with the Court) upon the other Service Parties on or before the 25th day of the month in which the statement is received.  The objection shall state the

2

**Exhibit A to Engagement Letter**

nature of the objection and identify the amount of the fees or costs to which objection is made.  The objecting party shall attempt in good faith to object only to the portion of the statement that is deemed to be objectionable.

6.    In absence of any timely objection, the Debtors are authorized to pay up to 80% of the fees and 100% of the expenses identified in each monthly statement to which no objection had been timely made in accordance with paragraph 5 of this Order.

7.    If the Debtors receive an objection to a particular fee statement, it shall withhold payment of that portion of the fee statement to which the objection is directed and promptly pay the remainder of the fees and disbursements in the percentages set forth in paragraph 6 above.  All Professionals subject to this Order will establish a separate billing number for any time spent on the resolution of fee disputes.  Any fees incurred in connection with such fee disputes shall not be paid pursuant to the monthly statement, but may only be sought and paid upon the filing of an interim fee application as set forth in paragraph 11 below and after order of the Court.

8.    Similarly, if parties to an objection are able to resolve their dispute, then the Debtors are authorized to pay that portion of the fee statement that is no longer subject to an objection, if the party whose statement was objected to serves on the Service Parties a statement indicating that the objection was withdrawn and describing in detail the terms of the resolution.

9.    Any objections that are not resolved by the parties would be preserved and presented to the Court by the objecting party at the next interim or final fee application hearing to be heard by the Court.

3
**Exhibit A to Engagement Letter**

10.     The service of an objection in accordance with paragraph 5 of this Order shall not prejudice the objecting party's right to object to any fee application on any ground, whether or not raised in the objection.  Further, the decision by any party not to object to a fee statement shall not be a waiver of, nor otherwise prejudice, that party's right to object to any subsequent fee application.

11.     Unless the Court orders otherwise, each of the Professionals utilizing the procedures described in this Order shall file interim fee applications, for the amount of fees and costs sought in paragraph 6 above, in accordance with the 120 day guideline set forth in Section 331 of the Bankruptcy Code.

12.     A Professional who fails to file an application seeking approval of compensation and expenses previously paid under this Order when such application is due shall preclude such Professional from utilizing the automatic pay procedures as provided herein until an interim fee application has been filed and heard by the Court.

13.     A determination, by the Court, that payment of compensation or reimbursement of expenses was improper as to a particular monthly statement shall not disqualify a Professional from the future payment of compensation or reimbursement of expenses as set forth above, unless otherwise ordered by the Court.

14.     Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein shall have any effect on this Court's interim or final allowance of compensation and reimbursement of expenses of any Professionals.

**Exhibit A to Engagement Letter**

15.     The Debtors shall include all payments to Professionals on its monthly operating reports, detailed so as to state the amount paid to each of the Professionals.

16.     The Debtors may not make any payments under this Order if the Debtors have not timely filed monthly operating reports or remained current with its administrative expenses and 28 U.S.C. § 1930.  Otherwise, this Order shall continue and shall remain in effect during the pendency of this case unless otherwise ordered by this Court.

17.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

18.     Upon motion or application, and after due notice to all parties set forth on the Court's mailing matrix, additional professionals employed by the Debtors or a committee may be authorized to participate in modified interim compensation procedures as set forth in this Order.

19.     All Professionals subject to this Order shall be required to monitor their own compliance with the terms of this Order and shall include the following certification on each monthly invoice: *I hereby certify that I am in compliance with the terms of the Order Establishing Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals.*

**Exhibit A to Engagement Letter**

20. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

### 

Copies furnished to:

Daniel F. Blanks, Esq.

Attorney Daniel F. Blanks is directed to serve a copy of this Order on all non-CM/ECF interested parties and file a proof of service within 3 days of entry of the Order.

~#4846-3582-6485 v.1 ~

**Exhibit A to Engagement Letter**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLROIDA
### www.flmb.uscourts.gov


## EXPENSE REIMBURSEMENT GUIDELINES


Consistent with Local Rule 2016-1(e) and Bankruptcy Rule 2016, this expense reimbursement guideline is intended to serve as a guide to professionals who submit employment and expense applications to the Court.  Reimbursement for expenses is confined to the actual and reasonable expenses that are necessary to perform the assignment. Any application for reimbursement must be supported by documentation as appropriate.

Factors relevant to a determination that the expense is proper include the following:

1.  **Reasonable and Economical**. Whether the expense is reasonable and economical. (For example, first class and other luxurious travel mode or accommodations will normally be objectionable.)

2.  **Standard Practices**. Whether the requested expenses are customarily charged to non-bankruptcy clients of the applicant. The Court will consider the customary practice of the firm in charging or not charging non-bankruptcy clients for particular expense items. The practice should remain consistent regardless of the client. The Court recognizes that there will be differences in billing practices among professionals.

3.  **Documentation**. Whether the applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (*e.g.,* type of travel, type of fare, rate, destination), and the method of computation.

4.  **Unusual Items.** Whether the applicant has explained unusual items in greater detail.

5.  **Proration**. Whether the applicant has prorated expenses where appropriate between the estate and other cases (*e.g.,* travel expenses applicable to more than one case) and has adequately explained the basis for any such proration.

6.  **Actual Cost.** Whether expenses incurred by the applicant to third parties are limited to the actual amounts billed to, or paid by, the applicant on behalf of the estate.


## Types of Reimbursable Travel and Expenses

▪ Common carrier fees (coach), rental car fees (small and mid-size vehicles only), mileage calculated using the Internal Revenue Service's current optional standard mileage rate, tolls, and parking costs (but not parking or violation tickets).

▪ Ground transportation such as taxis, buses, and subways.


**Exhibit A to Engagement Letter**

- Tips to porters and baggage handlers.

- Meals and gratuities.

- Lodging.

- The actual cost of office supplies, facsimile, and copy services.

    o Internal photocopy expenses must be reasonable, not to exceed $0.15 per page.

    o External photocopy expenses are reimbursable at cost.

    o Facsimiles should not exceed $1.00 per page received.

- Postage.

- Messenger services, where necessity is shown.

- Computerized research (with supporting documentation, identified by client and matter).

## <u>Expenses Not Subject to Reimbursement</u>

- Personal hotel expenses, such as movie rentals or gym fees.

- Alcohol and entertainment expenses.

- Repairs and maintenance work for personal vehicles.

- Office overhead expenses not particularly attributable to an individual client or case (such as word processing, proofreading, secretarial and other clerical services, rent, utilities, office equipment and furnishings, insurance, taxes, local telephones and monthly car phone charges, lighting, heating and cooling, and library and publication charges).

- Paralegal services (although not reimbursed as an expense, may be compensated as a paraprofessional under 11 U.S.C. § 330).

- Expenses exceeding the actual amount incurred to the applicant.

- Other professional services incurred without approval. A professional employed under 11 U.S.C. § 327 may not employ, and charge as an expense, another professional (i.e., special litigation counsel employing an expert witness) unless the employment is approved by the Court _prior_ to rendering the employment.

**Exhibit A to Engagement Letter**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

RMS TITANIC, INC., *et al.*,

      Debtors. [1]

_____/

Case No.: 3:16-bk-02230-PMG

Chapter 11

(Jointly Administered)

**DECLARATION OF BRENT C. WILLIAMS IN SUPPORT OF**
**APPLICATION TO EMPLOY LINCOLN PARTNERS ADVISORS LLC**
**AS FINANCIAL ADVISOR TO THE EQUITY COMMITTEE**
**_NUNC PRO TUNC_ TO APRIL 3, 2017 AND FOR RELATED RELIEF**

      I hereby declare that the following is true to the best of my knowledge, information, and belief:

      1.      My name is Brent C. Williams.  I am a Senior Managing Director at Lincoln Partners Advisors LLC, an Illinois limited liability company ("Lincoln Advisors"), a professional services firm engaged in the business of providing financial advisory and related professional investment banking services, and with offices located at 444 Madison Avenue, Suite 300, New York, NY 10022.  I am familiar with the matters set forth herein and make this Declaration in support of the Equity Committee's Application to Employ Lincoln Partners Advisors LLC as Financial Advisor *Nunc Pro Tunc* to April 3, 2017 (the "Application").  Additionally, I am a Certified Public Accountant, and current member of the Canadian Institute of Chartered Accountants.

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309) (collectively, the "Debtors"). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

41908659;1

**Exhibit C**

2.    Prior to becoming Senior Managing Director at Lincoln Advisors I was a Senior Managing Director at Teneo Securities LLC ("Teneo") and in that capacity worked, together with Brendan Murphy and Jeremy deKoote, as financial advisor to the Equity Committee [See Docket 371] and to the Official Committee of Unsecured Creditors (the "Creditors Committee") pursuant to a letter agreement between the Creditors Committee and the Equity Committee dated November 23, 2016.    After my move to Lincoln Advisors with Mr. Murphy, Mr. deKoote remained at Teneo.    The Equity Committee agreed to retain Lincoln Advisors together with Teneo under the terms set forth in the Lincoln Advisors Engagement Letter attached hereto as Exhibit A.    The retention of Lincoln Advisors will not cause any additional costs to be incurred by the estate.    Moreover, Lincoln Advisors will also continue to provide services as financial advisors to the Creditors Committee, also at no additional costs to the estate.

3.    The purpose of this Declaration is to provide the disclosure required under Section 327(a) of the Bankruptcy Code as necessary to a finding that Lincoln Advisors qualifies as a "disinterested person" as defined in Section 101(14) of the Bankruptcy Code.    Consistent with Federal Rule of the Bankruptcy Procedure 2014(a) and the Local Rules of this Court, this Declaration is intended as a verified statement setting forth to the best of my knowledge, all of Lincoln Advisors' connections with the Debtors, their professionals, other parties in interest, and the professionals in this case.    In the event that additional connections within the scope of the foregoing Rules are discovered during the pendency of this case, Lincoln Advisors will undertake to file supplementary disclosures as may become appropriate.    In addition, this Declaration sets forth Lincoln Advisors' qualifications to serve as financial advisor to the Debtors.

2

**Exhibit C**

**Lincoln Advisors' Qualifications to Serve as Financial Advisor to the Equity Committee**

4.      For more than twenty years, my colleagues and I have provided financial advisory services to companies experiencing financial difficulties and have served as a financial advisor, investment banker, and provided forensic accounting services in dozens of bankruptcy cases, including some of the largest and complex bankruptcy cases ever to have been filed in the United States.  Certain of these engagements include Adelphia, Visteon Corporation, Dura Automotive, Six Flags, Inc., Hayes Lemmerz, Inc., KV Pharmaceutical, Truvo Group, Idearc Inc., Delphi, and Washington Group International, among many others.  I have over twenty years of experience in investment banking, crisis management, and business reorganizations, including in the areas of financial restructuring, asset sales, in-and out-of-court restructuring, forensic and general accounting, and litigation support, among others.   Moreover, I am a former Trustee in Bankruptcy in the Province of Ontario.

**Lincoln Advisors' Proposed Services Performed for the Equity Committee**

5.      Upon retention, Lincoln Advisors will work at the direction of the Equity Committee, and anticipates performing the following services:

    a.  Review and analyze the Debtors' operations, assets, financial condition, business plan, strategy, and operating forecasts;

    b.  Evaluate the assets and liabilities of the Debtors and evaluate the Debtors' strategic and financial alternatives;

    c.  Assist in the determination of an appropriate go-forward capital structure for the Debtors;

    d.  Analyze and assist with any proposed financing(s), including assistance with obtaining debtor in possession and/or exit financing;

    e.  Assist the Equity Committee in developing, evaluating, structuring and negotiating the terms and conditions of a restructuring, plan of reorganization, or sale transaction, including the value of the securities, if any, that may be issued to the Equity committee under any such restructuring, plan of reorganization, or sale transaction;

3

**Exhibit C**

f.  Analyze any merger, divestiture, joint-venture, or investment transaction, including the proposed structure and form thereof;

g.  Analyze any new debt or equity capital (including advice on the nature and terms of new securities) and assist with obtaining new debt or equity capital;

h.  Assist in the evaluation and investigation of prepetition transactions in which the Debtors and/or their insiders were involved;

i.  If requested by the legal counsel to the Equity Committee, prepare report(s) with respect to any and all proposed financings, the valuation of the Debtors (as a going concern or otherwise) or any specific assets of the Debtors, or proposed merger, divestiture, joint-venture, or investment transaction;

j.  Provide the Equity Committee with other appropriate general restructuring advice as the Equity committee and its counsel deems appropriate; and

k.  Testify in connection with Lincoln Advisors' provision of any of the above-mentioned services in the Bankruptcy Court or other court.

6.      Subject to the court's approval of the Application, Lincoln Advisors is willing to serve as the Equity Committee's financial advisor to perform the services described above.

7.      As more fully described below, Lincoln Advisors and certain of its professionals – including managing directors, directors, vice presidents, associates, and analysts – may have been retained in the past, may presently, and/or have connections with certain of the Debtors' creditors, professionals, or parties in interest, and their professionals in this case.  In all of the circumstances described, the matters have been and remain wholly and entirely unrelated to the representation of the Debtors and do not impair Lincoln Advisors' disinterestedness in this case or impair its ability to serve the Debtors.

8.      Based upon information supplied by the Debtors, Lincoln Advisors (i) searched its records and conflict check system and (ii) disseminated a written request for information to all of the professionals in its firm to identify any connection or relationship with the following entities, among others:

a.  The Debtors;

4

**Exhibit C**

b. Debtors' officers and directors;

c. The equity shareholders known to own more than five (5.0%) of outstanding stock of the Debtors; and

d. The Debtors' twenty largest unsecured creditors.

A comprehensive list of the names were provided to Lincoln Advisors by the Equity Committee and searched against Lincoln Advisors' database. This list is represented in the creditor matrices and twenty largest creditors in these cases, which are incorporated herein by reference. The names appearing on this list were manually reviewed on any matters on which work was performed in the past seven years.

9.      Lincoln Advisors has not in the past represented, currently represents, or has connections with the persons and entities set forth on the creditor matrices and list of twenty largest creditors in these cases within the scope of Federal Rule of Bankruptcy Procedure 2014(a).

10.     Based upon the database search described above, Lincoln Advisors does not represent any entity having an adverse interest in connection with these cases, and does not hold or represent an interest adverse to the estate with respect to the matters on which Lincoln Advisors will be employed in accordance with Section 327(a) of the Bankruptcy Code.

11.     Neither Lincoln Advisors nor I represent any interest adverse to the Debtors, their creditors, the known equity security holders, the known parties in interest, or the Estate more generally, and we are "disinterested persons" as required by 11 U.S.C. § 327(a) and as defined by 11 U.S.C. § 101914).

12.     To the best of my knowledge, except has set forth herein, (a) Lincoln Advisors has no connections with the Debtors, creditors, any other party in interest, or their respective

41908659;1

**Exhibit C**

attorneys and financial advisors, and (b) the Lincoln Advisors professionals working on this matter are not relatives of the United States Trustee of the Middle District of Florida or of any known employee in the office thereof, or any United States Bankruptcy Judge for the Middle District of Florida as required by Fed. R. Bank. P. 2014.

13.     Neither Lincoln Advisors nor I will represent any other entity in connection with this case and neither I nor Lincoln Advisors will accept any fee from any other party or parties in this case, except from the estate, unless otherwise authorized by the Court.  As part of its regular practice, Lincoln Advisors appears in many cases, proceedings, restructurings, and transactions involving many different entities, debtors, committees, law firms, financial consultants, and investment bankers in matters unrelated to these cases.  However, Lincoln Advisors will not provide any professional services to any of the individual creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to these chapter 11 cases.

## Compensation

14.     The professional fees and costs incurred by Lincoln Advisors in the course of its representation of the Equity Committee shall be subject in all respects to the application and notice requirements of 11 U.S.C. §§ 330 and 331 and Fed.R.Bankr.P.  2014 and 2016.

15.     Lincoln Advisors has agreed to be compensated as fully set forth in the Lincoln Advisors Engagement Letter attached hereto as **Exhibit A**.  As set forth in paragraph 3 of the Lincoln Advisors Engagement Letter, Lincoln Advisors and Teneo shall be paid a single monthly fee capped at $25,000 for all months in which Teneo and Lincoln Advisors are employed in these cases, and such additional compensation as is set forth in the Lincoln Advisors Engagement Letter, including the Equity Distribution Fee.

6

**Exhibit C**

16.     The Equity Distribution Fee shall be paid by the Debtors as follows: 50% to Lincoln Advisors (or a designated US affiliate thereof) and 50% to Teneo.

17.     Lincoln Advisors will also seek reimbursement for necessary expenses incurred, which shall include, but not be limited to travel, photocopying, delivery services, postage, vendor charges, business meals, computerized research, and other out-of-pocket expenses incurred in providing professional services.

18.     There is no agreement of any nature, other than the shareholder agreement of our firm, as to the sharing of any compensation to be paid to the firm.  No promises have been received by Lincoln Advisors, nor any member, or associate thereof, as to the compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

19.     Lincoln Advisors intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in these Chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the Middle District of Florida, and the orders of the Court, including any order setting procedures for interim and final compensation.

**<u>Indemnification</u>**

20.     Pursuant to the terms of the Lincoln Advisors Engagement Letter, the Equity Committee shall provide indemnification and other obligations set forth in Schedule I to the Lincoln Advisors Engagement Letter, which is hereby incorporated by reference.  Further, in the event that an Indemnified Person (as defined in Schedule I ) is requested or required to appear as a witness in any action brought by or on behalf of or against the Debtors or which otherwise relates to the Engagement Letter or the services rendered by Lincoln Advisors to the Equity Committee, the Equity Committee shall reimburse Lincoln Advisors and the Indemnified Person

7

**Exhibit C**

for all reasonable expenses incurred by them in connection with such Indemnified Person appearing and preparing to appear as such a witness, including without limitation, the reasonable fees and disbursements of legal counsel.

21.    I have read the Application, and to the best of my knowledge, information, and belief, the contents of the Application are true and correct.

22.    This concludes my declaration.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

_____
Brent C. Williams

8

41908659;1

**Exhibit C**



Lincoln Partners Advisors LLC
500 West Madison Street
Suite 3900
Chicago, IL 60661

tel    312 580 8339
fax   312 580 8317
www.lincolninternational.com

May 30, 2017

**_Privileged and Confidential_**

To:  The Official Equity Committee of Equity Security Holders of Premier Exhibitions, Inc.

Dear Equity Committee Members:

This letter agreement confirms the understanding and agreement (the "*Agreement*") by and between Lincoln Partners Advisors LLC, an Illinois limited liability company ("*Lincoln Advisors*"), and the Official Equity Committee of Equity Security Holders (the "*Equity Committee*") of Premier Exhibitions, Inc., Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG and the parent company of RMS Titanic, Inc., the Chapter 11 Debtor in Case No. 3:16-bk-02230-PMG (collectively with any entity formed or used for the purpose set forth herein, the "*Debtors*"), retroactively effective as of April 3, 2017 (the "Effective Date").  Lincoln Advisors and Teneo each acknowledge and agree that this Agreement and the Indemnification Agreement annexed hereto as Schedule I are both subject to Bankruptcy Court (defined below) approval and the terms of the order of the Bankruptcy Court approving Lincoln Advisors' retention. Reference is made to the certain letter agreement dated October 20, 2016 between Teneo Securities LLC, a Delaware limited liability company ("*Teneo*") and the Equity Committee (as amended from time to time, the "*Teneo Engagement Letter*").  The Equity Committee acknowledges that Brent C. Williams ("*Williams*") and Brendan J. Murphy ("_Murphy_"), formerly Managing Directors at Teneo who provided services under the Teneo Engagement Letter, became Managing Directors at Lincoln Advisors as of the Effective Date and are providing services under this Agreement on behalf of Lincoln Advisors as of the Effective Date forward, and that services for the Equity Committee below the Managing Director level will continue to be provided by Teneo employees under the Teneo Engagement Letter, specifically by Jeremy DeKoe ("*DeKoe*").  Lincoln Advisors and Teneo agree to coordinate with each other to provide the services set out herein and in the Teneo Engagement Letter, as applicable.  In addition, the parties hereto agree that the Teneo Engagement Letter shall remain in full force and effect except as amended pursuant to the Amendment Agreement dated as of May 30, 2017 between Teneo and the Equity Committee.

1.  **Engagement**.  Lincoln Advisors is being retained to provide financial advisory services for the Equity Committee in connection with the Debtors' restructuring and Chapter 11 cases (the "*Chapter 11 Cases*"), including the analysis, consideration and potential development of a Chapter 11 plan or plans of reorganization, before the United States Bankruptcy Court for the Middle District of Florida (the "*Bankruptcy Court*").  Upon retention, Lincoln Advisors will work at the direction of the Equity Committee to:

**Exhibit A**

**Exhibit C**

a. Review and analyze the Debtors' operations, assets, financial condition, business plan, strategy, and operating forecasts;

b. Evaluate the assets and liabilities of the Debtors and evaluate the Debtors' strategic and financial alternatives;

c. Assist in the determination of an appropriate go-forward capital structure for the Debtors;

d. Analyze and assist with any proposed financing(s), including assistance with obtaining debtor in possession and/or exit financing;

e. Assist the Equity Committee in developing, evaluating, structuring and negotiating the terms and conditions of a restructuring, plan of reorganization, or sale transaction, including the value of the securities, if any, that may be issued to the Equity Committee under any such restructuring, plan of reorganization, or sale transaction;

f. Analyze any merger, divestiture, joint-venture, or investment transaction, including the proposed structure and form thereof;

g. Analyze any new debt or equity capital (including advice on the nature and terms of new securities) and assist with obtaining new debt or equity capital;

h. Assist in the evaluation and investigation of prepetition transactions in which the Debtors and/or their insiders were involved;

i. If requested by the legal counsel to the Equity Committee, prepare report(s) with respect to any and all proposed financings, the valuation of the Debtors (as a going concern or otherwise) or any specific assets of the Debtors, or proposed merger, divestiture, joint-venture, or investment transaction;

j. Provide the Equity Committee with other appropriate general restructuring advice as the Equity Committee and its counsel deems appropriate; and

k. Testify in connection with Lincoln Advisors' provision of any of the above-mentioned services in the Bankruptcy Court or other court.

The services and compensation arrangements set forth herein do not encompass any other investment banking or financial advisory services not set forth in this paragraph 1. Notwithstanding anything contained in this Agreement to the Contrary, Lincoln Advisors shall have no responsibility for designing or implementing any initiatives to improve the Debtors' operations, profitability, cash management or liquidity or provide any "crisis management" services for the Debtors or any other party. Lincoln Advisors makes no representations or warranties about the Debtors' ability to (i) successfully improve its

**Exhibit C**



operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a restructuring, sale transaction or plan of reorganization.

2. **Term of Agreement**. This Agreement shall commence upon its execution by both parties and shall continue until (i) either party gives 30 days prior written notice of termination to the other party, (ii) the effective date of a confirmed plan in the Chapter 11 cases, or (iii) as otherwise ordered by the Bankruptcy Court or agreed by Lincoln Advisors and the Equity Committee. Upon any termination, the provisions of Paragraph 3 (to the extent applicable) shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees due on or before the effective date of termination. The provisions of Paragraphs 2, 3, 5, 6, 7, 8, 9, 11, 12 and 13 shall survive the termination of this Agreement and shall remain in effect.

3. **Fees and Expenses**.

All fees and expenses hereunder shall be paid subject to application to the Bankruptcy Court pursuant to the court-approved compensation procedures and allowance by the Bankruptcy Court.

 a) <u>Compensation</u>: The Debtors shall pay Teneo on an hourly basis based upon the time incurred by Teneo's and Lincoln Advisors' professionals in providing the services under this Agreement to the Equity Committee as follows:

*Title / Hourly Rates:*

| | |
|---|---|
| Brent C. Williams, Senior Managing Director | $565 |
| Brendan J. Murphy, Managing Director | $525 |
| Analyst to Vice President | $320 to $480 |

Notwithstanding the above hourly rates, Lincoln Advisors and Teneo hereby agree to cap all fees for any given month at no more than $25,000 (the "Monthly Fee Cap"). In the event that Jeremy DeKoe ceases to provide services to the Equity Committee under the Teneo Engagement Letter, the Debtors shall thereafter pay the compensation set out in this Paragraph 3(a) to Lincoln Advisors instead of Teneo, and Teneo and Lincoln Advisors agree to provide joint notice as soon as practicable to the Equity Committee and Debtors upon the occurrence of such event.

 b) <u>Equity Distribution Fee</u>:  In the event there is a distribution to the Debtors' equityholders, Teneo and Lincoln Advisors shall be entitled to allocation based on the amount of the cash, cash equivalent or value of equity distributed as follows:

1.00% of the first $20 million, plus

1.25% of the amount of between $20 million and $40 million, plus

1.50% of the amount above $40 million. (the "Equity Distribution Fee")

The Equity Distribution Fee shall be paid by the Debtors as follows: 50% to Lincoln

**Exhibit C**



Advisors (or a designated US affiliate thereof) and 50% to Teneo. Aggregate Consideration, for purposes of calculating the Equity Distribution Fee, shall be deemed to be the total amounts paid to or otherwise realized by, the Debtors' equity security holders in connection with the Restructuring or any transaction related thereto.

In the event that the aggregate consideration to equity holders comprises securities, in whole or in part, the value of such securities, for purposes of calculating the Equity Distribution Fee, shall be the fair market value thereof, as the Debtors and the Equity Committee shall mutually agree (and in the event of no mutual agreement, as determined by the Bankruptcy Court), on the day prior to the public announcement of such Restructuring; provided, however, that the value of securities with an existing public trading market shall be determined by the average of the last sales prices for such securities on the five trading days ending five days prior to the consummation of the transaction in question.

It is further agreed that if, at any time during the period commencing on the effective date of termination of this Agreement in accordance with Paragraph 2 and ending 6 months from the date thereof, either the Debtors effect a distribution to its equity holders, or enters into an agreement (or reaches an agreement in principle) in respect thereof, in each case Lincoln Advisors and Teneo will be entitled to allocation calculated in accordance with this Paragraph 3(b).

c) <u>Expense Reimbursement</u>: Lincoln Advisors shall be entitled to monthly reimbursement of reasonable documented out-of-pocket expenses incurred in connection with Lincoln Advisors' services to be provided under this Agreement, as permitted by applicable rules and guidelines of the Bankruptcy Court and the Office of the United States Trustee, and by the Court's Order Granting Motion to Establish Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals [Docket 141] and the Expense Reimbursement Guidelines for the United States Bankruptcy Court for the Middle District of Florida, attached hereto as **Exhibit A.**

d) <u>No Third Party Fees</u>: No fee payable to any third party, by the Debtors, the Equity Committee or any other person or entity, shall reduce or otherwise affect any fee payable hereunder to Lincoln Advisors or Teneo.

e) Out-of-pocket expenses shall include, but not be limited to all reasonable documented travel expenses, meals, computer and database research charges, reasonable documented outside attorney fees (including, without limitation, engagement documentation and similar pleadings by outside counsel), messenger services and long-distance telephone calls incurred by Lincoln Advisors in connection with the services to be provided to the Equity Committee and as permitted by applicable rules and guidelines of the Bankruptcy Court and the Office of the United States Trustee and by the Court's Order Granting Motion to Establish Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals [Docket 141] and the Expense Reimbursement Guidelines for the

**Exhibit C**



United States Bankruptcy Court for the Middle District of Florida, attached hereto as **Exhibit A.** Lincoln Advisors will not seek reimbursement for non-working travel time.

4. **Company and Third Party Information.** The Equity Committee recognizes and confirms that in rendering services hereunder, Lincoln Advisors will be using and relying on, and assuming the accuracy of, without any independent verification, data, material and other information (collectively, the "*Information*") furnished to Lincoln Advisors by or on behalf of the Equity Committee, the Debtors or other third parties (including their agents, counsel, employees and representatives). The Equity Committee understands that Lincoln Advisors will not be responsible for independently verifying the accuracy of the Information provided to Lincoln Advisors and shall not be liable for inaccuracies in any such Information.  Unless required by subpoena or other valid legal or regulatory process, and prior written notice is provided to you so that you may challenge such disclosure, Lincoln Advisors will not disclose to any third party (other than Lincoln Advisors' or the Equity Committee's counsel) any portion of the Information provided by the Equity Committee which constitutes confidential, proprietary or trade secret information except in furtherance of the Equity Committee's engagement hereunder; provided that Lincoln Advisors may disclose Information provided by the Debtors to anyone who has executed a non-disclosure agreement with the Debtors. Lincoln Advisors will not use such confidential Information for any purpose other than pursuant to Lincoln Advisors' engagement hereunder.  In evaluating potential parties to a transaction, Lincoln Advisors will be using publicly available information; information contained in public reports provided by third party vendors (such as Dun & Bradstreet, Inc.); and information furnished to Lincoln Advisors by such potential parties to a transaction.  Lincoln Advisors does not assume responsibility for the accuracy or completeness of any information regarding any potential parties to a transaction.

5. **Indemnification.** The Debtors shall provide indemnification and other obligations set forth in Schedule I hereto, which is an integral part hereof and is hereby incorporated by reference.  The Equity Committee hereby agrees to use its best efforts to cause to be included in any reorganization or liquidation plan (a) provisions releasing Lincoln Advisors from and (b) provisions indemnifying Lincoln Advisors against, any liability or expense and related defense costs related to this engagement, all pursuant to language no less favorable to Lincoln Advisors in any material respect than that set forth in Schedule I.

6. **Bankruptcy Court Approval.** This Agreement is subject to the entry of an order by the Bankruptcy Court in the Chapter 11 Cases approving the retention of Lincoln Advisors pursuant to the terms hereof. The Equity Committee shall use commercially reasonable efforts to obtain authorization of the retention of Lincoln Advisors pursuant to, and subject to the standards set forth in, Section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in Section 330 of the Bankruptcy Code), *nunc pro tunc* to April 3, 2017, on the terms and provisions in this Agreement.  The Equity Committee shall supply Lincoln Advisors with a draft of the retention application and proposed order prior to the filing of such application and proposed order to enable Lincoln Advisors and its

**Exhibit C**

LincolnPartners
Advisors

counsel to review and comment thereon. The order approving the Agreement and authorizing the retention shall be acceptable to Lincoln Advisors in its sole and absolute discretion.

7. **Limited Role; No Additional Services**.  In performing its services pursuant to this Agreement, Lincoln Advisors is not assuming any responsibility for the decision of the Debtors or any third party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any restructuring, sale transaction or other transaction.

8. **No Commitment**. It is understood and agreed that nothing contained in this Agreement would constitute an express or implied commitment by Lincoln Advisors or any of its respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate agreement relating to the financing, and this Agreement does not constitute any representation, warranty or agreement that any transaction will be available.

9. **Engagement & Reliance**.  The Equity Committee recognizes that Lincoln Advisors has been retained only by the Equity Committee and that the Equity Committee's engagement of Lincoln Advisors is not deemed to be on behalf of and is not intended to and does not confer rights upon the Debtors or any of their shareholders, partners or other owners, employees or representatives of the Debtors, or any individual members of the Equity Committee. Unless otherwise expressly agreed, no one other than the Equity Committee is authorized to rely upon the engagement of Lincoln Advisors or any statements, advice, opinions or conduct by Lincoln Advisors.  The Equity Committee agrees that Lincoln Advisors is acting as an independent contractor to perform the services for the Equity Committee contemplated by this Agreement and neither this Agreement nor Lincoln Advisors' services to the Equity Committee shall create any fiduciary or agency relationship with the Equity Committee, the Debtors or any other party (including but not limited to Teneo).  In addition, the Equity Committee agrees that Lincoln Advisors shall have no responsibility or liability for services provided by, or the actions or omissions of, Teneo or its affiliates, including, without limitation, the services provided by, or the actions or omissions of, Williams and Murphy prior to the Effective Date and any services provided by, or any or omissions of, Jeremy DeKoe or any employee or representative of Teneo (or its affiliates).

10. **Use of Affiliates**. In connection with the services to be provided hereunder, Lincoln Advisors may employ the services of its affiliates and may share with any such entity any information concerning the Equity Committee or the Debtors; provided, however, that Lincoln Advisors and such entities shall hold any non-public information confidential in accordance with their respective customary policies relating to non-public information. Any such entity so employed shall be entitled to all of the benefits afforded to Lincoln Advisors hereunder and under the indemnification provisions hereof and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lincoln Advisors. Without limiting the generality of the foregoing, Lincoln Advisors reserves the right to assign certain rights and obligations under this Letter Agreement, including, without limitation, activities that require broker-dealer registration and related fees, to its US Affiliate, Lincoln International LLC, as they relate to the broker-dealer activities and services to be provided under this Agreement. The Equity Committee acknowledges that this Letter Agreement is

**Exhibit C**

**Lincoln**Partners
Advisors

being entered into with Lincoln Advisors, an Illinois limited liability company. The Company agrees that it has contracted solely with Lincoln Advisors and shall have no recourse to any Lincoln Advisors affiliate, but shall look solely to Lincoln Advisors, for performance of the terms and conditions hereof. Lincoln Advisors may obtain assistance from its affiliates for the provision of services hereunder but such affiliates shall have no liability to the Equity Committee, the Debtors, or their creditors or affiliates, with respect to the engagement contemplated hereby.

11. **Entire Agreement; Miscellaneous**. This Agreement (together with the Teneo Engagement Letter with respect to Teneo and the Equity Committee) represents the entire Agreement among the parties and may not be modified except in writing signed by all parties. This Agreement may be executed in counterparts, each of which shall constitute an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts will be valid for all purposes. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision. This Agreement may not be assigned by the Equity Committee without the prior written consent of Lincoln Advisors and Teneo. This Agreement may not be amended or modified, nor may any provision be waived, except in writing signed by each of the parties. THE EQUITY COMMITTEE AND LINCOLN ADVISORS EACH WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR PROCEEDING WITH RESPECT TO THE ENGAGEMENT OF LINCOLN ADVISORS UNDER THIS LETTER AGREEMENT OR ITS ROLE IN CONNECTION HEREWITH.

12. **Publicity**. The Equity Committee acknowledges and agrees that Lincoln Advisors may, at its option and expense, place a customary "tombstone" announcement in such newspapers and periodicals as it may choose, describing its services in connection with any transaction.

13. **Governing Law**. This Agreement will be governed by, and construed in accordance with, the laws of the State of New York without regard to the provisions, policies or principals thereof relating to choice or conflicts of law. Each of the parties hereto agrees to submit any claim or dispute arising out of or related to this Agreement to the Bankruptcy Court in the Chapter 11 Cases. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any Florida state or federal court of competent jurisdiction sitting in Jacksonville, Florida, to whose jurisdiction each of the parties hereto hereby irrevocably submit. Nothing in this paragraph shall pertain to or affect the authority of a bankruptcy court having jurisdiction over the Debtors to consider and rule upon Lincoln Advisors' applications for interim or final compensation pursuant to this Agreement.

14. **Other Matters**. If this letter correctly sets forth our Agreement on the matters covered herein, please so indicate by signing and returning the enclosed copy of this letter and signing and retaining the duplicate we are enclosing for your records. Upon execution by the parties, this letter will constitute a legally binding Agreement among the Equity Committee, Lincoln Advisors and Teneo.

**Exhibit C**



We trust the foregoing terms and provisions are agreeable to you, and request that you sign and return the enclosed copy of this Agreement to us at your earliest convenience.

LINCOLN PARTNERS ADVISORS  LLC

By:

Name: Brent C. Williams

Title:   Managing Director

THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF PREMIER EXHIBITIONS, INC.

By:

Name: Andrew Shapiro

Title: Chairman

Acknowledged by:

TENEO SECURITIES LLC

By:

Name:  Henry van Dyke

Title:   CEO

**Exhibit C**

**Lincoln**Partners
Advisors

<u>Schedule I</u>

This Schedule I is a part of and is incorporated into that certain letter agreement (the "***Agreement***") dated as of October 20, 2016 by and between the Official Committee of Equity Security Holders (the "***Equity Committee***") of Premier Exhibitions, Inc., Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG and the parent company of RMS Titanic, Inc., the Chapter 11 Debtor in Case No. 3:16-bk-02230-PMG (collectively with any entity formed or used for the purpose set forth herein, the "***Debtors***", and Lincoln Partners Advisors LLC, an Illinois limited liability company ("***Lincoln Advisors***"). Capitalized terms not defined herein shall have the same meaning assigned in the Agreement.

The Debtors shall, jointly and severally, indemnify and hold harmless Lincoln Advisors and its affiliates and their respective directors, officers, employees, members, attorneys, other agents and consultants appointed by any of the foregoing and each other person, if any, directly or indirectly controlling Lincoln Advisors or any of its affiliates (Lincoln Advisors and each such person and entity being referred to as an "***Indemnified Person***"), from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "***Liabilities***") arising out of or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to the Agreement or advice or services rendered or to be rendered by Teneo, any transaction contemplated thereunder or any Indemnified Persons' actions or omissions (or the actions or omissions of Teneo or its affiliates including, without limitation, the services provided by, or the actions or omissions of, Williams and Murphy prior to the Effective Date and any services provided by, or any or omissions of, Jeremy DeKoe or any employee or representative of Teneo (or its affiliates)) in connection with any such advice, services or transaction (the "***Services***"), and will reimburse each Indemnified Person for all reasonable documented fees and expenses (including the reasonable documented fees and expenses of outside counsel) (collectively, "***Expenses***") as they are incurred in investigating, preparing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party relating to the Services (collectively, "***Actions***"); provided that the Debtors will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a final judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct in connection with the Services (other than an action or failure to act undertaken at the request or with the consent of the Debtors). The Debtors shall also, jointly and severally, reimburse such Indemnified Person for all Expenses as they are incurred in connection with enforcing such Indemnified Persons' rights under the Agreement (including without limitation its rights under this Schedule I).  Such Indemnified Person shall reasonably cooperate, at the cost of the Debtors, with the defense of any Actions.

Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought under the Agreement, such Indemnified Person shall promptly notify the Debtors and the Equity Committee in writing; provided that failure to so notify the Debtors and the Equity Committee shall not relieve the

**Exhibit C**



Debtors from any liability which the Debtors or any other person may have on account of this indemnity or otherwise, except to the extent the Debtors shall have been materially prejudiced by such failure. The Debtors shall, upon receipt of notice, assume the defense of any such Action including the employment of counsel reasonably satisfactory to Lincoln Advisors; provided that the Debtors shall not have the right to assume the defense of any Action to the extent involving equitable relief against an Indemnified Person. Any Indemnified Person shall have the right to employ separate counsel in any Action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person, unless: (i) the Debtors have failed promptly to assume the defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Person and the Debtors, and such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Debtors; provided that the Debtors shall not in such event be responsible hereunder for the fees and expenses of more than one separate counsel in connection with any Action in the same jurisdiction, in addition to any local counsel. The Debtors shall not be liable for any settlement of any Action effected without its written consent (which shall not be unreasonably withheld, conditioned or delayed). In addition, the Debtors will not, without prior written consent of Lincoln Advisors (which shall not be unreasonably withheld, conditioned or delayed), settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of such Indemnified Person from all liabilities arising out of such Action.

If any indemnification sought by an Indemnified Person pursuant to the terms hereof is held by a court of competent jurisdiction to be unavailable for any reason or insufficient to hold such Indemnified Person harmless, then the Debtors and Lincoln Advisors will contribute to the Liabilities and Expenses for which such indemnification is held unavailable or insufficient (1) in such proportion as is appropriate to reflect the relative benefits received (or anticipated) from the proposed transaction by the Debtors on the one hand and the Indemnified Person on the other, in connection with Lincoln Advisors' engagement referred to above (whether or not the transaction contemplated by the engagement is consummated) or (2) if (but only if) the allocation provided in clause (1) is for any reason unenforceable, in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated) from the proposed transaction by the Debtors on the one hand and the Indemnified Person on the other, but also the relative fault of the Debtors and the Indemnified Person, as well as any other relevant equitable considerations, in each case subject to the limitation that the contribution by Lincoln Advisors will not exceed the amount of fees actually received by Lincoln Advisors pursuant to Lincoln Advisors' engagement.  It is hereby agreed that the relative benefit to the Debtors on the one hand and Lincoln Advisors on the other, with respect to Lincoln Advisors' engagement, shall be deemed to be in the same proportion as (1) the total value paid or proposed to be paid or received by the Debtors in connection with any sale transaction, whether or not consummated, or the total value received or proposed to be received by the Debtors' creditors and its stockholders in connection with any restructuring, for which Lincoln Advisors is engaged to render financial advisory services bears to (2) all fees actually received by Lincoln Advisors in connection with such engagement (excluding reimbursable expenses).

**Exhibit C**



No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Debtors or the Equity Committee for or in connection with advice or services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, services or transactions except for Liabilities (and related Expenses) of the Debtors or the Equity Committee that are determined by a final judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted solely from such Indemnified Person's gross negligence or willful misconduct in connection with any such advice, actions, inactions or services (other than an action or failure to act undertaken at the request or with the consent of the Debtors).

These indemnification, contribution and other provisions of this Schedule I shall (i) remain operative and in full force and effect regardless of any termination of the Agreement or completion of the engagement by Lincoln Advisors; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have.

**Exhibit C**

ORDERED.

**Dated:  August 17, 2016**

Paul M. Glenn
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

In re:

RMS TITANIC, INC., *et al.*,[1]

                    Debtors.

Case No. 3:16-bk-02230-PMG
Chapter 11 (Jointly Administered)

**ORDER GRANTING MOTION TO ESTABLISH PROCEDURES
TO PERMIT MONTHLY PAYMENT OF INTERIM FEE
APPLICATIONS OF CHAPTER 11 PROFESSIONALS**

THIS PROCEEDING came on for hearing on August 2, 2016, on the Debtors'

Motion to Establish Procedures to Permit Monthly Payment of Interim Fee Applications

of Chapter 11 Professionals [D.E. 89] ("Motion").

Accordingly, it is

**ORDERED:**

1.      The Motion is GRANTED.

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309).  The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

**Exhibit A to Engagement Letter**

2.     On or before the 15th day of each month following the month for which compensation is sought, each Professional whose employment was approved by order of this Court authorized to seek compensation may serve a monthly statement, by email to the United States Trustee, counsel for the Debtors, counsel for any appointed committee, if any, counsel for the secured creditors Lang, Fenge, Haiping Zou, and Jihie Zhang, and any other party that the Court may designate (collectively, the "Service Parties").

3.     The monthly statement need not be filed with the Court and a courtesy copy need not be delivered to the presiding judge's chambers because this Order is not intended to alter the fee application requirements outlined in Sections 330 and 331 of the Bankruptcy Code because professionals are still required to serve and file interim and final applications for approval of fees and expenses in accordance with the relevant provisions of the Bankruptcy Code, and the Bankruptcy Rules.

4.     Each monthly fee statement must contain an abbreviated narrative of the services rendered, accompanied by a printout or schedule of the reimbursable expenses incurred and the Professional and paraprofessional time spent (in sufficient detail to allow the review of the time by the Service Parties), which shall ordinarily be for services rendered through a particular calendar month.

5.     Each Service Party receiving a statement may object to the payment of the fees and the reimbursement of costs set forth therein by serving a written objection (which shall not be filed with the Court) upon the other Service Parties on or before the 25th day of the month in which the statement is received.  The objection shall state the

2

**Exhibit A to Engagement Letter**

nature of the objection and identify the amount of the fees or costs to which objection is made.  The objecting party shall attempt in good faith to object only to the portion of the statement that is deemed to be objectionable.

6.     In absence of any timely objection, the Debtors are authorized to pay up to 80% of the fees and 100% of the expenses identified in each monthly statement to which no objection had been timely made in accordance with paragraph 5 of this Order.

7.     If the Debtors receive an objection to a particular fee statement, it shall withhold payment of that portion of the fee statement to which the objection is directed and promptly pay the remainder of the fees and disbursements in the percentages set forth in paragraph 6 above.  All Professionals subject to this Order will establish a separate billing number for any time spent on the resolution of fee disputes.  Any fees incurred in connection with such fee disputes shall not be paid pursuant to the monthly statement, but may only be sought and paid upon the filing of an interim fee application as set forth in paragraph 11 below and after order of the Court.

8.     Similarly, if parties to an objection are able to resolve their dispute, then the Debtors are authorized to pay that portion of the fee statement that is no longer subject to an objection, if the party whose statement was objected to serves on the Service Parties a statement indicating that the objection was withdrawn and describing in detail the terms of the resolution.

9.     Any objections that are not resolved by the parties would be preserved and presented to the Court by the objecting party at the next interim or final fee application hearing to be heard by the Court.

**Exhibit A to Engagement Letter**

10.     The service of an objection in accordance with paragraph 5 of this Order shall not prejudice the objecting party's right to object to any fee application on any ground, whether or not raised in the objection.  Further, the decision by any party not to object to a fee statement shall not be a waiver of, nor otherwise prejudice, that party's right to object to any subsequent fee application.

11.     Unless the Court orders otherwise, each of the Professionals utilizing the procedures described in this Order shall file interim fee applications, for the amount of fees and costs sought in paragraph 6 above, in accordance with the 120 day guideline set forth in Section 331 of the Bankruptcy Code.

12.     A Professional who fails to file an application seeking approval of compensation and expenses previously paid under this Order when such application is due shall preclude such Professional from utilizing the automatic pay procedures as provided herein until an interim fee application has been filed and heard by the Court.

13.     A determination, by the Court, that payment of compensation or reimbursement of expenses was improper as to a particular monthly statement shall not disqualify a Professional from the future payment of compensation or reimbursement of expenses as set forth above, unless otherwise ordered by the Court.

14.     Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein shall have any effect on this Court's interim or final allowance of compensation and reimbursement of expenses of any Professionals.

**Exhibit A to Engagement Letter**

15.    The Debtors shall include all payments to Professionals on its monthly operating reports, detailed so as to state the amount paid to each of the Professionals.

16.    The Debtors may not make any payments under this Order if the Debtors have not timely filed monthly operating reports or remained current with its administrative expenses and 28 U.S.C. § 1930. Otherwise, this Order shall continue and shall remain in effect during the pendency of this case unless otherwise ordered by this Court.

17.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

18.    Upon motion or application, and after due notice to all parties set forth on the Court's mailing matrix, additional professionals employed by the Debtors or a committee may be authorized to participate in modified interim compensation procedures as set forth in this Order.

19.    All Professionals subject to this Order shall be required to monitor their own compliance with the terms of this Order and shall include the following certification on each monthly invoice: *I hereby certify that I am in compliance with the terms of the Order Establishing Procedures to Permit Monthly Payment of Interim Fee Applications of Chapter 11 Professionals.*

**Exhibit A to Engagement Letter**

20.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.


### 


Copies furnished to:

Daniel F. Blanks, Esq.


Attorney Daniel F. Blanks is directed to serve a copy of this Order on all non-CM/ECF interested parties and file a proof of service within 3 days of entry of the Order.


~#4846-3582-6485 v.1 ~

6

**Exhibit A to Engagement Letter**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLROIDA**
**www.flmb.uscourts.gov**


**EXPENSE REIMBURSEMENT GUIDELINES**


Consistent with Local Rule 2016-1(e) and Bankruptcy Rule 2016, this expense reimbursement guideline is intended to serve as a guide to professionals who submit employment and expense applications to the Court.  Reimbursement for expenses is confined to the actual and reasonable expenses that are necessary to perform the assignment. Any application for reimbursement must be supported by documentation as appropriate.

Factors relevant to a determination that the expense is proper include the following:

1.  **Reasonable and Economical**. Whether the expense is reasonable and economical. (For example, first class and other luxurious travel mode or accommodations will normally be objectionable.)

2.  **Standard Practices**. Whether the requested expenses are customarily charged to non-bankruptcy clients of the applicant. The Court will consider the customary practice of the firm in charging or not charging non-bankruptcy clients for particular expense items. The practice should remain consistent regardless of the client. The Court recognizes that there will be differences in billing practices among professionals.

3.  **Documentation**. Whether the applicant has provided a detailed itemization of all expenses including the date incurred, description of expense (*e.g.,* type of travel, type of fare, rate, destination), and the method of computation.

4.  **Unusual Items.** Whether the applicant has explained unusual items in greater detail.

5.  **Proration**. Whether the applicant has prorated expenses where appropriate between the estate and other cases (*e.g.,* travel expenses applicable to more than one case) and has adequately explained the basis for any such proration.

6.  **Actual Cost.** Whether expenses incurred by the applicant to third parties are limited to the <u>actual</u> amounts billed to, or paid by, the applicant on behalf of the estate.


**Types of Reimbursable Travel and Expenses**

- Common carrier fees (coach), rental car fees (small and mid-size vehicles only), mileage calculated using the Internal Revenue Service's current optional standard mileage rate, tolls, and parking costs (but not parking or violation tickets).

- Ground transportation such as taxis, buses, and subways.


**Exhibit A to Engagement Letter**

- Tips to porters and baggage handlers.

- Meals and gratuities.

- Lodging.

- The actual cost of office supplies, facsimile, and copy services.

  - Internal photocopy expenses must be reasonable, not to exceed $0.15 per page.

  - External photocopy expenses are reimbursable at cost.

  - Facsimiles should not exceed $1.00 per page received.

- Postage.

- Messenger services, where necessity is shown.

- Computerized research (with supporting documentation, identified by client and matter).

## Expenses Not Subject to Reimbursement

- Personal hotel expenses, such as movie rentals or gym fees.

- Alcohol and entertainment expenses.

- Repairs and maintenance work for personal vehicles.

- Office overhead expenses not particularly attributable to an individual client or case (such as word processing, proofreading, secretarial and other clerical services, rent, utilities, office equipment and furnishings, insurance, taxes, local telephones and monthly car phone charges, lighting, heating and cooling, and library and publication charges).

- Paralegal services (although not reimbursed as an expense, may be compensated as a paraprofessional under 11 U.S.C. § 330).

- Expenses exceeding the actual amount incurred to the applicant.

- Other professional services incurred without approval. A professional employed under 11 U.S.C. § 327 may not employ, and charge as an expense, another professional (i.e., special litigation counsel employing an expert witness) unless the employment is approved by the Court *prior* to rendering the employment.

**Exhibit A to Engagement Letter**