## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,

      Debtors. [1]

_____/

Case No.: 3:16-bk-02230-PMG

Chapter 11

(Jointly Administered)

## NOTICE OF FILING DRAFT COMPLAINT IN SUPPORT OF THE EQUITY COMMITTEE'S EMERGENCY MOTION FOR ENTRY OF AN ORDER GRANTING DERIVATIVE STANDING AND AUTHORITY TO PROSECUTE AND SETTLE CERTAIN CLAIMS ON BEHALF OF THE DEBTORS' ESTATES (DOC. 1015)

The Official Committee of Equity Security Holders of Premier Exhibitions, Inc., Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG and the parent company of RMS Titanic, Inc., Chapter 11 Debtor in Case No. 3:16-bk-02230-PMG, by and through undersigned counsel, hereby gives notice of filing the draft Adversary Complaint and Demand for Jury Trial in support of its Emergency Motion of the Official Committee of Equity Security Holders for Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates (Doc. 1015).   The attached draft Adversary Complaint and Demand for Jury Trial is subject to further revision and incorporation of additional claims.

Dated: May 23, 2018

Peter J. Gurfein, Esq.
**LANDAU GOTTFRIED & BERGER LLP**
1801 Century Park East, Suite 700
Los Angeles, California 90067
(310) 557-0050
(310) 557-0056 (Facsimile)
pgurfein@lgbfirm.com

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309) (collectively, the "Debtors"). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

-and-

**AKERMAN LLP**

By: */s/ Jacob A. Brown*
Jacob A. Brown
Florida Bar No. 170038
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
(904) 798-3700
(904) 798-3730 (Facsimile)
Jacob.brown@akerman.com

Attorneys for the Official Committee of Equity
Security Holders of Premier Exhibitions, Inc.


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 23, 2018, the foregoing was transmitted to the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a notice of electronic filing to all creditors and parties in interest who have consented to receiving electronic notifications in this case. In accordance with the Court's Order Granting Debtors' Motion for an Order Pursuant to 11 U.S.C. § 105(a) and Rule 2002 Establishing Notice Procedures (Doc. 140), a copy of the foregoing was also furnished on May 23, 2018 by U.S. mail, postage prepaid and properly addressed, to the Master Service List attached hereto.

*/s/ Jacob A. Brown*
Attorney

2

**MASTER SERVICE LIST**
*Case No. 3:16-bk-02230-PMG*

A-1 Storage and Crane
2482 197th Avenue
Manchester, IA 52057

ABC Imaging
14 East 38th Street
New York, NY 10017

A.N. Deringer, Inc.
PO Box 11349
Succursale Centre-Ville
Montreal, QC H3C 5H1

ATS, Inc.
1900 W. Anaheim Street
Long Beach, CA 90813

Broadway Video
30 Rockefeller Plaza
54th Floor
New York, NY 10112

CBS Outdoor/Outfront Media
185 US Highway 48
Fairfield, NJ 07004

Dentons Canada LLP
250 Howe Street, 20th Floor
Vancouver, BC V6C 3R8

Enterprise Rent-A-Car Canada
709 Miner Avenue
Scarborough, ON M1B 6B6

Expedia, Inc.
10190 Covington Cross Drive
Las Vegas, NV 89144

George Young Company
509 Heron Drive
Swedesboro, NJ 08085

Gowlings
550 Burrard Street
Suite 2300, Bental 5
Vancouver, BC V6C 2B5

Hoffen Global Ltd.
305 Crosstree Lane
Atlanta, GA 30328

Kirvin Doak Communications
5230 W. Patrick Lane
Las Vegas, NV 89118

MNP LLP
15303 - 31st Avenue
Suite 301
Surrey, BC V3Z 6X2

Morris Visitor Publications
PO Box 1584
Augusta, GA 30903

NASDAQ Stock Market, LLC
805 King Farm Blvd.
Rockville, MD 20850

National Geographic Society
1145 - 17th Avenue NW
Washington, DC 20036

NYC Dept. of Finance
PO Box 3646
New York, NY 10008

PacBridge Limited Partners
22/F Fung House
19-20 Connaught Road
Central Hong Kong

Ramparts, Inc.
d/b/a Luxor Hotel and Casino
3900 Las Vegas Blvd. South
Las Vegas, NV 89119

Seaventures, Ltd.
5603 Oxford Moor Blvd.
Windemere, FL 34786

Syzygy3, Inc.
231 West 29th Street
Suite 606
New York, NY 10001

TPL
3340 Peachtree Road
Suite 2140
Atlanta, GA 30326

Verifone, Inc.
300 S. Park Place Blvd.
Clearwater, FL 33759

WNBC - NBC Universal Media
30 Rockefeller Center
New York, NY 10112

Jonathan B. Ross, Esq.
Gowling WLG (Canada) LLP
550 Burrard Street, Suite 2300, Bentall 5
Vancouver, BC V6C 2B5

Pallet Rack Surplus, Inc.
1981 Old Covington Cross Road NE
Conyers, GA 30013

Screen Actors Guild
1900 Broadway
5th Floor
New York, NY 10023

Sophrintendenza Archeologica
di Napoli e Pompei
Piazza Museo 19
Naples, Italy 80135

Time Out New York
405 Park Avenue
New York, NY 10022

TSX Operating Co.
70 West 40th Street
9th Floor
New York, NY 10018

Samuel Weiser
565 Willow Raod
Winnetka, IL 60093

United States Attorney's Office
Middle District of Florida
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202

Christine R. Etheridge, Esq.
Bankruptcy Administration
Wells Fargo Vendor Financial Services, LLC
PO Box 13708
Macon, GA 31208

TSX Operating Co., LLC
c/o James Sanna
70 W. 40th Street
New York, NY 10018
***Creditor Committee***

B.E. Capital Management Fund LP
Thomas Branziel
205 East 42nd Street , 14th Floor
New York, NY 10017
***Creditor Committee***

Dallian Hoffen Biotechnique Co., Ltd.
c/o Ezra B. Jones
305 Crosstree Lane
Atlanta, GA 30328
***Creditor Committee***

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division
www.flmb.uscourts.gov

In re:                                              Chapter 11

RMS TITANIC, INC. *et al.*.                         Case No. 3:16-bk-002230-PMG

       Debtors                            Jointly Administered
_____/

                          Adv. Case No. _____

OFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS OF PREMIER
EXHIBITIONS, INC.,

       Plaintiff,
v.

MARK A. SELLERS, SAMUEL WEISER,
DOUGLAS BANKER, RICHARD KRANIAK,
JACOB H. JACOBS, DAOPING BAO, and
SELLERS CAPITAL MASTER FUND, LTD.,

       Defendants.
_____/

## ADVERSARY COMPLAINT AND DEMAND FOR JURY TRIAL

       Plaintiff, the Official Committee of Equity Security Holders of Premier Exhibitions, Inc.

(the "Equity Committee" or "Plaintiff"), sues the defendants, Mark A. Sellers ("Sellers"),

Samuel Weiser ("Weiser"), Douglas Banker ("Banker"), Richard Kraniak ("Kraniak"), Jacob H.

Jacobs ("Jacobs"), Daoping Bao ("Bao"), and Sellers Capital Master Fund, Ltd. ("Sellers

Capital"), (when the foregoing are referred to collectively, the "Defendants"), alleging as

follows:

## SUMMARY OF THE ACTION

1.      In this action for monetary and equitable relief, the Equity Committee, on behalf of the bankruptcy estate of Premier Exhibitions, Inc. ("Premier"), seeks damages for the Defendants' tortious conduct.  Sellers and Weiser were directors of Premier, Weiser served as Premier's Chief Executive Officer (CEO), and Sellers Capital, an entity owned and controlled by Sellers and Weiser, owned approximately 31.1% of Premier.  Sellers, Weiser, and Sellers Capital thus owed fiduciary duties to Premier and its shareholders.  Sellers, Weiser, and Sellers Capital breached their fiduciary duties and usurped at least one of Premier's corporate opportunities by (1) prioritizing their pecuniary interests in selling Sellers Capital's shares of Premier's stock (the "Sellers Capital Shares") over Premier's need to obtain operating capital, and (2) appropriating a corporate opportunity to engage in a beneficial transfer of Premier's stock to Armada Group GP, Inc. ("Armada").  These breaches damaged Premier and its shareholders.

2.      Banker, Kraniak, and Jacobs aided and abetted these breaches, and Sellers, Weiser, and Sellers Capital aided and abetted each other's breaches.

3.      Sellers, Weiser, Banker, Jacobs, and Kraniak also breached their respective fiduciary duties of care by, and were grossly negligent in, closing Premier's merger with DinoKing Tech Inc. ("DinoKing") on a hasty and careless basis, without considering competing opportunities, and without assessing the myriad accounting errors in DinoKing's financial statements.

4.      Finally, Bao breached his fiduciary duties to Premier by failing to either disclose or rectify these errors after he became a director and the CEO of Premier.

2

5. As a result of the Defendants' tortious conduct, Premier and its shareholders sustained damages, and any claim the Defendants have against the bankruptcy estates of Premier or any of its subsidiaries should be equitably subordinated.

## PARTIES, JURISDICTION, AND VENUE

6. The Equity Committee is a committee of Premier's equity security holders appointed by the Acting United States Trustee in accordance with 11 U.S.C. § 1102(a). [*See* D.E. 166.] The Equity Committee has standing to pursue all direct and derivative claims held by Premier's shareholders pursuant to this Court's *Order Granting the Emergency Motion of the Official Committee of Equity Security Holders for Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Certain Claims on Behalf of the Debtors' Estates*. [*See* D.E.]

7. Sellers is a resident of Illinois and was a director of Premier until Premier's merger with DinoKing.

8. Weiser is a resident of Illinois, was Premier's CEO until June 13, 2014, and was a director of Premier until April 2, 2015.

9. Banker is a resident of Michigan and director of Premier.

10. Kraniak is a resident of Michigan and director of Premier.

11. Jacobs is a resident of New York and was a director of Premier until March 16, 2015.

12. Bao is a resident of Canada, a director of Premier, and Premier's CEO.

13. Sellers Capital is a Cayman Islands company that maintains its principal place of business in Illinois.

14. Premier is a Florida for-profit corporation.

3



15.     The damages sought in this action exceed $75,000.00, exclusive of interest and costs.

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1334, 157.

17.     This is a core proceeding under 28 U.S.C. § 157(b) that includes non-core claims, and the Equity Committee consents to the entry of a final order and judgment by the Bankruptcy Court pursuant to Fed. R. Bankr. P. 7008(a).

18.     This Court has jurisdiction over the Defendants because the Defendants committed tortious acts within this state, all of the Defendants are residents and citizens of the United States, and the Federal Rules of Bankruptcy Procedure provide for nationwide service of process.

19.     The Defendants may be joined in this action under Fed. R. Bankr. P. 7020 because the Plaintiff's right to relief from each of them arises from the same series of occurrences, and questions of law and fact common to all of the Defendants will arise in this action.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## GENERAL ALLEGATIONS

21.     The Defendants owed Premier and its shareholders certain fiduciary duties.

22.     These duties include the duty of care, the duty of loyalty, and the duty of good faith.

23.     The duty of care required that the Defendants use that amount of care which ordinarily careful and prudent people would use in similar circumstances, and consider all material information which was readily available to them in making business decisions.

4

24.     The duty of loyalty required that the best interests of Premier and its shareholders take precedence over any interest possessed by the Defendants and not shared by Premier's stockholders generally.  None of the Defendants could act loyally towards Premier unless they acted in the good faith belief that their actions were in Premier's best interests.

25.     The duty of good faith required that the Defendants take all actions necessitated by a true faithfulness and devotion to the interests of Premier and its shareholders.  None of the Defendants could act with a purpose other than that of advancing Premier's best interests.

26.     As an owner of approximately 31.1% of Premier's stock, Sellers Capital owed Premier and its minority shareholders the foregoing fiduciary duties.

27.     In early 2014, Sellers and Weiser were directors of Premier, and Weiser was Premier's CEO.  As such, Sellers and Weiser owed Premier and its shareholders the foregoing fiduciary duties.

28.     At the same time, Sellers and Weiser owned, operated, and thus owed the same fiduciary duties to Sellers Capital.

29.     Sellers and Weiser's fiduciary duties to and the interests of Sellers Capital began to conflict with their fiduciary duties to and the interests of Premier because Sellers, Weiser, and Sellers Capital sought to dispose of the Sellers Capital Shares at the precise time that Premier was pursuing a capital infusion.

30.     In 2014, Premier was suffering from a shortfall in operating capital and assessing different options to alleviate the deficit and carry out its business plans, including debt financing options and opportunities to merge with other companies.

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

31.     During this process, Premier engaged in discussions with numerous entities, including Armada, DinoKing, Base Entertainment ("Base"), Brevet Capital Advisors ("Brevet"), and Twin Haven Capital Partners ("Twin Haven").

32.     Throughout 2014, Premier received merger proposals from Armada, DinoKing, and Base, which included debt financing options, as well as straight debt financing proposals from Brevet and Twin Haven.

33.     Despite Premier's acute need for capital, however, Sellers and Weiser refused to allow Premier to proceed with any of these opportunities.  Rather than fulfilling their respective duties to Premier and its shareholders, Sellers and Weiser were attempting to sell the Sellers Capital Shares and did not want a merger or debt financing transaction to interfere with that sale or adversely affect the sale price payable to Sellers Capital and, by extension, themselves.

34.     Stark evidence of Sellers and Weiser's breaches of their fiduciary duties is memorialized in an email exchange between Sellers and Weiser on May 8, 2014.  In that communication, Sellers expressly stated that he would vote against Premier accepting any loan offer at that point because he would be accepting a letter of intent to purchase Sellers Capital Shares that day.

35.     In fact, Premier did not accept the proposals Brevet and Twin Haven submitted. As a result, Premier did not obtain the capital it required to keep its operation running smoothly, carry out its business plans, and otherwise maintain and increase shareholder value.

36.     Moreover, with respect to the entities that had expressed an interest in merging with Premier, Sellers, Weiser, and Sellers Capital began competing with Premier, as any entity that was interested in merging with Premier would be interested in purchasing the Sellers Capital Shares and thereby obtaining a 31.1% block of Premier's stock.

6

37.    Shortly after Armada proposed a merger transaction with Premier, for example, it also proposed, through an affiliated entity, to purchase the Sellers Capital Shares for $1.30 per share.

38.    Thereafter, both Base and DinoKing, who had previously only been negotiating deals with Premier, also made offers to Sellers for the purchase of the Sellers Capital Shares.

39.    Upon information and belief, Sellers and Weiser actively solicited competing offers from entities interested in merging with Premier and discouraged such entities from pursuing a merger before the Sellers Capital Shares were sold.

40.    On July 16, 2014, for instance, Weiser attempted to convince DinoKing's representatives that they would not be able to negotiate a deal with Premier at that time and suggested that DinoKing purchase the Sellers Capital Shares first.

41.    Eventually, Sellers, Weiser, and Sellers Capital decided to sell the Sellers Capital Shares to KOP Group PTE, Ltd. ("KOP").

42.    Believing that Premier's approval of the sale was required under the Florida Control Share Acquisition Statute, Sellers put the proposed transaction with KOP before Premier's board of directors for a vote on July 23, 2014.

43.    Premier's board of directors voted against the proposed transaction with KOP.

44.    At the very next meeting, Sellers moved to reconstitute the board of directors, and directors William Adams, Ronald Bernanrd, and Bruce Steinberg, who had opposed Sellers' actions, were replaced by Jacobs and Kraniak.

45.    The newly reconstituted board acted quickly to appoint Weiser as Executive Chairman of Premier's board of directors with a salary of $30,000 per month, an unreasonable and suspiciously high level of compensation for a company with an acute need for capital.

7



46.    As Executive Chairman of the board, Weiser provided Premier's directors with updates about the contemplated transactions with DinoKing and Armada.

47.    As Premier's directors well knew, however, Premier would not be proceeding with either transaction until after the Sellers Capital Shares were sold.

48.    In fact, DinoKing would subsequently explain in a presentation to potential investors that, while Premier and DinoKing began discussing a potential merger in January 2014, the merger did not move ahead at that time because Sellers was then focused on selling the Sellers Capital Shares and did not want them to be diluted.

49.    In the meantime, Premier's financial situation continued to deteriorate due to its directors' tortious conduct to the point where Premier had to obtain a loan.

50.    Premier had already received long-term debt financing proposals from Brevet and Twin Haven, but they were rebuffed by Premier due to Sellers and Weiser's influence.

51.    The rejection of the Brevet and Twin Haven proposals were not based upon Premier's best interests.  Instead, Sellers and Weiser caused Premier to reject these proposals because they were pursuing their own interests and the interests of Sellers Capital, ensuring that no action significantly impacted the sale of the Sellers Capital Shares would be taken.

52.    However, while Sellers and Weiser were placing their own interests over those of Premier, Premier needed cash.  Premier was thus ultimately left with no option but to obtain a bridge loan from Pentwater Capital Management LP (the "Pentwater Loan") on terms less favorable than those offered by Brevet and Twin Haven.

53.    The Pentwater Loan was made on September 30, 2014, and matured on March 31, 2015, a mere six (6) months later.

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

54.    During this time, the KOP deal fell through, and Sellers and Weiser resumed negotiations with Armada, but not for the purpose of completing a merger with Premier, which Armada was still interested in, but for the conflicting purpose of selling the Sellers Capital Shares to Armada.

55.    On October 15, 2014, Sellers and Weiser's breaches of their duties to Premier paid off.  Armada agreed to purchase the Sellers Capital Shares for $16,200,000, which, after a February 1-for-10 split of Premier's common stock, would amount to $10.50 per share, a significant windfall for Sellers, Weiser, and Sellers Capital.

56.    Under the terms of this agreement, Armada was required to tender the full purchase price in exchange for the Sellers Capital Shares, and Sellers and Weiser were required to have three new directors chosen by Armada appointed to Premier's board of directors by November 20, 2014.

57.    Premier's board of directors approved of this agreement, and Sellers and Weiser succeeded in having the directors chosen by Armada appointed to Premier's board of directors, as Sellers and Weiser controlled the board.  Sellers and Weiser remained as directors despite their conflicting interests, and Jacobs and Kraniak—Sellers and Weiser's handpicked replacements for dissenting directors William Adams, Ronald Bernard, and Bruce Steinberg— consented to and facilitated Sellers and Weiser's actions.

58.    However, Armada did not tender the purchase price as agreed and, as a result, Sellers Capital sued Armada in the United States District Court for the North District of Illinois (the "Armada Action").

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

59.     Sellers Capital ultimately secured a judgment against Armada for $6,000,000, reflecting a portion of the corporate opportunity that Premier should and would have enjoyed but for Sellers, Weiser, and Sellers Capital's usurpation of the same.

60.     With the Armada deal signed, Premier was finally permitted to make meaningful progress toward obtaining the capital needed to operate and pursue its business plans.

61.     By this point, there was not much time to act, as the Pentwater Loan would soon mature, and Premier did not have the funds required to repay it.

62.     Yet, there was sufficient time to adequately analyze the DinoKing proposal, which, while not as favorable as prior competing proposals Premier had received, was still available to Premier.

63.     There was also enough time to consider competing proposals.

64.     Nevertheless, Sellers, Weiser, Banker, Kraniak, and Jacobs decided to move forward with the DinoKing offer without even hearing a competing offer for long-term convertible debt from a group led by Andrew Shapiro.  Instead, Sellers, Weiser, Banker, Kraniak, and Jacobs simply pursued the first available offer.

65.     On April 2, 2015, DinoKing and Premier entered into a merger agreement.

66.     While preparing the proxy statement for the merger, Premier determined that there were issues in DinoKing's financial statements.

67.     Specifically, Premier was concerned about the propriety of DinoKing's recognition of revenue in its audited financial statements.

68.     Sellers, Weiser, Banker, Kraniak, and Bao were or should have been aware of these financial improprieties, as well as the possibility that the financial statements would have

agentis
Legal Advocates & Advisors

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

to be restated after the merger as a result.  Despite that knowledge, none of them ensured that these financial improprieties were resolved before moving forward with the merger.

69.    After the merger, Sellers and Weiser resigned from Premier's board of directors, and Bao joined the board.

70.    From the time Bao joined Premier's board of directors until April 11, 2016, nearly six months after the merger closed, Bao fought with Premier's management over the accuracy of DinoKing's financial statements.

71.    On April 11, 2016, however, Premier issued a disclosure statement explaining that Premier was restating DinoKing's financial information from 2013 and 2014.

72.    For fiscal year 2013, DinoKing's revenue was really $5,400,000,[1] not the $6,400,000 reported in the proxy statement, the cost of sales was reduced from $2,500,000 to $1,600,000, and the operating income was restated as $700,000, not the $1,000,000 previously reported.

73.    For fiscal year 2014, DinoKing's revenue was not $11,000,000, as reported, but was actually $6,000,000, the cost of sales was reduced from $1,600,000 to $1,000,000, and the operating income was reported as $2,100,000, not $6,500,000.

74.    As a result of Bao's failure to take all appropriate action to ensure that DinoKing's financial statements were restated as soon as possible, as well as the Defendants' gross negligence and breaches of fiduciary duties described herein, Premier and its shareholders were harmed.

75.    From January 3, 2014, through April 15, 2016, Premier's price per share dropped **95.42%**, from $11.80 per share to $0.54 per share.

---

[1] All of the dollar amounts contained in DinoKing's financial statements refer to Canadian dollars.

11



76.     In fact, Sellers Capital's judgment in the Armada Action is based on the difference between $10.50 per share, the price that Armada would have paid for the Sellers Capital Shares after the 1-for-10 split, and $0.78 per share, the value at which Sellers Capital distributed the Sellers Capital Shares to its investors on or about December 18, 2015.

77.     Premier's management recognized the value of time for Premier during this critical period.  Michael J. Little, who served as Premier's CEO for a time, testified that Premier would have "[a]bsolutely" been better off as a company had it entered into a strategic transaction earlier than it did, and Weiser himself complained to Armada that its failure to close the transaction cost Premier "valuable weeks" in negotiating other deals.

78.     If the DinoKing transaction or any other strategic transaction was more actively pursued earlier, while Premier's shares were more valuable, Premier would have obtained a more advantageous deal.

79.     But for Sellers and Weiser's pursuit of a deal for Sellers Capital, the DinoKing deal (or another transaction) could have closed earlier.

80.     Sellers, Weiser, Banker, Jacobs, and Kraniak were all aware of the potential transactions available to Premier, as well as Premier's need for an infusion of capital, but allowed the Armada deal to move forward at Premier's expense.

81.     Indeed, Premier disclosed in a proxy statement that "discussions with the PacBridge/Dinoking group, along with other potential strategic partners with whom the Company was in discussion, were paused pending the outcome of the Sellers/Armada transaction."

Agentis
Legal Advocates & Advisors

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

82.     Moreover, the foregoing figures, while material and compelling, do not fully and adequately reflect the extent of the damage Premier sustained by missing and losing corporate opportunities as a result of the Defendants' tortious conduct.

83.     The Defendants are liable for this damage.

84.     As a result of this damage, Premier was forced to seek protection under the Bankruptcy Code.

85.     On June 14, 2016, Premier filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.

86.     On August 24, 2016, the United States Trustee appointed the Equity Committee.

87.     The Equity Committee has engaged the undersigned law firm for representation in this action and has agreed to an arrangement under which the undersigned law firm will receive payment for the reasonable fees and expenses associated therewith.

88.     All conditions precedent to the initiation of this action have occurred, have been satisfied, or have been waived or excused.

**COUNT I**
**BREACH OF FIDUCIARY DUTY**
**(Against All Defendants)**

89.     The Plaintiff re-alleges here the allegations set forth in the paragraphs preceding the first count of this complaint as if fully set forth herein.

90.     The Defendants owed Premier and its shareholders the fiduciary duties of care, loyalty, and good faith.

91.     The Defendants breached their fiduciary duties to Premier and its shareholders.

92.     Sellers and Weiser breached their fiduciary duties to Premier and its shareholders by, among other things, (1) prioritizing their interests in selling the Sellers Capital Shares over

13



Premier's interests, (2) preventing Premier from moving forward with any proposed merger or debt financing option in order to first promote the sale of the Sellers Capital Shares, (3) causing Premier to lose corporate opportunities to merge and secure debt financing, (4) actively competing with Premier in its pursuit of corporate opportunities, (5) replacing members of Premier's board of directors because they disapproved of Sellers' actions, (6) causing Premier to pay Weiser and accepting a salary of $30,000 per month at a time when Premier was in financial straits, (7) approving the agreement to sell the Sellers Capital Shares to Armada, (8) usurping and permitting the usurpation of Premier's corporate opportunity with Armada, (9) causing the appointment of individuals chosen by Armada to Premier's board of directors pursuant to an agreement to sell the Sellers Capital Shares to Armada, (10) moving forward with the DinoKing merger proposal without considering competing offers, (11) moving forward with the DinoKing merger without adequately addressing the inaccuracies in DinoKing's financial statements, and (12) permitting and enabling the other Defendants to breach their fiduciary duties to Premier.

93.    Banker, Jacobs, and Kraniak breached their fiduciary duties to Premier and its shareholders by, among other things, (1) permitting Premier to stop progressing toward any merger or debt financing option in order to promote the sale of the Sellers Capital Shares, (2) permitting Premier to lose corporate opportunities to merge and secure debt financing, (3) approving the replacement of members of Premier's board of directors because they disapproved of Sellers' actions, (4) approving a salary for Weiser of $30,000 per month at a time when Premier was in financial straits, (5) approving the agreement to sell the Sellers Capital Shares to Armada and thereby permitting the usurpation of Premier's corporate opportunity with Armada, (6) approving the appointment of individuals chosen by Armada to Premier's board of directors pursuant to the agreement to sell the Sellers Capital Shares to Armada, (7) moving forward with

14

the DinoKing merger proposal without considering competing offers, (8) moving forward with the DinoKing merger without adequately addressing the inaccuracies in DinoKing's financial statements, and (9) otherwise permitting and enabling the other Defendants to breach their fiduciary duties to Premier.

94.    Sellers Capital breached its fiduciary duties to Premier and its other shareholders by, among other things, competing with Premier for corporate opportunities and usurping Premier's corporate opportunity with Armada.

95.    Bao breached his fiduciary duties to Premier by, among other things, (1) failing to disclose the misstatements and accounting errors in DinoKing's financial statements after becoming Premier's CEO and joining Premier's board of directors, and (2) failing to correct the misstatements and accounting errors in DinoKing's financial statements after becoming Premier's CEO and joining Premier's board of directors.

96.    As a direct and proximate result of these breaches, Premier and its shareholders sustained damages.

97.    The damages sustained by Premier and its shareholders include or are evidenced by, among other things, (1) the lost corporate opportunity to merge with Armada, (2) the lost corporate opportunity to merge with DinoKing at a more beneficial time, (3) the lost corporate opportunity to merge with Base, (4) the lost corporate opportunity to secure debt financing from Brevet when Premier needed it, (5) the lost corporate opportunity to secure debt financing from Twin Haven when Premier needed it, (6) the lost corporate opportunity to merge with a company more viable than DinoKing, (7) the drop in market capitalization and shareholder value between 2014 and 2016, and (8) Premier's bankruptcy and the associated expenses.

98.    The Defendants are liable for these damages.

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

## COUNT II
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
**(Against Sellers, Weiser, Banker, Jacobs, Kraniak, and Sellers Capital)**

99.    The Plaintiff re-alleges here the allegations set forth in the paragraphs precedent the second count of this complaint as if fully set forth herein.

100.    The Defendants owed Premier and it shareholders the fiduciary duties of care, loyalty, and good faith.

101.    The Defendants breached their fiduciary duties to Premier and its shareholders.

102.    Sellers, Weiser, Banker, Jacobs, Kraniak, and Sellers Capital each knew that the Defendants had breached their fiduciary duties to Premier and its shareholders.

103.    Sellers, Weiser, Banker, Jacobs, Kraniak, and Sellers Capital each substantially assisted the Defendants in breaching their fiduciary duties to Premier and its shareholders.

104.    As a direct and proximate result, Premier and its shareholders sustained damages.

105.    The damages sustained by Premier and its shareholders include or are evidenced by, among other things, (1) the lost corporate opportunity to merge with Armada, (2) the lost corporate opportunity to merge with DinoKing at a more beneficial time, (3) the lost corporate opportunity to merge with Base, (4) the lost corporate opportunity to secure debt financing from Brevet when Premier needed it, (5) the lost corporate opportunity to secure debt financing from Twin Haven when Premier needed it, (6) the lost corporate opportunity to merge with a company more viable than DinoKing, (7) the drop in market capitalization and shareholder value between 2014 and 2016, and (8) Premier's bankruptcy and the associated expenses.

106.    Sellers, Weiser, Banker, Jacobs, Kraniak, and Sellers Capital are liable for these damages.

16

## COUNT III
## GROSS NEGLIGENCE
### (Against Sellers, Weiser, Banker, Jacobs, and Kraniak)

107.    The Plaintiff re-alleges here the allegations set forth in the paragraphs preceding the first count of this complaint as if fully set forth herein.

108.    Sellers, Weiser, Banker, Jacobs, and Kraniak had a duty to Premier to use ordinary, reasonable, and prudent care in proceeding with Premier's merger with DinoKing in order to protect Premier and its shareholders against unreasonable risks.

109.    In proceeding with Premier's merger with DinoKing, the Sellers, Weiser, Banker, Jacobs, and Kraniak grossly failed to conform to the required standard of care because, among other things, they (1) moved forward with the DinoKing merger proposal without considering competing offers, and (2) moved forward with the DinoKing merger without resolving the known inaccuracies in DinoKing's financial statements.

110.    As a direct and proximate result, Premier and its shareholders sustained damages.

111.    The damages sustained by Premier and its shareholders include or are evidenced by, among other things, (1) the lost corporate opportunity to merge with a company more viable than DinoKing, (2) the drop in market capitalization and shareholder value caused by the restatement of DinoKing's financial statements, and (3) Premier's bankruptcy and the associated expenses.

112.    Sellers, Weiser, Banker, Jacobs, and Kraniak are liable for these damages.

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

## COUNT IV
## *CAREMARK* CLAIM
### (Against Bao)

113.   The Plaintiff re-alleges here the allegations set forth in the paragraphs preceding the first count of this complaint as if fully set forth herein.

114.   Bao knew or should have known that DinoKing's financial statements were not compliant with applicable laws due to inaccuracies and accounting errors.

115.   Bao took no steps in a good faith effort to remedy that situation—indeed, he fought Premier's management on this issue and refused to acknowledge the improprieties of DinoKing's financial statements for nearly six (6) months after the merger closed.

116.   As a direct and proximate result, Premier and its shareholders sustained damages.

117.   The damages sustained by Premier and its shareholders include or are evidenced by, among other things, (1) the drop in market capitalization and shareholder value caused by the restatement of DinoKing's financial statements, and (2) Premier's bankruptcy and the associated expenses.

118.   Bao is liable for these damages.

## COUNT V
## EQUITABLE SUBORDINATION
### (Against All Defendants)

119.   The Plaintiff re-alleges here the allegations set forth in the paragraphs preceding the fifth count of this complaint as if fully set forth herein.

120.   The Defendants breached their fiduciary duties to Premier and its shareholders, aided and abetted the breaches of fiduciary duties to Premier and its shareholders, and committed gross negligence.

121.    As a direct and proximate result, Premier and its shareholders sustained damages.

18

122.    The damages sustained by Premier and its shareholders include or are evidenced by, among other things, (1) the lost corporate opportunity to merge with Armada, (2) the lost corporate opportunity to merge with DinoKing at a more beneficial time, (3) the lost corporate opportunity to merge with Base, (4) the lost corporate opportunity to secure debt financing from Brevet when Premier needed it, (5) the lost corporate opportunity to secure debt financing from Twin Haven when Premier needed it, (6) the lost corporate opportunity to merge with a company more viable than DinoKing, (7) the drop in market capitalization and shareholder value between 2014 and 2016, and (8) Premier's bankruptcy and the associated expenses.

123.    The Defendants also obtained an unfair advantage by engaging in their misconduct.

124.    Sellers, Weiser, and Sellers Capital, for example, usurped one of Premier's corporate opportunities for a profit of at least $6,000,000, the amount set forth in the judgment in the Armada Action, which should have been enjoyed by Premier.

125.    Therefore, any claim the Defendants have against the bankruptcy estates of Premier or any of its subsidiaries should be equitably subordinated.

126.    Equitable subordination would not be inconsistent with the provisions of the Bankruptcy Code.

## DEMAND FOR JURY TRIAL

127.    Plaintiff respectfully demands a jury trial on all issues so triable.

WHEREFORE, the Plaintiff respectfully requests this Court to enter judgment in its favor and against the Defendants, and to grant the Plaintiff such other relief as the Court deems just and appropriate, including, without limitation, an award of attorneys' fees and costs.

a agentis
Legal Advocates & Advisors

501 Brickell Key Drive · Suite 300 · Miami, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

Respectfully submitted,

**AGENTIS, PLLC**
*Counsel for Plaintiff*
501 Brickell Key Drive, Suite 300
Miami, Florida  33131
Tel.:    305.722.2002

By: _____
      Robert P. Charbonneau
      Florida Bar No.: 968234
      rpc@agentislaw.com
      Christopher B. Spuches
      Florida Bar No.: 42456
      cbs@agentislaw.com
      Jason A. Martorella
      Florida Bar No.: 92868
      jam@agentislaw.com