**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re ) | |
| RMS TITANIC, INC., et al., ) | Case No. 3:16-bk-2230-PMG |
| Debtors. ) | Chapter 11 |
| _____ ) | |

**CREDITOR COMMITTEE'S OBJECTION TO EUCLID**
**CLAIMS RECOVERY'S MOTION TO APPOINT CHAPTER 11 TRUSTEE**

The Official Committee of Unsecured Creditors ("Creditors' Committee") objects to the motion of Euclid Claims Recovery LLC ("Euclid") to appoint a chapter 11 trustee, pursuant to Bankruptcy Code section 1104(a), and states:

**INTRODUCTION**

1. Euclid sought the appointment of a trustee because it is dissatisfied that the Debtors pursued a sale of substantially all of their assets, rather than selling just the French artifacts through an auction house (Motion ¶¶26-30) and because professional fees are too high (*id.* ¶¶21-25). The Debtors will be, in advance of the hearing on Euclid's motion, and following a robust marketing process, moving to sell substantially all of their assets to a proposed stalking horse purchaser, at a price point that would not yield sufficient proceeds to pay holders of allowed unsecured claims in full, after payment of the Debtors' DIP loan and administrative and priority claims. Euclid has taken the position that that result is unacceptable and merits the appointment of a trustee, given the Alasko appraisal valuing the Titanic artifacts owned by the Debtors at over

$200 million and the Debtors' prior representations that the sale of "just a small subset of artifacts from the French collection" would yield proceeds sufficient to pay creditors in full [ECF No. 28, ¶¶23-27]. *See also* Motion ¶30 ("auction-house sale of individual French Artifacts … may represent the only means to achieve full payment to creditors at this stage of the case"). The motion should be denied, as sections 1104(a)(1) and (2) weigh against the appointment of a trustee for reasons set forth below.

## ARGUMENT

I. **LEGAL STANDARD FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE**

2. Bankruptcy Code section 1104(a) provides for appointment of a chapter 11 trustee "(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor[s] by current management … or (2) if such appointment is in the best interests of creditors."

3. "The burden is on the movant to prove that a trustee should be appointed under § 1104(a)." *In re López-Muñoz*, 866 F.3d 487, 497 (1st Cir. 2017).

4. "Appointing a trustee in a Chapter 11 case is an 'extraordinary' remedy … and there is a corresponding 'strong presumption'" in favor of allowing debtors to remain in possession. *Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003). In explaining why that is, the Third Circuit stated:

> [A]ppointing a trustee amounts to replacing much of a debtor's high-level management, and that creates immense costs in two ways. First, there is a statutory fee (which can be substantial) to which trustees are entitled for their services. *See* 11 U.S.C. §§ 326(a) (setting forth fee schedule), 330(a) (setting forth the trustee's right to compensation); *cf.* 11 U.S.C. § 1107(a) (providing debtors-in-possession are not entitled to statutory trustee's fees). More important, however, is the cost implicit in replacing current

>management with a team that is less familiar with the debtor specifically and its market generally.

*Id.*

## II. EUCLID HAS NOT SATISFIED ITS BURDEN UNDER SECTION 1104(a)

5. The principal reason Euclid seeks the appointment of a trustee is because it is dissatisfied that the Debtors are not selling the French artifacts, over which the Maritime Court lacks in rem jurisdiction, through an auction house. The Debtors' decision to sell substantially all of their assets rather than a portion thereof through an auction house does not merit appointment of a trustee.

6. Euclid offers no explanation why the potential value that could be achieved from a French artifact sale through an auction house would not be reflected in the ultimate sale price for substantially all of the Debtors' assets, whether to the proposed stalking horse or an alternative purchaser. The Creditors' Committee is unaware of any case where a trustee has been appointed because the debtor in possession elected to sell substantially all of its assets pursuant to section 363.

7. Significantly, appointment of a trustee at this juncture could have a major adverse impact on creditor recoveries. That is so not just because appointment of a trustee would effectively restart the sale process, which Euclid states has already gone on too long (Motion ¶15). The resulting displacement of Debtors' management could result in the inability to continue to operate the exhibition business, particularly if followed by employee departures. Inability to operate the exhibition business could, in turn, result in a significant increase in administrative liabilities given payment obligations under the Debtors' exhibition leases. It could also trigger a default under the Revised Covenants and Conditions ("Revised C&C") imposed by the Maritime Court, *R.M.S. Titanic, Inc. v.*

*Wrecked and Abandoned Vessel*, 742 F. Supp. 2d 784, 810 (E.D. Va. 2010), which require that the Titanic artifacts, among other things, "be [made] available for public display and exhibition" (Revised C&C § III.B), a condition the Debtors presently satisfy through their exhibition business. Appointment of a trustee would also, of course, saddle the Debtors' estates with his or her statutory commission under section 326, in addition to fees and expenses of his or her professionals, which would be payable on top of those that have accrued to date.

8. Nor does Euclid address that a standalone French artifact sale could violate the Revised C&Cs, if consummated without prior Maritime Court authorization. Revised C&C § III.A provides "[t]he Subject TITANIC Artifact Collection [i.e., American artifacts] shall, to the maximum extent possible and consistent with reasonable collections management practices, be conserved and curated together with the French TITANIC Artifact Collection as an integral whole by the Trustee." The default judgment entered in the adversary proceeding against the Republic of France, determining France has no interest in the French artifacts [ECF No. 67], did not modify that clause. The Debtors presumed at the outset of these cases that they would get relief from it given the absence of in rem jurisdiction over the French artifacts, as reflected in their representation in the initial sale motion that they would sell certain French artifacts, but none of the American artifacts [ECF No. 28, ¶25]. However, no such relief was sought from the Maritime Court, nor was any granted.[1]

---

[1] This past Friday the Equity Committee filed a plan that contemplates the post-effective date sale of the French artifacts through an auction house, and the sale of the American artifacts to a qualified successor trustee [ECF No. 1044 ("Disclosure Statement"), p.3]. The accompanying Disclosure Statement recognizes that the Maritime

9. Indeed, NOAA responded to Euclid's motion by reserving its rights to seek enforcement of this clause [ECF No. 1041].[2]

10. Should a trustee seek to sell the French artifacts through an auction house, the associated marketing process (which has not yet begun) would take approximately one year and the auction house's commission would likely be at least 9% (Disclosure Statement Ex. 2, Footnote 6; *id*. Ex. 4, Ex. A), on top of fees and expenses incurred to date by estate professionals in these cases. That sale process would also likely result in continued accrual of interest on a fully-drawn $5 million DIP loan pending a sale as well as the need for additional financing (Disclosure Statement Ex. 2, Footnote 10).

11. In short, appointing a trustee at this juncture for the purpose of ensuring that a French auction house sale strategy is pursued would shift tremendous risk to creditors and delay payments to them, relative to simply completing the sale process, which sets an acceptable floor for the sale of substantially all of the Debtors' assets to a proposed stalking horse purchaser whose bid would be subject to higher and better offers.

---

Court has not authorized the breakup of the collection (*id*. pp.7-9, 22-23) and so attributes a value of "TBD" to the American artifacts in the liquidation analysis (*id*. Ex. 2).

[2] The Equity Committee's plan, which would implement the sale strategy advocated by Euclid, contemplates seeking Maritime Court approval of a sale of the American artifact collection [ECF No. 1045, § IX.A.(iii)] (such condition being waivable in the Equity Committee's sole discretion under Section IX.B). However, the Equity Committee does not contemplate seeking prior Maritime Court approval of the contemplated French artifact sale, and instead simply contemplates spending $500,000-$1 million opposing efforts by NOAA to enforce Revised C&C § III.A (Disclosure Statement Ex. 2). No provision is made in the event NOAA succeeds in its efforts to enforce Section III.A, or obtains a stay of any French artifact sale (which stay would not require a bond, under Rule 65(c)). The Equity Committee's plan thus presumes success in litigation against NOAA, or alternatively, that Section III.A (entered on consent following negotiations between the Debtors and NOAA (742 F. Supp. at 793)) can be breached without consequence to stakeholders.

12. Appointment of a trustee is, accordingly, not in the interest of creditors under section 1104(a)(2). Nor has Euclid otherwise articulated why cause for conversion exists under section 1104(a)(1).

WHEREFORE, Euclid's motion for the appointment of a chapter 11 trustee should be denied.

Dated: June 4, 2018

Jeffrey Chubak (admitted pro hac vice)
**STORCH AMINI PC**
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
(212) 490-4208 (Facsimile)
jchubak@storchamini.com

- and -

**THAMES MARKEY & HEEKIN, P.A.**

By: */s/ Richard R. Thames*
Richard R. Thames
Robert A. Heekin
Florida Bar No. 0718459
Florida Bar No. 652083
50 North Laura Street, Suite 1600
Jacksonville, Florida  32202
(904) 358-4000
(904) 358-4001 (Facsimile)
rrt@tmhlaw.net
rah@tmhlaw.net

Attorneys for the Official Committee
of Unsecured Creditors

**Certificate of Service**

I hereby certify that, on June 4, 2018, the foregoing was transmitted to the Court for uploading to the Case Management/Electronic Case files ("CM/ECF") System, which will send a notice of electronic filing to all creditors and parties in interest who have consented to receiving electronic notifications in this case.

*/s/ Richard R. Thames*
_____
Attorney