# EXHIBIT A

*Term Sheet – Execution Version*

## Stalking Horse Purchaser Term Sheet for Sale of Substantially All Assets of Premier Exhibitions, Inc. and its Debtor and Non-Debtor Affiliates

This term sheet (the "**Term Sheet**") summarizes the principal terms and conditions of a proposed transaction in which a new Delaware limited liability company organized prior to execution of the Asset Purchase Agreement (defined below) by Stalking Horse Purchaser (defined below) and Sellers, would acquire substantially all of the assets of Debtor Premier Exhibitions, Inc. and its debtor and non-debtor subsidiaries. Except for the Binding Provisions, which shall create a binding agreement of Sellers, this is a non-binding Term Sheet setting forth material terms to be incorporated into an Asset Purchase Agreement (the "**Asset Purchase Agreement**") and other related agreements to be negotiated.

### Parties

| | |
|---|---|
| Stalking Horse Purchaser: | An acquisition vehicle to be formed by (a) (i) Haiping Zou ("**Zou**"), (ii) Jihe Zhang ("**Zhang**"), (iii) Lange Feng ("**Feng**," and collectively with Zou and Zhang, the "**Secured Creditors**"), and (iv) PacBridge Capital Partners (HK) Ltd. ("**PacBridge**," and together with the Secured Creditors, the "**PacBridge Parties**"); (b) certain funds managed by affiliates of Alta Fundamental Advisers LLC ("**Alta**"); and (c) certain funds managed by affiliates of Apollo Global Management, LLC ("**Apollo**," and together with the PacBridge Parties and Alta, the "**Stalking Horse Purchaser**"). |
| Sellers: | Premier Exhibitions, Inc., together with its debtor subsidiaries in the jointly administered Chapter 11 Case No. 3:16-bk-02230-PMG (the "**Bankruptcy Cases**"), pending in the United States Bankruptcy Court for the Middle District of Florida (the "**Bankruptcy Court**"), and its non-debtor subsidiaries (collectively, "**Sellers**"). |

### Essential Terms

| | |
|---|---|
| Purchase Price and Deposit: | Total consideration of $17.5 million in cash (the "**Purchase Price**"). Upon execution of an Asset Purchase Agreement, the Stalking Horse Purchaser shall make a good faith deposit in the amount equal to 10% of the Purchase Price. |
| Structure and Purchased Assets: | Stalking Horse Purchaser shall acquire substantially all of the assets, tangible and intangible, of Sellers used or useful in the operation of Sellers' business, except for the assets designated as excluded by Stalking Horse Purchaser, free and clear of all liens, claims, interest, and encumbrances |

|  |  |
|---|---|
|  | (the "**Purchased Assets**") in an asset purchase conducted in accordance with Section 363(b) of the Bankruptcy Code. |
|  | If necessary or required by the United States District Court for the Eastern District of Virginia, in Case No. 2:93-cv-902 (the "**Admiralty Court**"), however, Stalking Horse Purchaser will consider acquiring 100% of the stock of RMS Titanic, Inc. ("**RMST**"), rather than the assets of RMST. |
|  | Excluded assets to be determined by Stalking Horse Purchaser during its due diligence review (collectively, the "**Excluded Assets**"), but to include avoidance actions under the Bankruptcy Code and any other litigation claims held by Sellers (except for any claims against High Nature Holdings Limited, the PacBridge Parties, Alta, Apollo, or any of their respective affiliates). |
| Executory Contracts and Unexpired Leases: | All executory contracts and unexpired leases will be deemed rejected, except executory contracts and unexpired leases designated by Stalking Horse Purchaser to be assumed ("**Assumed Executory Contracts**"). |
| Assumed Obligations: | Stalking Horse Purchaser shall assume <u>none</u> of Sellers' liabilities in respect of the Purchased Assets, the business, or operations, except as specifically provided in the Asset Purchase Agreement. The assumed obligations will, however, include all obligations arising under the Assumed Executory Contracts after the closing, as well as the Revised Covenants and Conditions with respect to the American Titanic artifacts imposed by the Admiralty Court. |
| Representations, Warranties and Covenants: | Sellers will make full representations, warranties and covenants including as to the business, assets, insurance, and other matters typically required by buyers in connection with an acquisition, which shall be set forth in the Asset Purchase Agreement. Stalking Horse Purchaser will make full representations, warranties and covenants including as to corporate organization, authority to enter into the transactions contemplated hereby, and other matters typically required by sellers in connection with a sale, which will be set forth in the Asset Purchase Agreement. |

| | |
|---|---|
| Contingencies: | There is no financing contingency. Stalking Horse Purchaser shall provide to Sellers adequate evidence of financial wherewithal to consummate this transaction.<br><br>The Asset Purchase Agreement shall be supported and agreed upon by the Creditors Committee (as defined below).<br><br>Stalking Horse Purchaser's obligation to close will be subject to (among other conditions to be detailed in the Asset Purchase Agreement): final orders of the Bankruptcy Court and, if required, the Admiralty Court (discussed below) approving the sale of the Purchased Assets to Stalking Horse Purchaser; Sellers' representations and warranties being true and correct; Seller's performance of all covenants; Stalking Horse Purchaser's negotiation of satisfactory terms (in its sole and absolute discretion) of a renewed lease at the Luxor Hotel in Las Vegas, NV (the **"Luxor Lease"**); receipt of all required governmental and regulatory approvals; and there otherwise being no material adverse change to Sellers' business. For the avoidance of doubt, termination of or inability to renew the Luxor Lease on terms satisfactory to Stalking Horse Purchaser will constitute a material adverse change to Sellers' business. |
| Due diligence: | Assuming prompt and complete responses to its due diligence requests, Stalking Horse Purchaser anticipates completing its due diligence by June 5, 2018. |
| Access to information and employees: | Following execution of this Term Sheet by all of the parties, Sellers will afford Stalking Horse Purchaser and its officers, employees, agents and advisors reasonable access to the properties, books and records (including, without limitation, financial, operating and other data) of Sellers, as well as to Sellers' independent accountants, at reasonable times in order to permit Stalking Horse Purchaser to make such investigation of the business, properties and operations of Sellers as Stalking Horse Purchaser may deem appropriate. During due diligence, Stalking Horse Purchaser shall have access to and may conduct negotiations with Sellers' landlords and vendors, as well as employees of the business (including Daoping Bao and other members of Sellers' management) to determine which employees may be hired by Stalking Horse Purchaser and to negotiate any management incentive plan that Stalking Horse Purchaser may offer to certain employees of Sellers, provided that management of the Sellers (or designated employees) shall be in attendance |

|  |  |
|---|---|
|  | and allowed to participate in any discussions, negotiations, or other contact with any landlords, vendors, or third-parties, but may not under any circumstances discuss or disclose to any competing bidders or any other parties (other than Sellers' Board of Directors and professionals) the substance and business terms of those discussions. Sellers will use commercially reasonable efforts to cooperate with Stalking Horse Purchaser with respect to access and negotiations with employees, landlords and vendors. |
| Confidentiality: | The following provision shall be binding on each party hereto (the "**Binding Confidentiality Provisions**"). Except and to the extent required by law, without the prior written consent of the other party, none of the parties hereto will, and each will direct its employees, agents and representatives not to, make, directly or indirectly, any public comment, statement or communication with respect to, or otherwise disclose or permit the disclosure of the existence of discussions regarding, a possible transaction between the parties or any of the terms, conditions or other aspects of the transaction proposed in this Term Sheet. If a party is required by law to make any such disclosure, it must first provide to the other party the content of the proposed disclosure, the reasons that such disclosure is required by law and the time and place that the disclosure will be made. Notwithstanding the foregoing, (a) Stalking Horse Purchaser may disclose this Term Sheet and its discussions with Sellers to its attorneys, financial advisors and potential financing sources, (b) Sellers may disclose this Term Sheet and their discussions with Stalking Horse Purchaser to their attorneys and financial advisors, as well as to the Official Committee of Unsecured Creditors (the "**Creditors Committee**") and the Official Committee of Equity Holders (the "**Equity Committee**," and together with the Creditors Committee, the "**Committees**") in the Bankruptcy Cases and their respective attorneys and financial advisors, and (c) Sellers may publicly disclose that they have signed a Term Sheet subject to definitive documentation, but may not disclose the identity of Stalking Horse Purchaser or the terms of this Term Sheet until execution of the Asset Purchase Agreement. All press releases and other public announcements with respect to the sale must be in form and substance acceptable to Stalking Horse Purchaser. |
| Bankruptcy Cases: | From and after execution of the Asset Purchase Agreement, all pleadings and other papers relating to this transaction, |

*FTL 111454530v14*

4

the Sale Motion and the Plan prepared by Sellers for filing in the Bankruptcy Cases shall: (i) be provided to Stalking Horse Purchaser at least three business days in advance of filing, to allow Stalking Horse Purchaser a reasonable opportunity to comment; and (ii) be in a form mutually and reasonably acceptable to Stalking Horse Purchaser and Sellers.

Sellers shall file a motion with the Bankruptcy Court pursuant to 11 U.S.C. § 363(b), (f) and (m), and 365(a) and (f), seeking approval of the sale and the assumption, assumption and assignment, and/or rejection of any executory contracts pursuant to the terms of the Asset Purchase Agreement, in form and substance reasonably satisfactory to Stalking Horse Purchaser (the "**Sale Motion**"), by not later than June 5, 2018. Stalking Horse Purchaser and Sellers will cooperate with respect to the filing of the Sale Motion and in obtaining findings under Sections 363(m) and 363(n) of the Bankruptcy Code, findings as to adequate marketing of the Purchased Assets, and any other evidentiary findings reasonably required by Stalking Horse Purchaser.

| | |
|---|---|
| Bankruptcy Court Approval of Sale: | Approval of the Bankruptcy Court pursuant to a final sale order in form and substance acceptable to Stalking Horse Purchaser in its sole discretion shall be a condition to closing. |
| Admiralty Court Approval: | Approval of the Admiralty Court, to the extent required, in form and substance acceptable to Stalking Horse Purchaser in its sole discretion, shall be a condition to closing. Stalking Horse Purchaser and Sellers shall coordinate in good faith on any Admiralty Court filings and proceedings. |
| Bidder protections: | The following provision shall be binding on Sellers. Stalking Horse Purchaser shall, subject to Bankruptcy Court approval, be entitled to the following bidder protections payable in the event of an alternative transaction or Sellers' breach of the Asset Purchase Agreement (the "**Binding Bid Protections**"): |

- a breakup fee in the amount of the greater of $500,000 or 3% of the Purchase Price (the "**Breakup Fee**"); and

- an expense reimbursement for actual, documented out-of-pocket expenses, provided that the total Breakup Fee and Expense Reimbursement shall not

exceed $1,000,000 (the "**Expense Reimbursement**").

The Binding Bid Protections shall be an administrative expense of each of the Debtors' estates under section 507(a)(2) of the Bankruptcy Code and shall be payable by the Debtors prior to payment of any other prepetition creditor. The Binding Bid Protections will be included in an order entered by the Bankruptcy Court in form and substance acceptable to Stalking Horse Purchaser, approving bidding procedures for the sale of the Purchased Assets. Among other provisions, the bidding procedures (the "**Bidding Procedures**"), which shall also be in form and substance acceptable to Stalking Horse Purchaser, shall include the following:

- all competing bidders must post a good faith deposit of at least 10% of the amount of the bid and provide written evidence satisfactory to Sellers (with a copy to Stalking Horse Purchaser) of financial wherewithal to close;

- all competing bids must be for all or substantially all of Sellers' assets and on substantially the same material terms as Stalking Horse Purchaser's bid and based on Stalking Horse Purchaser's form of Asset Purchase Agreement;

- all competing bids must be in the minimum amount of (a) the Purchase Price, plus (b) the Breakup Fee, plus (c) the Expense Reimbursement, plus (d) an initial overbid amount of $500,000;

- Seller will provide Stalking Horse Purchaser with copies of all competing bids within one business day of receipt by Sellers;

- bidding increments at any auction must be in amounts not less than $500,000;

- Stalking Horse Purchaser shall have the right (but not the obligation) to match any competing bid received in advance of any auction; and

- Stalking Horse Purchaser shall have the right to credit bid the amount of the Breakup Fee and

| | |
|---|---|
| Milestones: | Expense Reimbursement at each round of bidding at the auction.

The parties will use their reasonable best efforts to finalize an Asset Purchase Agreement by May 31, 2018 (but in no event later than June 5, 2018). The Bidding Procedures will include the following milestones:

- orders approving the Bidding Procedures must be entered by the Bankruptcy Court and, if required, by the Admiralty Court, by not later than June 29, 2018;

- any competing bids must be received by Sellers by not later than July 13, 2018 (the "**Competing Bid Deadline**");

- if one or more qualified competing bids are received by Sellers by the Competing Bid Deadline, Sellers will conduct an auction on July 18, 2018;

- if one or more qualified competing bids are received by Sellers by the Competing Bid Deadline and an auction is held, a hearing before the Bankruptcy Court to approve the sale must be held by not later than July 20, 2018, and a hearing before the Admiralty Court (if required) must be held not later than August 10, 2018; provided, however, that if no auction is held, a hearing before the Bankruptcy Court to approve the sale must be held by not later than July 18, 2018, and a hearing before the Admiralty Court (if required) must be held not later than 10, 2018;

- the Bankruptcy Court must enter an order approving the sale by not later than July 20, 2018;

- if required, the Admiralty Court must enter an order approving the sale by not later than August 15, 2018.

- The closing of the sale must occur by not later than August 17, 2018. |
| Definitive Documentation: | Upon full execution of this Term Sheet by Stalking Horse Purchaser and Sellers, Stalking Horse Purchaser and Sellers agree to proceed and negotiate, with all due haste and in good faith, a binding definitive Asset Purchase |

|  |  |
|---|---|
|  | Agreement, Bidding Procedures, and all other documents necessary to implement the transactions contemplated in this Term Sheet. All transactional documents, pleadings, and other court filings must be in form and substance acceptable to Stalking Horse Purchaser. |
| Releases: | At closing, (a) Sellers will release any and all claims against the Purchased Assets and Stalking Horse Purchaser and their respective affiliates, and (b) in full satisfaction of the respective claims of the PacBridge Parties, (x) the Secured Creditors collectively will receive in consideration of their secured claims (i) a $1 million cash payment, plus (ii) allowed general unsecured claims in the total collective amount of $2 million, and (y) PacBridge will have an allowed general unsecured claim in the amount of $1,195,350.39. In order to effectuate the forgoing resolution of the PacBridge Parties' claims, the Debtors will include in the Sale Motion a request under Bankruptcy Rule 9019 to approve a settlement of these claims. In addition, if Sellers file a chapter 11 plan, such plan will include Stalking Horse Purchaser releases and exculpation provisions in favor of Stalking Horse Purchaser, its members and advisors, and other customary related parties to the maximum extent permitted by law. |
| Termination Events: | In addition to the other conditions set forth herein, the Asset Purchase Agreement will provide that Stalking Horse Purchaser may terminate its obligations under the Asset Purchase Agreement without any liability in the event that (among other conditions to be detailed in the Asset Purchase Agreement): (a) Sellers' debtor-in-possession financing loan matures or is in default (unless otherwise extended or waived by the debtor-in-possession lender); (b) one or more of Sellers' bankruptcy cases are converted to a case under Chapter 7 of the Bankruptcy Code; (c) a chapter 11 trustee or examiner with expanded powers is appointed for one or more of the Sellers; (d) the Luxor Lease is terminated or expires; (e) the Bankruptcy Court approves a disclosure statement with respect to a chapter 11 plan filed by any party other than Sellers; or (f) Sellers file a chapter 11 plan without the consent of Stalking Horse Purchaser. |
| Conduct of Business: | Sellers shall use their best efforts to carry on their businesses in the ordinary course (subject to all applicable requirements of the Bankruptcy Code and Bankruptcy Court), including, but not limited to, maintaining its accounting methods, using its commercially reasonable efforts to preserve the business and assets and its business |

|  |  |
|---|---|
| | relationships, continuing to operate its billing and collection procedures, using its commercially reasonable efforts to retain key employees, and maintaining its business records in accordance with its past practices. |
| Binding Exclusivity: | The following provision shall be binding on Sellers (the **"Binding Exclusivity Provisions,"** and together with the Binding Confidentiality Provisions and the Binding Bidder Protections, the **"Binding Provisions"**). During the period between the execution of this Term Sheet and Bankruptcy Court approval of the Bidding Procedures, neither Sellers nor any of their officers, directors, employees, attorneys, financial advisors or other agents will discuss or negotiate with or provide information to any third party about the purchase and sale of any of the Purchased Assets or otherwise encourage any third party to submit a proposal for or enter into an alternative transaction; provided however, that third parties may continue to conduct due diligence and Sellers shall be permitted to provide access to their on-line data room and negotiate customary confidentiality agreements with other interested buyers for purposes of being competing bidders for the Purchased Assets. The Binding Provisions shall be governed by the law of the State of Florida without regard to its conflict of laws provisions. Disputes over the Binding Provisions shall be heard in the exclusive venue of the Bankruptcy Court. The obligations of Stalking Horse Purchaser under the Binding Provisions shall be several among its respective equity holders, and not joint. |
| General Terms: | Except for the Binding Provisions, (a) the terms and provisions contained in this Term Sheet are not and do not constitute an offer, admission, representation, or solicitation by Stalking Horse Purchaser or Sellers, are subject to senior management approval and are not and do not constitute an acceptance by Stalking Horse Purchaser or Sellers; (b) this discussion outline is not a commitment on the part of Stalking Horse Purchaser or Sellers; and (c) the form and substance of all documents necessary to effect the consummation of the transaction are subject to final approval of Stalking Horse Purchaser, Sellers and their respective counsel, as well as the Bankruptcy Court and the Admiralty Court (if required), and as such, this Term Sheet is not intended to constitute a final written expression of all of the terms and conditions of the transaction, but merely to outline some of the major terms and conditions thereof. |

*Term Sheet – Execution Version*

Except for the Binding Provisions, this Term Sheet may not be used against Stalking Horse Purchaser or Sellers in any litigation in which Stalking Horse Purchaser or Sellers are parties nor may it be used in any proceedings in which Stalking Horse Purchaser or Sellers are directly or indirectly interested, or parties in interest.

Except for the Binding Provisions, this Term Sheet is merely to facilitate further discussions and does not address or include all of the material issues, terms, provisions and conditions which would have to be addressed or included if a transaction based on this Term Sheet is to be consummated. Except for the Binding Provisions, this Term Sheet and any discussion by the parties are not intended to be and will not constitute a binding obligation of Stalking Horse Purchaser or Sellers.

*[Signatures on next page]*

Accepted and agreed to this ___ day of May, 2018.

**Stalking Horse Purchaser:**

PACBRIDGE CAPITAL PARTNERS (HK) LTD.

By: _____
Name: Giovanni Wong
Title: Principal

_____
Haiping Zou

_____
Jihe Zhang

_____
Lange Feng


ALTA FUNDAMENTAL ADVISERS LLC


By: _____
Name: Gilbert Li
Title: Managing Partner


APOLLO CREDIT STRATEGIES MASTER FUND LTD.

By: APOLLO ST FUND MANAGEMENT LLC, its investment manager


By:_____
Name: Joseph D. Glatt
Title: Vice President

Stalking Horse Purchaser:

PACBRIDGE CAPITAL PARTNERS
(HK) LTD.

By: _____
Name: Giovanni Wong
Title: Principal


_____
Haiping Zou


_____
Jihe Zhang


_____
Lange Feng


ALTA FUNDAMENTAL ADVISERS LLC

By: _____
Name: Gilbert Li
Title: Managing Partner


APOLLO CREDIT STRATEGIES MASTER FUND LTD.

By: APOLLO ST FUND MANAGEMENT LLC, its investment manager

By: _____
Name: Joseph D. Glatt
Title: Vice President


[Term Sheet – Stalking Horse Purchaser's Signature Page]

FTL 111454530v14

*Term Sheet – Execution Version*

Accepted and agreed to this ___ day of May, 2018.

**Stalking Horse Purchaser:**

PACBRIDGE CAPITAL PARTNERS (HK) LTD.

By: _____
Name: Giovanni Wong
Title: Principal


_____
Haiping Zou


_____
Jihe Zhang


_____
Lange Feng

ALTA FUNDAMENTAL ADVISERS LLC

By: _____
Name: Gilbert Li
Title: Managing Partner

APOLLO CREDIT STRATEGIES MASTER FUND LTD.

By: APOLLO ST FUND MANAGEMENT LLC, its investment manager

By: _____
Name: Joseph D. Glatt
Title: Vice President


[Term Sheet – Stalking Horse Purchaser's Signature Page]

Accepted and agreed to this ___ day of May, 2018.

**Stalking Horse Purchaser:**

PACBRIDGE CAPITAL PARTNERS (HK) LTD.

By: _____
Name: Giovanni Wong
Title: Principal


_____
Haiping Zou


_____
Jihe Zhang


_____
Lange Feng


ALTA FUNDAMENTAL ADVISERS LLC

By: _____
Name: Gilbert Li
Title: Managing Partner


APOLLO CREDIT STRATEGIES MASTER FUND LTD.

By: APOLLO ST FUND MANAGEMENT LLC, its investment manager

By: _____
Name: Joseph D. Glatt
Title: Vice President


[Term Sheet – Stalking Horse Purchaser's Signature Page]

*Term Sheet – Execution Version*

**Sellers:**

PREMIER EXHIBITIONS, INC.

By: _____
Name: Daoping Bao
Title: President

PREMIER EXHIBITIONS MANAGEMENT, LLC

By: Premier Exhibitions, Inc., its Managing Member

By: _____
Name: Daoping Bao
Title: President

PREMIER EXHIBITIONS INTERNATIONAL, LLC

By: Premier Exhibitions, Inc., its Managing Member

By: _____
Name: Daoping Bao
Title: President

PREMIER MERCHANDISING, LLC

By: Premier Exhibitions, Inc., its Managing Member

By: _____
Name: Daoping Bao
Title: President

1032403 B.C. LTD.

By: _____
Name: Daoping Bao
Title: President

RMS TITANIC, INC.

By: _____
Name: Daoping Bao
Title: President

ARTS AND EXHIBITIONS INTERNATIONAL, LLC

By: Premier Exhibitions Management, LLC, its Managing Member

By: Premier Exhibitions, Inc., its Managing Member

By: _____
Name: Daoping Bao
Title: President

PREMIER EXHIBITIONS NYC, INC.

By: _____
Name: Daoping Bao
Title: President

DINOSAURS UNEARTHED CORP.

By: _____
Name: Daoping Bao
Title: President

PREMIER HOLLYWOOD PICTURES LLC

By: _____
Name: Daoping Bao
Title: President

[Term Sheet – Sellers' Signature Page]

FTL 111454530v14

*Term Sheet – Execution Version*

DINOKING INTERNATIONAL, INC.

By: _____
Name: _Daoping Bao_
Title: _President_

DINOKING TECH, INC.

By: _____
Name: _Daoping Bao_
Title: _President_

PRXI INTERNATIONAL HOLDINGS CV

By: _____
Name: _Daoping Bao_
Title: _President_