# **EXHIBIT B**

## LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
1801 CENTURY PARK EAST, SUITE 700
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 557-0050
FACSIMILE (310) 557-0056
www.LGBFIRM.com

pgurfein@lgbfirm.com

October 11, 2017

**VIA EMAIL**
Jeffery W. Cavender, Esq.
Troutman Sanders LLP
600 Peachtree Street, NE
Suite 5200
Atlanta, GA 30308
Jeffrey.Cavender@troutmansanders.com

Re:   *Sale Process and Selection of Stalking Horse Bid*

Dear Jeff:

The Equity Committee has reviewed the *Term Sheet for Sale of Substantially All Assets of Premier Exhibitions, Inc. and its Debtor and Non-Debtor Affiliates* (the "October 9 Term Sheet"), dated October 9, 2017, submitted by PacBridge Capital Partners (HK) Ltd. and others (collectively, "PacBridge"). The Debtors have asked the Equity Committee to agree to the designation of PacBridge as the Stalking Horse bidder in the sale of the Debtors and/or their assets based substantially upon the terms of the October 9 Term Sheet. After first setting forth below the concerns of the Equity Committee with respect to the sales process, this letter is to set forth the terms under which the Equity Committee would agree to that designation.

The Equity Committee, the Creditors Committee (collectively, the "Committees"), and the Debtors, through their respective attorneys and financial advisors, began discussing the marketing process for the sale of the Debtors or their assets in or about April 2017. In early June 2017, the Debtors issued a Teaser and a Confidential Information Memorandum for a marketing process to be conducted by Glass Ratner, as investment banker to the Debtors. Glass Ratner required that only they and the Company could communicate directly with potential bidders, that all inquiries from potential bidders had to be directed to Glass Ratner, and that the identity of each bidder was to be safeguarded from disclosure to any other bidder. The Equity Committee abided by that process. On a weekly basis, Glass Ratner reported to the Committees' advisors on the sale process.

Jeffrey Cavender
October 11, 2017
Page 2

By letter dated July 21, 2017, PacBridge submitted a *Proposed Transaction with Premier Exhibitions, Inc.* (the "July Proposal") under which, among other things, PacBridge proposed to enter into a transaction under which they valued the Debtors' assets at $50 million to $65 million on an enterprise value basis. That sum was comprised of "approximately US$5-$10 million to the operating entities, approximately US$30-$40 million to the Titanic artifacts and related intellectual property, and approximately US$15 million to pay creditor claims in full."

The July Proposal, however, did not disclose that Dao Ping Bao, the Debtor's Chairman and CEO, a major shareholder of Premier, and agent to certain of the Debtors' the secured lenders, was an interested party in the PacBridge proposal. In fact, it specifically said that "the Purchaser will be a special purpose vehicle owned and controlled by two of the Company's secured lenders (Haiping Zou and Jihe Zhang) and unsecured creditor PacBridge Capital Partners (HK) Ltd." PacBridge only recently revealed that Mr. Bao would directly or indirectly acquire an interest in the estate's assets under the PacBridge proposal and would hold equity in the new company to be established to take ownership of the Debtor' assets. Those facts were revealed for the first time in a footnote in the *Term Sheet for Sale of Substantially All Assets of Premier Exhibitions, Inc. and its Debtor and Non-Debtor Affiliates* (the "October 3 Term Sheet"), dated October 3, 2017. That document states that PacBridge intends "to issue equity interests in the to-be-formed Buyer entity to ... Bao", but does not disclose the details of that interest. That statement in the October 3 Term Sheet could not have come as a surprise to Mr. Bao. Agreement respecting Mr. Bao's interest in the PacBridge offer must have been in place prior to October 3. Notwithstanding the foregoing, Mr. Bao participated fully for the entire five months of the sale process in negotiations with PacBridge, *as well as every other potential purchaser*, and supervised the sale process in his capacity as Chairman and CEO of the Debtors. During this period, Mr. Bao had full access to every aspect of the process; received regular updates from Glass Ratner regarding potential bidders and the associated terms with respect to the offers, proposals, and terms sheets submitted by each.

In its October 3 Term Sheet, PacBridge revised its valuation of the Debtors' assets and offered to pay a cash purchase price of only $30 million, of which a portion was to be paid as a credit bid. While a bifurcation of value was not provided between the operating entities and the Titanic artifacts and related intellectual property, this was a substantially reduced valuation from its July Proposal. By all accounts, the Debtor's operating results and case developments have been positive since the July Proposal, specifically: (i) the Debtors' performance during that same period had improved, (ii) implied annualized EBITDA for the period through August 30, 2017 had actually increased to $4,243,598 (on eight-months EBITDA of $2,829,065), (iii) operations

Jeffrey Cavender
October 11, 2017
Page 3

had stabilized, (iv) the general economy had been strong, and (v) the Company had been operating profitably. In fact, the Company had successfully litigated in Bankruptcy Court a key issue that increased the value of its assets, obtaining a judgment that the Republic of France had no interest in the French Artifacts.

The only thing different between July and October 2017 is that buyer visibility had been established and other offers had been received by the Debtors from other potential bidders, all of which were available to Mr. Bao. PacBridge's offer went from the minimum bid level for which the Committees' would accept down to a cash distribution that may barely satisfy all unsecured claims in full.

On a number of occasions, the Equity Committee asked Glass Ratner to explain why the cash portion of PacBridge's offer had been substantially reduced. Glass Ratner cited the following reasons: (1) PacBridge is valuing the business on a cash-flow basis, and believes significant capital will be required to expand operations and develop new concepts and (2) PacBridge is ascribing no value to DinoKing.[1] Since PacBridge's prior offer ascribed only US$5- $10 million to the operating entities, the explanation(s) and material reduction to purchase price are not explainable. Presumably, the ascribed US$30- $40 million for the Titanic artifacts and related intellectual property, at a minimum, should have remained unchanged. Inside information provided to PacBridge pertaining to other offers received by the Debtors would explain why PacBridge substantially reduced its offer. Whether or not that is the case, the revelation that Mr. Bao has been in discussions with PacBridge and had purportedly reached agreement to participate, directly or indirectly, in the acquisition of Estate assets makes him an interested party and has tainted the sale process.

I am certain that you agree that bankruptcy cases, and especially transactions contemplating a sale of substantially all of the estate's assets, must be run with total transparency in order to preserve the integrity of the bankruptcy process. That has not happened in this case.

---

[1] That is directly contrary to the position taken by PacBridge as advisor to DinoKing in the merger with Premier, at which time PacBridge represented that DinoKing had substantial value.

Jeffrey Cavender
October 11, 2017
Page 4

    Notwithstanding the foregoing, the Equity Committee has determined that the interests of equity holders can still best be served by a successful sale of the Debtors' assets and that restarting that process is simply not feasible. While reserving all rights, the Equity Committee wants to get the sale process back on track in order to assure a truly open and competitive auction to maximize the Estate's value.

    The following are the terms under which the Equity Committee will support PacBridge as the Stalking Horse bidder.

1. Mr. Bao must be excluded from the sale process. An ethical wall must be established that will bar Mr. Bao from participating in or even learning anything about the sale process going forward.

2. The Debtors shall identify to the Equity Committee those members of senior management and members of the Board of Directors who will participate in the sales process going forward. Only those individuals may participate in the negotiations with bidders or have any information respecting the sale of the Debtors' assets. Each of these individuals shall be precluded from communicating in any way with Mr. Bao related to the sales process. Prior to the hearing on the sale motion confirming a sale of Estate assets to PacBridge or any other buyer, each of the identified members of senior management and the Board, as well as Mr. Bao, must submit a declaration or affidavit under penalty of perjury that they have fully complied with this requirement.

3. The sales process will be run jointly by Lincoln International and Glass Ratner. Each will have full access to, and be free to communicate with any potential bidder. Each of Lincoln International and Glass Ratner will promptly keep the other fully apprised of any communication with potential bidders or with the Debtors. Any decision respecting the sale that is to be made by an investment banker shall be made jointly by Lincoln International and Glass Ratner.

4. Kekst will be retained to work under the supervision of Glass Ratner and Lincoln International to publicize the sales process and assist in soliciting interest in potential competitive bidders participating in the auction;

5. By on or before October 16, 2017, PacBridge will produce to the Debtors and to the Committees proof of funds in form satisfactory to the Debtors and to the Committees, sufficient to close the proposed transaction;

Jeffrey Cavender
October 11, 2017
Page 5

6. The schedule for filing of the sale motion and all related hearing dates will be continued to permit the auction to take place no sooner that the last week of January, 2018.

7. By on or before October 31, PacBridge shall enter an Asset Purchase Agreement conforming to the terms of the October 9 Term Sheet, which shall include the changes discussed on the October 10 telephone conference among estate professionals, including

    a. exclusion from Purchased Assets of any receivables generated by the operations of the Debtors prior to the close of sale to PacBridge, which may be reconciled post-closing;

    b. a designation of which executory contracts PacBridge will require the Debtors to assume and assign to it by the Debtors;

    c. provisions authorizing the Debtors to provide to competing bidders access to information and personnel equal to that afforded to PacBridge;

    d. a full disclosure of all aspects of the transaction, including potential interests in the transaction of any of the Debtors' personnel;

    e. no restrictions on the form or structure of any competitive bid that may be received by the Debtors; and

    f. an agreement by PacBridge to the foregoing requirements 1. through 7., set forth above, and certification of compliance with the foregoing by PacBridge in conjunction with the request by PacBridge for a finding of good faith under 11 U.S.C. §363(m).

As a separate mater, the Equity Committee also demands that Mr. Bao produce to the Equity Committee all communications with (i) PacBridge, its officers and agents, including Giovani Wong, (ii) Haiping Zou, (iii) Jihe Zhang, and (iv) all members of the Debtors' senior management and Board of Directors, during the period March 1, 2017 to October 11, 2017, containing any reference to the sales process, potential offers for the Debtors or their assets, or a distribution to Mr. Bao of any interest, direct or indirect, relating to the assets to be transferred.

Jeffrey Cavender
October 11, 2017
Page 6

Upon compliance with the foregoing, and approval by Premier's Board of Directors, the Equity Committee will consent to the designation of PacBridge as Stalking Horse bidder.

Sincerely,

Peter J. Gurfein

Cc: Marshall Glade
Ronald Glass
Jeffrey Chubak
Daniel Blanks
Jacob A. Brown
Brent Williams
Brendan Murphy
Andrew Shapiro

Troutman Sanders LLP
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308-2216

troutman.com



Jeffery W. Cavender
jeff.cavender@troutman.com

October 16, 2017

**E-MAIL PGURFEIN@LGBFIRM.COM**

Peter Gurfein
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067

Dear Peter:

      This letter responds to your letter dated October 11, 2017. As an initial matter, I must state definitively and without equivocation that the Debtors, in close consultation with both the Creditors Committee and Equity Committee (collectively, the "Committees") and their professionals, have conducted a vigorous and fully transparent sales process in this case, and any allegations to the contrary are without any basis in fact.

      In early June 2017, the Debtors issued a Teaser and a Confidential Information Memorandum for a marketing process to be run by Glass Ratner in close consultation with the Committees' financial advisors Lincoln International. Both Committees were provided an opportunity to review the marketing materials in advance and comment thereon. As the marketing process began, the Debtors and the Committees both agreed that it was important to have a single voice talking to potential bidders to avoid confusion and mixed messages in the marketplace. This was not "required" by Glass Ratner as your letter indicates but agreed to by all parties as the best way to conduct an effective marketing process. Lincoln International as advisors to the Committees agreed with this as well. While your letter indicates the Equity Committee "abided by" this process, it is important to note that at no time during the more than four months of the marketing process did the Equity Committee's professionals ever raise an objection to the manner in which the process was being conducted until your letter of October 11. Glass Ratner has been in continuing communication with Lincoln International throughout the process to keep them fully apprised of all details relative the sale process consistent with the terms of the Plan Support Agreement. This communication has included weekly conference calls as well as emails and phone calls between the respective financial advisors when relevant information was provided.

      Your October 11 Letter spends nearly two pages retracing the history of the PacBridge initial expression of interest to the current draft of the term sheet being considered by the parties. You note the fact that the initial expression of interest referenced a potential value range of between $50 and $65 million, whereas the current term sheet proposed by PacBridge

Peter Gurfein
October 16, 2017
Page 2



has a cash purchase price of $30 million (with a total enterprise value in excess of $37 million given the proposed cancellation of stock). Of course, it is not uncommon for value changes to occur from initial discussions to formal term sheets based on any myriad of considerations, including a party's ongoing due diligence with respect to the transaction. Your letter, however, goes to great lengths to insinuate the Equity Committee's suspicion that the reason for that decline in value is a transmission of inside information by Daoping Bao with respect to other bids received by the Debtors. To be abundantly clear, we have investigated these specious and offensive allegations and have determined them to have absolutely no merit.

Daoping Bao has had exactly three communications with parties involved with the PacBridge proposal in connection with any potential transaction. He along with other members of senior management met with PacBridge on a management visit to the company on August 18, 2017. Glass Ratner was present for the management meeting, and at no time during that meeting was any information with respect to other bidders shared. During that meeting no discussion took place regarding Mr. Bao participating in any PacBridge sponsored transaction. After the management meeting, with only Glass Ratner and PacBridge representatives present, PacBridge requested to have a call with Mr. Bao to discuss his management role going forward. After consulting with counsel, Glass Ratner notified PacBridge that they could have a call with Mr. Bao to discuss his continued involvement with the company. Glass Ratner informed Lincoln that this conversation would be taking place during the weekly status call either on August 22 or August 31. Lincoln representatives did not raise any issue with respect to this potential call. Prior to participating in the call, Mr. Bao consulted with Glass Ratner and counsel relative to the propriety of participating in a call with PacBridge and received clearance to do so. Sometime in or around late August, Mr. Bao had a brief (approximately 5 minute) telephone call with Mr. Giovanni Wong of PacBridge wherein Mr. Wong inquired of Mr. Bao as to his interest in remaining with the Company if a transaction with the PacBridge group was consummated. Mr. Bao expressed in the call that after a potential sale to PacBridge he was willing to either stay with the company or depart from the company at the option of PacBridge, and that he had no preference either way as long as a departure included payment for his interest in the company. At no time during the call was any inside information with respect to other bids or any other matter disclosed to PacBridge, and no negotiations took place with respect to any potential interest Mr. Bao would have in connection with any such transaction. In fact, no such negotiations have taken place to date, and Mr. Bao today has no knowledge of what PacBridge might offer him with respect to an interest in the company post-sale.

Besides the initial management meeting and the brief call with Mr. Wong, the only other communication Mr. Bao has had with respect to any member of the PacBridge group relative to any potential sales transaction was a call he had with Haiping Zou on or after September 19, 2017. Before that call, Glass Ratner received word in or around September 19, 2017 that PacBridge intended to substantially decrease the value of their offer. Glass Ratner advised Mr. Bao of this development, which came as a surprise to him, and Glass Ratner asked Mr. Bao to inquire to see if he could find out what was going on with respect to PacBridge. Mr. Bao thereafter placed a call to Haiping Zou to determine why PacBridge was planning to substantially reduce their offer. During that very brief call, Mr. Zou advised Mr. Bao that the anticipated reduction was a negotiation strategy on the part of the PacBridge group. No insider information of any kind was shared by Mr. Bao during that brief call, and no further communications (written, oral or otherwise) have taken place between Mr. Bao, on the one

32973038v4

Peter Gurfein
October 16, 2017
Page 3



hand, and Mr. Wong, Mr. Zou, or any other party involved in the PacBridge proposed transaction, on the other hand, relative to any potential transaction. As the above facts make clear, absolutely no basis exists for any insinuation or assertion that Mr. Bao has acted inappropriately in any way in connection with the sales process. The Equity Committee's raising such baseless assertions has done nothing but further delay this case, jeopardize the Debtors' ability to reach a stalking horse agreement with one of the viable candidates seeking that status, and potentially cause substantial damage to the Debtors' estates.

The Debtors' management, the Debtors' attorneys, and the Debtors' financial advisors have worked very hard to be completely transparent in connection with the sales process in this case, and any insinuations by the Equity Committee to the contrary are false and unsupportable. Any effort by the Equity Committee to lever such false allegations as a means of gaining greater control over the sales process will not be considered by the Debtors. The Debtors thus respond to the terms demanded by the Equity Committee relative to the PacBridge term sheet in the same order as presented in your October 11 Letter:

1.  As set forth above, no basis exists for excluding Mr. Bao entirely from the sales process. Because PacBridge has indicated in its latest term sheet that it desires for Mr. Bao to participate in some way in connection with its proposed transaction, it is entirely appropriate, and the Debtors' Board of Directors has directed, that Mr. Bao be excluded from participating in any deliberations or decisions made with respect to any potential transaction given he may have a conflicting interest in the competing PacBridge proposal. As an additional step, the Debtors and their management and professionals have agreed not to provide to Mr. Bao going forward any information relative to any potential bids unless such information is equally available to all other potential bidders. PacBridge and other potential bidders, however, want and need to talk to Mr. Bao regarding any potential role he may have in any transaction they may propose, and therefore, it is not possible to exclude Mr. Bao from such discussions or from the sales process entirely. Also, since a portion of the consideration being offered by PacBridge is the cancellation of Mr. Bao's shares, it is not possible to finalize a deal without Mr. Bao and PacBridge discussing terms of his role going forward.

2.  Any negotiations to take place between the Debtors and other potential bidders will be done by Glass Ratner, counsel for the Debtors, and members of Debtors' management and Board of Directors who have no conflicting interest in connection with any proposed transaction. We anticipate that the members of Debtors' management who will be directly involved in that process will be Jerry Henshall and Jessica Sanders, and we anticipate all members of the Debtors' Board of Directors other than Mr. Bao will participate in this process. Prohibiting such individuals from communicating in any way with Mr. Bao in connection with the sales process is not feasible, but the Debtors agree to preclude such individuals from providing any information with respect to other competing bids to Mr. Bao unless such information is equally available to all other potential bidders. The Debtors' management and Mr. Bao would be prepared to execute declarations under penalty of perjury confirming their compliance with the above requirements.

3.  The Debtors reject the Equity Committee's demand that the sales process be run jointly by Glass Ratner and Lincoln International. The parties agreed to the current process in place, which has worked smoothly to date, and no basis exists for the Equity Committee's

Peter Gurfein
October 16, 2017
Page 4



demand for a change. Any such change would add confusion to the process, risk the good will and relationships developed by Glass Ratner with the potential bidders to date, and add nothing of benefit to the process. Glass Ratner has worked well with Lincoln International to date through the process, and we fully anticipate that good working relationship to continue through the conclusion of any transaction.

4. The Debtors reject the Equity Committee's demand that the engagement of Kekst be changed. The Equity Committee's views have been considered in all marketing efforts led by Kekst, and no basis exists for changing that current working relationship.

5. The Debtors anticipated receiving PacBridge's proof of funds on or before October 16, 2017, however, the Debtors have been advised that PacBridge will not participate further in the process until the issues raised by the Equity Committee in your October 11 Letter are resolved.

6. The Debtors are amenable to amending the schedule for filing the sale motion and all related hearings so that the proposed auction will take place <u>no later</u> than the last week of January, 2018. Based on the current schedule, we anticipate the auction could be accomplished in mid-January, and the Debtors see no basis for further extending the auction if that timeline remains feasible.

7. Given the delay caused by the Equity Committee's baseless allegations set forth in your October 11th Letter, we do not anticipate that a term sheet can be finalized before October 20th, assuming PacBridge remains interested in a transaction. If they remain interested and a term sheet can be finalized by then, the Debtors remain hopeful that a definitive agreement can be finalized with PacBridge by November 3. Whether PacBridge will agree to any of the additional demands of the Equity Committee is not known at this time. The Debtors suggest that the parties extend the deadline for designating a stalking horse bidder through October 20, 2017, and extend the deadline for filing the sale motion and asset purchase agreement through November 3, 2017, with all remaining deadlines to flow from those dates.

Finally, with respect to the "separate" matter raised with respect to Mr. Bao producing documents to the Equity Committee, to the extent that demand is in any way directed at the Debtors, the Debtors reject such demand. The Debtors' estates should not be burdened with yet another fishing expedition for documents based on spurious allegations of the Equity Committee that have absolutely no basis in fact. Should the Equity Committee elect to pursue such a baseless fishing expedition through formal discovery served on the Debtors, the Debtors will respond appropriately at that time.

The Debtors and their professionals remain committed to completing a fully transparent sales process to maximize value for all stakeholders and confirm a plan in this case as promptly as possible. We stand prepared to discuss any of the above issues with you at your convenience.

32973038v4

Peter Gurfein
October 16, 2017
Page 5



Sincerely,

Jeffery W. Cavender

cc:  Jeffrey Chubak (*via e-mail*)
     Marshall Glade (*via e-mail*)
     Ronald Glass (*via e-mail*)
     Daniel Blanks (*via e-mail*)
     Jacob Brown (*via e-mail*)
     Rick Thames (*via e-mail*)
     Brent Williams (*via e-mail*)
     Brendan Murphy (*via e-mail*)

32973038v4

# Brooks, Matthew Ray

| | |
|---|---|
| **From:** | Cavender, Jeffery W. |
| **Sent:** | Monday, October 30, 2017 5:05 AM |
| **To:** | Peter J. Gurfein |
| **Cc:** | Roach, Stephen Smith; Jeffrey Chubak; jacob.brown@akerman.com; Katherine Fackler; rrt@tmhlaw.net; rah@tmhlaw.net; Marshall Glade; BWilliams@lincolninternational.com; BMurphy@lincolninternational.com |
| **Subject:** | Re: Extension of Stalking Horse designation |

The Debtors and their professionals have been fully forthcoming in connection with this matter. The Equity Committee and its professionals need to look no further than themselves and their baseless accusations to fully understand why we are in a position of having no stalking horse bidder at the present time. I am traveling all day today but will be available anytime on Tuesday to discuss further.


**Jeffery W. Cavender**
troutman sanders
Direct: 404.885.3299
jeff.cavender@troutman.com


On Oct 27, 2017, at 11:31 PM, Peter J. Gurfein <pgurfein@LGBFirm.com> wrote:

> Unfortunate that the Debtors and their professionals were not more forthcoming. We will talk Tuesday if not before. I will advise the Equity Committee.
>
> Peter J. Gurfein
> Sent from iPhone
> 310.584.1100
>
>
> On Oct 27, 2017, at 1:12 PM, Roach, Stephen Smith <Stephen.Roach@troutmansanders.com> wrote:
>
>> Peter and Jeff,
>>
>> Scott Grossman, counsel for PacBridge, informed us today that PacBridge is not interested in pursuing stalking horse designation at this time. Scott said they are not comfortable with the process and indicated that the source of their concerns is the Equity Committee's letter raising issues with the sale process.
>>
>> Because PacBridge has walked away from a stalking horse deal, the Debtors unfortunately are not in a position to designate a stalking horse bid today and must consider all alternatives at this time. All options will need to be considered by Premier's board and management, but an initial thought on a path forward is to move toward a naked auction while asking the court to grant authority to designate a stalking horse if one should emerge before the auction. Exit financing is another alternative to be considered, possibly as a backstop to an

1

auction process. We welcome thoughts on alternative options and suggest we schedule a call for Tuesday after Jeff Cavender has returned from vacation.

Regards,
Stephen


**Stephen S. Roach**
troutman sanders
Direct: 404.885.2615
stephen.roach@troutman.com


**From:** Peter J. Gurfein [mailto:pgurfein@LGBFirm.com]
**Sent:** Wednesday, October 25, 2017 7:15 PM
**To:** Roach, Stephen Smith <Stephen.Roach@troutmansanders.com>; Jeffrey Chubak <jchubak@storchamini.com>
**Cc:** jacob.brown@akerman.com; Katherine Fackler <katherine.fackler@akerman.com>; Cavender, Jeffery W. <jeff.cavender@troutmansanders.com>; rrt@tmhlaw.net; rah@tmhlaw.net; Marshall Glade <mglade@glassratner.com>; BWilliams@lincolninternational.com; BMurphy@lincolninternational.com
**Subject:** RE: Extension of Stalking Horse designation

I am authorized to approve Friday August 27 for designation of stalking horse with the caveat that the Equity Committee will not approve any continuance that shortens the time between date of filing of the sale motion and bid procedures and the date of the auction in January.

Peter J. Gurfein | Landau Gottfried & Berger LLP | 1801 Century Park East, Ste 700 | Los Angeles, CA 90067 direct: 310-691-7374 | main: 310.557.0050 | fax: 310.557.0056 | mobile: 310.584.1100 | email: pgurfein@lgbfirm.com | www.lgbfirm.com


**From:** Roach, Stephen Smith [mailto:Stephen.Roach@troutmansanders.com]
**Sent:** Wednesday, October 25, 2017 1:22 PM
**To:** Jeffrey Chubak; Peter J. Gurfein
**Cc:** jacob.brown@akerman.com; Katherine Fackler; Cavender, Jeffery W.; rrt@tmhlaw.net; rah@tmhlaw.net; Marshall Glade; BWilliams@lincolninternational.com; BMurphy@lincolninternational.com
**Subject:** RE: Extension of Stalking Horse designation

Jeff and Peter,

Since our call with counsel for PacBridge on Friday discussing outstanding issues for a term sheet, we have received no formal response from PacBridge regarding the term sheet (though GlassRatner has been in touch with PacBridge this week). PacBridge has not informed us that they do not intend to negotiate further, but we are not in a position to designate a stalking horse today. We will continue our efforts to negotiate with PacBridge to reach an agreement and request that the committees further extend the designation date until Friday the 27th.

Regards,
Stephen



**Stephen S. Roach**
troutman **sanders**
Direct: 404.885.2615
stephen.roach@troutman.com



**From:** Jeffrey Chubak [mailto:jchubak@storchamini.com]
**Sent:** Wednesday, October 25, 2017 10:51 AM
**To:** Roach, Stephen Smith <Stephen.Roach@troutmansanders.com>; Peter J. Gurfein <pgurfein@LGBFirm.com>
**Cc:** jacob.brown@akerman.com; Katherine Fackler <katherine.fackler@akerman.com>; Cavender, Jeffery W. <jeff.cavender@troutmansanders.com>; rrt@tmhlaw.net; rah@tmhlaw.net
**Subject:** RE: Extension of Stalking Horse designation

Writing to request confirmation that we are actually selecting PacBridge as stalking horse purchaser today.

**Jeffrey Chubak**

STORCH AMINI PC
2 GRAND CENTRAL TOWER
140 EAST 45TH STREET, 25TH FLOOR
NEW YORK, NY 10017
212.490.4100 - OFFICE
212.497.8247 - DIRECT
212.490.4208 - FAX
JCHUBAK@STORCHAMINI.COM - EMAIL

www.storchamini.com

**\*\*Please note our new firm name, email and website.**

CONFIDENTIALITY NOTICE: The information contained in this e-mail and any attachments may be legally privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail and any attachments is strictly prohibited. If you have received this e-mail in error, please notify the sender and permanently delete the e-mail and any attachments immediately. You should not retain, copy or use this e-mail or any attachment for any purpose, nor disclose all or any part of the contents to any other person. Thank you.

**From:** Roach, Stephen Smith [mailto:Stephen.Roach@troutmansanders.com]
**Sent:** Friday, October 20, 2017 5:25 PM
**To:** Peter J. Gurfein <pgurfein@LGBFirm.com>; Jeffrey Chubak <jchubak@storchamini.com>
**Cc:** jacob.brown@akerman.com; Katherine Fackler <katherine.fackler@akerman.com>; Cavender, Jeffery W. <jeff.cavender@troutmansanders.com>; rrt@tmhlaw.net; rah@tmhlaw.net
**Subject:** RE: Extension of Stalking Horse designation

November 3 is the goal. Can I count the equity committee as a yes?

**Stephen S. Roach**
troutman sanders
Direct: 404.885.2615
stephen.roach@troutman.com

---

**From:** Peter J. Gurfein [mailto:pgurfein@LGBFirm.com]
**Sent:** Friday, October 20, 2017 5:12 PM
**To:** Roach, Stephen Smith <Stephen.Roach@troutmansanders.com>; Jeffrey Chubak <jchubak@storchamini.com>
**Cc:** jacob.brown@akerman.com; Katherine Fackler <katherine.fackler@akerman.com>; Cavender, Jeffery W. <jeff.cavender@troutmansanders.com>; rrt@tmhlaw.net; rah@tmhlaw.net
**Subject:** RE: Extension of Stalking Horse designation

As long as that gives us enough time to complete the APA and file the sale motion by November 3.

Peter J. Gurfein | Landau Gottfried & Berger LLP | 1801 Century Park East, Ste 700 | Los Angeles, CA 90067 | direct tel: 310.691.7374 | main: 310.557.0050 | fax: 310.557.0056 | mobile: 310.584.1100 | email: pgurfein@lgbfirm.com | www.lgbfirm.com

**From:** Roach, Stephen Smith [mailto:Stephen.Roach@troutmansanders.com]
**Sent:** Friday, October 20, 2017 2:09 PM
**To:** Peter J. Gurfein; Jeffrey Chubak
**Cc:** jacob.brown@akerman.com; Katherine Fackler; Cavender, Jeffery W.; rrt@tmhlaw.net; rah@tmhlaw.net
**Subject:** Extension of Stalking Horse designation

Peter and Jeff,

Jeff C. and I just concluded a call with counsel for PacBridge regarding the term sheet. We discussed a number of items, including the changes requested by the Equity Committee. They are going to discuss the open items with their client and hopefully get back to us on Monday. We request that the Committees agree to an extension of the deadline to designate a stalking horse purchaser until next Wednesday, October 25th. Please let me know if the Committees agree to such an extension.

Regards,
Stephen

**Stephen S. Roach**
troutman sanders
Direct: 404.885.2615

4