UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 3:16-bk-02230-PMG |
| | ) | |
| RMS TITANIC, INC., *et al.*,[1] | ) | Chapter 11 (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**OBJECTION OF UNITED STATES OF AMERICA TO DISCLOSURE STATEMENT TO ACCOMPANY CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE OFFICIAL COMMITTEE OF EQUITY SECURITY <u>HOLDERS OF PREMIER EXHIBITIONS, INC.</u>**

The United States of America, Department of Commerce ("DOC"), National Oceanic and Atmospheric Administration ("NOAA"), a party-in-interest herein, hereby objects to the *Disclosure Statement to Accompany Chapter 11 Plan of Reorganization Proposed by the Official Committee of Equity Security Holders of Premier Exhibitions, Inc.* (the "Disclosure Statement"), Docket No. 1044, and states as follows:

<u>DISCLOSURE STATEMENT</u>

1. As the Court is well aware, this case involves two collections of artifacts recovered from the *Titanic* by RMST or its predecessors – the American Artifacts (a/k/a the Subject Titanic Artifact Collection or STAC) and the French Artifacts. *In re RMS Titanic, Inc.*, 569 B.R. 825, 829 (Bankr. M.D. Fla. 2017). The Disclosure Statement

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: RMS Titanic, Inc. ("RMST") (3162); Premier Exhibitions, Inc. ("Premier") (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

describes a plan that proposes to deal with these two collections in very different ways but fails to disclose the litigation that could arise from this approach and undermine the plan.

2. With respect to the American Artifacts, the Disclosure Statement describes the Plan as providing for the establishment of a Liquidating Trust which will be vested, as of the Effective Date, with all of Debtor Premier's interests in the Premier Entities, including RMST, to be administered by a Liquidating Trustee. *Disclosure Statement* at 2.[2] Specifically, it states that title to the American Artifacts, among other assets, "will vest in the Liquidating Trust free and clear of all claims, liens, encumbrances, charges and other interests." *Id*. at 18. The Liquidating Trustee will not, however, be identified until the Plan Supplement is filed ten calendar days before the Plan voting deadline set by the Court. *Id*. at Ex. 1 (Plan) at 10-11. The Liquidating Trustee will "offer the American Artifacts for sale only to potential bidders that are Qualified Institutions . . . to serve as the subsequent trustee and subsequent salvor-in-possession of the American Artifacts under the Covenants," *id.* at 7, "in a manner consistent with the Covenants", *id*. at 3. Any such sale would be subject to the approval of the District Court in the Eastern District of Virginia, *id*. at 7, 9, after notice to NOAA and all other parties entitled to notice in the District Court's admiralty action, *id*. at 7. Pending such a sale, a Chief Restructuring Officer ("CRO"), selected by the Liquidating Trustee, "shall manage and administer the American Artifacts consistent with the Covenants." *Id*. at 7.

3. With respect to the French Artifacts, the Disclosure Statement describes the Plan as providing for the "marketing and sale by auction, run by Guernsey's, of the French Artifacts, with such sale process commencing on the Effective Date of the Plan."

---

[2] Terms not otherwise defined in this Objection shall have the meaning ascribed to them in the Disclosure Statement.

*Id*.  Unlike the American Artifacts, the Disclosure Statement describes a plan that does not call for any role by the District Court; instead, the plan calls for the Liquidating Trustee to engage an auction house, presumably Guernsey's, to sell the French Artifacts "by auction in such manner as the Liquidating Trustee determines, in the exercise of its sole discretion, is in the best interests of the Debtors, their Estates and all parties having an interest therein." *Id*. at Ex. 1 (Plan) at 22.  Indeed, neither the Disclosure Statement nor the Plan describe any requirement for the Liquidating Trustee to notify any party or the District Court before transferring title or otherwise disposing of the French Artifacts.

## COVENANTS AND CONDITIONS

4.       In June 1994, the District Court granted RMST exclusive salvor-in-possession status over the *Titanic* wreck site, *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 286 F.3d 194, 196-97 (4th Cir. 2002).  In August 2010, it awarded RMST a salvage award of 100% of the fair market value of all of the recovered *Titanic* artifacts but reserved the right to determine the manner in which to pay the award.  *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 742 F. Supp. 2d 784, 809 (E.D. Va. 2010).  As part of that award, the Court also approved and imposed the Covenants, proposed by RMST and jointly crafted by RMST and NOAA/DOC, restricting the use and disposition of the *Titanic* artifacts.  *Id*. at 791-93.  The Covenants were attached as an exhibit to the District Court's August 2010 opinion.  In August 2011, the District Court granted RMST an *in specie* salvage award of title to the American Artifacts, as opposed to a monetary award, but subjected that award to the previously approved Covenants.  *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 804 F. Supp. 2d 508, 509 (E.D. Va. 2011).

5. The Covenants authorize NOAA to provide input and recommendations to the District Court to ensure that the public interest in the *Titanic* wreck site and its artifacts is forever protected and, in the current circumstances, to aid the District Court in evaluating a proposed subsequent Trustee under the Covenants.[3]  *See, e.g.*, *Covenants*, Arts. V.A., V.C.7., V.C.8, VI.E.4.  This authorization extends to RMST's bankruptcy case, *id*. at Art. VII.D.5. (reciting that NOAA shall have the right to make submissions and represent the public interest in RMST's bankruptcy), in which case, the Covenants remain enforceable, *id*. at Art. VII.D.1., and provide that RMST's beneficial interests in the American Artifacts "shall not be considered as part of the [Trustee's] bankruptcy estate," *id*. at VII.B.

6. Part of the public interest protected under the Covenants is that both the American Artifacts and the French Artifacts, (a) "to the maximum extent possible and consistent with reasonable collections management practices, be conserved and curated together . . . as an integral whole by the Trustee," *id*. at Art. III.A., and (b) "be available to present and future generations for public display and exhibition, historical review, scientific and scholarly research, and educational purposes," *id*. at Art. III.B.

7. These obligations and responsibilities continue to run, as a condition of title, in perpetuity, *id*. at Art. VI.B., and a Trustee's failure to conserve and curate the entire collection as an integral whole is assumed to be a Material Default as defined in the Covenants, *id*. at Art. V.E.

---

[3] Under the Covenants, RMST is defined as the first trustee of the *Titanic* artifacts.  *Covenants*, Art. II.J.

8. The Covenants expressly state that they "constitute the entirety of a Trustee's obligations in regards to the TITANIC Collections," *id*. at Art. VIII.A., which term is defined as both the American and French Artifacts together, *id*. at Art. II.H.

9. Finally, "[a]ny controversy or claim arising out of or relating to [the Covenants] shall be within the primary competence of the [District] Court exercising jurisdiction in the pending admiralty action." *Id*. at Art.VIII.B.

10. Hence, while the District Court lacks constructive *in rem* jurisdiction over the French Artifacts, *R.M.S. Titanic, Inc. v. Wrecked & Abandoned Vessel*, 435 F.3d 521, 528 (4th Cir. 2006), the Covenants do run in perpetuity, and the District Court retains the jurisdiction to enforce them, including a Trustee's obligations thereunder as it relates to all of the artifacts.[4]

## ARGUMENT

11. Disclosure of litigation likely to arise in a nonbankruptcy context is a well-established factor in determining the adequacy of a disclosure statement under 11 U.S.C. § 1125. *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); *see also Mickey's Enters, Inc. v. Saturday Sales, Inc.* (*In re Mickey's Enters., Inc.*), 165 B.R. 188, 194 (Bankr. W.D. Tex. 1994) ("A disclosure statement, to be adequate, should disclose all litigation likely to arise in a non-bankruptcy context.").

12. Here, the Disclosure Statement makes no mention of the possible litigation, or *sua sponte* action of the District Court, in response to a proposed sale of the French

---

[4] Indeed, at the June 28, 2017 status conference before the District Court, counsel to RMST represented that, even with respect to the French Artifacts, it would come first to the District Court before disposing of them. *June 28, 2017 Transcript* at 55-56 ("The company should have, we believe, the flexibility to [sell the French Artifacts], but should that ever occur, we would be here first, and that's a representation to the Court.").

Artifacts, which will occur with no notice to the District Court.  Such a sale could constitute a Material Default under the Covenants if it does not result in the entire *Titanic* collection being conserved and curated as an integral whole available for public display and exhibition.  That scenario is a distinct possibility given the wide discretion the Liquidating Trustee will possess in selling the French Artifacts. *Disclosure Statement* at Ex. 1 (Plan) at 22.

13. Such a default under the Covenants could result in the District Court revoking (a) RMST's status as exclusive salvor-in-possession over the *Titanic*, and/or (b) the *in specie* award of the American Artifacts to RMST. *R.M.S. Titanic, Inc.*, 286 F.3d at 206 (noting that the district court has the power to "dispossess[ ] RMST of [its] role" as exclusive salvor-in-possession).  This would thwart any attempt to transfer or sell that status or the American Artifacts, as the Equity Committee's proposed plan contemplates, thereby undermining one of the two mechanisms for implementing the Plan.

14. Similarly, the Disclosure Statement fails to (a) provide for any District Court approval for the initial transfer of the American Artifacts to the Liquidating Trust from RMST, which is required under the Covenants, *Covenants* at Art. VI. A. ("The [American Artifacts] may not be . . . transferred . . . except as approved by the District Court."), or (b) describe how the Liquidating Trust, to be administered by a currently unidentified Liquidating Trustee, would be eligible as a Qualified Institution under the Covenants or meet the requirements to conserve, curate, manage, and generally care for the artifacts in accordance with the Covenants.[5]  Again, absent such disclosure, entities voting on

---

[5] The most the Disclosure Statement offers is that the yet to be chosen "CRO shall offer to employ all employees of Premier who are involved in the preservation, management, and display of the American Artifacts pending their disposition." *Disclosure Statement* at Ex. 1 (Plan) at 23.

the Plan may not realize that a principal means for the Plan's implementation may fail due to noncompliance with the Covenants.

15. Such material and substantial litigation risk must be fully explained in the Disclosure Statement so that entities voting on the proposed plan can make an informed decision regarding the likelihood of the plan's success given that risk.

16. Finally, the Disclosure Statement describes the American Artifacts as vesting free and clear of claims and interests in the Liquidating Trust. *Disclosure Statement* at 18. This is inaccurate and impossible because any Trustee's beneficial interests in those artifacts, whether held by RMST or any subsequent Trustee under the Covenants, is subject in perpetuity to the obligations imposed under those Covenants as described above. The Disclosure Statement should be amended to reflect this.

## CONCLUSION

17. For the foregoing reasons, the Court should not approve the Disclosure Statement until it is amended to provide the additional disclosures described herein. This 18th day of July 2018.

    Respectfully submitted,

    CHAD A. READLER
    Acting Assistant Attorney General

    MARIA CHAPA LOPEZ
    United States Attorney

    /s/ Matthew J. Troy
    RUTH A. HARVEY
    MICHAEL J. QUINN
    MATTHEW J. TROY
    Attorneys, Civil Division
    U.S. Department of Justice
    P.O. Box 875
    Ben Franklin Station

Washington, D.C. 20044
(202) 514-9038 (o)
(202) 307-0494 (f)

## CERTIFICATE OF SERVICE

      I hereby certify that on this 18th day of July 2018, I caused a true and correct copy of foregoing Objection to be filed with the Clerk of the Court using the CM/ECF system which in turn will send electronic notification to all interested parties of record.

                                                       /s/ Matthew J. Troy
                                                       Matthew J. Troy