**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

RMS TITANIC, INC., *et al.*,[1]

           Debtors.

Case No. 3:16-bk-02230-PMG
Chapter 11 (Jointly Administered)

**OBJECTION OF THE DEBTORS TO THE DISCLOSURE STATEMENT TO ACCOMPANY THE JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE TRUSTEES OF THE NATIONAL MARITIME MUSEUM, THE BOARD OF TRUSTEES OF NATIONAL MUSEUMS AND GALLERIES OF NORTHERN IRELAND, AND RUNNING SUBWAY PRODUCTIONS, LLC**

COMES NOW RMS Titanic, Inc. ("RMST") and certain of its affiliates, as Debtors and Debtors-in-Possession in the above captioned cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") pursuant to Section 1125(a) of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") to the *Disclosure Statement to Accompany the Joint Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors, the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running*

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

*Subway Productions LLC* (the "Joint Disclosure Statement") [D.E. 1084].[2]  In support

thereof, the Debtors respectfully represent the following:

## PRELIMINARY STATEMENT

After parsing the Joint Disclosure Statement, it is readily apparent that the

proponents' plan is premised on little more than a phantom transaction involving insiders.

Conspicuously missing from the Joint Disclosure Statement is any disclosure that the

CEO of Running Subway (as defined below), the entity seeking to acquire the Debtors'

exhibition lines of business, is also the CEO of a member of the Creditors' Committee.

As proposed, the Joint Disclosure Statement and accompanying plan contemplate a

private sale of the Debtors' assets, including the Titanic Artifact Collection, that is not

subject to higher and better offers and remains subject to a financing contingency.

As to the source of financing, the proponents merely disclose that certain of the

Museum Plan Sponsors "intend to fundraise the full amount of the Purchase Price from

government sources, several key individuals and high net worth donors, and other

sources." Because the Joint Disclosure Statement lacks any detail as to the proponents'

"global fundraising campaign," or whether that campaign has even begun, the purchase

price and overall transaction are entirely illusory. There is also no disclosure of the risk

factors regarding the fundraising campaign or even a timeline of when this transaction is

supposed to close and how the Debtors will be funded until then.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Joint Disclosure Statement.

Adding to these blatant deficiencies, the Joint Disclosure Statement fails to include crucial documents and information, such as the form of the Acquisition Agreements that are referenced repeatedly throughout the document (which are critical to evaluating the Plan and its impact on stakeholders) and a liquidation analysis. Further, although the proposed private sale sets forth a nominally higher price than that set forth in the Asset Purchase Agreement signed by the Debtors with stalking horse purchaser Premier Acquisition Holdings LLC (which is subject to higher and better offers and contains no financing contingency), the Joint Disclosure Statement contains no details or analysis whatsoever demonstrating that the net result to creditors under this proposed private sale would in fact be any higher. In sum, the Joint Disclosure Statement rings hollow, lacks the transparency and financial wherewithal to be seriously considered and solicited and the Debtors lack the financial resources to pursue the "hope and a prayer" strategy required to proceed with it. Accordingly, the Joint Disclosure Statement should be denied.

## BACKGROUND

1.      On June 14, 2016 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code and thereby commenced these Chapter 11 cases (the "Chapter 11 Cases").

2.      The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

3.      On August 24, 2016, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") [D.E. 166] to serve in

these Chapter 11 Cases.  The Creditors' Committee is comprised of: (i) TSX Operating Co., LLC ("TSX"), (ii) Dallian Hoffen Biotechnique Co., Ltd., and (iii) B.E. Capital Management.

4.      On June 29, 2018, the Creditors' Committee, the Trustees of the National Maritime Museum ("NMM"), the Board of Trustees of National Museums and Galleries of Northern Ireland ("NMNI," and together with NMM, collectively, the "Museum Plan Sponsors"), and Running Subway Productions, LLC ("Running Subway," and together with the Museum Plan Sponsors and the Creditors' Committee, collectively, the "Plan Proponents") submitted the Joint Disclosure Statement in connection with the solicitation of votes for acceptance of the *Joint Chapter 11 Plan of Reorganization Proposed by the Official Committee of Unsecured Creditors, the Trustees of the National Maritime Museum, the Board of Trustees of the National Museum And Galleries of Northern Ireland, and Running Subway Productions, LLC* contemporaneously filed therewith [D.E. 1085] (the "Joint Plan").

5.      On July 13, 2018, the Court entered an Order abating the July 25, 2018 hearing and scheduling a status conference in its stead [D.E. 1112].  While the Debtors have moved the Court to reconsider its July 13 Order [D.E. 1114], the Joint Disclosure Statement has not been reset for hearing.

## OBJECTION

### I.    THE JOINT DISCLOSURE STATEMENT CANNOT BE APPROVED BECAUSE IT SOLICITS ACCEPTANCE OF A FACIALLY UNCONFIRMABLE PLAN.

6.    "Allowing a facially non-confirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation.  Accordingly, it is proper to consider whether the Plan is confirmable on its face when considering whether to approve the Disclosure Statement." *In re Oakwood Country Club, Inc.*, No. 10-60246-LYN, 2010 Bankr. LEXIS 4338, at *2 (Bankr. W.D. Va. Nov. 22, 2010) (citation omitted). *See also In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) (denying approval of proponents' disclosure statement where the court found that the disclosure statement did not contain adequate information and the plan did not comply with the requirements of Section 1129 of the Bankruptcy Code).   The Joint Plan is facially unconfirmable.

7.    First, as discussed above, the Museum Plan Sponsors do not have sufficient resources to consummate the plan they proposed.  Rather, they intend to run a global fundraising campaign in connection with the Joint Plan, for which they have not a single financial commitment.   Without any financial commitment in place the feasibility of the Joint Plan remains suspect; NMM could fall short of its fundraising goals and walk away from the transaction without financial consequence, all to the detriment of the Debtors' estates and their creditors.  The resolution to these Chapter 11 Cases cannot be unsubstantiated hope and blind faith.  Moreover, the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code demand that confirmation not be followed by further

financial reorganization; especially in a case where, as here, the Debtors have a viable and committed stalking horse proposal in place subject to higher and better offers without any financing contingencies.

8.    Second, it is impossible to determine from the face of the Joint Plan when the Effective Date will occur, if ever.  Article XI(B) of the Joint Plan provides that a condition to the Effective Date is that all transactions contemplated in the Acquisition Agreements shall have been consummated.  But there is no timeline, outside date, or even expected sale date for the Debtors' assets in the Joint Plan or the Joint Disclosure Statement.  Worse still, the "Acquisition Agreements" are not even included in the Joint Disclosure Statement, leaving the reader to guess what they say (or might say, to the extent they have not yet been drafted or executed).  Thus, there is no indication as to the terms of the transactions contemplated by the Acquisition Agreements and when the transactions might, if ever, be consummated.  Theoretically, then, the Effective Date could never occur if the Plan Proponents delay in their fundraising efforts or fail to achieve their fundraising goal.  It is conceivable that the Effective Date could drag on for years.  To be confirmable, the Plan's effective date cannot be vague or indefinite and should be reasonably close to the confirmation date.  *In re Potomac Iron Works*, 217 B.R. 170, 173 (Bankr. D. Md. 1997) ("The effective date plays an important role in valuation and should therefore be set forth in the plan with specificity.").  In particular, when the Joint Plan is a liquidating plan, the effective date must be close in time to confirmation to be reasonable.  *In re Kruegen*, 66 B.R. 463, 465 (Bankr. S.D. Fla. 1986) (holding that an effective date set at approximately four months after the confirmation

hearing date is "beyond the interval essential for liquidation . . . [and] is unreasonable");

*see also In re Jones*, 32 B.R. 951, 958 n.13 (Bankr. D. Utah 1983) ("'The effective date

of the plan' is expressly designated as the critical point for the major financial standards

for confirmation. The valuations required by these sections are likely to be less accurate

if the effective date is not close to the date of the hearing on confirmation."). As drafted,

the Joint Plan provides no meaningful way to discern the Effective Date and is, therefore,

unconfirmable on its face.

9.      Accordingly, the Joint Plan is patently unconfirmable and approval of the

Joint Disclosure Statement should be denied.

## II.      THE JOINT DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION AS REQUIRED UNDER SECTION 1125 OF THE BANKRUPTCY CODE

### A.      <u>Standard of Review</u>

10.      Section 1125 of the Bankruptcy Code requires that, before a plan

proponent may solicit acceptance or rejection of a plan, the plan proponent must transmit

to the parties to be solicited a disclosure statement, containing "adequate information."

11 U.S.C. § 1125(a)(1). The Bankruptcy Code defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of
> the debtor and the condition of the debtor's books and
> records, including a discussion of the potential material
> Federal tax consequences of the plan to the debtor, any
> successor to the debtor, and a hypothetical investor typical
> of the holders of claims or interests in the case, that would
> enable such a hypothetical investor of the relevant class to
> make an informed judgment about the plan, . . . and in
> determining whether a disclosure statement provides
> adequate information, the court shall consider the

>complexity of the case, the benefit of additional information
>to creditors and other parties in interest, and the cost of
>providing additional information; . . .

*Id.*

11.     The legislative history of section 1125 of the Bankruptcy Code states that "[t]he disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders would make an informed judgment about a plan of reorganization." *In re Jeppson,* 66 B.R. 269, 291 (Bankr. D. Utah 1986). The purpose of a disclosure statement is "to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan." *Duff v. United States Trustee (In re California Fid., Inc.),* 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996).    As a result, a disclosure statement should be approved only when it sets forth "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." *In re Scioto Valley*, 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988) (citing *In re The Stanley Hotel, Inc.*, 13 B.R. 926, 929 (Bankr. D. Colo. 1981)).  *See, e.g.*, *In re Walker,* 198 B.R. at 479-480 (Bankr. E.D. Va. 1996); *In re Cardinal Congregate,* 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990).

12.     Furthermore, because creditors rely on the disclosure statement prior to voting on or considering the bona fides of a plan of reorganization, "it is crucial that a [plan proponent] be absolutely truthful" so that the disclosure statement satisfies section 1125(a)(1) of the Bankruptcy Code.  *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., N.Y. Branch (In re Galerie Des Monnaies of Geneva, Ltd.),* 55 B.R. 253,

259 (Bankr. S.D.N.Y. 1985), *aff'd*, 62 B.R. 224 (S.D.N.Y. 1986).  It is of prime importance that a proponent's disclosure be "full and fair." *Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994). *See, e.g.*, *Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) ("Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated.").  This requires, at a minimum, the disclosure statement to "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

13.    Here, the Disclosure Statement, as submitted by the Plan Proponents, is wholly deficient in numerous respects.

### B.    The Disclosure Statement Fails to Disclose Adequate Information

14.    Approval should be withheld if the disclosure statement does not contain information such that all creditors and equity holders can make an intelligent and informed decision as to whether to accept or reject, or support or oppose, the proposed plan. *See In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988).  In this case, adequate disclosure is even more important because the Joint Plan is being proposed by purported fiduciaries for creditors; exclusivity has lapsed; the Debtors have filed a sale motion; and both the Creditors' Committee and Equity Committee are attempting to proceed with their own plans.  If unsecured creditors voting on a plan are

to have truly adequate information, a disclosure statement so sorely lacking in critical details cannot be permitted to go out for solicitation.   The Debtors submit that the information in the Joint Disclosure Statement purportedly relating to the Plan Sponsors' purchase of the Debtors' assets is wholly inadequate.

15.     Contrary to the requirement that a proponent's disclosure statement be truthful, the Joint Disclosure Statement is devoid of any disclosure as to the composition of the Creditors' Committee and Running Subway's relationship to its members.   As noted above, the Joint Disclosure Statement and Joint Plan contemplate that Running Subway will purchase substantially all of the Debtors' assets that are not Museum Purchased Assets.   The Joint Disclosure Statement states that, amid creditor concern that the Museum Plan Sponsors' bid for the Artifact Collection would leave uncertainty with respect to the disposition of the Debtors' remaining assets, NMM began negotiations with Running Subway to put forth a joint bid for substantially all of the assets of the Debtors. (Joint Disclosure Statement, at 17-18).   While the Joint Disclosure Statement goes out of its way to describe the importance of Running Subway's insertion into the sale process, it utterly fails to disclose Running Subway's relationship with, and indirect role on, the very committee that allegedly raised concerns with the Museum Plan Sponsors' bid in the first place.

16.     The CEO of Running Subway, James R. Sanna, is also the CEO of TSX, one of the members of the Creditors' Committee.   Because he sits on the Creditors' Committee, Mr. Sanna has access to confidential information as to the Joint Plan including, for example, the purported inadequacies of the Museum Plan Sponsors' bid

for the Titanic Artifact Collection.   His ability to leverage that information to the advantage of the Plan Proponents and Running Subway – a direct competitor of the Debtors – unequivocally required disclosure to all of the Debtors' stakeholders.   Thus, the Plan Proponents' omission of Mr. Sanna's insider relationship with the Creditors' Committee and Running Subway is inexplicable.   Particularly so when the Plan Proponents allege that Running Subway is crucial to the viability of the Joint Plan.   The absence of such disclosure can only raise negative inferences as to the bona fides of the joint bid underlying the Joint Plan and demonstrates the inadequacy of the Joint Disclosure Statement

17.    In addition to the failure to disclose the insider nature of the transaction, the Joint Disclosure Statement and Joint Plan provide no information relative to the sale of the Debtor's assets to the Plan Sponsors or the related sale process beyond summarily identifying the assets that they intend to purchase.   The Joint Disclosure Statement provides only that "NMM, NMNI, and Titanic Belfast intend to fundraise the full amount of the Purchase Price from government sources, several key individuals, and high new worth donors, and other sources."  (Joint Disclosure Statement, at 19).  As evidenced by this statement, neither the Joint Disclosure Statement nor the Joint Plan contains a firm commitment from even a single individual or entity with respect to the purchase price, which is illusive at best.  Further, the Joint Disclosure Statement neglects to provide any information regarding: (i) who will be conducting "global fundraising campaign" on behalf of, or in conjunction with, NMM, NMNI, and Titanic Belfast; (ii) where these parties are at in their fundraising efforts; or (iii) whether that process has even begun.

Nor does the Joint Disclosure Statement provide any risk factors associated with this fundraising campaign.

18.    Without a firm financial commitment to close the proposed transaction, the Museum Plan Sponsors could fall short of their $19.2 million fundraising goal and walk away from their proposed private sale as late as the date of the closing without any financial consequence.  There exists no mechanism or instrument that requires the Plan Sponsors to acquire the Debtors' assets at any threshold amount.  If, for example, the Plan Sponsors raised only $17 million, at best that transaction would close and yield less than the Debtors have already achieved through the fully committed staking horse bid they have has been presented to the Court, which sets a floor at $17.5 million for the Debtors' assets and remains subject to higher and better offers.  Making matters worse, the approval of the Joint Disclosure Statement would trigger a default under the Debtors' Asset Purchase Agreement with the stalking horse bidder.  As a result, if the Joint Disclosure Statement is approved it could jeopardize the only viable, funded transaction and send these Chapter 11 Cases into a tailspin with no end or recovery in sight for creditors.  This risk factor is not described in any detail in the Joint Disclosure Statement, and alone should justifies its denial.

19.    The Joint Disclosure Statement also wholly fails to address the litigation risk and associated drain on estate resources that would result from a competing chapter 11 plan process. This is not just the cost of solicitation, but the exorbitant legal fees – all of which will be borne by these estates – that will be incurred by counsel for the Debtors, Creditors Committee and Equity Committee, in what will undoubtedly be a vehemently

contested chapter 11 confirmation process. Indeed, even if the Plan Proponents secured a firm commitment for $19.2 million, the litigation costs associated with contested confirmation could very quickly and easily erode any allegedly higher incremental value. Disclosure of this substantial risk to creditors is completely absent from the Joint Disclosure Statement. Notably, the avoidance of such costs was a key consideration for the Debtors in approving the Stalking Horse bid and proceeding with an open, competitive sales process.

20.    Similarly, the Joint Plan lacks any timeline for when the Effective Date of the Joint Plan will occur. A condition to the Effective Date is that all transactions contemplated in the Acquisition Agreements shall have been consummated. However, there is no outside date or any other means to determine when the sale contemplated in the Acquisition Agreements will or must occur, if ever. As drafted, the Joint Plan could take years to become effective, or if the Plan Proponents so chose, never. As discussed below, this is not only an issue for adequate disclosure, but renders the Joint Plan facially unconfirmable.

21.    Due to the overarching ambiguity as whether a sale will even occur under the Joint Plan, the Joint Disclosure Statement also fails to provide any timeframe in which creditors can expect a recovery. Article I(C) of the Disclosure Statement states only that the "Liquidation Trust will make an initial distribution from the Liquidation Trust to holders of Allowed Claims from the proceeds of the Sale and will thereafter make one or more interim distributions of proceeds of the Liquidation Trustee's administration of the Liquidation Trust Assets, culminating in a final distribution to be made upon the

completion of the Liquidation Trustee's administration of the Liquidation Trustee Assets." (Joint Disclosure Statement, at 7). With the timing and likelihood of any sale uncertain, the Joint Disclosure Statement provides no basis for an interested stakeholder to gauge when they might receive a distribution. Nor does the Joint Disclosure Statement provide creditors with an estimated return on their claims.

22.     In addition, neither executed copies nor forms of the Acquisition Agreements have been included with the Joint Disclosure Statement and accompanying Joint Plan. Conveniently, this omission illusively makes the Joint Plan's "purchase price" appear higher than the purchase price proposed in the Debtors' Asset Purchase Agreement, because the reader has no way of comparing the two. Thus, while the Plan Proponents seek to begin solicitation on their Plan, they omit critical information to their proposed transaction, including, but not limited to, which executory contracts and/or unexpired leases are to be assumed as part of their Plan, leaving key vendors in limbo and creditors unable to assess the pool of claims against the purchase price. These omissions also fail to address the effect on distributions to creditors as a result of rejection of any executory contracts (particularly any post-petition contracts, the rejection of which would result in administrative expense claims). All of this information must be disclosed if the creditors and stakeholders are to make a reasoned evaluation of the Joint Plan.

23.     The Joint Disclosure Statement also fails to include any list or description of the scheduled claims against the Debtors or the impact of any such claims being allowed or disallowed. Detail as to claims against the estates is required in a disclosure statement. *See In re Grabanski*, No. 10-30902, 2013 Bankr. LEXIS 1593, at *18 (Bankr.

D.N.D. Apr. 12, 2013) (noting that the court properly sustained objections to the debtor's disclosure statement because, among other things, it did not "list scheduled claims."); *In re Ferretti*, 128 B.R. at 19 ("the [disclosure] statement should inform the reader what the undisputed claims are, what the disputed claims are, [and] what effect, if any, there will be on the distribution if disputed claims are or are not allowed ... ."). Further, the Joint Disclosure Statement does not contain a liquidation analysis or even an analysis of executory contracts to be assumed or rejected, which are reasons in and of themselves not to approve it.

24.    In short, the Joint Disclosure Statement provides little information upon which creditors and stakeholders can evaluate the Joint Plan and determine whether it is in their best interest.  For this reason, the Joint Disclosure Statement should not be approved.

## <u>RESERVATION</u>

25.    The Debtors reserve all rights to raise the issues contained in this Objection and any other related issues in any contested matter and/or adversary proceeding, including, without limitation, objections to confirmation of the Joint Plan or any other plan.  The Debtors further reserve their rights to amend, modify, or supplement this Objection in response to, or as a result of, any discovery conducted in connection with confirmation of the Joint Plan and/or other submission in connection with the Joint Plan or any other plan.  Finally, the Debtors reserve their right to adopt any other objections to approval of the Joint Disclosure Statement, or any other disclosure statement, filed by any other party in interest.

## CONCLUSION

WHEREFORE, the Debtors requests that the Court (i) deny approval of the Joint Disclosure Statement for its failure to provide adequate information and/or because the accompanying Joint Plan is unconfirmable on its face, and (ii) grant the Debtors such further relief as the Court may deem just and proper.

NELSON MULLINS RILEY
& SCARBOROUGH LLP


By_____*/s/ Daniel F. Blanks*_____
     Daniel F. Blanks (FL Bar No. 88957)
     Lee D. Wedekind, III (FL Bar No. 670588)
     50 N. Laura Street, Suite 4100
     Jacksonville, FL 32202
     (904) 665-3656 (direct)
     (904) 665-3699 (fax)
     daniel.blanks@nelsonmullins.com
     lee.wedekind@nelsonmullins.com

and

TROUTMAN SANDERS LLP
Harris B. Winsberg (GA Bar No. 117751)
Matthew R. Brooks (GA Bar No. 378018)
600 Peachtree Street NE, Suite 5200
Atlanta, GA 30308
(404) 885-3000 (phone)
(404) 962-6990 (fax)
harris.winsberg@troutmansanders.com
matthew.brooks@troutmansanders.com

*Counsel for the Debtors and Debtors in Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on July 18, 2018. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Electronic Filing generated by CM/ECF:

Jay B. Verona, Esq.
Shumaker, Loop & Kendrick, LLP
101 E. Kennedy Blvd., Suite 2800
Tampa, FL 33602
(813) 229-7600
jverona@slk-law.com
*Attorneys for George F. Eyde*
*Orlando, LLC and Louis J. Eyde*
*Orlando, LLC*

Jill E. Kelso, Esq.
Miriam G. Suarez, Esq.
Office of the United States Trustee
400 W. Washington Street, Suite 1100
Orlando FL 32801
(407) 648-6301 ext. 137
jill.kelso@usdoj.gov
Miriam.g.suarez@usdoj.gov
*Attorneys for Guy G. Gebhardt,*
*Acting U.S. Trustee for Region 21*

Scott M. Grossman, Esq.
Greenberg Traurig
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, FL 33301
(954) 768-5212
grossmansm@gtlaw.com
*Attorneys for Lang Feng, Haiping Zou,*
*Jihe Zhang, and High Nature Holdings*
*Limited*

Ari Newman, Esq.
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
(305) 579-0500
newmanar@gtlaw.com
*Attorneys for Lang Feng, Haiping Zou,*
*Jihe Zhang, and High Nature Holdings*
*Limited*

Jason B. Burnett, Esq.
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 598-9929
jason.burnett@gray-robinson.com
*Attorneys for 417 Fifth Avenue Real*
*Estate, LLC*

Andrew T. Jenkins, Esq.
Bush Ross, P.A.
P.O. Box 3913
Tampa, FL 33601-3913
(813) 224-9255
ajenkins@bushross.com
*Attorneys for Bank of America, N.A.*

Matthew J. Troy, Esq.
U.S. Dept. of Justice
1100 L Street NW, Suite 10030
Washington, DC 20005
(202) 514-9038
matthew.troy@usdoj.gov
*Attorneys for the United States Department of Commerce, National Oceanic and Atmospheric Administration*

Kathy A. Jorrie, Esq.
Pillsbury Winthrop Shaw Pittman LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017
(213) 488-7251
Kathy.jorrie@pillsburylaw.com
*Attorneys for AEG Presents, LLC*

Brian D. Equi, Esq.
Goldberg Segalla, LLP
121 S. Orange Avenue, Suite 1500
Orlando, FL 32801
(407) 458-5608
bequi@goldbergsegalla.com
salamina@goldbergsegalla.com
sherndon@goldbergsegalla.com
*Attorneys for Structure Tone, Inc.*

J. Ellsworth Summers, Jr., Esq.
Burr Forman, LLP
50 N. Laura Street, Suite 3000
Jacksonville, FL 32202
(904) 232-7200
esummers@burr.com
*Attorneys for Michael J. Little*

Norman P. Fivel, Esq.
Assistant Attorney General
Office of the New York State
Attorney General
Civil Recoveries Bureau,
Bankruptcy Litigation Unit
The Capitol
Albany, NY 12224-0341
(518) 776-2264
norman.fivel@ag.ny.gov
*Attorneys for New York Dept. of Taxation and Finance*

D. Marcus Braswell, Jr., Esq.
Sugarman & Susskind, P.A.
100 Miracle Mile, Suite 300
Coral Gables, FL 33134
(305) 529-2801
mbraswell@sugarmansusskind.com
*Attorneys for Theatrical Protective Union, Local No. One, IATSE*

Chris Broussard, Esq.
Suzy Tate, P.A.
14502 N. Dale Mabry Highway, Suite 200
Tampa, FL 33618
(813) 264-1685
cbrouss@suzytate.com
*Attorneys for The Armada Group GP, Inc.*

Richard R. Thames, Esq.
Thames Markey & Heekin, P.A.
50 N. Laura Street, Suite 1600
Jacksonville, FL 32202
(904) 358-4000
rrt@tmhlaw.net
*Attorneys for Official Committee of Unsecured Creditors*

Avery Samet, Esq.
Jeffrey Chubak, Esq.
Storch Amini & Munves PC
140 East 45th Street, 25th Floor
New York, NY 10017
(212) 490-4100
asamet@samlegal.com
jchubak@samlegal.com
*Attorneys for Official Committee of
Unsecured Creditors*

Jacob A. Brown, Esq.
Katherine C. Fackler, Esq.
Akerman LLP
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202
(904) 798-3700
jacob.brown@akerman.com
katherine.fackler@akerman.com
*Attorneys for the Official Committee of
Equity Security Holders of Premier
Exhibitions, Inc.*

T. David Mitchell, Esq.
Brenner Kaprosy Mitchell, L.L.P.
30050 Chagrin Blvd., Suite 100
Pepper Pike, OH 44124
(216) 292-5555
tdmitchell@brenner-law.com
*Attorneys for CRI Properties, Ltd.*

Susan R. Sherrill-Beard, Esq.
U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326
(404) 842-7626
sherrill-beards@sec.gov
atlreorg@sec.gov
*Attorneys for U.S. Securities and
Exchange Commission*

Peter J. Gurfein, Esq.
Roye Zur, Esq.
Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
(310) 557-0050
pgurfein@lgbfirm.com
rzur@lgbfirm.com
*Attorneys for Official Committee of Equity Security
Holders of Premier Exhibitions, Inc.*

Skyler M. Tanner, Esq.
Lane Powell PC
601 SW Second Avenue, Suite 2100
Portland, OR 97204
tanners@lanepowell.com
beldingt@lanepowell.com
docketing-pdx@lanepowell.com
*Attorneys for Oregon Museum of Science and
Industry*

Howard Siegel, Esq.
945 McKinney Street, PMB 434
Houston, TX 77002
(713) 984-4801
howard@eucinv.com
*Attorney for Euclid Investments, LP
And Euclid Claims Recovery LLC*

Garrett A. Nail, Esq.
John F. Isbell, Esq.
Thompson Hine LLP
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
(404) 541-2900
garrett.nail@thompsonhine.com
john.isbell@thompsonhine.com
*Attorneys for Bay Point Capital Partners, LP*

Steven R. Fox, Esq.
Fox Law Corporation
17835 Ventura Blvd., Suite 306
Encino, CA 91316
srfox@foxlaw.com
*Attorneys for Titanic Entertainment
Holdings*

Jennifer Feldsher, Esq.
David L. Lawton, Esq.
Bracewell LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 508-6100
Jennifer.feldsher@bracewell.com
David.laweton@bracewell.com
*Attorneys for the Ad Hoc Group of
Equityholders*

Timothy Graulich, Esq.
James I. McClammy, Esq.
Mara Theophila, Esq.
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
Timothy.graulich@davispolk.com
James.mcclammy@davispolk.com
Mara.theophila@davispolk.com
*Attorneys for the Trustees of the National
Maritime Museum*

Stephen D. Busey, Esq.
Asghar A. Syed, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32202
(904) 359-7700
busey@smithhulsey.com
asyed@smithhulsey.com
*Attorneys for the Ad Hoc Group of Equityholders*

Patricia Ann Redmond, Esq.
Stearns Weaver, et al.
150 West Flagler Street, Suite 2200
Miami, FL 33130
(305) 789-3200
predmond@stearnweaver.com
*Attorneys for the Trustees of the National Maritime
Museum*

Jason B. Burnett, Esq.
Ashlea A. Edwards, Esq.
GrayRobinson, P.A.
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 598-9929
jason.burnett@gray-robinson.com
ashlea.edwards@gray-robinson.com
*Attorneys for Ramparts, Inc. d/b/a Luxor Hotel
and Casino*

**Via U.S. Mail**

A-1 Storage and Crane
2482 197th Avenue
Manchester, IA 52057

ABC Imaging
5290 Shawnee Road, Suite 300
Alexandria, VA 22312

A.N. Deringer, Inc.
PO Box 11349
Succursale Centre-Ville
Montreal, QC H3C 5H1

ATS, Inc.
1900 W. Anaheim Street
Long Beach, CA 90813

Broadway Video
30 Rockefeller Plaza
54th Floor
New York, NY 10112

CBS Outdoor/Outfront Media
185 US Highway 48
Fairfield, NJ 07004

Dentons Canada LLP
250 Howe Street, 20th Floor
Vancouver, BC V6C 3R8

Enterprise Rent-A-Car Canada
709 Miner Avenue
Scarborough, ON M1B 6B6

Expedia, Inc.
10190 Covington Cross Drive
Las Vegas, NV 89144

George Young Company
509 Heron Drive
Swedesboro, NJ 08085

Gowlings
550 Burrard Street
Suite 2300, Bental 5
Vancouver, BC V6C 2B5

Hoffen Global Ltd.
305 Crosstree Lane
Atlanta, GA 30328

Kirvin Doak Communications
5230 W. Patrick Lane
Las Vegas, NV 89118

MNP LLP
15303 - 31st Avenue
Suite 301
Surrey, BC V3Z 6X2

Morris Visitor Publications
543 Broad Street
Augusta, GA 30901

NASDAQ Stock Market, LLC
805 King Farm Blvd.
Rockville, MD 20850

National Geographic Society
1145 - 17th Avenue NW
Washington, DC 20036

NYC Dept. of Finance
PO Box 3646
New York, NY 10008

PacBridge Limited Partners
22/F Fung House
19-20 Connaught Road
Central Hong Kong

Pallet Rack Surplus, Inc.
1981 Old Covington Cross Road NE
Conyers, GA 30013

Screen Actors Guild
1900 Broadway
5th Floor
New York, NY 10023

Seaventures, Ltd.
5603 Oxford Moor Blvd.
Windemere, FL 34786

Sophrintendenza Archeologica
di Napoli e Pompei
Piazza Museo 19
Naples, Italy 80135

Syzygy3, Inc.
231 West 29th Street
Suite 606
New York, NY 10001

Time Out New York
405 Park Avenue
New York, NY 10022

TPL
3340 Peachtree Road
Suite 2140
Atlanta, GA 30326

TSX Operating Co.
70 West 40th Street
9th Floor
New York, NY 10018

Verifone, Inc.
300 S. Park Place Blvd.
Clearwater, FL 33759

WNBC - NBC Universal Media
30 Rockefeller Center
New York, NY 10112

Jonathan B. Ross, Esq.
Gowling WLG (Canada) LLP
550 Burrard Street, Suite 2300, Bentall 5
Vancouver, BC V6C 2B5

United States Attorney's Office
Middle District of Florida
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202

Christine R. Etheridge, Esq.
Bankruptcy Administration
Wells Fargo Vendor Financial Services, LLC
PO Box 13708
Macon, GA 31208

B.E. Capital Management Fund LP
Thomas Branziel
228 Park Avenue South, Suite 63787
New York, NY 10003
***Creditor Committee***

TSX Operating Co., LLC
c/o James Sanna
70 W. 40th Street
New York, NY 10018
***Creditor Committee***

Dallian Hoffen Biotechnique Co., Ltd.
c/o Ezra B. Jones
305 Crosstree Lane
Atlanta, GA 30328
***Creditor Committee***

AEG Presents LLC
c/o Managing Member
800 W. Olympic Blvd.
Suite 305
Los Angeles, CA 90015

AEG Presents LLC
c/o CT Corporation System,
Registered Agent
ATTN: Amanda Garcia
818 West Seventh Street
Suite 930
Los Angeles, CA 90017

AEG Presents LLC
c/o Managing Member
5750 Wilshire Blvd.
Suite 501
Los Angeles, CA 90036-3638

AEG Presents LLC
c/o Managing Member
425 W. 11th Street
Los Angeles, CA 90015-3459

_____*/s/ Daniel F. Blanks*_____
Attorney

~#4842-3847-6653~