**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re:<br><br>RMS TITANIC, INC., et al.,<br><br>Debtors. | Case No. 3:16-bk-02230-PMG<br><br>Chapter 11<br><br>(Jointly Administered) |

**RESPONSE OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, THE TRUSTEES OF THE NATIONAL
MARITIME MUSEUM, THE BOARD OF TRUSTEES OF NATIONAL MUSEUMS AND
GALLERIES OF NORTHERN IRELAND, AND RUNNING SUBWAY PRODUCTIONS,
LLC TO DEBTORS' MOTION TO RECONSIDER THE COURT'S ORDER
SCHEDULING A STATUS CONFERENCE ON JULY 25, 2018**

The Official Committee of Unsecured Creditors ("**Creditors' Committee**"), the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running Subway Productions, LLC ("**Running Subway**") (collectively, the "**Parties**") respectfully state as follows:

1.      By their motion (Docket No. 1114) ("**Motion**"), Debtors RMS Titanic, Inc. and its affiliates (collectively, "**Debtors**") ask this Court to cancel the status conference currently scheduled for July 25, 2018 and instead to proceed in approving Debtors' proposed sale of substantially all of their assets (the "**Sale**") to Premier Acquisition Holdings LLC (the "**Stalking Horse Purchaser**"). In support, Debtors raise a wide range of issues that are hotly contested among the various stakeholders in these Chapter 11 cases. Underlying these issues, however, are at least two obvious facts that Debtors cannot contest.

2.      First, there is no question that the stakeholders have before them three competing options for how best to distribute value to creditors and ultimately resolve these Chapter 11 cases: (i) the Sale pursuant to Section 363, (ii) the Chapter 11 plan proposed by the Parties (the "**Creditors' Committee and Museum Plan**"), and (iii) the Chapter 11 plan proposed by the

Equity Committee. Regardless of which option Debtors believe should ultimately prevail (Motion ¶¶ 20-25), all stakeholders must have the chance to weigh their options in an open and fair process. If the three proposals do not proceed on the same timeline, with coordinated disclosures, stakeholders will be deprived of that opportunity.

3. Second, there are two courts with competing jurisdiction over Debtors' assets: this Court and the Eastern District of Virginia (the "**Admiralty Court**"). Regardless of Debtors' views on the Admiralty Court's specific role in approving the sale or plan (*see* Motion ¶¶ 36-52), the Admiralty Court has jurisdiction over the *Titanic* artifacts and the interpretation of the court-imposed covenants and conditions (the "**Covenants and Conditions**"), reported at 742 F. Supp. 2d 784, 809-24 (E.D. Va. 2010), that, among other things, sets out Debtors' ownership interest in and obligation with respect to the *Titanic* artifacts. (*See* § VIII(B) ("Any controversy or claim arising out of or relating to these Covenants and Conditions shall be within the primary competence of the [Admiralty Court].") As has long been recognized by this Court and Debtors, the Admiralty Court clearly has a role to play with respect to the *Titanic* artifacts. Indeed, Debtors appear to acknowledge this fact by requesting a conference on the Sale before the Admiralty Court. *See Memorandum in Support of Plaintiffs' Motion to Approve Asset Purchase Agreement and Authorize the Sale of 100% of RMST's Stock to Premier Acquisition Holdings LLC or Other Qualified Purchaser as Approved by the Bankruptcy Court*, Case No. 93-00902 (Docket No. 449) (E.D. Va. June 29, 2018) (annexed to Docket No. 1118). Yet Debtors ask that the Admiralty Court conference be held only *after* this Court enters an order approving the process for the Sale. It is only prudent that this Court consider now whether to instead proceed with a parallel process in order to minimize delay, cost, motion practice, and uncertainty.

4. In asking the Court to overlook these substantive and procedural issues, Debtors speculate that any delay in obtaining Sale approval will determine "the fate of the Debtors'

business." (Motion at 2.) But Debtors offer no evidence that such a doomsday scenario is likely to unfold. The Stalking Horse Purchaser has been active in these Chapter 11 cases and Debtors offer no reason to believe that the Stalking Horse Purchaser would suddenly terminate the Asset Purchase Agreement if it is not approved on July 25. Debtors' cries for an immediate sale are even less compelling considering the Debtors' failure to put forward a viable restructuring plan during the more than two years that these cases have been pending, which failure Debtors should not be permitted to rely on to advocate for a truncated process.

5. Put simply, Debtors' true intentions are clear: they trying to push through their preferred sale process before stakeholders have the chance to consider the Creditors' Committee and Museum Plan's proposal. The Creditors' Committee put forth the Creditors' Committee and Museum Plan because a sale of substantially all of Debtors' assets for $19.2 million would yield superior recoveries for unsecured creditors, relative to a sale at $17.5 million coupled with the so-called PacBridge Parties Settlement (described in Motion n.6, save the portion of the settlement that would result in allowance of PacBridge's $1.2 million claim, which claim has been objected to).[1] Stakeholders should be permitted to at least consider this proposal on a level playing field with the Sale. Holding a status conference on July 25, 2018 is a logical first step

---

[1] To the extent Debtors argue that the Creditors' Committee is contravening its fiduciary duties by supporting the Creditors' Committee and Museum Plan, the Debtors are wholly misguided. (*See* Motion ¶¶ 21-22.) Mr. Sanna, the principal of co-proponent Running Subway, did not participate in deliberations concerning, or vote on the decision to support, the Creditors' Committee and Museum Plan. Rather, that decision was made by the Creditors' Committee's two other members, Ezra Jones and Thomas Braziel. If the Creditors' Committee were presented with a superior proposal pending a determination on the sale proposals before the Court, Mr. Sanna would be excluded from deliberations concerning whether to terminate support for the Creditors' Committee and Museum Plan, and the Creditors' Committee is expressly authorized to do so by the Plan Support Agreement with authorization of just Messrs. Jones and Braziel. Notwithstanding that both the Debtors and Equity Committee were well aware that Mr. Sanna is a member of the Creditors' Committee, and that his membership on the committee is a matter of public record (Docket No. 166), the Creditors' Committee would happily provide further disclosure concerning Mr. Sanna, his membership on the committee, his professional history in the exhibition industry, and his prior collaborations with the Debtors.

towards achieving such an orderly and fair process.

6.  The Debtors also should not be permitted to take advantage of the fact that the DIP loan is now fully drawn, and that the Debtors' cash flow from operations is insufficient to cover both operating costs and chapter 11 professional fees (the Debtors' cash flow from operations are positive), to preclude alternative proposals. As noted by Howard Siegel at the June 7 hearing, the interim compensation order could be vacated or suspended, which if implemented would relieve the Debtors from having to pay any professional fees pending entry of an order granting an interim fee application, pursuant to Bankruptcy Code section 331. Alternatively, payment of professional fees could simply be suspended, as proposed by the Equity Committee. Neither proposal would solve the question of professional fee accrual, as noted by the Debtors (Motion n.4); however, it would permit solicitation to proceed.[2]

---

[2] The fixation on accrual ignores that all estate professionals will ultimately need to justify the accrual of millions of dollars in professional fees, on top of those paid from the $5 million DIP loan.

WHEREFORE, the Parties respectfully request that this Court deny Debtors' motion to reconsider the Court's order scheduling a status conference on July 25, 2018.

Dated: July 18, 2018                                Respectfully submitted,

                                                    */s/ Richard Thames*

Jeffrey Chubak                                      Richard R. Thames
STORCH AMINI PC                                     Robert Heekin
140 East 45th Street, 25th Floor                    THAMES MARKEY & HEEKIN, P.A.
New York, New York 10017                            50 North Laura Street, Suite 1600
(212) 490-4100                                      Jacksonville, Florida 32202
(212) 490-4208 (Facsimile)                          (904) 358-4000
jchubak@storchamini.com                             (904) 358-4001 (Facsimile)
                                                    rrt@tmhlaw.net
                                                    rah@tmhlaw.net

                                                    *Attorneys for the Official Committee of Unsecured Creditors*

Timothy Graulich                                    Patricia Ann Redmond
James I. McClammy                                   STEARNS WEAVER MILLER
DAVIS POLK & WARDWELL LLP                           Museum Tower
450 Lexington Avenue                                150 West Flagler Street, Suite 2200
New York, New York 10017                            Miami, Florida 33130
(212) 450-4000                                      Telephone: (305) 789-3200
timothy.graulich@davispolk.com                      predmond@stearnsweaver.com
james.mcclammy@davispolk.com

                                                    *Attorneys for the Trustees of the National Maritime Museum*

CERTIFICATE OF ELECTRONIC FILING AND SERVICE

    I hereby certify that on July 18, 2018, a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon those parties who are registered with the Court to receive electronic notifications in the matter.

Dated: July 18, 2018

                                                            */s/ Richard Thames*