## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

Debtors.

Case No. 3:16-bk-02230-PMG

**Chapter 11**
**(Jointly Administered)**

**FIRST AMENDED** JOINT CHAPTER 11 PLAN OF
~~REORGANIZATION~~LIQUIDATION PROPOSED BY
THE OFFICIAL COMMITTEE OF ~~Unsecured Creditors~~UNSECURED CREDITORS,
THE TRUSTEES OF THE NATIONAL MARITIME MUSEUM, THE BOARD OF
TRUSTEES OF ~~National museums~~NATIONAL MUSEUMS AND GALLERIES OF
~~northern ireland, and running subway productions, llc~~NORTHERN IRELAND, AND
RUNNING SUBWAY PRODUCTIONS, LLC

**STORCH AMINI PC**
Jeffrey Chubak (admitted pro hac vice)
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100
(212) 490-4208 (Facsimile)
jchubak@storchamini.com

**THAMES MARKEY & HEEKIN, P.A.**
Richard R. Thames
Robert Heekin
Florida Bar No. 0718459
Florida Bar No. 652083
50 North Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 (Facsimile)
rrt@tmhlaw.net
rah@tmhlaw.net

*Attorneys for the Official Committee of*
*Unsecured Creditors*

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309).  The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

**DAVIS POLK & WARDWELL LLP**
Timothy Graulich (admitted pro hac vice)
James I. McClammy (admitted pro hac vice)
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
timothy.graulich@davispolk.com
james.mcclammy@davispolk.com

**STEARNS WEAVER MILLER
WEISSLER ALHADEFF &
SITTERSON, P.A.**
Patricia Ann Redmond
Florida Bar No. 303739
Museum Tower
150 West Flagler Street
Suite 2200
Miami, FL 33130
Telephone: (305) 789-3200
predmond@stearnsweaver.com

*Attorneys for the Trustees of the
National Maritime Museum*

Dated: June 29August 28, 2018

#9098260912

# TABLE OF CONTENTS

_____

|  |  | **Page** |
|---|---|---|
| INTRODUCTION | ................................................................................................ | 1 |
| I. | DEFINITIONS AND CONSTRUCTION OF TERMS ........................... | 1 |
|  | A. Definitions | ..................................................................................... 1 |
|  | B. Interpretation, Application of Definitions and Rules of Construction | ..................................................... 11 |
| II. | CLASSIFICATION OF CLAIMS AND INTERESTS | .......................... ~~12~~11 |
|  | A. General Rules of Classification | ........................................... ~~12~~11 |
|  | B. Classification of Claims and Interests | ............................... ~~12~~11 |
| III. | TREATMENT OF UNCLASSIFIED CLAIMS | ................................... 12 |
|  | A. Administrative Claims | ..................................................... 12 |
|  | B. Bar Date for Administrative Claims | ................................ ~~13~~12 |
|  | C. Professional Fee Claims | .................................................. 13 |
|  | D. Priority Tax Claims | ........................................................ 13 |
|  | E. DIP Financing Claims | ..................................................... 13 |
| IV. | TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ........ ~~14~~13 |
|  | A. Class 1 – Other Priority Claims | ..................................... ~~14~~13 |
|  | B. Class 2 – Secured Claims | .............................................. 14 |
|  | C. Class 3 – General Unsecured Claims | ............................ ~~15~~14 |
|  | D. Class 4 – ~~Convenience~~Intercompany Claims | ................. 15 |
|  | E. Class 5 – ~~Intercompany Claims~~PRXI Interests | ............. 15 |
|  | ~~F.~~ | ~~Class 6 – PRXI Interests~~ ........................................... ~~16~~ |
| V. | LIMITED CONSOLIDATION FOR VOTING, CONFIRMATION, AND DISTRIBUTION PURPOSES | ...................................... 16 |
| VI. | PROVISIONS REGARDING ACCEPTANCE OR REJECTION OF PLAN; CRAMDOWN | ..................................................... ~~17~~16 |
|  | A. Elimination of Vacant Classes | ...................................... ~~17~~16 |
|  | B. Cramdown | ..................................................................... 17 |
| VII. | PROVISIONS REGARDING MEANS OF IMPLEMENTATION, DISTRIBUTIONS, AND RESOLUTION OF DISPUTED CLAIMS | ........ 17 |
|  | A. Sale Approval and Consummation | ................................. 17 |
|  | B. Timing of Distributions | ................................................. ~~18~~17 |
|  | C. Record Date for Distributions | ....................................... 18 |
|  | D. Distributions to Holders of Allowed Claims | ................. 18 |
|  | E. Distributions After Allowance | ....................................... 18 |
|  | F. Liquidation Trust | ........................................................... ~~19~~18 |
|  | G. Delivery of Distributions | ............................................... 21 |
|  | H. Method of Cash Distributions | ....................................... 21 |
|  | I. Failure to Negotiate Checks | .......................................... 21 |
|  | J. Unclaimed Property | ....................................................... ~~22~~21 |
|  | K. No Distributions on Late-Filed Claims | .......................... 22 |
|  | L. Limitation on Distribution Rights | ................................. 22 |
|  | M. Fractional Dollars | ......................................................... 22 |

#9098260 9v12

| | | | |
|---|---|---|---|
| N. | De Minimis Distributions | | 2322 |
| O. | Compliance With Tax Requirements | | 2322 |
| P. | Character of Distributions | | 23 |
| Q. | No Payment or Distribution Pending Allowance | | 23 |
| R. | Distributions on Insured Claims | | 23 |
| S. | Corporate Action | | 2423 |
| T. | Cancellation of Existing Securities and Agreements | | 24 |
| VIII. | PRESERVATION OF CAUSES OF ACTION AND RIGHT TO DEFEND AND CONTEST | | 24 |
| A. | Preservation of Rights | | 24 |
| B. | Causes of Action | | 2524 |
| C. | Setoffs | | 2625 |
| D. | Resolution of Disputed Claims | | 26 |
| IX. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS | | 28 |
| A. | Treatment of Executory Contracts and Unexpired Leases | | 28 |
| B. | Cure of Defaults for Assumed Contracts and Leases | | 28 |
| C. | Bar Date for Claims for Rejection Damages | | 28 |
| D. | Treatment of Rejection Claims | | 2928 |
| E. | Employment Agreements and Benefit Programs | | 29 |
| F. | Survival of Certain Indemnification Obligations. | | 29 |
| X. | EFFECT OF CONFIRMATION OF THIS PLAN | | 29 |
| A. | Continued Corporate Existence | | 29 |
| B. | Releases by the Debtors of Certain Parties | | 30 |
| C. | Releases by Non-Debtors | | 31 |
| D. | Exculpation | | 32 |
| E. | Injunction | | 33 |
| F. | Term of Bankruptcy Injunction or Stays | | 34 |
| G. | Preservation of Insurance | | 34 |
| H. | Other Documents and Actions | | 34 |
| I. | Guaranties | | 34 |
| J. | Subordination Rights | | 34 |
| K. | No Successor Liability | | 35 |
| L. | Free and Clear | | 35 |
| XI. | EFFECTIVENESS OF THIS PLAN | | 35 |
| A. | Conditions Precedent to Confirmation. | | 35 |
| B. | Conditions Precedent to the Effective Date | | 36 |
| C. | Waiver of Conditions | | 36 |
| D. | Notice of Confirmation and Effective Date | | 3637 |
| E. | Effect of Failure of Conditions | | 37 |
| F. | Vacatur of Confirmation Order | | 37 |
| G. | Revocation, Withdrawal, or Non-Consummation | | 37 |
| XII. | RETENTION OF JURISDICTION | | 3738 |
| XIII. | MISCELLANEOUS PROVISIONS | | 38 |
| A. | Payment of Statutory Fees | | 38 |
| B. | Modification of this Plan | | 3839 |

ii

| | | |
|---|---|---|
| C. | Dissolution of Creditors' Committee and Equity Committee | ~~38~~39 |
| D. | Votes Solicited in Good Faith | 39 |
| E. | Request for Expedited Determination of Taxes | 39 |
| F. | Governing Law | ~~39~~40 |
| G. | Filing or Execution of Additional Documents | ~~39~~40 |
| H. | Section 1146 Exemption | ~~39~~40 |
| I. | Section 1145 Exemption | 40 |
| J. | Time | 40 |
| K. | No Admissions or Waivers | ~~40~~41 |
| L. | Exhibits/Schedules | ~~40~~41 |
| M. | Notices | ~~40~~41 |
| N. | Further Actions; Implementations | ~~42~~43 |
| O. | Severability | 43 |
| P. | Entire Agreement | 43 |
| Q. | Binding Effect | ~~43~~44 |
| R. | Substantial Consummation | ~~43~~44 |
| S. | Conflict | ~~43~~44 |
| T. | Closing of Chapter 11 Cases | 44 |

iii

## INTRODUCTION

The Official Committee of Unsecured Creditors in the above-captioned Chapter 11 Cases, the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running Subway Productions, LLC propose the following joint plan pursuant to section 1121(a) of the Bankruptcy Code.[2]   The Plan contemplates the sale of substantially all of the assets of the Debtors to the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running Subway Productions, LLC, and the resolution of all outstanding Claims against, and Interests in, the Debtors.

Pursuant to section 1125(g) of the Bankruptcy Code, votes to accept or reject a plan of reorganization may be solicited from holders of Claims or Interests entitled to vote on a plan if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the Chapter 11 Cases in a manner complying with applicable nonbankruptcy law.  The Disclosure Statement that accompanies the Plan contains, among other things, a discussion of the Debtors' history, businesses, properties, and operations and a summary and analysis of the Plan and certain related matters.

## I.   DEFINITIONS AND CONSTRUCTION OF TERMS

### A.   Definitions

Unless the context otherwise requires, the following terms used in the Plan shall have the following meanings:

"**Acquisition Agreements**" means the agreements to be entered into between the Plan Sponsors and certain Debtors to effectuate the Sale (including all exhibits, schedules (including the Schedule of Assumed Contracts and Leases), supplements, modifications, amendments, appendices, annexes and attachments thereto) which will be filed with the Plan Supplement.

"**Administrative Claim**" means a Claim for costs and expenses of administration of the Estates pursuant to sections 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving and operating the Estates; (b) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their businesses, including for wages, salaries, or commissions for services, and payments for goods and other services and leased premises.

"**Administrative Claims Bar Date**" means the first Business Day that is thirty (30) days after the Effective Date.

"**Admiralty Court**" means the United States District Court for the Eastern District of Virginia.

---

[2] Capitalized terms have the meanings ascribed to them in Article I.A of the Plan.

~~"**Admiralty Court Proceeding**" means the action styled *R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel* (Civil No. 2:93-cv-902) pending before the Admiralty Court relating to certain artifacts of the R.M.S. *Titanic* shipwreck.~~

"**Allowed**" means, with reference to any Claim, (a) any Claim against any of the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary Proof of Claim has been filed; (b) any Claim specifically allowed under this Plan; (c) a Claim asserted in a Proof of Claim that was timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable Final Order, or late filed, but with leave of the Court, deemed timely, and in either case, (i) is not objected to within the period fixed by Bankruptcy Code, the Bankruptcy Rules, this Plan (including by the Claims Objection Deadline), the Confirmation Order and/or applicable orders of the Court or (ii) has otherwise been allowed by Final Order; or (d) any Claim the amount or existence of which, if such Claim is a Disputed Claim, (i) has been determined by a Final Order of a court of competent jurisdiction other than the Court, or (ii) has been allowed by Final Order of the Court; *provided*, *however*, that any Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Court shall not be considered "Allowed Claims" hereunder.

"**Assumed Contracts and Leases**" means those certain executory contracts and unexpired leases entered into by the Debtors before the Petition Date which are (i) executory and/or unexpired as of the Closing Date of the Sale and (ii) being assumed by the Debtors and assigned to the Plan Sponsors pursuant to this Plan.

"**Available Cash**" means all Unencumbered Cash held by the Liquidation Trust (less any amounts maintained in any Reserve) after payment in full of all Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, DIP Financing Claims, Allowed Secured Claims, and the reasonable fees, costs, and expenses of the Liquidation Trustee.

"**Avoidance Actions**" means any ~~Causes of Action pursuant to chapter 5~~<ins>and all avoidance, recovery, subordination or other claims, actions or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553 and 724(a)</ins> of the Bankruptcy Code ~~(other than those which are released or dismissed as part of and pursuant to the Plan)~~.

"**Ballots**" means each of the ballot forms distributed with the Disclosure Statement to each holder of an Impaired Claim for, among other things, voting on the acceptance or rejection of this Plan.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the date hereof.

2

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and the local rules of the Court, as the context may require.

"**Bar Date**" means October 24, 2016, except (a) in the case of an Administrative Claim, Bar Date shall mean the Administrative Claims Bar Date; and (b) in the case of Claims of a Governmental Unit, Bar Date shall mean the date that is 180 days after the Petition Date.

"**Business Day**" means any day on which commercial banks are open for business, and not authorized to close, in the City of New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a).

"**Cash**" means legal tender of the United States of America.

"**Causes of Action**" means any and all actions, proceedings, causes of action (including Avoidance Actions), suits, accounts, demands, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, non-contingent, matured, unmatured, now-owned, hereafter acquired, disputed, undisputed, secured, or unsecured, and whether asserted or assertable directly or derivatively in law (whether domestic or foreign), equity, or otherwise, or pursuant to any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

"**Chapter 11 Cases**" means the chapter 11 cases commenced by the Debtors.

"**Claim**" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code.

"**Claims Objection Deadline**" means, as applicable (except for Administrative Claims and Professional Fee Claims): (a) as to timely filed Claims (if not Allowed herein), the day that is the later of (i) the first Business Day that is one hundred eighty (180) days after the Effective Date, or (ii) as to Claims filed after the applicable Bar Date, the first Business Day that is at least thirty (30) days after a Final Order is entered deeming the late filed Claims to be treated as timely filed; or (b) such later date as may be established by the Court upon a motion by the Debtors or Liquidation Trustee, without any further notice to other parties-in-interest.

"**Class**" means a group of Claims or Interests as classified under this Plan.

"**Closing Date**" shall have the meaning set forth in the Acquisition Agreements.

"**Collateral**" means any property or interest in property of the Debtors' Estates subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

#90982609v12

"**Consenting Creditors**" has the meaning set forth in the Plan Support Agreement.

"**Confirmation Date**" means the date on which the Confirmation Order is entered by the Court.

"**Confirmation Hearing**" means the hearing conducted by the Court to consider confirmation of this Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

"**Confirmation Order**" means the order entered by the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"**Convenience Claim**" means a General Unsecured Claim with a Face Amount of less than the Convenience Claim Threshold.

"**Convenience Claim Threshold**" means $5,000.

"**Court**" means (a) the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, having jurisdiction over the Chapter 11 Cases; and (b) with respect to withdrawal of any reference under section 157 of title 28 of the United States Code, with respect to the Chapter 11 Cases, the United States District Court for the Middle District of Florida or the United States District Court to which venue is transferred.

"**Covenants and Conditions**" means the conditions set forth in the *Revised Covenants and Conditions for the Future Disposition of Objects Recovered from the R.M.S. Titanic by R.M.S. Titanic, Inc. pursuant to an in specie salvage award granted by the United States District Court for the Eastern District of Virginia*, attached as Exhibit A to the Admiralty Court's August 12, 2010 Opinion.

"**Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Debtors' Chapter 11 Cases, as constituted from time to time.

"~~**Cure Amounts**~~" ~~means all amounts that must be paid by the Debtors and all obligations that otherwise must be satisfied pursuant to section 365(b)(1)(A) of the Bankruptcy Code in connection with the assumption and/or assignment of the Assumed Contracts and Leases to the Plan Sponsors as provided in the Acquisition Agreements.~~

"**Debtors**" means Premier Exhibitions, Inc., RMS Titanic, Inc., Premier Merchandising, LLC, Premier Exhibition Management LLC, Arts and Exhibitions International, LLC, Premier Exhibitions NYC, Inc., Premier Exhibitions International, LLC, and Dinosaurs Unearthed Corp.

"**DIP Credit Agreement**" means that certain Senior Secured Debtor-In-Possession Loan Agreement dated as of May 18, 2017 by and among the Debtors, as borrowers, and the DIP Lender.

#90982609v12

"**DIP Credit Documents**" means the "DIP Loan Documents" under (and as defined in) the DIP Credit Agreement.

"**DIP Credit Facility**" means the multi-draw term loan credit facility established in favor of the Debtors, as borrowers, in an aggregate principal amount of up to $5,000,000 pursuant to the DIP Credit Agreement and the other DIP Credit Documents.

"**DIP Financing Claims**" means all Claims arising under or relating to the DIP Credit Facility, whether pursuant to the DIP Credit Agreement, any other DIP Credit Document, the Final DIP Order, or otherwise.

"**DIP Lender**" means Bay Point Capital Partners LP.

"**Disallowed**" means ~~a finding of the Court in a Final Order, or provision in the Plan that a Disputed Claim shall not be Allowed.~~ with reference to any Claim, all or that portion, as applicable, of any Claim that has been disallowed under the Plan, the Bankruptcy Code, applicable law or by a Final Order.

"**Disclosure Statement**" means the written disclosure statement that relates to this Plan, including all exhibits, appendices and schedules thereto, as approved by the Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such disclosure statement may be amended, modified or supplemented from time to time.

"**Disputed Claim**" means ~~, with reference to any Claim,~~ any Claim as to which the Debtors or any other party in interest have filed an objection or request for estimation on or before such limitation period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, or that is otherwise disputed by the Debtors, Liquidation Trustee, or any party in interest in accordance with applicable law, and which objection, request for estimation, or dispute has not been withdrawn, with prejudice, or determined by Final Order.

"**Disputed Claims Reserve**" shall have the meaning ascribed to such term in Article VIII.D.3 of this Plan.

"**Distribution Date**" means on or as soon as reasonably practicable after (i) the Initial Distribution Date, and (ii) the first Business Day after the end of the months of June and December, commencing with the first such date to occur more than ninety (90) days after the Effective Date and continuing until the Final Distribution Date; *provided*, *however*, that a Distribution Date (other than the Initial Distribution Date and the Final Distribution Date) shall not occur if either (i) the aggregate value of the consideration to be distributed on such Distribution Date is less than $250,000, or (ii) the Liquidation Trustee, with consent from the Liquidation Trust Oversight Board as provided in the Liquidation Trust Agreement, determines that it is in the best interest of the Liquidation Trust that no Distribution Date should occur, which in either case the amount to be distributed shall be retained and added to the amount to be distributed on the next Distribution Date.

"**Distributions**" means the distribution in accordance with this Plan of (a) Cash or (b) other form of consideration, as the case may be.

"**Effective Date**" means the first Business Day selected by the Creditors' Committee, and the Plan Sponsors on which (i) all of the conditions specified in Article XI.A and Article XI.B of this Plan have been satisfied or waived in accordance with Article XI.C of this Plan, and (ii) the stay of the Confirmation Order, if any, is no longer in effect and such date shall be set forth in a notice filed with the Court by the Debtors within five (5) Business Days of the occurrence of the Effective Date.

"**Employee Benefit Plan**" means any "employee benefit plan" (as defined in ERISA § 3(3)) and any other benefit or compensation plan, program, agreement or arrangement maintained, sponsored, or contributed or required to be contributed to by any Debtor or any ERISA Affiliate or with respect to which any Debtor or any ERISA Affiliate has any liability.

"**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

"**Equity Committee**" means the Official Committee of Equity Security holdersHolders of PRXI appointed by the United States Trustee in the Debtors' Chapter 11 Cases, as constituted from time to time.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and the regulations promulgated and rules issued thereunder.

"**ERISA Affiliate**" means any Person that, at any relevant time, is or was treated as a single employer with any Debtor for purposes of section 414 of the Internal Revenue Code.

"**Estates**" means the Chapter 11 estates of the Debtors, individually or collectively, as is appropriate in the context created by the commencement of and in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

"**Face Amount**" means, at any time, with respect to a particular Claim: (a) if the holder of such Claim has not filed a Proof of Claim by the applicable Bar Date, the amount of such Claim that is listed in the Schedules as noncontingent, undisputed and liquidated; (b) if the holder of such Claim has filed a Proof of Claim by the applicable Bar Date, and such Claim has not become an Allowed Claim or been estimated by Final Order of the Court, the amount stated in such Proof of Claim; or (c) in all other cases, zero ($0) or such amount as shall be fixed or estimated by a Final Order of the Court.

"**Federal Judgment Rate**" means the rate of interest allowed on money judgments in a civil case recovered in a district court as set forth in 28 U.S.C. § 1961.

"**Final Decree**" means the final decree entered by the Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

"**Final DIP Order**" means the order entered on July 12, 2017 by the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, authorizing the Debtors to, among other things, enter into the DIP Credit Agreement and obtain loans under the DIP Credit Facility.

#90982609v12

"**Final Distribution Date**" means the date on which the Liquidation Trustee makes the ~~Final Distribution~~final distribution in accordance with the Plan.

"**Final Order**" means an order or judgment of the Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending.

"**General Unsecured Claim**" means ~~a~~an unsecured Claim against any of the Debtors that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Professional Fee Claim, DIP Financing Claim, Secured Claim, Intercompany Claim or Convenience Claim, and shall include (a) pre-Petition Date Claims of vendors or customers of the Debtors that are not priority claims under section 503(b)(9) of the Bankruptcy Code, (b) Claims of employees of the Debtors that are not priority claims under section 507(a) of the Bankruptcy Code, (c) Claims arising as a result of the rejection by any of the Debtors of executory contracts or unexpired leases pursuant to section 365 and 502(g) of the Bankruptcy Code, (d) Claims arising as a result of pre-Petition Date litigation against any of the Debtors, and (e) Claims arising under section 502(h) of the Bankruptcy Code, if any.

"**Governmental Unit**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

"**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Initial Distribution Date**" means the Effective Date or as soon as reasonably practicable thereafter.

"**Intercompany Claim**" means any Claim held by one of the Debtors against any other Debtor, including (a) any account reflecting intercompany book entries by a Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor against any other Debtor or Debtors, and (c) any derivative Claim asserted or assertable by or on behalf of a Debtor against any other Debtor or Debtors.

"**Interest**" means any equity security within the meaning of section 101(16) of the Bankruptcy Code or any other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest, and any and all Claims that are otherwise determined by the Court to be an Interest, including any Claim or debt that is recharacterized as an Interest.

"**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"**Liquidation Trust**" means the trust to be established in accordance with Article VII.F of the Plan.

7

#90982609v12

"**Liquidation Trust Agreement**" means the agreement to be executed between the Liquidation Trustee and the Debtors establishing the Liquidation Trust, which will be filed with the Plan Supplement.

"**Liquidation Trust Documents**" means the Liquidation Trust Agreement and any ancillary documents relating thereto.

"**Liquidation Trust Oversight Board**" means the board established pursuant to the Liquidation Trust Agreement and given certain oversight of the Liquidation Trust, the initial composition of which shall be set forth in the Plan Supplement.

"**Liquidation Trustee**" means the Person designated in the Liquidation Trust Agreement to act as trustee the Liquidation Trust, or any successor of the Liquidation Trustee.

"**Other Priority Claim**" means any Claim against any of the Debtors other than an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim or a DIP Financing Claim that is entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of Bankruptcy Code.

"**Person**" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or Entity.

"**Petition Date**" means June 14, 2016.

"**Plan**" means this *First Amended* Joint *Chapter 11 Plan of Reorganization*Liquidation *Proposed by the Official Committee of Unsecured Creditors, the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running Subway Productions, LLC*, as it may be amended or modified from time to time, together with all addenda, exhibits, schedules or other attachments, if any.

"**Plan Proponents**" means the Creditors' Committee, and the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running SubwayPlan Sponsors.

"**Plan Sponsors**" means the Trustees of the National Maritime Museum, the Board of Trustees of National Museums and Galleries of Northern Ireland, and Running Subway.

"**Plan Supplement**" means the compilation of documents and forms of documents, schedules, attachments and exhibits to this Plan, to be filed by the Plan Proponents following the filing of this Plan as set forth herein, each of which documents and other materials shall be acceptable in form and substance to the Plan Proponents.

#90982609v12

"**Plan Support Agreement**" means that certain Plan Support Agreement dated as of June 27, 2018 by and among the Creditors' Committee, the Plan Sponsors, and the creditors party thereto.

"**Priority Tax Claim**" means any unsecured Claim that is entitled to a priority in right of payment under section 507(a)(8) of the Bankruptcy Code.

"**Professional**" means (i) any professional employed in the Chapter 11 Cases pursuant to sections 327 and 1103 of the Bankruptcy Code and (ii) any other Person seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b) of the Bankruptcy Code.

"**Professional Fee Claim**" means an Administrative Claim Allowed under section 330(a), 331 or 503 of the Bankruptcy Code for reasonable compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date (including the reasonable, actual and necessary expenses of the members of the Creditors' Committee or Equity Committee incurred as members of the Creditors' Committee or Equity Committee in discharge of their duties as such).

"**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

"**Proof of Claim**" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

"**Property**" means all assets or property of the Debtors' respective Estates of any nature whatsoever, real or personal, tangible or intangible, including without limitation Sale Proceeds, contract rights, accounts and Causes of Action, previously or now owned by the Debtors, or acquired by the Debtors' respective Estates, as defined in section 541 of the Bankruptcy Code.

"**PRXI**" means Premier Exhibitions, Inc.

"**PRXI Interest**" means any Interest in PRXI.

"**Record Date**" means, for purposes of ~~(i)~~ making distributions under this Plan on account of Allowed Claims, the Effective Date~~, and (ii) casting Ballots, the date set forth in the order approving the Disclosure Statement that accompanies this Plan~~.

"**Released Parties**" means, in each case solely in its capacity as such, (a) the Debtors, (b) the Consenting Creditors, (c) the Creditors' Committee and Equity Committee and the members thereof, (d) the Plan Sponsors, and (e) with respect to each of the foregoing identified in clauses (b) through (d), each and all of their respective current and former affiliates, and such entities' and their current and former affiliates' current and former directors, managers, trustees, officers, direct and indirect equity holders, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors,

#90982609v12

partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

"**Releasing Parties**" means, in each case solely in its capacity as such, (a) the Debtors, (b) the Consenting Creditors, (c) the Creditors' Committee and Equity Committee and the members thereof, (d) the Plan Sponsors, and (e) with respect to each of the foregoing identified in clauses (b) through (d), each and all of their respective current and former affiliates, and such entities' and their current and former affiliates' current and former directors, managers, trustees, officers, direct and indirect equity holders, predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

"**RMST**" means RMS Titanic, Inc.

"**Reserve**" means any reserve required or allowed to be established pursuant to this Plan, including the Disputed Claims Reserve, and the Trust Expense Reserve.

"**Retained Actions**" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which any Debtor or any Debtor's Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by any of the Debtors, (iii) claims and Causes of Action relating to strict enforcement of any of the Debtors' intellectual property rights, including patents, copyrights and trademarks, arising prior to the Effective Date, (iv) claims and Causes of Action seeking the recovery of any of the Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of any of the Debtors' businesses, including, without limitation, claim overpayments and tax refunds, and (v) all Avoidance Actions.

"**Running Subway**" means Running Subway Productions, LLC.

"**Sale**" means the sale of substantially all of the Debtors' assets to the Plan Sponsors pursuant to the Acquisition Agreements.

"**Sale Proceeds**" means, collectively, the proceeds arising from or in connection with the Sale and the proceeds arising from or in connection with the sale, transfer, or other disposition of any other Property, whenever arising or occurring, whether before or after the Effective Date.

"**Schedule of Assumed Contracts and Leases**" means the schedule listing certain executory contracts and unexpired leases to be assumed by the Debtors and assigned to any Plan Sponsor pursuant to the Acquisition Agreements.

"**Schedules**" means the schedules of assets and liabilities, statements of financial affairs, lists of holders of Claims and Interests and related exhibits filed with the Court by each of the Debtors, including any amendments or supplements thereto.

#90982609v12

"**Secured Claim**" means any Claim to the extent reflected in the Schedules (but only to the extent it is not listed as contingent, unliquidated, or disputed) or a Proof of Claim (which such Proof of Claim shall supersede the Schedules) filed as a secured Claim, which is (i) secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, (ii) in the event that such Claim is subject to setoff under section 553 of the Bankruptcy Code, to the extent of such setoff.

"~~**Securities Act**~~" ~~means the Securities Act of 1933, as amended.~~

"**Trust Expense Reserve**" shall have the meaning ascribed to such term in Article VII.F.5 of this Plan

"**Unclaimed Property**" means any Distribution of Cash or any other Property made to the holder of an Allowed Claim pursuant to the Plan that is returned to the Debtors or the Liquidation Trustee as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Cases, in the case of a distribution made in the form of a check, is not negotiated and no request for reissuance is made as provided for in Article VII.J of the Plan.

"**Unencumbered**" means, any Property not subject to (i) a Lien or (ii) a charge to use such Property for a particular purpose pursuant to the Acquisition Agreements.

"~~**Unencumbered Sale Proceeds**~~" ~~means the Sale Proceeds, if any, that are Unencumbered.~~

"**Unimpaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

### B.    Interpretation, Application of Definitions and Rules of Construction

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter, such meanings to be applicable to both the singular and plural forms of the terms defined. Capitalized terms in this Plan that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be.  The words "herein," "hereof," and "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section or subsection in this Plan unless expressly provided otherwise.  The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to Articles, Sections and exhibits to this Plan are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan.  The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan.  Unless otherwise specified or required by context, references in this Plan to any right or obligation to take any action or not take any action given to the Debtors, the Liquidation Trust, the Liquidation Trustee or any similar references shall be interpreted to give such right or obligation to the

#90982609v12

Debtors prior to the Effective Date and to the Liquidation Trust or Liquidation Trustee subsequent to the Effective Date.

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## II.    CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    General Rules of Classification

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims and Interests.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Financing Claims have not been classified.  These Claims will be Unimpaired and, therefore, will not be entitled to vote to accept or reject this Plan.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

### B.    Classification of Claims and Interests

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (i) Impaired or Unimpaired under this Plan, (ii) entitled to vote to accept or reject this Plan, and (iii) presumed to accept or deemed to reject this Plan.  A Claim or Interest is designated in a particular Class only to the extent it falls within the description of that Class, and is classified in any other Class to the extent (if any) that a portion of such Claim or Interest falls within the description of such other Class.

| Class | Designation | Status | Voting Rights |
|-------|-------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Secured Claims | Unimpaired | Presumed to Accept |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Convenience Claims | Unimpaired | Presumed to Accept |
| 5 | Intercompany Claims | Impaired | Deemed to Reject |
| 6 | PRXI Interests | Impaired | Deemed to Reject |

## III.    TREATMENT OF UNCLASSIFIED CLAIMS

### A.    Administrative Claims

Each holder of an Allowed Administrative Claim (other than a Professional Fee Claim and DIP Financing Claim) shall receive from the Debtors (a) Cash in an amount equal to the amount of such Allowed Administrative Claim on the later of (i) the Effective Date and (ii) the

12

#90982609v12

date such Administrative Claim becomes an Allowed Administrative Claim, or as soon ~~thereafter as is~~as reasonably practicable thereafter, or (b) such other treatment as (i) the Debtors or the Liquidation Trustee (as applicable) and (ii) such holder shall have agreed upon in writing.

### B.    Bar Date for Administrative Claims

Unless a prior date has been established pursuant to the Bankruptcy Code, the Bankruptcy Rules or a prior order of the Court, the Confirmation Order will establish a bar date for filing applications or motions for allowance of Administrative Claims (other than Professional Fee Claims and DIP Financing Claims), which date shall be the Administrative Claims Bar Date. **HOLDERS OF ADMINISTRATIVE CLAIMS NOT PAID PRIOR TO THE CONFIRMATION DATE SHALL FILE WITH THE COURT AND SERVE UPON THE DEBTORS OR LIQUIDATION TRUSTEE, AS APPLICABLE, A MOTION REQUESTING PAYMENT OF SUCH ADMINISTRATIVE CLAIM ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE OR FOREVER BE BARRED FROM DOING SO.** The notice of entry of the Confirmation Order to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth the Administrative Claims Bar Date and constitute good and sufficient notice of the Administrative Claims Bar Date. The Liquidation Trustee shall have sixty (60) days (or such longer period as may be allowed by Final Order of the Court, which may be entered without notice or a hearing) following the Administrative Claims Bar Date to review and object to all Administrative Claims (other than Professional Fee Claims and DIP Financing Claims).

Notwithstanding the foregoing, requests for payment of Administrative Claims need not be filed for Administrative Claims that (a) previously have been Allowed by Final Order of the Bankruptcy Court, (b) the Debtors or Liquidation Trustee have otherwise agreed in writing do not require such a filing or (c) arise pursuant to 28 U.S.C. § 1930.

### C.    Professional Fee Claims

All requests for compensation or reimbursement of Professional Fee Claims pursuant to sections 328, 330, 331, or 503 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Debtors, counsel to the Debtors, the Office of the United States Trustee, the Liquidation Trustee, counsel to the Liquidation Trustee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30) days after the Effective Date. Holders of Professional Fee Claims that are required to file and serve applications for final allowance of their Professional Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors or their respective properties, and such Professional Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Professional Fee Claims must be filed and served no later than twenty (20) days following the filing with the Court of any request for compensation or reimbursement of Professional Fee Claims and be served on the Debtors, counsel for the Debtors, counsel to the Creditors' Committee, the Liquidation Trustee, counsel to the Liquidation Trustee, and the holders of Professional Fee Claims requesting payment. Distributions on account of Allowed Professional Fee Claims shall be made as soon as reasonably practicable after such Claims become Allowed.

### D.   Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive (a) treatment in any manner that is consistent with section 1129(a)(9)(C) of the Bankruptcy Code, or (b) such other treatment as the Debtors and such holder shall have agreed upon in writing.

### E.   DIP Financing Claims

The DIP Financing Claims shall be Allowed in an amount equal to the sum of all amounts outstanding under the DIP Credit Agreement as of the Effective Date.  On or as soon as reasonably practicable after the Effective Date, each holder of an Allowed DIP Financing Claim shall receive from the Debtors' Cash in an amount equal to the amount of such Allowed DIP Financing Claim.

## IV.   TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### A.   Class 1 – Other Priority Claims

1.   **Classification.**  Class 1 consists of all Other Priority Claims.

2.   **Treatment**.  Except to the extent that a holder of an Allowed Other Priority Claim (i) has been paid in full by the Debtors, prior to the Effective Date or (ii) agrees shall have agreed in writing to a less favorable treatment or an alternative Distribution Date, each holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of and in exchange for such Other Priority Claim, Cash in the full amount of such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (a) the Effective Date and (b) the date when such Other Priority Claim becomes Allowed.

3.   **Impairment and Voting**.  Class 1 is Unimpaired under this Plan.  Holders of Allowed Other Priority Claims in Class 1 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

### B.   Class 2 – Secured Claims

1.   **Classification.**  Class 2 consists of all Secured Claims.

2.   **Treatment**.  Except to the extent that a holder of an Allowed Secured Claim shall have agreed in writing to a less favorable treatment or an alternative Distribution Date, in full and final satisfaction of such Claim, on or as soon as reasonably practicable after the later of (a) the Effective Date and (b) the first Distribution Date when such Secured Claim becomes Allowed, such holder of an Allowed Secured Claim shall receive (i) Cash in an amount equal to such Allowed Secured Claim, including any non-default interest on such Allowed Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, (ii) the Collateral

14

securing its Allowed Secured Claim and any interest on such Allowed Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (iii) treatment in any other manner such that its Allowed Secured Claim shall not be Impaired.

To the extent any security interest relating to an Secured Claim is avoided or any portion of the Secured Claim is determined to be unsecured, including due to any deficiency (the "**Secured Lenders' Unsecured Claim**"), the Secured Lenders' Unsecured Claim shall be classified in Class 3 as General Unsecured Claims and receive the same treatment as other Class 3 Claims; *provided, however,* that any Secured Lenders' Unsecured Claim held by an insider shall be classified as a separate Class and shall receive its Pro Rata share of Available Cash contemporaneous with the other General Unsecured Lenders' Claims as if such Secured Lenders' Unsecured Claim had been classified in Class 3 until such Secured Lenders' Unsecured Claim is paid in full with interest at the Federal Judgment Rate.

3.    **Impairment and Voting**.  Class 2 is Unimpaired under this Plan.  Holders of Allowed Secured Claims in Class 2 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

C.    **Class 3 – General Unsecured Claims**

1.    **Classification.**  Class 3 consists of all General Unsecured Claims.

2.    **Treatment**.  Except to the extent a holder of a General Unsecured Claim shall have agreed in writing to a less favorable treatment or an alternative Distribution Date, on or as soon as reasonably practicable after the later of (a) the Effective Date and (b) the first Distribution Date when such General Unsecured Claim becomes Allowed, each holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of Available Cash.  On each subsequent Distribution Date or as soon ~~thereafter as is~~as reasonably practicable thereafter, the Liquidation Trustee shall continue to distribute to holders of Allowed General Unsecured Claims their respective Pro Rata shares of any Available Cash until (i) such Claims are paid in full with interest at the Federal Judgment Rate or (ii) the Final Distribution Date.

Each holder of a General Unsecured Claim may elect to be treated as a holder of a Convenience Claim by electing to reduce the amount of its Allowed General Unsecured Claim to the Convenience Claim Threshold in full and final satisfaction of such claim.  Any such election must be made on the Ballot and shall be considered irrevocable.

15

3.      **Impairment and Voting**.  Class 3 is Impaired under this Plan.  Holders of Allowed General Unsecured Claims in Class 3 are entitled to vote to accept or reject this Plan.

D.  **Class 4 – ~~Convenience~~Intercompany Claims**

1.      **Classification.**  Class 4 consists of all ~~Convenience~~Intercompany Claims.

~~2.  **Treatment**.  Except to the extent that a holder of an Allowed Convenience Claim shall have agreed in writing to a less favorable treatment or an alternative Distribution Date, on or as soon as practicable after the later of (a) the Effective Date and (b) the first Distribution Date when such Convenience Claim becomes Allowed, each holder of an Allowed Convenience Claim shall receive, in full and final satisfaction of such Claim, Cash in the full amount of such Allowed Convenience Claim.~~

~~3.  **Impairment and Voting**.  Class 4 is Impaired under this Plan.  Holders of Allowed Convenience Claims in Class 4 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.~~

~~E. **Class 5 – Intercompany Claims**~~

~~1. **Classification.**  Class 5 consists of all Intercompany Claims.~~

2.      **Treatment**.  On the Effective Date, all Intercompany Claims shall be cancelled in full, and holders of Intercompany Claims shall receive no distribution and retain no Property on account of such Claims.

3.      **Impairment and Voting**.  Class ~~5~~4 is Impaired under this Plan.  Holders of Intercompany Claims are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

**E.**  ~~F.~~ **Class 6~~5~~ – PRXI Interests**

1.      **Classification.**  Class 6~~5~~ consists of all PRXI Interests.

2.      **Treatment**.  On the Effective Date, the PRXI Interests shall be discharged, cancelled, released, and extinguished and holders of PRXI Interests shall neither receive any Distributions nor any of the Debtors' Property under this Plan.

3.      **Impairment and Voting**.  Class 6~~5~~ is Impaired under this Plan.  Holders of PRXI Interests are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

#9098269v12

## V.    LIMITED CONSOLIDATION FOR VOTING, CONFIRMATION, AND DISTRIBUTION PURPOSES

Solely for purposes of voting on, confirmation of, and Distributions to be made to holders of Allowed Claims under this Plan, this Plan is predicated upon, and it is a condition precedent to confirmation of this Plan, that the Court provide in the Confirmation Order for the limited consolidation of the Estates of the Debtors into a single Estate for purposes of this Plan, the confirmation hereof and Distributions hereunder.

Pursuant to the Confirmation Order (i) all assets and liabilities of the consolidated Debtors will be deemed to be merged solely for purposes of this Plan, the confirmation hereof and Distributions to be made hereunder, (ii) the obligations of each Debtor will be deemed to be the obligation of the consolidated Debtors solely for purposes of this Plan, the confirmation hereof and Distributions hereunder, (iii) any Claims filed or to be filed in connection with any such obligations will be deemed Claims against the consolidated Debtors and all Claims filed against more than one Debtor for the same liability shall be deemed one Claim against any obligation of the consolidated Debtors, (iv) each Claim filed in the Chapter 11 Case of any Debtor will be deemed filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the limited consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and Distributions made by any Debtor hereunder on Allowed Claims and will be deemed to be made by the consolidated Debtors, and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors.  Holders of Allowed Claims in each Class shall be entitled to their share of Property available for Distribution to such Class without regard to which Debtor was originally liable for such Claim.

Notwithstanding the foregoing, such limited consolidation shall not affect (a) any obligations under any contracts or leases that were entered into during the Chapter 11 Cases or executory contracts or unexpired leases that have been or will be assumed and assigned pursuant to the Acquisition Agreements, (b) distributions from any insurance policies or proceeds of such policies, or (c) guarantees that are required to be maintained post-Effective Date (i) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed and assigned, or (ii) pursuant to the express terms of this Plan. The limited consolidation proposed herein shall not affect each Debtor's obligation to file the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6).  Such obligations shall continue until a Final Order is entered closing, dismissing or converting each such Debtor's Chapter 11 Case.

## VI.    PROVISIONS REGARDING ACCEPTANCE OR REJECTION OF PLAN; CRAMDOWN

### A.    Elimination of Vacant Classes

Any Class of Claims or Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or Allowed Interest or a Claim or Interest

#90982609v12

temporarily allowed under Bankruptcy Rule 3018, and as to which no vote is cast, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### B. Cramdown

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a) of the Bankruptcy Code except subsection (8) thereof, the Debtors may request that the Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the bases that the Plan is fair and equitable, and does not discriminate unfairly, with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.

## VII. PROVISIONS REGARDING MEANS OF IMPLEMENTATION, DISTRIBUTIONS, AND RESOLUTION OF DISPUTED CLAIMS

### A. Sale Approval and Consummation

Confirmation of this Plan and the Confirmation Order shall constitute approval of the sale of substantially all of the Debtors' assets to the Plan Sponsors, free and clear of all Claims, Interests, Liens, contractually imposed restrictions, charges, other encumbrances, and liabilities of any kind or nature whatsoever, including rights or claims based on any successor or transferee liabilities, pursuant to the Acquisition Agreements included with the Plan Supplement. **The terms of this Article VII.A shall be binding on and enforceable against all Persons as a permanent injunction pursuant to Article X.E hereof.**

Upon entry of the Confirmation Order, the Debtors shall be authorized and directed to (a) consummate the Sale without any further order of the Court, subject to applicable law and the terms and conditions of the Acquisition Agreements, and to take any and all actions necessary to consummate the Sale, and (b) execute the Acquisition Agreements.

On the Effective Date the Sale Proceeds to be made available to the Debtors and their Estates shall vest with the Liquidation Trust in accordance with Article VII.F and be used to make Distributions under this Plan.

### B. Timing of Distributions

Except as specifically set forth in the Plan and as otherwise provided in this Article VII, Distributions to be made on the Effective Date to holders of Claims that are Allowed as of the Effective Date will be deemed made on the Effective Date if made on the Effective Date or as ~~promptly thereafter as~~ soon as reasonably practicable thereafter. Distributions on account of Claims that become Allowed after the Effective Date will be made pursuant to Article VII.E of the Plan. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

#90982609v12

### C.   Record Date for Distributions

As of the close of business on the Record Date, no party can transfer a Claim.  Neither the Debtors nor the Liquidation Trustee shall have any obligation to recognize any transfer of Claims occurring after the Record Date.

### D.   Distributions to Holders of Allowed Claims

The Liquidation Trustee shall make all Distributions required under the Plan in a manner consistent with the Plan.   Distributions shall only be made to the record holders of Allowed Claims as of the Record Date.  On the Record Date, at the close of business for the relevant register, all registers maintained by the Debtors, Liquidation Trustee and each of the foregoing's respective agents, successors and assigns shall be deemed closed for purposes of determining whether a holder of such a Claim is a record holder entitled to distributions under the Plan.  If a Claim is transferred 20 or fewer calendar days before the Record Date, the Liquidation Trustee shall make distributions to the transferee only if the transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

~~The Liquidation Trustee shall make all Distributions required under the Plan in a manner consistent with the Plan.~~ If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Liquidation Trustee shall, as appropriate and in lieu of making such Distribution to such holder, delay such Distribution until the disposition thereof shall be determined by Final Order of the Court or by written agreement among the interested parties to such dispute.

### E.   Distributions After Allowance

As soon as practicable after (i) the occurrence of the applicable Claims Objection Deadline, if no objection to such Claim has been timely filed, or (ii) the Disputed Claim becomes an Allowed Claim, the Debtors or the Liquidation Trustee, as the case may be, will distribute to the holder thereof all Distributions to which such holder is then entitled under this Plan.  All Distributions made under this Article of the Plan will be made together with any dividends, payments, or other Distributions made on account of, as well as any obligations arising from, the distributed property as if such Claim had been an Allowed Claim on the dates Distributions were previously made to Allowed holders included in the applicable Class.

### F.   Liquidation Trust

1.    *Appointment of the Liquidation Trustee*.    The entry of the Confirmation Order shall ratify the selection of the Liquidation Trustee.  The Liquidation Trust Documents, in the form annexed to the Plan Supplement, are hereby incorporated by reference in their entirety and made an integral part of the Plan.

2.    *Creation of the Liquidation Trust*.  On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Documents for the purpose of, among other things, (i) prosecuting those Causes of Action for which the Equity Committee was granted derivative standing to pursue, and additional causes of action belonging to the Debtors' estates, as appropriate, (ii) administering, monetizing and/or liquidating the

19

Property of the Debtors, (iii) resolving all Disputed Claims, (iv) making all Distributions from the Liquidation Trust, and (v) prosecuting and defending appeals of the Confirmation Order as provided for in the Plan, Disclosure Statement, and the Liquidation Trust Documents.  The Liquidation Trust shall have no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidation Trust and the Plan.  The term of the Liquidation Trust shall not exceed five years from the date of creation of the Liquidation Trust, provided that, if warranted, and subject to the approval of the Court, the term of the Liquidation Trust may be extended for a finite term. Each extension shall be approved by the Court within six months of the extended term.

3.     *Vesting and Transfer of Property to the Liquidation Trust*.  The Liquidation Trust shall be established to receive certain Property of the Debtors and to distribute such Property to certain holders of Claims in accordance with the Plan.  Except as otherwise expressly provided in the Plan, pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, all Property comprising the Estates of the Debtors not conveyed to the Plan Sponsors under the Acquisition Agreements shall automatically vest in the Liquidation Trust, free and clear of all Claims, Liens, contractually imposed restrictions, charges, encumbrances and Interests of ~~Creditors~~creditors and holders of Interests on the Effective Date, with all such Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests being extinguished subject to the rights of holders of Other Priority Claims, Secured Claims, and General Unsecured Claims to obtain Distributions provided for in this Plan.  Notwithstanding the foregoing, the Debtors or the Liquidation Trustee may determine to retain certain Property in the Debtors for convenience or in the best interests of the Liquidation Trust, with beneficial ownership, but not legal title, of such assets passing to the Liquidation Trust upon the Effective Date.

4.     *Grantor Trust*.  The Liquidation Trust shall qualify as a Liquidation Trust as described in Treasury Regulation section 301.7701-4(d) and shall be treated as a grantor trust for United States federal income tax purposes.  The Creditors' Committee (with the consent of the Debtors, which consent shall not be unreasonably withheld) shall appoint the Liquidation Trustee, who shall have the authority to manage the day-to-day operations of the Liquidation Trust, including, without limitation, by disposing of the Property of the Liquidation Trust, appearing as a party in interest, calculating distributions, paying taxes and such other matters as more particularly described in this Article VII of the Plan and the Liquidation Trust Agreement.

5.     *Liquidation Trust Expenses*.  Expenses of the Liquidation Trust, including the expenses of the Liquidation Trustee and his representatives and professionals, will be satisfied from the assets of the Liquidation Trust and its proceeds, as set forth in the Liquidation Trust Agreement, in each case in accordance with the Plan. Court approval shall not be required for the payment of any expenses of the Liquidation Trust unless the Liquidation Trust Oversight Board objects to the payment of any such expenses, in which case the Court shall determine any amount to be paid.  The Liquidation Trustee shall be authorized to establish a reserve, in an amount determined in the reasonable discretion of the Liquidation Trustee in consultation with the Liquidation Trust Oversight Board, to fund the expected expenses of the Liquidation Trust (the "**Trust Expense Reserve**").

6.    *General Powers of the Liquidation Trustee*.   The rights and powers of the Liquidation Trustee are specified in the Liquidation Trust Documents.  Except as expressly set forth in this Plan or the Disclosure Statement, and in the Liquidation Trust Agreement, the Liquidation Trustee shall administer the Liquidation Trust and its assets in accordance with this Plan, the Liquidation Trust Agreement, and the other Liquidation Trust Documents and shall be responsible for, among other things, making certain distributions required under this Plan. From and after the Effective Date and continuing through the date of entry of a Final Decree, the Liquidation Trustee shall: (a) possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Court; (b) have the authority to act on behalf of the Debtors' Estates in all adversary proceedings and contested matters pending in the Court and in all actions and proceedings pending elsewhere; and (c) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate, all without prior notice to or approval of the Court.

7.    *Substitution of Liquidation Trustee for the Debtors and Equity Committee*.  After the Effective Date, the Liquidation Trustee shall be deemed to be substituted as the party in lieu of the Debtors and Equity Committee (a) in all pending matters including but not limited to (i) motions, contested matters and adversary proceedings pending in the Court, and (ii) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Court without the need or requirement for the Liquidation Trustee to file motions or substitutions of parties and counsel, and (b) in taking any and all actions necessary to consummate the Sale.

8.    *Liquidation Trust Oversight Board*.

(a)    The Liquidation Trust Oversight Board shall be formed and constituted upon execution of the Liquidation Trust Agreement.  The Liquidation Trust Oversight Board shall have the right, but shall not be required, to fill any vacancy that arises for any reason in accordance with the Liquidation Trust Agreement. The initial members of the Liquidation Trust Oversight Board shall be set forth in the Plan Supplement.

(b)    Liquidation Trust Oversight Board ~~Members~~members shall be entitled to reimbursement of their actual and reasonable out of pocket expenses as a Liquidation Trust Oversight Board ~~Member~~member. The Liquidation Trust shall pay the actual and reasonable out of pocket expenses of Liquidation Trust Oversight Board ~~Members~~members in accordance with the Liquidation Trust Agreement and without approval or order of the Court, unless the Liquidation Trust Oversight Board or Liquidation Trustee objects to all or part of the fees and expenses, in which case the allowance of the disputed portion shall be determined by the Court.

21

(c)     The Liquidation Trustee shall regularly consult with the Liquidation Trust Oversight Board regarding the prosecution and/or settlement of Estate Causes of Action and other matters. The Liquidation Trustee shall report to the Liquidation Trust Oversight Board on a regular basis. The Liquidation Trustee shall seek approval from the Liquidation Trust Oversight Board regarding the prosecution and/or settlement of each Estate Cause of Action and other matters as set forth in the Liquidation Trust Agreement.

(d)     A Liquidation Trust Oversight Board Member shall recuse him/herself from participation in decision-making by the Liquidation Trust Oversight Board on matters in which such member has a conflict of interest.

### G.    Delivery of Distributions

Distributions to holders of Allowed Claims shall be made by the Liquidation Trustee (a) at the last known addresses of such holders or (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Liquidation Trustee, as appropriate. If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Liquidation Trustee is notified of such holder's then current address, at which time all missed Distributions shall be made to such holder without interest.

### H.    Method of Cash Distributions

Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of the Liquidation Trustee.

### I.    Failure to Negotiate Checks

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within ninety (90) days after the date of issuance. Any amounts returned to the Liquidation Trustee in respect of such non-negotiated checks shall be forwarded to (if necessary) and held by the Liquidation Trustee, as the case may be.  Requests for reissuance for any such check shall be made directly to the issuer of the check by the holder of the Allowed Claim with respect to which such check originally was issued within such 90-day-period. All amounts represented by any voided check will be held until the earlier of: (a) one (1) month after the date on which the check is voided, or (b) the date on which the Court enters the Final Decree, and all requests for reissuance by the holder of the Allowed Claim in respect of a voided check are required to be made prior to such date. Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with Article VII.J of the Plan, and all holders of Claims in respect of void checks shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtors or their respective assets, the Liquidation Trustee or the Liquidation Trust notwithstanding any federal or state escheat laws to the contrary. In such case, any Cash held for payment on account of such Claims shall revert to the Liquidation Trust, free and clear of any restrictions thereon except as provided elsewhere in the Plan.

#90982609v12

### J.   Unclaimed Property

All Property distributed on account of Allowed Claims must be claimed prior to the date on which the Court enters the Final Decree, or, in the case of a Distribution made in the form of a check, must be negotiated and a request for reissuance be made as provided for in Article VII.I of the Plan. All Unclaimed Property will be retained by and will vest in the Liquidation Trust to be subsequently distributed in accordance with Article IV of this Plan. All full or partial payments made by the Liquidation Trustee and received by the holder of a Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Debtors or the Liquidation Trustee pursuant to the Plan. Nothing contained in the Plan shall require the Debtors or the Liquidation Trustee to attempt to locate any holder of an Allowed Claim other than by reviewing the records of the Debtors and any Claims filed in the Chapter 11 Cases. All Claims in respect of Unclaimed Property shall be deemed Disallowed and the holder of any Claim Disallowed in accordance with this Article VII.J will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtors or their respective assets, the Liquidation Trustee or the Liquidation Trust notwithstanding any federal or state escheat laws to the contrary.

### K.   No Distributions on Late-Filed Claims

Except as otherwise provided herein or in a Final Order of the Court, any Claim as to which a Proof of Claim was required to be filed and was first filed after the applicable Bar Date in the chapter 11 Cases, including, without limitation, any Bar Date established in the Plan or in the Confirmation Order, shall automatically be deemed a late-filed Claim that is Disallowed in the chapter 11 Cases, without the need for (a) any further action by the Liquidation Trustee or (b) an order of the Court.  Nothing in this paragraph is intended to expand or modify the applicable Bar Dates or any orders of the Court relating thereto.

### L.   Limitation on Distribution Rights

If a claimant holds more than one Claim in any one Class, all Claims of the claimant in that Class will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

### M.   Fractional Dollars

Notwithstanding any other provision of the Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Article VII.J of this Plan.

### N.   De Minimis Distributions

The Liquidation Trustee shall not be required to, but may in its discretion, make distributions to any holder of an Allowed Claim of Cash in an amount less than fifty dollars ($50).

#90982609v12

### O. **Compliance With Tax Requirements**

In connection with each Distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Debtors or the Liquidation Trustee shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law. The Debtors or the Liquidation Trustee shall not be required to make a Distribution with respect to any Person until the Debtor or the Liquidation Trustee, as appropriate, receives such Person's tax identification number, certified tax identification number, or other tax information required by law to avoid withholding (including, without limitation, a form W-8 or W-9).

### P. **Character of Distributions**

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall, to the extent permitted by applicable law, be allocated for income tax purposes to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

### Q. **No Payment or Distribution Pending Allowance**

All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Debtors or the Liquidation Trustee and the holder of such Claim, by operation of law, by Final Order, or by this Plan. Notwithstanding any other provision in the Plan, no payment or Distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

### R. **Distributions on Insured Claims**

If any holder has asserted a Claim that is covered as to liability, in whole or in part, by an insurance policy that is assumed or otherwise remains in effect pursuant to the terms of this Plan, such holder will have an Allowed Claim entitled to a Distribution under this Plan only to the extent of any deductible or self-insured retention under the applicable insurance policy that was unpaid or otherwise unexhausted as of the Petition Date. Notwithstanding the foregoing, the holder shall be entitled to pursue recovery of any amount in excess of such unpaid deductible or self-insured retention from the applicable insurance carrier, and, in connection therewith, such holder may continue to pursue the balance of such Claim against the Debtors solely for the purposes of liquidating such Claim and obtaining payment of the balance of such liquidated Claim from any otherwise applicable insurance policy. Except as otherwise provided in the applicable insurance policy, the applicable insurance carrier may, at its expense, employ counsel, direct the defense, and determine whether and on what terms to settle any Claim for the purposes of determining the amount of insurance proceeds that will be paid on account of such Claim. If after liquidation of a Claim pursuant to this Section, it is determined that there are insufficient insurance proceeds available to satisfy the amount of such Claim that is in excess of any unpaid deductible or self-insured retention, then the holder of such Claim shall have an Allowed Claim in the amount of such insufficiency.

### S.   Corporate Action

The entry of the Confirmation Order shall constitute authorization and direction for the Debtors to take or to cause to be taken all corporate and limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the stockholders or directors of the Debtors. On the Effective Date, the appropriate officers and managers of the Debtors are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan and the Plan Supplement in the name and on behalf of the Debtors.

### T.   Cancellation of Existing Securities and Agreements

Except for the purpose of evidencing a right to Distribution under the Plan and except as otherwise set forth in the Plan, on the Effective Date, (1) the obligations of the Debtors under any membership interest, certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest shall be cancelled and the obligations of the Debtors thereunder or in any way related thereto shall be fully released, and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the membership interests, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to this Plan) shall be released and discharged; *provided*, *however*, notwithstanding confirmation of this Plan or the occurrence of the Effective Date, any agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of allowing holders to receive Distributions under this Plan as provided herein.

### VIII.   PRESERVATION OF CAUSES OF ACTION AND RIGHT TO DEFEND AND CONTEST

### A.   Preservation of Rights

Except to the extent that any Claim is Allowed during the Chapter 11 Cases or expressly by this Plan, the Acquisition Agreements, or the Confirmation Order, nothing, including, but not limited to, the failure of the Debtors to object to a Claim for any reason during the pendency of the Chapter 11 Cases, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtors or the Liquidation Trustee with respect to any Claim, including, but not limited to, all rights of the Debtors or the Liquidation Trustee to contest or defend themselves against such Claims in any lawful manner or forum when and if such Claim is sought to be enforced by the holder thereof.

#90982609v12

## B. **Causes of Action**

Except as otherwise provided in this Plan, the Acquisition Agreements or the Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Liquidation Trustee (as a representative of the Debtors' Estates) will retain and may exclusively enforce any Retained Actions subject only to any express waiver or release thereof in the Plan or in any other contract, instrument, release, indenture or other agreement entered into in connection with the Plan, and the Confirmation Order's approval of the Plan shall be deemed a *res judicata* determination of such rights to retain and exclusively enforce such Retained Actions, and none of such Retained Actions is deemed waived, released or determined by virtue of the entry of the Confirmation Order or the occurrence of the Effective Date, notwithstanding that the specific Retained Actions are not identified or described. Absent such express waiver or release by the Debtors, the Liquidation Trustee may pursue Retained Actions, as appropriate, in accordance with the best interests of the Liquidation Trust.

Absent an express waiver or release as referenced above, nothing in the Plan shall (or is intended to) prevent, estop or be deemed to preclude the Liquidation Trustee from utilizing, pursuing, prosecuting or otherwise acting upon all or any of its Retained Actions and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Actions upon or after the Confirmation Date, the Effective Date or the consummation of the Plan. By example only, and without limiting the foregoing, the utilization or assertion of a Retained Action, or the initiation of any proceeding with respect thereto against a Person, by the Liquidation Trustee shall not be barred (whether by estoppel, collateral estoppel, res judicata or otherwise) as a result of (a) the solicitation of a vote on the Plan from such Person or such Person's predecessor in interest; (b) the Claim, Interest or Administrative Claim of such Person or such Person's predecessor in interest having been listed in a Debtor's Schedules, list of holders of Interests, or in the Plan, Disclosure Statement or any exhibit thereto; (c) prior objection to or allowance of a Claim or Interest of the Person or such Person's predecessor in interest; or (d) entry of the Confirmation Order. **No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as an indication that the Debtors will not pursue any and all available Causes of Action against them. The Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein**.

Notwithstanding any allowance of a Claim, the Debtors or the Liquidation Trustee reserve the right to seek, among other things, to have such Claim Disallowed if the Debtor or the Liquidation Trustee, as the case may be, at the appropriate time, determines that it has a defense under section 502(d) of the Bankruptcy Code, e.g., the Debtor or the Liquidation Trustee holds an Avoidance Action against the holder of such Claim and such holder after demand refuses to pay the amount due in respect thereto.

## C. **Setoffs**

Except to the extent that any Claim is Allowed, the Debtors or the Liquidation Trustee, as applicable, may, but shall not be required to, set off against any Claims and the payments or

#90982609v12

distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities, Causes of Action and claims of every type and nature whatsoever which the Estates, the Debtors or the Liquidation Trustee may have against such creditors, but neither the failure to do so nor the allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtors or the Liquidation Trustee of any such claims or Causes of Action the Debtors or the Liquidation Trustee may have against such creditors, and all such claims and Retained Actions which are not expressly released, conveyed or compromised pursuant to the Plan or the Acquisition Agreements shall be conveyed to the Liquidation Trust.

**D.   Resolution of Disputed Claims**

1.   *Objections to Claims*. Unless otherwise ordered by the Court after notice and a hearing, the Liquidation Trustee, and other parties in interest to the extent provided by section 502(a) of the Bankruptcy Code, on and after the Effective Date, shall have the right to file objections to Claims (except those specifically Allowed by this Plan) and shall serve a copy of each such objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than the applicable Claims Objection Deadline. The foregoing deadlines may be extended by order of the Court without notice. An objection to any Claim shall be deemed properly served on the holder thereof if the Liquidation Trustee effects service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Federal Rule of Bankruptcy Procedure 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified in the Proof of Claim or any attachment thereto; or (c) by first class mail postage prepaid, on any counsel that has appeared on the holder's behalf in the Chapter 11 Cases.

2.   *Settlement of Disputed Claims*. After the Effective Date, the Liquidation Trustee, with consent of the Liquidation Trust Oversight Board (which consent shall not be unreasonably withheld), may settle or compromise any Disputed Claim without approval of the Court upon written notice to the Office of the United States Trustee; provided, that, (a) the Liquidation Trustee shall promptly file with the Court a written notice of any settlement or compromise of a Claim that results in an Allowed Claim in excess of $500,000 and (b) the Office of the United States Trustee shall be authorized to contest the proposed settlement or compromise (whether such settlement is above or below $500,000) by filing a written objection with the Court and serving such objection on the Liquidation Trustee within twenty (20) days of the service of the proposed settlement notice. If no such objection is filed, the applicable settlement or compromise shall be deemed final without further action of the Court.

3.   *Establishment of Disputed Claims Reserve*. In connection with the Distributions required to be made under the Plan, on the Effective Date or as soon as reasonably practicable thereafter (and in accordance with the provisions of this Plan), the Liquidation Trustee shall reserve Cash allocated for distribution on account of each Disputed Claim based on the Face Amount of each such Disputed Claim, plus 10% of the Face Amount on account of interest attributable to any such General Unsecured Claim, or such lesser or greater amount as may be agreed to by the holder of the Claim and the Debtors or Liquidation Trustee (the "Disputed Claims Reserve"). All Cash or other property allocable to the relevant Class hereunder with respect to the Disputed Claims shall be allocated for records keeping purposes only (and not as a separate or distinct fund or account and without interest), to the Disputed Claims Reserve.

27

The Liquidation Trustee shall have no duty to fund, or to set aside any separate account for the Disputed Claims Reserve.

Payments on any Disputed Claim that becomes an Allowed Claim shall be distributed as soon as practicable after the Claim is Allowed (and consistent with the provisions of this Plan). Distributions shall be made only to the extent of the aggregate distributions that the holder of any Allowed Claim would have received had such Claim been Allowed as of the Effective Date (less any taxes paid with respect to the amounts held in the Disputed Claims Reserve). Distributions to each holder of a Disputed Claim that has become an Allowed Claim (and to the extent that the holder of the Disputed Claim has not received prior Distributions on account of that Claim) shall be made in accordance with the provisions of the Plan governing the Class of Claims in which the Claim is classified.

The Disputed Claims Reserve shall no longer be necessary at the earlier of (i) when all Disputed Claims have been resolved, or (ii) when all Distributions and other dispositions of Cash or other property required to be made therefrom under the Plan have been made.

4. *Cash Held in Disputed Claims Reserve*. Cash held in the Disputed Claims Reserve shall be held by the Liquidation Trustee in trust for the benefit of holders of Allowed Claims.

5. *Interest on Disputed Claims*. Unless otherwise specifically provided for in this Plan or as otherwise required by sections 506(b), 511 or 1129(a)(9)(C)-(D) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made when and if such Disputed Claim becomes Allowed.

6. *Estimation of Claims*. The Debtors or the Liquidation Trustee may at any time request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether the Debtors or the Liquidation Trustee have previously objected to such Claim or whether the Court has ruled on any such objection. In the event that the Court estimates any Disputed Claim, such estimated amount shall constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement to this Plan or (c) a maximum limitation on such Claim, as determined by the Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Liquidation Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Court.

7. *No Recourse*. Notwithstanding that the Allowed amount or estimated amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules and, as a result of such reconsideration is Allowed in an amount for which there is insufficient value in the relevant fund or reserve to provide a recovery equal to that received by other holders of Allowed Claims in the relevant Class, no such Claim holder shall have recourse to the Debtors and their Estates, the Liquidation Trust or the Liquidation Trustee, or any member or manager thereof, any of the respective

28

Professionals of any of them, the holder of any other Claim, or any of the respective property of any of the foregoing.

However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

## IX.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS

### A.   <u>Treatment of Executory Contracts and Unexpired Leases</u>

All executory contracts and unexpired leases of the Debtors shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease that: (a) has previously been assumed, assumed and assigned, or rejected pursuant to an order of the Court on or prior to the Confirmation Date or (b) is set forth on a Schedule of Assumed Contracts and Leases filed in connection with the Acquisition Agreements.

The assumption, assumption and assignment, and rejection of executory leases and unexpired contracts under this Plan shall be governed by the terms of the Acquisition Agreements and other orders of the Court.

### B.   <u>Cure of Defaults for Assumed Contracts and Leases</u>

The cure of all defaults under executory contracts and unexpired leases to be assumed and assigned under the Acquisition Agreements, including the resolution of all objections to the adequacy of assurance of future performance under such contracts and leases and as to the adequacy of amounts proposed to cure defaults under such contracts and leases, shall be governed by the terms and conditions of the Acquisition Agreements and orders of the Court.

### C.   <u>Bar Date for Claims for Rejection Damages</u>

Claims arising out of the rejection of any executory contract or unexpired lease pursuant to Article IX of the Plan must be filed with the Court no later than ~~the earlier of (a) thirty (30) days after the Effective Date, or (b)~~ thirty (30) days after the entry of an order rejecting such executory contract or unexpired lease <u>(including, without limitation, the Confirmation Order)</u>. Any Claim not filed within such time period shall be forever barred. The Debtors, the Liquidation Trustee, and other parties in interest to the extent provided by section 502(a) of the Bankruptcy Code shall have the right to object to any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the terms of Article VIII.D of this Plan.

### D.   <u>Treatment of Rejection Claims</u>

The Court shall determine any objections filed in accordance with Article VIII.D hereof at a hearing to be held on a date to be determined by the Court. Subject to any statutory limitation, including, but not limited to the limitations contained in sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code, any Claims arising out of the rejection of executory contracts and unexpired leases shall, pursuant to section 502(g) of the Bankruptcy Code, be treated as Class 3 Claims in accordance with Article IV of the Plan.

#90982609v12

### E.    Employment Agreements and Benefit Programs

1.    *Employment Agreements.* Except to the extent previously rejected by an order of the Court on or before the Effective Date, all employment and severance agreements between the Debtors and their employees entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected under Article IX.A of the Plan, except for any such employment agreement that is specifically assumed under Article IX.A of the Plan. Any Claim arising out of such rejection shall be treated in accordance with Article IX.D of the Plan.

2.    *Employee Benefit Plans.* Except and to the extent previously rejected by an order of the Court on or before the Effective Date or included in the Additional Assumed Contracts Schedule, all Employee Benefit Plans entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected under Article IX.A of the Plan. Any Claim arising out of such rejection shall be treated in accordance with Article IX.D of the Plan.

### F.    Survival of Certain Indemnification Obligations.

Notwithstanding any other provision of this Plan, the obligations of the Debtors pursuant to their certificates or articles of incorporation, bylaws and other organizational documents to indemnify persons serving after the Petition Date as officers, directors, agents, or employees of the Debtors with respect to actions, suits and proceedings against the Debtors or such officers, directors, agents, or employees, based upon any act or omission for, on behalf of, or relating to the Debtors and occurring prior to or after the Petition Date, shall continue (and shall not be discharged or impaired by the confirmation of the Plan).

## X.    EFFECT OF CONFIRMATION OF THIS PLAN

### A.    Continued Corporate Existence

Each Debtor will continue to exist after the Effective Date as a separate corporate or limited liability company entity, with all of the powers of a corporation under applicable law in the jurisdiction in which it is incorporated or otherwise formed and pursuant to its certificate or articles of incorporation and by-laws or other organizational documents in effect prior to the Effective Date, without prejudice to the right of the Liquidation Trustee to dissolve (subject to its obligations under this Plan) under applicable law and file a certificate of dissolution (or its equivalent) with the secretary of state or similar official of the jurisdiction of incorporation after the Effective Date, provided that the Liquidation Trustee shall be under no obligation to dissolve any Debtor. Notwithstanding any other provision of this Plan, all Interests of the Debtors as of the Effective Date shall be cancelled and terminated along with any and all rights of voting, management, or control of the Debtors. Upon the Effective Date, a single Interest with respect to each Debtor shall be issued to and held by the Liquidation Trustee, and each such Interest shall have all rights of control, voting, and management with respect to the affairs of each respective Debtor. Immediately upon the Effective Date, all board members, managers, directors, officers, or any other Persons or bodies exercising control over the affairs of the Debtors shall be

30

#90982609v12

Case 3:16-bk-02230-PMG    Doc 1176    Filed 08/28/18    Page 36 of 55

terminated and have no further right or authority or obligation to direct the affairs of the Debtors, such authority being vested solely with the Liquidation Trustee.

### B. Releases by the Debtors of Certain Parties

Effective as of the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Cases, the adequacy of which is hereby confirmed, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, on and after the Effective Date, each Released Party is deemedshall be deemed to have been conclusively, absolutely, unconditionally, irrevocably and forever released and discharged by each and all of the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or, because of the foregoing entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise, that the Debtors or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the restructuring transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, implementation, administration, confirmation, or consummation of the Plan Support Agreement, the Disclosure Statement, the DIP Credit Facilities, the DIP Credit Documents, the Sale, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any restructuring transaction, contract, instrument, release, or other agreement or document created, modified, amended, or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the DIP Credit Facilities, the DIP Credit Documents, the Sale (including, for the avoidance of doubt, the Acquisition Agreements), or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the pursuit of "substantial consummation" (as defined in section 1101(2) of the Bankruptcy Code), the pursuit of the Sale, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing or in this Plan, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any transaction described herein, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

#90982609v12

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release described in this Article X.B, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the release described in this Article X.B is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such claims released by the release described in this Article X.B; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property, released pursuant to the release described in this Article X.B.

**Nothing in this Article X.B shall release the Released Parties from any claim based on any act or omission that constitutes gross negligence or willful misconduct as determined by Final Order.**  The Liquidation Trustee shall be bound, to the same extent that the Debtors are bound, by the releases and discharges set forth above.

### C.   Releases by Non-Debtors

Effective as of the Effective Date, for good and valuable consideration, ~~the adequacy of which is hereby confirmed,~~ including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, **the adequacy of which is hereby confirmed,** to the fullest extent permissible under applicable law, as such law may be extended or integrated **after the Effective Date, on and** after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all ~~claims, interests~~**Claims, Interests**, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, ~~whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise,~~ including any derivative claims, asserted or assertable on behalf of any of the Debtors, or their Estates, ~~that such Entity~~ **as applicable,** **whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including Avoidance Actions, those Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such Releasing Party** would have been legally entitled to assert **in their own right** (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the restructuring transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, implementation, administration, confirmation, or consummation of the Plan Support Agreement, the Disclosure Statement, the DIP Credit Facilities, the DIP Credit Documents, the Sale, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any restructuring transaction, contract, instrument,

32

release, or other agreement or document created, modified, amended or entered into in connection with the Plan Support Agreement, the Disclosure Statement, the DIP Credit Facilities, the DIP Credit Documents, the Sale (including, for the avoidance of doubt, the Acquisition Agreements), or the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation and/or consummation of the Plan, the pursuit of "substantial consummation" (as defined in section 1101(2) of the Bankruptcy Code), the pursuit of the Sale, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing or in this Plan, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any restructuring transaction described herein, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Nothing in this Article X.C shall release (i) any obligations of the Debtors of Liquidation Trustee arising under this Plan, or (ii) any of the Released Parties from any claim based on any act or omission that constitutes gross negligence or willful misconduct as determined by Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release described in this Article X.C, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that the release described in this Article X.C is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of claims released by the release described in this Article X.C; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property, released pursuant to the release described in this Article X.C.

D.    Exculpation

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting the releases described in Articles X.B and X.C, and notwithstanding anything herein to the contrary, each Released Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability for (a) any prepetition action taken or omitted to be taken, whether prepetition or postpetition, in connection with, or related to, formulating, negotiating, or preparing the Plan or the Plan Support Agreement, or (b) any postpetition action taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, administering, or implementing the Plan, or consummating the Plan (including the Plan Support Agreement), the Disclosure Statement, the Sale and the Acquisition Agreements, and/or the DIP Credit Facility, or any contract, instrument, release, or other agreement or document created, modified, amended, or entered into in connection with the

33

Plan (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, in each case except for actual fraud, willful misconduct, or gross negligence in connection with the Plan or the Chapter 11 Cases, each solely to the extent as determined by a Final Order of a court of competent jurisdiction; *provided*, *however*, that in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel and financial advisors with respect to their duties and responsibilities pursuant to the Plan Support Agreement and the Plan. Each Released Party has, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the restructuring of Claims and Interests in the Chapter 11 Cases and in connection with the transactions contemplated herein, including the Sale, the negotiation, formulation, or preparation of the agreements, instruments, or other documents pursuant to the Plan, and the solicitation and distribution of the Plan and, therefore, is not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding the foregoing, this exculpation shall not release any obligation or liability of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### E.    Injunction

Except as otherwise expressly provided in this Plan, the Plan Supplement, documents executed pursuant to this Plan, or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold, or may hold Claims against or Interests in the Debtors or the Estates that arose prior to the Effective Date (including all Governmental Units) shall be permanently enjoined from, on account of such Claims or Interests, taking any of the following actions, either directly or indirectly, against or with respect to any Debtor, any Estate, any Released Party, the Liquidation Trust, the Liquidation Trustee, or any of their respective properties or assets: (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, executing, collecting, or recovering in any manner any judgment, award, decree, or order, or attaching any property pursuant to the foregoing; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iv) asserting or effecting any setoff, recoupment, or right of subrogation of any kind against any Claim or Cause of Action; (v) enjoining or invalidating any foreclosure or other conveyance of any Property of the Liquidation Trust or of the Debtors; and (vi) taking any act, in any manner, in any place whatsoever, that does not conform to, comply with, or that is inconsistent with any provision of this Plan. Any Person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator. This injunction shall not enjoin or prohibit (i) the holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the Distribution provisions of this Plan or (ii) any party in interest from seeking the interpretation or

34

enforcement of any of the obligations of the Debtors, the Liquidation Trustee, or the Liquidation Trust under this Plan. The Confirmation Order also shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any Claim or Interest or cause of action against any Debtor, any Estate, any Released Party, the Liquidation Trustee, the Liquidation Trust, or any of their respective properties or assets, based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under this Plan have been made or are not yet due.

Upon entry of the Confirmation Order, all holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan. Each holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under such Claim, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article X.E of the Plan.

## F. Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Final Distribution Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## G. Preservation of Insurance

Except as otherwise provided herein, the Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, including its officers and current and former directors, or any other Person.

## H. Other Documents and Actions

The Debtors or the Liquidation Trustee are authorized and directed to execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan including, for the avoidance of doubt, prosecuting and defending any appeals related to the Confirmation Order and any order by the Admiralty Court approving the Sale.

## I. Guaranties

Notwithstanding the existence of guaranties by the Debtors of obligations of any Entity or Entities, and the Debtors' joint obligations with another Entity or Entities with respect to the same obligations, all Claims against the Debtors based upon any such guaranties shall be satisfied and released in the manner provided in this Plan and the holders of Claims shall be entitled to only one distribution with respect to any given obligation of the Debtors.

#9098260 9v12

### J.   Subordination Rights

Any Distributions under the Plan shall be received and retained free of and from any obligations to hold or transfer the same to any other Claim or Interest holder, and shall not be subject to levy, garnishment, attachment or other legal process by any holder by reason of claimed contractual subordination rights, which rights shall be waived and the Confirmation Order shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any contractual, legal or equitable subordination rights to Property distributed under the Plan, in each case other than as provided in the Plan.

### K.   No Successor Liability

Except as otherwise expressly provided in the Plan or the Acquisition Agreements, the Liquidation Trust, the Liquidation Trustee, each of the Plan Sponsors, and each the Plan Sponsors' affiliates (i) does not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or indemnify or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other party relating to or arising out of the operations of or Property of the Debtors, whether arising prior to, on, or after the Effective Date; (ii) is not, and shall not be, a successor of the Debtors by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character; *provided*, *however*, that the Liquidation Trustee and the Liquidation Trust shall assume the obligations specified in the Plan, the Liquidation Trust Agreement, the other Liquidation Trust Documents, and the Confirmation Order.

### L.   Free and Clear

Confirmation of this Plan and the Confirmation Order shall constitute approval of the sale of substantially all of the Debtors' assets to the Plan Sponsors, free and clear of all Claims, Interests, Liens, contractually imposed restrictions, charges, other encumbrances, and liabilities of any kind or nature whatsoever, including rights or claims based on any successor or transferee liabilities, pursuant to the Acquisition Agreements included with the Plan Supplement.  **The terms of this Article X.L shall be binding on and enforceable against all Persons as a permanent injunction pursuant to Article X.E hereof.**

## XI.   EFFECTIVENESS OF THIS PLAN

### A.   Conditions Precedent to Confirmation.

It shall be a condition to confirmation of this Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article XI.C hereof:

1.   the Confirmation Order, in form and substance satisfactory to the Plan Proponents in their sole discretion, which shall include, among other provisions, (i) an authorization and direction for the Debtors to take all actions necessary or appropriate to enter into, implement, and consummate the documents created, amended, supplemented, modified or adopted in connection with the Plan, and (ii) a reservation of jurisdiction over the

36

Sale post-Effective Date, shall have been entered and shall be in full force and effect and there shall not be a stay or injunction in effect with respect thereto;

2.  this Plan, the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in form and substance acceptable ~~to the Creditors' Committee and the Plan Sponsors~~Plan Proponents in their sole discretion.

**B.  Conditions Precedent to the Effective Date**

The Plan Proponents intend for the Plan to be effective as soon as reasonably practicable following the entry of the Confirmation Order.  It shall be a condition to the Effective Date of this Plan that the following provisions, terms and conditions are approved or waived pursuant to the provisions of Article XI.C:

1.  the Confirmation Order, in form and substance acceptable to the Plan Proponents in their sole discretion, which shall include, among other provisions, (i) an authorization and direction for the Debtors to take all actions necessary or appropriate to enter into, implement, and consummate the documents created, amended, supplemented, modified or adopted in connection with the Plan, and (ii) a reservation of jurisdiction over the Sale post-Effective Date, shall be in full force and effect, shall have become a Final Order, and shall not have been amended, modified, reversed, vacated, enjoined or stayed pending appeal;

2.  an order of the Admiralty Court approving the Sale to the extent required to be approved pursuant to the Covenants and Conditions, in form and substance acceptable to the Plan Sponsors, shall be in full force and effect, shall have become a Final Order, and shall not have been amended, modified, reversed, vacated enjoined or stayed pending appeal;

3.  all authorizations, consents and regulatory approvals required (if any) for this Plan's effectiveness shall have been obtained;

4.  all transactions contemplated in the Acquisition Agreements shall have been consummated;

5.  the Creditors' Committee shall have appointed the Liquidation Trustee, and the Liquidation Trust Agreement and the other Liquidation Trust Documents shall have been executed and delivered; and

6.  no order of a court shall have been entered and shall remain in effect restraining the Debtors from consummating the Plan.

#9098260v12

### C.   Waiver of Conditions

The conditions to confirmation of this Plan and to the Effective Date set forth in Article XI.A. and XI.B. hereof may be waived by agreement of the ~~Creditors' Committee and the~~ Plan ~~Sponsors~~Proponents without notice, leave or order of the Court or any formal action other than proceeding to confirm or consummate this Plan.

### D.   Notice of Confirmation and Effective Date

On or before five (5) Business Days after the occurrence of the Effective Date, the Liquidation Trustee shall mail or cause to be mailed to all holders of Claims and Interests a notice that informs such holders of (i) the entry of the Confirmation Order, (ii) the occurrence of the Effective Date, (iii) the occurrence of the applicable Bar Date, and (iv) such other matters as the Liquidation Trustee deems appropriate.

### E.   Effect of Failure of Conditions

In the event that the Effective Date does not occur: (a) the Confirmation Order shall be vacated; (b) ~~no Distributions under this~~the Plan shall be ~~made~~null and void in all respects;  (c) the Debtors and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (d) the Debtors' obligations with respect to Claims and Interests shall remain unchanged and nothing contained in this Plan shall (i) constitute or be deemed a waiver or release of any Claims against or any Interests in the Debtors or any other Person, (ii) prejudice in any manner any right, remedy or claim of the Debtors or any Person in any further proceedings involving the Debtors or otherwise, or (iii) be deemed an admission against interest by the Debtors or any other Person.

If the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction over any request to extend the deadline for assuming or rejecting executory contracts or unexpired leases.

### F.   Vacatur of Confirmation Order

If a Final Order denying confirmation of this Plan is entered, or if the Confirmation Order is vacated, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall (a) constitute a waiver or release of any Claims against or Interests in the Debtors, (b) prejudice in any manner the rights of the holder of any Claim against, or Interest in, the Debtors, (c) prejudice in any manner any right, remedy or claim of the Debtors, or (d) be deemed an admission against interest by the Debtors.

### G.   Revocation, Withdrawal, or Non-Consummation

The Plan Proponents reserve the right to revoke ~~or,~~ withdraw or delay consideration of this Plan as to any or all of the Debtors at any time prior to the Confirmation Date either entirely or as to any one or more of the Debtors, and to file subsequent plans.  If the Plan is revoked, withdrawn or delayed as to fewer than all of the Debtors, such revocation, withdrawal or delay shall not affect the enforceability of the Plan as it relates to the Debtors for which the Plan is not

#9098260v12

revoked, withdrawn or delayed.  If the Plan Proponents revoke or withdraw this Plan pursuant to this Section XI.G,in its entirety or as to any of the Debtors, or the Confirmation Order is not entered,Date or the Effective Date does not occur, (i) this Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in this Plan (including the fixing or limiting the amount of any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (a) constitute or be deemed a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, (b) prejudice in any manner any right, remedy or claim of any Person in any further proceeding involving the Debtors or otherwise, or (c) constitute an admission against interest by any Person.

## XII.  RETENTION OF JURISDICTION

The Court shall have exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan pursuant to, and for the purposes of, section 105(a) and section 1142 of the Bankruptcy Code and for, among other things, the following purposes: (1) to hear and determine motions for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date, and the allowance of Claims resulting therefrom; (2) to determine any other applications, adversary proceedings, and contested matters pending on the Effective Date; (3) to ensure that Distributions to holders of Allowed Claims are accomplished as provided herein; (4) to resolve disputes as to the ownership of any Claim; (5) to hear and determine timely objections to Claims or Interests; (6) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated; (7) to issue such orders in aid of execution of this Plan, to the extent authorized by section 1142 of the Bankruptcy Code; (8) to consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order; (9) to hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 328, 330, 331 and 503(b) of the Bankruptcy Code; (10) to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan; (11) to hear and determine disputes arising in connection with the interpretation, implementation or consummation of any transaction in connection with an Acquisition Agreements; (12) to hear and determine any issue for which this Plan requires a Final Order of the Court; (13) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; (14) to hear and determine disputes arising in connection with compensation and reimbursement of expenses of Professionals for the Debtors, Creditors' Committee or Equity Committee for services rendered and expenses incurred during the period commencing on the Petition Date through and including the Effective Date; (15) to hear and determine any Causes of Action preserved under this Plan including under Bankruptcy Code sections 544, 547, 548, 549, 550, 551, 553, and 1123(b)(3); (16) to hear and determine any matter regarding the existence, nature and scope of any injunction issued hereunder; (17) to hear and determine any matter regarding the existence, nature, and scope of the releases and exculpation provided in Article X of this Plan; (18) to hear and determine any matter regarding the Liquidation Trust and Liquidation Trust Documents; (19) to estimate any Claim at any time during the pendency of litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection; and (20) to enter a Final Decree closing the Chapter 11 Cases.

## XIII.    MISCELLANEOUS PROVISIONS

### A.    <u>Payment of Statutory Fees</u>

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 <u>of the United States Code and/or section 3717 of title 31</u> of the United States Code shall be paid by the Debtors on or before the Effective Date and all such fees payable after the Effective Date shall be paid by the Liquidation Trustee.

### B.    <u>Modification of this Plan</u>

Subject to the limitations contained in this Plan: (1) the Plan Proponents have the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Creditors' Committee may, upon order of the Court, amend or modify this Plan, in accordance with ~~Section~~<u>section</u> 1127(b) of the Bankruptcy Code.

### C.    <u>Dissolution of Creditors' Committee and Equity Committee</u>

The Creditors' Committee and Equity Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code.  On the Effective Date, the Creditors' Committee and Equity Committee shall each be dissolved and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases or this Plan and its implementation, and the retention or employment of the Creditors' Committee's and Equity Committee's attorneys, financial advisors, and other agents shall terminate as of the Effective Date; <u>provided</u>, that, the Creditors' Committee's and Equity Committee's attorneys and financial advisors shall be entitled to pursue their own Professional Fee Claims and represent the Creditors' Committee and Equity Committee in connection with the review of and the right to be heard in connection with all Professional Fee Claims.

### D.    <u>Votes Solicited in Good Faith</u>

The Creditors' Committee has, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code<u> including, without limitation, sections 1125(a) and 1125(e) of the Bankruptcy Code and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation</u>.  The Debtors (and each of their respective affiliates, agents, directors, managers, officers, members, employees, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of the securities offered and sold under this Plan and, therefore, are not, and on account of such offer and issuance will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan<u> or the offer and issuance of any securities under the Plan</u>.

### E.    Request for Expedited Determination of Taxes

The Debtors or Liquidation Trustee shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns (other than federal tax returns) filed by any of them, or to be filed by any of them, for any and all taxable periods ending ~~after the Petition Date through~~on or before the Effective Date.

### F.    Governing Law

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Florida shall govern the construction and implementation of this Plan, any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements or instruments, in which case the governing law of such agreements shall control).  Corporate governance matters shall be governed by the laws of the state of incorporation or formation of the applicable Debtor.

### G.    Filing or Execution of Additional Documents

On or before the Effective Date, the Debtors and the Liquidation Trustee shall file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### H.    Section 1146 Exemption

To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, if any, or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of or to the Debtors or the Liquidation Trust, shall not be taxed under any state or local law imposing a document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or fee or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which an instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.  Without limiting the foregoing, the transfer of all assets under the Acquisition Agreements to the Plan Sponsors shall be deemed made under and subject to the terms of this Plan and shall be entitled to the protections afforded under ~~Section~~section 1146(a).

### I.    Section 1145 Exemption

To the fullest extent permitted under section 1145 of the Bankruptcy Code, the issuance of any interests in the Liquidation Trust on or around the Effective Date shall be exempt from the registration requirements of ~~Section~~section 5 of the Securities Act of 1933, as amended, and any and all federal, state and local laws requiring the registration or licensing of an issuer, underwriter, broker or dealer in such securities.

### J.    Time

Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. OtherwiseUnless otherwise expressly provided, the provisions of Bankruptcy Rule 9006 shall apply.

### K.    No Admissions or Waivers

Prior to the occurrence of the Effective Date, and notwithstanding anything herein to the contrary, nothing contained in the Plan or the taking of any action by the Debtors related to the Plan shall be deemed an admission or waiver by any Person with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

### L.    Exhibits/Schedules

All exhibits and schedules to this Plan and the Plan Supplement are incorporated into and constitute a part of this Plan as if set forth herein.

### M.    Notices

All notices, requests, and demands hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    To the Debtors:

        RMS Titanic, Inc.
        c/o Troutman Sanders LLP
        600 Peachtree Street NE, Suite 5200
        Atlanta, GA 30308
        Attention: Harris Winsberg and Matthew Ray Brooks
        Tel: (404) 885-3000, Fax: (404) 885-3900

        with copies to:

        Nelson Mullins Riley & Scarborough LLP
        50 N. Laura Street, Suite 4100
        Jacksonville, FL 32202
        Attention: Daniel F. Blanks
        Tel: (904) 665-3656, Fax: (904) 665-3699

        Kaleo Legal
        4456 Corporation Lane, Suite 135

#9098260912

Virginia Beach, VA 23462
Attention: Brian A. Wainger
Tel: (757) 965-6804, Fax: (757) 304-6175

To the Creditors' Committee:

Official Committee of Unsecured Creditors of RMS Titanic, Inc. and its
debtor affiliates
c/o Storch Amini PC
140 East 45th Street, 25th Floor
New York, NY 10017
Attention:  Jeffrey Chubak
Tel: (212) 497-8247, Fax: (212) 490-4208

with copies to:

Thames Markey & Heekin, P.A.
50 N. Laura Street, Suite 1600
Jacksonville, FL 32202
Attention: Richard R. Thames and Robert A. Heekin, Jr.
Tel: (904) 358-4000, Fax: (904) 358-4001

To the Equity Committee:

Official Committee of Equity Security holders of Premier Exhibitions, Inc.

c/o Landau Gottfried & Berger LLP
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Attention: Peter J. Gurfein
Tel: (310)-691-7374, Fax: (310) 557-0056

with copies to:

Akerman, LLP
50 N. Laura Street, Suite 3100
Jacksonville, FL 32202
Attention: Jacob A. Brown and Katherine C. Fackler
Tel: (904) 798-3700, Fax: (904) 798-3730.

To the DIP Lender:

Bay Point Capital Partners, LP
c/o Thompson Hine LLP
3560 Lenox Road, Suite 1600
Atlanta, GA 30326
Attention: Garrett A. Nail and John F. Isbell
Tel: (404) 541-2900, Fax: (404) 541-2905

#90982609v12

To Trustees of the National Maritime Museum:

> Trustees of the National Maritime Museum
> c/o Davis Polk & Wardwell LLP
> 450 Lexington Avenue
> New York, NY 10017
> Attention: Timothy Graulich and Jacob Weiner
> Tel: (212) 450-4639, Fax: (212) 450-5573

To Board of Trustees of National Museums and Galleries of Northern Ireland:

> Cleaver Fulton Rankin
> 50 Bedford Street
> Belfast, BT2 7FW
> Attention: Nathan Campbell and Michael Black
> Tel: +44 028 9024 3141

To Running Subway:

> Running Subway Productions, LLC
> c/o Blank Rome LLP
> One Logan Square
> 130 North 18th Street
> Philadelphia, PA 19103
> Attention: Joel Charles Shapiro
> Tel: (215) 569-5746, Fax: (215) 832-5746

### N. Further Actions; Implementations

The Debtors or the Liquidation Trustee shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other or further actions as may be necessary to effectuate or further evidence the terms and conditions of this Plan. From and after the Confirmation Date, the Debtors or the Liquidation Trustee shall be authorized to take any and all steps and execute all documents necessary to effectuate the provisions contained in this Plan.

### O. Severability

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this

44

Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### P.   Entire Agreement

Except as otherwise indicated, this Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

### Q.   Binding Effect

This Plan shall be binding on and inure to the benefit of the Debtors' Estates, the holders of Claims against and Interests in the Debtors, and each of their respective successors and assigns, including the Liquidation Trustee, and all other parties in interest in the Chapter 11 Cases.

### R.   Substantial Consummation

On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code; *provided*, *however*, that nothing herein shall prevent the Creditors' Committee, the Plan Sponsors, or any other party in interest from arguing that substantial consummation of this Plan has occurred prior to the Effective Date.

### S.   Conflict

The terms of this Plan shall govern in the event of any inconsistency with the summaries of this Plan set forth in the Disclosure Statement. In the event of any inconsistency or ambiguity between and among the terms of this Plan, the Disclosure Statement, and the Confirmation Order, the terms of the Confirmation Order shall govern and control. If a particular term of the Plan (including any exhibits, schedules or Plan Supplement hereto) conflicts with a particular term of the definitive documentation required to be implemented pursuant to the terms of the Plan or any settlement or other agreement contemplated hereunder, the definitive documentation, settlement or other agreement shall control and shall be binding on the parties thereto.

### T.   Closing of Chapter 11 Cases

The Liquidation Trustee shall, promptly after the full administration of the Chapter 11 Cases, file seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules, including filing with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court to close the Chapter 11 Cases.

#90982609v12

Dated: ~~June 29~~August 28, 2018          **OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

                                          By: _____
                                                Name:  Thomas Braziel
                                                Title:   Chairman

#90982608v10

Dated: ~~June 29~~August 28, 2018      **THE TRUSTEES OF THE NATIONAL
                                       MARITIME MUSEUM**

                                       By: _____
                                             Name: Kevin Fewster
                                             Title:  Director

#90982608v10

Dated: ~~June 29~~August 28, 2018          **RUNNING SUBWAY PRODUCTIONS, LLC**

By: _____
        Name: James R. Sanna
        Title:   CEO

#90982608v10

Dated: ~~June 29~~August 28, 2018

**THE BOARD OF TRUSTEES OF NATIONAL MUSEUMS AND GALLERIES OF NORTHERN IRELAND**

By: _____

Name: _____

Title: _____

*[Signature Page – Amended Plan]*

| Summary report: Litéra® Change-Pro TDC 10.1.0.320 Document comparison done on 8/28/2018 4:58:35 PM | |
|---|---|
| **Style name:** Color Legislative+Moves+HF | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://DMS/AmericasActive/91107226/1 | |
| **Modified DMS:** iw://DMS/AmericasActive/91107226/4 | |
| **Changes:** | |
| Add | 150 |
| Delete | 125 |
| Move From | 11 |
| Move To | 11 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 297 |