**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| RMS Titanic, Inc., *et al.,* | ) | Case No. 3:16-bk-02230-PMG |
| | | Chapter 11 (Jointly Administered) |
| Debtors.[1] | ) | |

## NOTICE OF FILING

The Ad Hoc Equity Group gives notice of filing the attached Declaration of Jennifer Feldsher in Support of the Debtors' Bidding Procedures Motion (Doc. No. 1055).

                                                  BRACEWELL LLP
                                                  Jennifer Feldsher (admitted *pro hac vice*)
                                                  David L. Lawton (admitted *pro hac vice*)
                                                  1251 Avenue of Americas
                                                  New York, New York 10020-1104
                                                  Telephone: (212) 508-6100
                                                  Facsimile: (800) 404-3970
                                                  Jennifer.Feldsher@bracewell.com
                                                  David.Lawton@bracewell.com

                                                  and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. ("RMST") (3162); Premier Exhibitions, Inc. ("PRXI") (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LC (3867); and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3405 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

SMITH HULSEY & BUSEY

By  */s/ Stephen D. Busey*
    Stephen D. Busey

Florida Bar Number 117790
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
busey@smithhulsey.com

*Counsel for the Ad Hoc Equity Group*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

RMS TITANIC, INC., *et al.*,[1]

    Debtors.

Case No. 3:16-bk-02230-PMG
Chapter 11

(Jointly Administered)

# DECLARATION OF JENNIFER FELDSHER IN SUPPORT OF THE DEBTORS' BIDDING PROCEDURES MOTION

I, Jennifer Feldsher, being duly sworn, state the following under penalty of perjury.

1. I am a partner of the law firm of Bracewell LLP ("Bracewell"), counsel to Apollo Global Management, LLC ("Apollo") and Alta Fundamental Advisers LLC ("Alta") and their affiliated funds in the above-captioned chapter 11 cases. Funds managed by affiliates of Apollo and Alta comprise the ad hoc group of equity holders and own collectively, approximately 1,520,662 shares of common stock in debtor Premier Exhibitions, Inc. ("Premier"). As detailed below, affiliates of Apollo and Alta also own membership interests in the Stalking Horse Purchaser, Premier Acquisition Holdings, LLC.[2] Bracewell represents the Stalking Horse Purchaser jointly with Greenberg Traurig, P.A. ("GT"). GT also represents PacBridge Capital Partners (HK) Ltd. ("PacBridge") and the Debtors' secured lenders, Haiping Zou, Jihe Zhang, and Lange Feng (collectively the "Secured Lenders").

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867), and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

[2] The members of the Stalking Horse Purchaser are: (i) Apollo Credit Strategies Master Fund Ltd.; (ii) Alta Fundamental Advisers SP LLC; and (iii) PacBridge Partners I Investment Co. Ltd.

2.      I submit this Declaration in support of the *Debtors' Motion For Entry Of An Order (A) Approving Competitive Bidding And Sale Procedures; (B) Approving Form And Manner Of Notices; (C) Approving Form Of Asset Purchase Agreement; (D) Approving Break Up-Fee And Expense Reimbursement; (E) Scheduling Auction And Hearing To Consider Final Approval Of Sale, Including Rejection Or Assumption And Assignment Of Related Executory Contracts And Unexpired Leases; (F) Authorizing Sale Of The Transferred Assets Free And Clear Of All Liens, Claims, Encumbrances, And Interests; And (G) Approving Settlement With The PacBridge Parties; And (H) Granting Related Relief* [D.I. 1055] (the "Sale Motion"),[3] filed by the Debtors on June 15, 2018.

3.      Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge, due inquiry and my review of relevant documents.

4.      The Sale Motion seeks approval of, among other things, the Asset Purchase Agreement between the Stalking Horse Purchaser and the Debtors dated June 14, 2018 (the "APA") and bidding procedures for the Debtors to conduct an auction for the sale of all or substantially all of their assets in an open, competitive process.

5.      The APA and the related term sheet that preceded it were extensively negotiated by the Debtors and the members of the Stalking Horse Purchaser over a 4-month period. Because of the unique nature of the Debtors' assets and operations, the negotiations involved complex issues of bankruptcy law, admiralty law and Canadian laws, as well as issues commonly arising in a more traditional M&A transaction or section 363 sale. The resulting APA is the culmination of hundreds of hours of diligence (both legal and business) and lengthy arms-length negotiations with the Debtors over the APA and its terms.

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Motion.

**A.    The Bid Protections are Integral to the Stalking Horse Purchaser's Bid**

6.    Section 7.5 of the APA contains certain bid protections (the "Bid Protections") for the Stalking Horse Purchaser in the event the Debtors accept an alternative offer or the APA is terminated under certain other conditions. The Bid Protections include (a) a Break-Up Fee in the greater amount of three percent (3%) of the Purchase Price or $500,000, plus (b) reimbursement of the Stalking Horse Purchaser's actual expenses in connection with the Sale, up to a total of $1,000,000. Pursuant to the proposed Bidding Procedures Order, the Bid Protections would be administrative expenses with priority over any and all administrative expenses of the kind specified in section 503(b) of the Bankruptcy Code until paid, other than superpriority claims granted pursuant to the DIP Financing Order to the DIP Lender.

7.    The Bid Protections were heavily negotiated by the parties in good faith and were critical for the Stalking Horse Purchaser to commit the time and resources associated with conducting due diligence regarding the Transferred Assets (as defined in the APA) and with negotiating and entering into the APA. The members of the Stalking Horse Purchaser were forced to expend significant time and resources and endure numerous, lengthy delays as the Debtors pursued other alternatives and prospects in the chapter 11 cases. Since entering into the APA, the members of the Stalking Horse Purchaser have had to address, negotiate extensively and ultimately object to a long list of document requests by the Equity Committee with the promise of more document requests to come. Therefore, the Bid Protections remain important inducements for the Stalking Horse Purchaser to continue with its commitment to serve as the stalking horse bidder and to consummate the transactions set forth in the APA.

8.    Notably, the Bid Protections will only compensate the Stalking Horse Purchaser for a fraction of the expenses its members have incurred in connection with the Debtors' chapter 11 cases and that it has incurred in connection with the sale process. To date, the members of the

3

Stalking Horse Purchaser have already incurred in excess of $1.4 million in legal fees in connection with the Debtors' chapter 11 cases, including $900,000 in fees directly related to the contemplated sale transaction. These amounts will likely be significantly higher through the end of the sale process, particularly if the Equity Committee continues with its discovery demands and litigation related to the Sale Motion.

**B.  Daoping Bao Does Not Have an Interest in the Stalking Horse Purchaser**

9.  Daoping Bao does not now, and never has had an interest in the Stalking Horse Purchaser, the members of the Stalking Horse Purchaser or any of the funds or entities that formed the Stalking Horse Purchaser.

[*Signature follows*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 28, 2018

Respectfully submitted,

*[signature]*

Jennifer Feldsher
Bracewell LLP

*Signature Page to J. Feldsher Declaration*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served electronically through CM/ECF on August 28, 2018, to all parties having appeared electronically in the instant matter.

*/s/ Stephen D. Busey*
Attorney

1010735