**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:

RMS TITANIC, INC., *et al.*,[1]

Debtors.

Case No. 3:16-bk-02230-PMG
Chapter 11 (Jointly Administered)

**RESERVATION OF RIGHTS AND LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO DEBTORS' MOTION FOR AN ORDER (A) APPROVING ASSET PURCHASE AGREEMENT; (B) AUTHORIZING SALE OF THE TRANSFERRED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES IN CONNECTION THEREWITH; (D) APPROVING SETTLEMENT WITH THE PACBRIDGE PARTIES; AND (E) GRANTING RELATED RELIEF**

The Official Committee of Equity Security Holders (the "Equity Committee") of Premier Exhibitions, Inc. ("Premier"), Chapter 11 Debtor in Case No. 3:16-bk-02232-PMG and the parent company of RMS Titanic, Inc. ("RMST"), the Chapter 11 Debtor in Case No. 3:16-bk-02230-PMG (the "RMST Case"), hereby files its Reservation of Rights and Limited Objection (the "Reservation of Rights") to the *Debtors' Motion for an Order (A) Approving Asset Purchase Agreement; (B) Authorizing Sale of the Transferred Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Leases in Connection Therewith; (D) Approving Settlement with The PacBridge Parties; and (E) Granting Related Relief* (the "Sale Motion") [Docket No. 1055] (the "Sale Motion"), and respectfully represents the following:

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: RMS Titanic, Inc. (3162); Premier Exhibitions, Inc. (4922); Premier Exhibitions Management, LLC (3101); Arts and Exhibitions International, LLC (3101); Premier Exhibitions International, LLC (5075); Premier Exhibitions NYC, Inc. (9246); Premier Merchandising, LLC (3867); and Dinosaurs Unearthed Corp. (7309). The Debtors' service address is 3045 Kingston Court, Suite I, Peachtree Corners, Georgia 30071.

46601525;1

**PRELIMINARY STATEMENT**

The Equity Committee previously filed its *Response In Opposition To Debtors' Motion For Entry Of An Order (A) Approving Competitive Bidding And Sale Procedures; (B) Approving Form And Manner Of Notices; (C) Approving Form Of Asset Purchase Agreement; (D) Approving Break Up-Fee And Expense Reimbursement; (E) Scheduling Auction And Hearing To Consider Final Approval Of Sale, Including Rejection Or Assumption And Assignment Of Related Executory Contracts And Unexpired Leases; (F) Authorizing Sale Of The Transferred Assets Free And Clear Of All Liens, Claims, Encumbrances, And Interests; (G) Approving Settlement With The PacBridge Parties; And (H) Granting Related Relief* (the "Original Equity Committee Opposition"). [Docket 1170]. That Original Equity Committee Opposition was denied by the Court. The Equity Committee, by this pleading, does not seek to re-litigate issues previously resolved by the Court. That being said, however, to the extent the objections previously raised by the Equity Committee pertain to the current sale, they are incorporated herein by this reference.

The Equity Committee previously expressed its concerns that the sale would be conducted in a manner designed to chill the bidding. Whether that is the case will not be known until competing bids have been submitted. Objections to the sale motion, however, are due the same day that bids are due under the Bid Procedures order. Accordingly, as of the time that this Reservation of Rights is submitted, the results of the Debtors' solicitation of competing bids is unknown. It is hoped that competing bids will be submitted and that competing bids that are submitted will qualify to participate in an auction. As of now, it is not known whether there will be an auction. For all of these reasons the Equity Committee reserves rights with respect the arguments relating to the sale.

As previously noted by the Equity Committee, numerous bid protections were afforded to the Stalking Horse Purchaser which were not necessary to compel or entice the Stalking Horse Bid. The $1.5 million breakup fee, the $500,000 minimum bid increments, the ability of the Stalking Horse Purchaser to match rather than exceed any initial overbid, the limitation on

solicitation of competing bids, the limitation on the form of the purchase, and the nature of the process which saw insiders and insider affiliates negotiate the Stalking Horse Bid in the dark, without notice to or input from either official Committees, were previously objected to by the Equity Committee. In addition, the Committee previously filed its *Objection to Claim No. 29-1 (the "Claim") of PacBridge Capital Partners (HK) Ltd.* [Docket 1070]. While the Sale Motion requires allowance of the PacBridge claim as a condition to the sale, nowhere in the Sale Motion is there evidence in support of allowance of that claim.[2]

Finally, the Equity Committee notes again that the process leading to the sale effectively precludes this estate and all parties in interest from realizing the true value of the Debtors' assets. Depending upon the outcome of the sale, that value will be lost to this bankruptcy estate but gained by the successful purchaser.[3]

For all of the foregoing reasons, the Equity Committee reserves its rights with respect to the objections to the sale and the sale process. While the Equity Committee hopes that the ultimate result of the sale will exceed the Committee's expectations, this reservation of rights is submitted in the event it does not.

## LIMITED OBJECTION.

The Equity Committee objects to the Motion to the extent that the proposed form of order, attached as Exhibit C to the Sale Motion (the "Proposed Order"), provides for the dismissal of the RMST Case without compliance with Section 1122 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). *See* Proposed Order, ¶¶ Z, 33.

**A.    The Sale Motion Does Not Comply with Section 1112 of the Bankruptcy Code Which Governs Dismissal of Chapter 11 Bankruptcy Cases.**

---

[2] The Equity Committee's objection to the PacBridge Claim is tracking the Sale Motion and would be mooted if the Sale Motion, including allowance of the PacBridge Claim, is approved by the Court.

[3] See, e.g., Transcript of the hearing of August 30, 2018, testimony of Mr. Gilbert Li, at p. 121, lines 1-20; testimony of Mr. Giovanni Wong, at p. 126, line 3-13.

3

46601525;1

Bankruptcy Code Section 1112(b) governs the dismissal of Chapter 11 bankruptcy cases, such as the RMST Case. Section 1112(b) provides that:

> [O]n request of a party in interest, and <u>after notice and a hearing</u>, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, <u>whichever is in the best interests of creditors and the estate</u>, <u>for cause</u> . . .

11 U.S.C. § 1112(b) (emphasis added).

The party seeking dismissal bears the burden of establishing, by a preponderance of the evidence, that "cause" exists for dismissal. *Synovus Bank v. Brooks (In re Brooks)*, 488 B.R. 483, 489 (Bankr. N.D. Ga. 2013). Section 1112(b)(4) sets forth a list of sixteen factors that may be considered to be "cause" for purposes of the section. However, the list is non-exclusive, and "[t]he court will be able to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." *In re Albany Partners,* 749 F.2d 670, 674 (11th Cir. 1984) (quoting H.R.Rep. No. 595, 95 Cong., 1st Sess. 406 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6362).

Once cause has been established, the statute requires the Court to weigh the interests of creditors and the estate in determining whether to dismiss or to convert the case to one under Chapter 7 of the Bankruptcy Code. *Official Comm. of Unsecured Creditors v. Moultrie (In re Moultrie)*, 586 B.R. 498, 506 (Bankr. N.D. Ga. 2018).

Section 1112(b)(3) adds procedural constraints to the court's consideration of a motion to dismiss. It requires that the Court commence a hearing on a motion to dismiss within 30 days after it is filed, and to rule on it within 15 days after the hearing, unless the movant expressly waives these time limitations, or compelling circumstances exist to deviate from them. 11 U.S.C. § 1112(b)(3).

**B.    <u>The Debtors Have Failed to Satisfy the Requirements of Section 1112(b) and the RMST Case Cannot be Dismissed until Such Time as the Debtors Do So.</u>**

The Debtors have failed completely to satisfy the requirements of Section 1112. The Debtors have not brought a noticed motion seeking dismissal of the RMST Case, despite the explicit requirement in Section 1112(b) that such a motion be brought as a prerequisite to

dismissal of a chapter 11 case. All that the Debtors have done is to insert into their Sale Motion a requirement that the RMST case be dismissed as a condition to the sale. As a result, the Debtors have not established "cause" for dismissal, despite the fact that the burden to demonstrate cause rests with them as the parties seeking dismissal. *In re Brooks*, 488 B.R. at 489.

Furthermore, in the absence of such a noticed motion, this Court has not been afforded the opportunity to consider whether the interests of creditors and the RMST estate would be better served by dismissing the RMST Case, or converting it to one under Chapter 7. There would appear, even in the absence of argument and evidence that would be presented in the context of the noticed motion required under Section 1112(b), to be reasons to believe that a conversion of the RMST Case may better serve the interests of creditors than dismissal.

While the Debtors' bankruptcy cases are jointly administered, they have not been substantively consolidated. Thus, for example, in addition to liquidating the estate's assets a Chapter 7 Trustee would be able to investigate and pursue any actions for recovery that may be property of the RMST estate and to investigate and potentially object to claims. For example, the Monthly Operating Report for RMST for the month of August 2018 [Docket No. 1121]), shows an intercompany claim in the amount of $4.8 million owed by RMST to Premier Exhibitions Management, LLC. Dismissal of the RMST Case under the sale order, which transfers assets free and clear to the purchaser, would preclude recovery of that receivable for the benefit of creditors of the remaining debtors holding claims against RMST. None of these essential functions are addressed by the dismissal of the RMST Case provided for in the Proposed Order. *See, In re Global Emergency Resources, LLC*, 536 B.R. 76 (Bankr. S.D. Ga. 2016) (noting that, after a sale of assets pursuant to Section 363 of the Bankruptcy Code, conversion would be appropriate because, *inter alia,* "[a] chapter 7 trustee will be motivated to pursue any appropriate objections to claims and pursue appropriate turnover actions"). That opportunity is lost, without any justification, by a pro forma dismissal of the RMST Case

without any consideration of the ramifications of that dismissal upon the remaining affiliated debtors and the best interests of those estates.

C. **The Proposed Purchaser Should Not Be Entitled to the Good Faith Purchaser Protections of 11 U.S.C. § 363(m).**

In subsection C of the Response section of the Original Equity Committee Opposition, the Equity Committee argued that Premier Acquisition Holdings LLC (the "Proposed Purchaser") is not a good faith purchaser under applicable case law, and should not be entitled to the good faith purchaser protections of Section 363(m) of the Bankruptcy Code. The Equity Committee's factual statements and argument in that subsection C are incorporated by reference herein. The Stalking Horse Purchaser has failed to produce evidence in support of a good faith finding.

A "good-faith purchaser" is "one who purchases the assets for value, in good faith and without notice of adverse claims." *In re Advanced Contracting Solutions, LLC*, 582 B.R. 285, 327 (Bankr. S.D.N.Y. 2018), quoting *In re GSC, Inc*., 453 B.R.132, 180 (Bankr. S.D.N.Y. 2011). A good-faith analysis examines "the purchaser's conduct in the course of the bankruptcy proceedings[,] ... [which includes] the purchaser's actions in preparation for and during the sale itself." *Id*. "The purchaser is prohibited from engaging in any fraudulent or collusive actions that are specifically intended to affect the sale price or control the outcome of the sale." *Id*. at 180-81. In that regard, the actions of the Stalking Horse Group in their negotiations with the Debtors must be reviewed.

Prior to the deposition of Marshall Glade, Glass Ratner produced the term sheet ((the "Term Sheet") that the Equity Committee marked as Exhibit D to its Opposition to the Bid Procedures. See Docket 1170, Exhibit D, pages 84 to 92 of 99. That Term Sheet proposed a transaction by Apollo and Alta, and "certain other Equity Holders." The "other Equity Holders"

were limited to insider-affiliated Equity Holders. Exhibit D, Section II. Ftnte 1., at 86 of 99. The Term Sheet also proposed that Daoping Bao "be one of the members of the Board of Directors." Exhibit D, Section V., at 88 of 99.

Subsequent to Mr. Glade's deposition, Glass Ratner produced a handful of additional documents, including a certain email, dated January 22, 2018, under which Alta and Apollo transmitted the Term Sheet to Glass Ratner. That transmittal email is attached hereto as **Exhibit A**. The transmittal email specifically admonished Glass Ratner that the Term Sheet was being transmitted "on the condition that it be kept strictly confidential and for the Company's and its advisors' eyes only, and subject to your agreement it will not be shared with any other party without [Apollo and Alta's] written consent."

Marshall Glade then forwarded the transmittal email with the Term Sheet to Daoping Bao (CEO and Chairman of the Board), Jessica Sanders (Corporate Secretary), Jerry Henshall (Chief Financial Officer), and Jeffrey Cavender with the question "Jeff-they have specified for company and advisors only – does that mean do not disclose to committees???" The answer to that question was "Yes" – the Debtors did not disclose the Term Sheet to the committees. The Debtors informed the committees that a term sheet had been received from Alta and Apollo but did not disclose the content or substance of that term sheet despite repeated requests by the committees for that information. The committees continued to be kept in the dark for the next four weeks. Marshall Glade testified that Glass Ratner put Alta, Apollo, and PacBridge together as combined bidding partners, all without the knowledge of the committees. During the four weeks after receipt of the Term Sheet, PacBridge, Alta, and Apollo *jointly* had several meetings with the Debtors' officers and *jointly* toured the Debtors' facilities in connection with negotiation and preparation of a purchase proposal all without the knowledge of

either committee. It was not until the second day of the mediation in Atlanta that Apollo, Alta, and PacBridge appeared as a combined bidding group that the committees first learned that Apollo, Alta and PacBridge were a combined bidder for the company. The Mediation broke up soon thereafter. Within two weeks the joint PacBridge/Apollo/Alta purchase offer was circulated to the parties.

The manner in which the Stalking Horse Group came together and went about their negotiations raises questions of their good faith. Why was it necessary to join together and negotiate surreptitiously, keeping the representatives of the key stakeholders of the estate in the dark? The fact that the Debtors may have aided and abetted their conduct does not excuse it. It was Alta, Apollo, and PacBridge which chose to operate in a clandestine manner that undermined the sale process and the prospects for a consensual resolution of the bankruptcy case. That is not "good faith".

Of course, to the extent the Proposed Purchaser is not the winning bidder, the Court should require the Debtor and successful bidder to establish, with competent evidence, the successful bidder's entitlement to protection under 363(m), and the Court should allow the Equity Committee to challenge that entitlement.

## **CONCLUSION.**

For the reasons set forth above, the Equity Committee reserves rights with respect to the sale and objects to the Sale Motion to the extent that it purports to seek an order of this Court dismissing the RMST Case without compliance with the procedural and substantive requirements of Section 1112 of the Bankruptcy Code.

Date: October 5, 2018

By: */s/ Peter J. Gurfein*
Peter J. Gurfein
**LANDAU GOTTFRIED & BERGER LLP**
1801 Century Park East, Suite 700
Los Angeles, California 90067
(310) 557-0050
(310) 557-0056 (Facsimile)

pgurfein@lgbfirm.com

-and-

**AKERMAN LLP**

By: */s/ Jacob A. Brown*
Jacob A. Brown
Florida Bar No. 170038
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
(904) 798-3700
(904) 798-3730 (Facsimile)
Jacob.brown@akerman.com

Attorneys for the Official Committee of Equity Security Holders of Premier Exhibitions, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 5, 2018, the foregoing was transmitted to the Court for uploading to the Case Management/Electronic Case Files ("CM/ECF") System, which will send a notice of electronic filing to all creditors and parties in interest who have consented to receiving electronic notifications in this case. In accordance with the Court's Order Granting Debtors' Motion for an Order Pursuant to 11 U.S.C. § 105(a) and Rule 2002 Establishing Notice Procedures (Doc. 140), a copy of the foregoing was also furnished on October 5, 2018 by U.S. mail, postage prepaid and properly addressed, to the Master Service List attached hereto.

*/s/ Jacob A. Brown*
Attorney

**MASTER SERVICE LIST**
*Case No. 3:16-bk-02230-PMG*

| | |
|---|---|
| A-1 Storage and Crane<br>2482 197th Avenue<br>Manchester, IA 52057 | ABC Imaging<br>14 East 38th Street<br>New York, NY 10017 |
| A.N. Deringer, Inc.<br>PO Box 11349<br>Succursale Centre-Ville<br>Montreal, QC H3C 5H1 | ATS, Inc.<br>1900 W. Anaheim Street<br>Long Beach, CA 90813 |
| Broadway Video<br>30 Rockefeller Plaza<br>54th Floor<br>New York, NY 10112 | CBS Outdoor/Outfront Media<br>185 US Highway 48<br>Fairfield, NJ 07004 |
| Dentons Canada LLP<br>250 Howe Street, 20th Floor<br>Vancouver, BC V6C 3R8 | Enterprise Rent-A-Car Canada<br>709 Miner Avenue<br>Scarborough, ON M1B 6B6 |
| Expedia, Inc.<br>10190 Covington Cross Drive<br>Las Vegas, NV 89144 | George Young Company<br>509 Heron Drive<br>Swedesboro, NJ 08085 |
| Gowlings<br>550 Burrard Street<br>Suite 2300, Bental 5<br>Vancouver, BC V6C 2B5 | Hoffen Global Ltd.<br>305 Crosstree Lane<br>Atlanta, GA 30328 |
| Kirvin Doak Communications<br>5230 W. Patrick Lane<br>Las Vegas, NV 89118 | MNP LLP<br>15303 - 31st Avenue<br>Suite 301<br>Surrey, BC V3Z 6X2 |
| Morris Visitor Publications<br>PO Box 1584<br>Augusta, GA 30903 | NASDAQ Stock Market, LLC<br>805 King Farm Blvd.<br>Rockville, MD 20850 |
| National Geographic Society<br>1145 - 17th Avenue NW<br>Washington, DC 20036 | NYC Dept. of Finance<br>PO Box 3646<br>New York, NY 10008 |

PacBridge Limited Partners
22/F Fung House
19-20 Connaught Road
Central Hong Kong

Ramparts, Inc.
d/b/a Luxor Hotel and Casino
3900 Las Vegas Blvd. South
Las Vegas, NV 89119

Seaventures, Ltd.
5603 Oxford Moor Blvd.
Windemere, FL 34786

Syzygy3, Inc.
231 West 29th Street
Suite 606
New York, NY 10001

TPL
3340 Peachtree Road
Suite 2140
Atlanta, GA 30326

Verifone, Inc.
300 S. Park Place Blvd.
Clearwater, FL 33759

WNBC - NBC Universal Media
30 Rockefeller Center
New York, NY 10112

Jonathan B. Ross, Esq.
Gowling WLG (Canada) LLP
550 Burrard Street, Suite 2300, Bentall 5
Vancouver, BC V6C 2B5

Pallet Rack Surplus, Inc.
1981 Old Covington Cross Road NE
Conyers, GA 30013

Screen Actors Guild
1900 Broadway
5th Floor
New York, NY 10023

Sophrintendenza Archeologica
di Napoli e Pompei
Piazza Museo 19
Naples, Italy 80135

Time Out New York
405 Park Avenue
New York, NY 10022

TSX Operating Co.
70 West 40th Street
9th Floor
New York, NY 10018

Samuel Weiser
565 Willow Raod
Winnetka, IL 60093

United States Attorney's Office
Middle District of Florida
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202

Christine R. Etheridge, Esq.
Bankruptcy Administration
Wells Fargo Vendor Financial Services, LLC
PO Box 13708
Macon, GA 31208

TSX Operating Co., LLC  
c/o James Sanna  
70 W. 40th Street  
New York, NY 10018  
*Creditor Committee*

Dallian Hoffen Biotechnique Co., Ltd.  
c/o Ezra B. Jones  
305 Crosstree Lane  
Atlanta, GA 30328  
*Creditor Committee*

B.E. Capital Management Fund LP  
Thomas Branziel  
205 East 42nd Street , 14th Floor  
New York, NY 10017  
*Creditor Committee*

| | |
|---|---|
| **From:** | Marshall Glade </O=GLASSRATNER/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=MGLADE> |
| **To:** | Daoping Bao; Jessica Sanders (jsanders@prxi.com); Jerry Henshall (jhenshall@prxi.com); Cavender, Jeffery W. |
| **CC:** | Armen Avedissian; William McCaleb |
| **Sent:** | 1/22/2018 4:19:16 PM |
| **Subject:** | FW: Term Sheet |
| **Attachments:** | DM-#5600385-v6-RMS_Titanic_Plan_Term_Sheet.pdf |

See below. I have not reviewed yet.

Jeff – they have specified for the company and its advisors only – does this mean do not disclose to committees???

**From:** Gilbert Li [mailto:Gli@AltaFundamental.com]
**Sent:** Monday, January 22, 2018 4:15 PM
**To:** Marshall Glade <mglade@glassratner.com>; William McCaleb <wmccaleb@glassratner.com>
**Cc:** Feldsher, Jennifer <jennifer.feldsher@bracewell.com>; Bill Schwartz <bschwartz@ApolloLP.com>; Bretton Hunchak <BHunchak@AltaFundamental.com>
**Subject:** Term Sheet

Marshall/William:

As we discussed earlier, please see attached our initial term sheet, as promised. The attached term sheet is being sent for discussion purposes only, on the condition that it be kept strictly confidential and for the Company's and its advisors' eyes only, and subject to your agreement it will not be shared with any other party without our written consent.

As you can imagine, we tried to put in there a lot of items, many to be discussed/numbers to be confirmed, between your side and ours. Please let us know when you and team have had a chance to review and are ready to discuss. We will be on standby and available to speak.

Best,
Gilbert

Gilbert Li
Alta Fundamental Advisers LLC
777 Third Avenue 19th Floor
New York, NY 10017
Office: (212) 319-1778
gli@altafundamental.com

This message is intended for the use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact sender by reply e-mail and destroy all copies of the original message as well as any attachments. This document is not, and may not be relied on in any manner as legal, tax or investment advice or as an offer to sell or a solicitation of an offer to buy an interest in any Alta Fundamental Advisers fund. Please refer to the relevant offering memorandum for full details on investment products, strategies and the associated risks. Past performance is not necessarily indicative of future results.

**Exhibit A**