# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# Jacksonville Division
# www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| RMS TITANIC, INC., *et al.*, | Case No.: 3:16-bk-002230-PMG |
| Debtors. | (Jointly Administered) |

### RESPONSIBLE PERSON'S OBJECTION TO DEBTORS' MOTION TO VACATE THE AGREED ORDER GRANTING MOTION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO ESTABLISH DOCUMENT RETENTION PROTOCOLS

Mark C. Healy, as fiduciary for RMS Titanic, Inc., and certain of its affiliates, as debtors and debtors-in-possessions in the above-captioned case (collectively, the "Debtors"), and solely in the capacity as substitute plaintiff in the Adversary Proceeding (defined below) (in such capacity, the "Responsible Person"),[1] by and through undersigned proposed counsel, files this objection (the "Objection") to the *Debtors' Motion to Vacate the Agreed Order Granting Motion of the Official Committee of Equity Security Holders to Establish Document Retention Protocols and Request for Hearing* [ECF #1294] (the "Motion to Vacate"),[2] through which the Debtors seek to vacate the *Agreed Order Granting Motion of the Official Committee of Equity Security Holders to Establish Document Retention Protocols* [ECF #1247] (the "Protocol Order"). In support of the Objection, the Responsible Person states as follows:

---

[1] Pursuant to Court order [ECF # 25, Adversary Proceeding], the Responsible Person has all rights, powers, and remedies granted to the Equity Committee and is now plaintiff in the Adversary Proceeding. Undersigned counsel has filed an application to represent the Responsible Person in the Adversary Proceeding [ECF #1312]. For purposes of this Objection, the Responsible Person stands in the shoes of the Equity Committee with respect to the Adversary Proceeding.

[2] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion to Vacate.



55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

## PRELIMINARY STATEMENT

The Debtor's Motion to Vacate paints a woefully inaccurate depiction of (1) the agreement of the parties regarding the scope of documents and information to be retained by the Debtors as announced to the Court at the hearing on the Retention Motion and as accurately reflected in the Protocol Order, and (2) the circumstances surrounding and following the entry of the Protocol Order.  The Debtors failed to act diligently in reviewing the Protocol Order prior to its submission to the Court, then waited nearly three months after entry of the Protocol Order to file the Motion to Vacate such order.  In the meantime, the Debtors have unsuccessfully attempted to renegotiate the retention protocol in a manner contrary to the parties' prior agreement to unduly restrict the Responsible Person's access to documents relating to the Adversary Proceeding.  The Debtors seek to allow the directors of the Debtors, certain of whom are defendants in the Adversary Proceeding, to decide what documents and information are relevant to the Adversary Proceeding and must be preserved.  Such a result is contrary to the parties' agreement, and could hinder the pursuit of the D&O Claims.

As more fully addressed below, the Debtors have failed to demonstrate that relief from the Protocol Order is warranted under the Bankruptcy Rules or the Bankruptcy Code.  As such, the Court should deny the Debtors' Motion to Vacate and their attempt to unilaterally modify the retention protocols to allow the Debtors' directors to self-select what information should be preserved as both untimely and improper.

## BACKGROUND

1.  On May 11, 2018, the Equity Committee filed the *Emergency Motion of the Official Committee of Equity Security Holders for Entry of an Order Granting Derivative*

2



*Standing and Authority to Prosecute and Settle Claims on Behalf of the Debtors' Estates* [ECF # 1015], seeking derivative standing to prosecute and potentially settle various claims against certain of the Debtors' past and present directors and officers (collectively, the "D&O Claims").

2.  As fiduciaries, the Debtors were obligated to pursue the D&O Claims on behalf of the estate, but refused to do so. Moreover, the Debtors objected to the Equity Committee's pursuit of standing to prosecute the D&O Claims and its retention of Special Litigation Counsel, arguing that the Court should stay any prosecution of the D&O Claims [ECF #1029]. Notably, however, certain directors of the Debtors are defendants and targets of the D&O Claims and are indisputably conflicted in making any decisions relating thereto.

3.  On May 25, 2018, the Court granted derivative and exclusive standing to the Equity Committee to commence, prosecute, and, if appropriate, settle the D&O Claims for the benefit of the estate [ECF #1036], and approved the undersigned to represent the Equity Committee in connection with such litigation [ECF #1038].

4.  On June 5, 2018, the Equity Committee filed its *Adversary Complaint and Demand for Jury Trial*, initiating an adversary proceeding to pursue the D&O Claims, Case No. 3:18-ap-00064-PMG (the "Adversary Proceeding").

5.  On October 3, 2018, the Equity Committee filed the *Motion of the Official Committee of Equity Security Holders to Establish Document Retention Protocols* [ECF #1221] (the "Retention Motion"), requesting the establishment of protocols to retain and preserve the Debtors' documents and information to ensure that no evidence, or potential evidence, relating to the Adversary Proceeding or the D&O Claims would be lost, altered, or destroyed as a result of the sale of the Debtors' assets to a proposed purchaser.

3

6. The Debtors filed an objection to the Retention Motion [ECF #1230], and on October 18, 2018, the Court held a hearing (the "<u>Hearing</u>") on the Retention Motion.

7. At the Hearing, counsels for the Debtors and the Equity Committee announced that the parties had reached an agreement regarding the retention protocols as follows:

> MR. CHARBONNEAU: The thrust of the motion is really simple, it asks for three basic types of relief: One, that ***existing documents and ESI – electronically stored information -- be preserved***. If there are automatic processes in place that many companies have for the periodic destruction of documents and ESI, that those be abated. And to the extent that there are processes in place and the corporate reps don't have the ability to abate it, to, as part of the suggested protocols, contact an IT person to stop the destructive process.
>
> My understanding from speaking with Mr. Brooks is that ***the Debtor finds the protocols acceptable and will preserve documents and ESI at least for a time until we figure out, in the adversary proceeding, when discovery will close or when the documents will not be needed.***
>
> The only open issue, and I think -- I don't want to put words in Mr. Brooks's mouth. I thought I heard him say that the purchaser is taking -- and I thought Mr. Wong confirmed on the witness stand -- taking a very, very small percentage of documents with them.
>
> . . .
>
> That gives me a little bit of pause, Judge, but I believe the vast majority of the documents we're looking for that fall under the protocols would fall under the agreement that Mr. Brooks and I have.
>
> MR. BROOKS: . . . **The Debtors are going to retain <u>whatever documents are relevant to the adversary case, including books and records that would go to the purchaser</u>.** So I don't think there is a need to -- certainly not a need to enter the order. And with the agreement with Mr. Charbonneau, I think we've addressed his concerns.

4



> MR. CHARBONNEAU: . . . With one quick clarification: I think Mr. Brooks said the documents that are being turned over to the purchaser *that are relevant* will be mirrored. 7026, *the standard by which were going, doesn't have a relevant standard.* We'd like everything that's being turned over to the purchaser to be mirrored.
>
> MR. BROOKS: *That's the agreement, Judge.*

Oct. 18, 2019 Hr'g Tr. at 78:25-82:14 (emphasis added). In other words, the parties agreed that the Debtors would preserve *all* "existing documents and ESI – electronically stored information" "at least for a time until . . . discovery will close or when the documents will not be needed," "including [but not limited to], books and records that would go to the purchaser," and not only those the Debtors deemed "relevant" to the Adversary Proceeding (the "<u>Agreement</u>"). *See id.*

    8.    After the Hearing, the Court directed the Parties to submit an agreed order memorializing the terms of the announced Agreement. *Id.* at 82:21-82:25.

    9.    On Wednesday, October 24, 2018, the undersigned emailed a draft of the Protocol Order, which accurately depicted the terms of the Agreement, to Debtor's counsel. *See* Motion to Vacate, Ex. C.

    10.    Five days later, having received no objection to the proposed Protocol Order from Debtors' counsel, the undersigned uploaded the Protocol Order on Monday October 29, 2018. The Protocol Order was entered on the docket on October 30, 2018 [ECF #1247].

    11.    The Protocol Order accurately reflects the announced Agreement and provides that the "Debtors shall preserve and instruct all of its relevant personnel to retain and preserve *any* information, documents and records in its possession, custody or control . . . . [And] shall suspend deletion, overwriting, and any other possible destruction of relevant documents and data. . . ." Protocol Order ¶ 1. It further provides that before the Debtor transfers the Transferred

5

Assets to the purchaser,[3] the "Debtors shall mirror and duplicate any and all such records and ESI and provide copies of all such documents mirrored or copied to any party requesting them in" the Adversary Proceeding. *Id.* ¶ 2.

12. On October 31, 2018, Debtors' counsel finally responded to the undersigned's email, indicating that he was "a little behind," and that the Debtors had comments to the Protocol Order and did not believe it accurately memorialized the parties' Agreement. *See* Motion to Vacate, at Exhibit D.

13. Later that day, counsel to the Equity Committee responded to such email indicating that he did not believe that uploading the Proposed Order was improper because he had received no feedback from Debtors' counsel. Nevertheless, he welcomed comments from Debtors' counsel to the Protocol Order to try to alleviate the Debtors' concerns. *See id.* at Ex. E.

14. Finally, on November 5, 2018, Debtors' counsel sent proposed edits to the Protocol Order that substantially deviated from the terms of the Agreement by providing that the Debtors shall only preserve documents that ***they deem relevant to the Adversary Proceeding*** and will only transfer to parties in the Adversary Proceeding records and ESI that qualify as Transferred Assets that ***they deem relevant to the Adversary Proceeding***. *See id.* at Ex. F (Email from Matthew Ray Brooks (Nov. 5, 2018 5:41 PM)); Motion to Vacate, at Ex. A. Such terms contradict the parties' Agreement, as stated on the record at the Hearing, that the documents to be preserved would not be subject to a relevancy determination.

---

[3] The Transferred Assets are defined in the *Order (A) Approving Asset Purchase Agreement; (B) Authorizing Sale of The Transferred Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (C) Authorizing The Assumption and Assignment of Certain Executory Contracts and Leases In Connection Therewith; (D) Approving Settlement With the Pacbridge Parties; And (E) Granting Related Relief* [ECF # 1232].

6



15. While the parties continued to negotiate the terms of the Protocol Order, such order became final and non-appealable.

16. On January 22, 2019, nearly three months after entry of the Protocol Order, the Debtors filed the Motion to Vacate. At no point prior to the filing of the Motion to Vacate did the Debtors file anything with the Court to seek rehearing on the Retention Motion or to assert objections to the Protocol Order.

## **OBJECTION**

17. The Motion to Vacate must be denied because the Debtors have failed to demonstrate that vacating the Protocol Order is warranted under Rule 60(b) (or on any other basis) and because they have failed to seek such relief within a reasonable time. The Protocol Order accurately reflects the parties' announced Agreement and is necessary to prevent the Debtors, whose directors are targets of the D&O Claims, from self-selecting which documents and information they believe to be "relevant" to the claims asserted against them in the Adversary Proceeding. The Equity Committee and the Responsible Person have relied on the Protocol Order in pursuing the D&O Claims, and the Protocol Order remains integral to the potential success of the Adversary Proceeding. The Court should not allow the Debtors to unilaterally revise the Protocol Order to protect the interests of their insiders.

### I. **The Motion to Vacate Fails to Satisfy Rule 60(b), Which Is the Only Basis on Which the Protocol Order May Be Vacated**

18. As an initial matter, the Debtors' attempt to invoke section 105(a) of the Bankruptcy Code to obtain relief from the Protocol Order is improper. Although section 105(a) permits the Court to "issue any order, process, or judgment that is necessary or appropriate to



carry out the provisions of this title," 11 U.S.C. § 105(a), it *alone* does not provide a basis for vacating a court's prior order absent satisfaction of Rule 60(b) of the Federal Rules of Civil Procedure (the "Rules"). "Relief under § 105(a) complements that under Fed.R.Civ.P. 60(b). . . . But that power ***cannot be used to circumvent the requirements of Fed.R.Civ.P. 60(b)*** or other clear statutory language." *In re Fleetwood Enters., Inc.*, 427 B.R. 852, 864 (Bankr. C.D. Cal. 2010), *aff'd*, 471 B.R. 319 (B.A.P. 9th Cir. 2012) (emphasis added) (citing *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 940 (9th Cir. 2007); *Missoula Fed. Credit Union v. Reinertson (In re Reinertson)*, 241 B.R. 451, 456 (9th Cir. BAP 1999)); *see also Delta Air Lines, Inc. v. Pan Am Corp. (In re Pan Am Corp.)*, 162 B.R. 667, 671-72 (S.D.N.Y. 1993) (rejecting party's assertion that bankruptcy court had authority under section 105(a) to modify final orders, and concluding that "modification of the DIP orders would not be appropriate ***unless it was proper under Rule 60(b)***. . . . the Bankruptcy Court did not have power to modify the DIP orders ***except for the reasons listed in Fed.R.Civ.P. 60(b)***") (emphasis added); *cf. Law v. Siegel*, 571 U.S. 415 (2014) ("§ 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.' . . . . [A] statute's general permission to take actions of a certain type must yield to a specific prohibition found elsewhere.") (citations omitted).[4]  Even if section 105 were independently applicable here, it

---

[4]  The Debtors cited case law that section 105(a) alone warrants their requested relief is unpersuasive. For example, *In re Meter Maid Indus., Inc.*, 462 F.2d 436, 439 (5th Cir. 1972), does not deal with any request for relief under Rule 60(b) and merely approved the bankruptcy referee's modification of a prior order to clarify the proper recipient of property to be turned over by the trustee. *In re Rideout*, 86 B.R. 523, 530 (Bankr. N.D. Ohio 1988), upon which the Debtors rely to assert that the Court may reconsider the Protocol Order under section 105, independent of FRCP 60, is distinguishable. There, the court merely found that the confirmation order may be vacated under section 105, where the court itself failed to direct the debtors to mail the notice of the hearing on confirmation of plan to affected parties, thereby rendering the confirmation order void for lack of jurisdiction and a violation of due process. *Id.* ("To the extent that the Hahns did not receive notice because the Court failed to

should not be invoked to allow the Debtors to unilaterally amend the Protocol Order in a manner contrary to the Agreement that could materially prejudice the Adversary Proceeding and the estate's potentially recoveries therefrom.

19. Moreover, the Debtors have failed to demonstrate that vacating the Protocol Order is warranted under Rule 60(b).  Rule 60(b) provides that "on motion and just terms," a court may relieve a party from a court's prior order on certain enumerated grounds, including *inter alia*, "mistake, inadvertence, surprise, or excusable neglect," "fraud . . ., misrepresentation, or misconduct by an opposing party," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b).  Notably, Rule 60(c) provides that "[a] motion under Rule 60(b) must be made ***within a reasonable time***." *Id.* at 60(c) (emphasis added).  Due to the "deep-rooted policy in federal law of finality of judgments," invocation of Rule 60(b) is an "extraordinary remedy which may provide relief only upon a showing of exceptional circumstances." *In re Huff*, 118 B.R. 146, 148 (Bankr. S.D. Fla. 1990) (citing *Travelers Indemnity Co. v. Gore,* 761 F.2d 1549, 1551 (11th Cir.1985); *Tucker v. Commonwealth Land Title Ins. Co.,* 800 F.2d 1054, 1056 (11th Cir.1986)).  "Motions for reconsideration should not be used merely to relitigate the issues already decided.  Unless the movant can demonstrate 'manifest errors of fact or law,' reconsideration should not be sought." *In re Dorway*, No. 07-21140-AJC, 2008 WL 5120903, at *2-3 (Bankr. S.D. Fla. Oct. 6, 2008) (citations omitted).

---

specifically direct the Debtors to mail the "Notice" to all parties, the Bankruptcy Court may use its inherent power to correct its own mistakes under 11 U.S.C. § 105(a). . . .  The Court did not have jurisdiction over the parties whose rights were adjudicated. Accordingly, the Order was void because it purports to deprive the Creditors of their property rights when they were not afforded notice and an opportunity to be heard.").  Here, the Court did not make a mistake in entering the Proposed Order and the Debtors had ample notice of the Protocol Order.



20. The Debtors have failed to demonstrate that relief from the Protocol Order is proper under Rule 60(b) because (i) the Motion to Vacate was not filed within in a reasonable time, (ii) the Court did not make a "mistake" in entering the Protocol Order, (iii) the Protocol Order was not a misrepresentation to the Court, and (iv) no other extraordinary circumstance justifies such relief. Moreover, granting the Debtors relief from the Protocol Order and accepting their unilateral revisions thereto would unduly prejudice the estate by granting certain of the Debtors' directors discretion to select what documents and information are "relevant" to the claims being asserted against them and must be preserved. Such a result could deprive the Responsible Person of valuable information relating to the Adversary Proceeding and inhibit the prosecution of the D&O Claims to the detriment of the estate.

*(i)    The Motion to Vacate Was Not Filed Within a Reasonable Time as Required Under Rule 60(c)(1)*

21. Pursuant to Rule 60(c)(1), "a motion under Rule 60(b) must be made within a reasonable time . . . ." Fed. R. Civ. P. 60(c)(1). Reasonableness of the delay is assessed by considering the "circumstances of each case" to determine "whether the parties have been prejudiced by the delay and whether good reason has been presented for failing to take action sooner." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1275 (11th Cir. 2008) (internal citations and quotations omitted).

22. Here, the Debtors failed to raise any objections to the Protocol Order for 7 days after being provided with a draft thereof, filed nothing with the Court after entry of the Protocol Order to seek a rehearing on the Retention Motion, and then waited to file the Motion to Vacate for nearly three months after the Protocol Order was entered. The Debtors have provided no

Agentis
55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

good reason for failing to take action sooner. That the Debtors were working with opposing counsel to amend the Protocol Order for several months is insufficient excuse for delay, particularly where the Debtors' demanded revisions have been unreasonable and wholly inconsistent with the parties' stated Agreement. Moreover, there was nothing prohibiting the Debtors from filing a "placeholder" motion to seek rehearing on the Retention Motion or immediate relief from the Protocol Order after its entry. Such delay is unreasonable and cannot be perceived as excusable neglect. *Cf. In re W. Coast Dev. Corp. of Naples, Inc.*, 89 B.R. 993, 995 (Bankr. S.D. Fla. 1988) ("Forgetfulness and the press of other more important business is insufficient to establish excusable neglect.").

        *(ii)*    <u>*The Court did Not Make a Mistake in Entering the Protocol Order Under Rule 60(b)(1)*</u>

23.    Nor is relief from the Protocol Order warranted under Rule 60(b)(1) due to "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Debtors allege that the Court made a "mistake" by entering the Protocol Order because the order does not reflect the Agreement announced at the Hearing. This is incorrect. The Protocol Order accurately reflects the Agreement announced at the Hearing that (i) the Debtors "will preserve documents and ESI at least for a time until . . . discovery will close or when documents will not be needed," *Hr'g Tr.* at 80:18-23, "including books and records that would go to the purchaser," *id.* at 81:12-15 (Mr. Brooks: . . . "The Debtors are going to retain whatever documents are relevant to the adversary case, including books and records that would go to the purchaser."). The Debtors' attempt to limit the preserved documents to only those they deem "relevant" to the Adversary Proceeding—a proposal explicitly rejected by the undersigned at the Hearing—is an

improper attempt to renegotiate the Agreement in a manner that could prove highly prejudicial to the pursuit of the D&O Claims.  That the Debtors have "buyer's remorse" about what they previously agreed to does not constitute a "mistake" under Rule 60(b)(1).  *See In re Dorway*, 2008 WL 5120903 at *2-3 ("Motions for reconsideration should not be used merely to relitigate the issues already decided.").

        *(iii)*    *The Protocol Order Was Not a Misrepresentation Under Rule 60(b)(3)*

24. Under Rule 60(b)(3), a party may seek relief upon a showing of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).  However, any alleged fraud, misrepresentation, or misconduct must be proven by "clear and convincing evidence." *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.*, 478 F.3d 1303, 1314 (11th Cir. 2007).  The Debtors cannot satisfy this burden.

25. The Debtors allege that submission of the Protocol Order as an agreed order "was a material misrepresentation to the Court" because they did not agree to its terms.  Motion to Vacate ¶ 31.  However, as discussed above, the Protocol Order accurately tracks the terms of the Agreement announced at the Hearing.  The undersigned waited numerous days for the Debtors to comment on the draft Protocol Order, and even welcomed the Debtors' attempts to amend the Protocol Order after its entry to address the Debtors' objections thereto.  The Debtors were provided with ample opportunity to review and object to the draft Protocol Order and failed to file anything with the Court for months after entry of the Protocol Order to inform the Court that any alleged "mistake" had been made.  The undersigned engaged in no fraud, misrepresentation, or misconduct in connection with the Protocol Order and the Debtors' mischaracterization of his actions are meritless.



*(iv)    Rule 60(b)(6) is Inapplicable*

26.    As Debtors concede, relief under Rule 60(b)(6) is an "extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984). "Ground 6, any other reason justifying relief from operation of the judgment, is reserved for cases involving extraordinary circumstances and ***only when such action is necessary to accomplish justice***." *In re Dorway*, 2008 WL at *2 (emphasis added). The Debtors have failed to show extraordinary circumstances warranting relief from the Protocol Order, or that amending its terms to unilaterally restrict the Responsible Person's access to potentially valuable information is just.

27.    Lastly, the Debtors allege that the undersigned failed to comply with the Local Rule 9072-1(c), and therefore, did not have authority to submit the Protocol Order as agreed. The Protocol Order indicates that it was being entered in light of the representations of counsel at the Hearing, at which time the Agreement was announced. Any alleged deviation from the Local Rule is minor and this hyper-technical argument does not compensate for the Debtors' failure to demonstrate that vacating the order is otherwise proper under the controlling standard: Rule 60(b).

28.    As stated above, the Protocol Order accurately reflects the announced Agreement and the Debtors have not demonstrated that their request to vacate such order was made in a timely manner or that such relief is warranted. The Motion to Vacate and the proposed revised order attached thereto should be denied because it contradicts the Agreement and unjustly restricts the Responsible Person's access to documents and information that may be critical to the success of the D&O Claims.

Aagentis
55 Alhambra Plaza · Suite 800 · Coral Gables, Florida 33131 · T. 305.722.2002 · www.agentislaw.com

**WHEREFORE**, the Responsible Person respectfully requests that the Court deny the Motion to Vacate.

Dated: March 3, 2019

                                          Respectfully Submitted:

                                          **AGENTIS PLLCS**
*Proposed Counsel for the Responsible Person*
55 Alhambra Plaza, Suite 800
Coral Gables, FL 33134
T. 305.722.2002

By:    */s/ Robert P. Charbonneau*
        Robert P. Charbonneau
        Florida Bar No. 968234
        rpc@agentislaw.com
        Gregory L. Warren
        Florida Bar No. 125317
        glw@agentislaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case this 3rd day of March, 2019.

By: */s/ Robert P. Charbonneau*
Robert P. Charbonneau
Fla. Bar No. 968234
rpc@agentislaw.com